Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA  94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
esomers@lexlawgroup.com

*Attorney for Plaintiffs*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as guardian of A.L., a minor, LISHOMWA HENRY, and JOSEPH HARMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a Delaware corporation,<br><br>Defendant. | Case No.: 4:19-cv-04577-JSW<br><br>AMENDED CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Jeffrey S. White |

Plaintiffs Fumiko Lopez, Fumiko Lopez, as guardian of A.L., a minor, Lishomwa Henry, and Joseph Harms, (collectively "Plaintiffs") complain upon knowledge as to themselves and their own actions and upon information and belief as to all other matters against Defendant Apple Inc. ("Apple" or "Defendant"), as follows:

## SUMMARY OF ALLEGATIONS

1.      This action arises from Apple's unlawful and intentional interception and recording of individuals' confidential communications without their consent and subsequent unauthorized disclosure of those communications to third parties from approximately October 2011 to the present (the "Class Period") in violation of federal and state law.  Plaintiffs, on behalf of themselves and similarly situated purchasers of Siri Devices (defined below) bring this suit under the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. §2510, *et seq*., Stored Communications Act ("SCA"), 18 U.S.C. §2701, *et seq*., California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§631(a) and 632, intrusion upon seclusion, invasion of privacy under Art. I, Sec. 1 of the California Constitution, breach of contract, and California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, and for declaratory and other equitable relief under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*.

2.      Siri is an artificial intelligence-based virtual assistant developed by Apple that allows individuals to use their voice to ask questions and receive answers based on information available on the internet and to give instructions for simple tasks that Siri executes.  Apple preloads Siri on devices it manufactures, specifically laptops (MacBook), desktop computers (iMac), smartphones (iPhone), tablet computers (iPad), smart speakers (HomePod), music devices (iPod touch), headphones (AirPods), wearable devices (Apple Watch), and home entertainment devices (Apple TV) (collectively, "Siri Devices").  Siri Devices are sold throughout the United States at national retailers, such as Wal-Mart, Best Buy, and Target, as well as through Apple's own network of brick-and-mortar stores.  Apple does not allow its users to opt out of some functionalities of Siri, short of disabling Siri altogether.  By purchasing a Siri Device, users enter into a contract with Apple and are thereby subject to Apple's Software License Agreements ("SLA") and Privacy Policy, which is incorporated as part of the SLA.

3.     Federal and state privacy laws uniformly recognize individuals' reasonable expectations of privacy in confidential communications, particularly those that take place in the sanctity of one's own home – a historically protected zone of privacy.  Federal privacy laws prohibit unauthorized interception, access, disclosure, and use of the contents of oral and electronic communications.   California specifically recognizes privacy as a fundamental right, and accordingly, California law prohibits, among other things, eavesdropping, recording, and sharing of confidential communications without the consent of all parties to the communication.

4.     Well aware of consumers' legitimate and reasonable expectations of privacy, Apple assured, and continues to assure, its customers, like Plaintiffs and members of the Class and Subclass (defined below) (respectively, "Class Members" and "Subclass Members"), that Siri Devices will only listen to, record, and share their conversations with their consent, which can be given only: (i) by uttering an activation command, like "Hey, Siri" (the "hot word"); (ii) by manually pressing a button on the device; and (iii) in case of the AppleWatch, by raising the AppleWatch to one's mouth and beginning to talk.  Consequently, individuals who have purchased or used Siri Devices and interacted with Siri, including minors, have not consented to Apple recording or disclosing conversations where "Hey, Siri" has not been uttered and no button on the device has been pressed.

5.     On July 26, 2019, unsuspecting consumers learned that despite Apple's assurances, Apple has intercepted, recorded, disclosed, and misused private conversations of thousands of individuals, including minors, without consent.[1]  As reported by *The Guardian*, Apple collected audio recordings of Siri users in numerous instances where a hot word is never spoken and used these recordings for its own commercial and financial benefit, namely to improve the quality of Siri voice assistant dictation.  Worse, Apple disclosed these recordings to subcontractors without Siri Devices users' knowledge or consent.  Each such recording and disclosure constitutes an egregious

---

[1]     Alex Hern, *Apple contractors 'regularly hear confidential detail' on Siri recordings*, THE GUARDIAN (Jul. 26, 2019), https://www.theguardian.com/technology/2019/jul/26/apple-contractors-regularly-hear-confidential-details-on-siri-recordings ("*The Guardian* Article").  Unless otherwise indicated, all websites in this Amended Class Action Complaint ("Complaint") were last visited on November 6, 2019.

breach of social norms and is a violation of federal and state law.

6.      To be sure, Apple's violations are deliberate and calculated to lead to increased revenues for Apple.  Apple conceded – after the publication of *The Guardian* Article – that Siri "collects and stores certain information from [users' device]" and "relies on . . . audio recording of a [users'] request and a computer-generated transcription of it" to improve Siri's reliability.[2]  After admitting that Apple's conduct fell below "[its] high ideals," Apple announced the temporary suspension of its quality improvement program.[3]  Apple profited handsomely from this invasion of privacy by using the content of conversations Apple admits it obtains without consent or authorization to improve the functionality of Siri and thereby gain an advantage over Apple's competitors.  In short, Apple intentionally, willfully, and knowingly violated consumers' privacy rights, including within the sanctity of consumers' own homes where they have the greatest expectation of privacy.

7.      Apple has sold millions of Siri Devices to U.S. consumers during the Class Period. Plaintiffs and Class Members would not have bought their Siri Devices, or would have paid less for them, if they had known Apple was intercepting, recording, disclosing, and otherwise misusing their conversations without consent or authorization.[4]

## **JURISDICTION AND VENUE**

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 because Plaintiffs allege violations of federal law, including the Wiretap Act, 18 U.S.C. §2510, *et seq*., and the SCA, 18 U.S.C. §2701, *et seq*. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

---

[2]    *Improving Siri's privacy protections*, APPLE (Aug. 28, 2019),
https://www.apple.com/newsroom/2019/08/improving-siris-privacy-protections/.

[3]    *Id*.

[4]    For convenience, Plaintiffs use variations of the phrase "intercepting, recording, disclosing, and otherwise misusing" throughout the Complaint in an effort to summarize the range of conduct that Plaintiffs allege is unlawful as set forth in the Claims for Relief below.  Use of this phrase, however, is not intended to limit the scope of any required elements set forth in each respective Claim for Relief alleged herein.

AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 4:19-cv-04577-JSW

9.      This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d) because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Class Members, and minimal diversity exists because more than two-thirds of putative Class Members are citizens of a state different than Defendant.

10.     This Court has general personal jurisdiction over Defendant because its principal place of business is in California.  Additionally, Defendant is subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in this State.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District.  Furthermore, Defendant Apple Inc. is headquartered in this District and subject to personal jurisdiction in this District.

12.     **Intradistrict Assignment (L.R. 3-2(c) and (e) and 3-5(b))**:  This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Santa Clara County.  Pursuant to L.R. 3-2(e), all civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

## PARTIES

**A.      Plaintiffs**

13.     Plaintiff Fumiko Lopez ("Plaintiff Lopez") is a natural person and citizen of the State of California and a resident of San Bernardino County.

14.     Plaintiff A.L.  ("Plaintiff A.L.") is a minor and brings this suit by and through her legal guardian, Plaintiff Fumiko Lopez.  Plaintiff A.L.  is a natural person and citizen of the State of California and a resident of San Bernardino County.

15.     Lishomwa Henry ("Plaintiff Henry") is a natural person and citizen of the State of New York and a resident of Queens County.

16.     Joseph D. Harms ("Plaintiff Harms") is a natural person and citizen of the State of New York and a resident of Kings County.

**B.      Defendant**

17.      Defendant Apple Inc. ("Apple") is a business incorporated under the laws of the State of Delaware with its principal place of business at 1 Infinite Loop, Cupertino, California 95014. Apple is engaged in the business of designing, manufacturing, distributing, and selling, *inter alia,* smartphones, tablet computers, wearable technology, headphones, laptops and desktop computers that come with software programs that Apple develops pre-installed.  Apple designs its products in California, and its marketing efforts emanate from California.

## SUBSTANTIVE ALLEGATIONS

## I.      Background Information On Apple and Siri

18.      Apple is one of the world's leading technology companies, designing and manufacturing internet technology devices used by consumers worldwide.  In its California headquarters, Apple designs, among other things, Siri Devices.  All of these devices come pre-installed with a software program developed by Apple called Siri.  Siri is a voice-activated "intelligent assistant" program that uses the internet to perform a variety of tasks, including: providing users with information in response to questions; playing music; setting alarms, timers, and reminders; and controlling other internet-connected home devices.

19.      Siri is triggered by a user uttering "Hey, Siri" or by a user performing some other designated action, such as pressing a button for a pre-programmed amount of time.  Once activated, Siri records your voice and translates your request into code.[5]  This code is input into an algorithm that determines what information a user is seeking or what task they want performed.

20.      Siri Devices listen for the hot word by using a speech recognizer that records and analyzes short snippets of audio from their surroundings.  This audio is stored locally in the Siri Device's random-access memory ("RAM").  Audio stored in a Siri Device's RAM is continuously overwritten as new audio is recorded and analyzed until the hot word is detected.  The speech recognizer then generates a "confidence score" that the audio contained the hot word.

---

[5]      Michael Lagapa, *How Siri Works; Voice Recognition on a Smart Phone*, JAMECO ELECTRONICS, https://www.jameco.com/Jameco/workshop/Howitworks/how-siri-works.html.

21.     When a Siri Device detects a sufficiently high confidence score, it "wakes up," or "activates" Siri.  At this point, the Siri Device begins transmitting audio to Apple for analysis.  The purpose of this analysis is to respond to user commands issued after the hot word.  For example, if a user says, "Hey Siri, what is the weather in Los Angeles?" Siri will transmit that audio to Apple for analysis and provide a response.  Users can also ask Siri to, among other things, set alarms ("Wake me up at 7 AM"), play music ("Play me something I'd like"), access text messages ("Read my last message"), or control smart appliances ("Turn on the lights in the living room").

22.     Siri has been included on all Siri Devices since October 12, 2011.  As of January 2018, Apple claimed that Siri was "actively used on over half a billion devices."[6]

23.     Apple's SLAs[7] expressly incorporate Apple's Privacy Policy and state that information will be treated in accordance with Apple's Privacy Policy.[8]

24.     In order to distinguish itself from competing technology companies such as Facebook, Amazon, and Google that have been implicated in scandals involving the collection, sharing, or selling of user data, Apple touts its privacy protections.  If an individual were to ask Siri "Are you always listening," Siri is programmed to respond: "I only listen when you're talking to me."[9]



---

[6]     Press Release, APPLE, HomePod arrives February 9, available to order this Friday (Jan. 23, 2018), https://www.apple.com/newsroom/2018/01/homepod-arrives-february-9-available-to-order-this-friday/.

[7]     APPLE, Software License Agreements, https://www.apple.com/legal/sla/.

[8]     APPLE, Privacy, Privacy Policy (Aug. 29, 2019), https://www.apple.com/legal/privacy/en-ww/.

[9]     James Pero, *Apple APOLOGIZES for letting contractors listen to Siri recordings 'of people having sex' without users' knowledge and says the program will now only apply to those who opt-*

25.     In July 2018, Congress sent a letter to Apple inquiring as to how they protect consumer data.  Apple responded with a letter stating, "We believe privacy is a fundamental human right."  Apple's response also answered questions Congress asked, including:

> **Question 9**: Do Apple's iPhone devices have the capability to listen to consumers without a clear, unambiguous audio trigger?
>
> **Apple's Response to Question 9:**  iPhone doesn't listen to consumers except to recognize the clear, unambiguous audio trigger "Hey Siri[.]"
>
> **Question 9(a)**: If [Apple's answer to Question 9 is] yes, how is this data used by Apple? Please describe any use or storage of these data.
>
> **Apples Response to Question 9(a)**: iPhone doesn't listen to consumers, except to recognize the clear, unambiguous audio trigger "Hey Siri." As describe above, the on-device speech recognize runs in a short buffer and doesn't record audio or send audio to the Siri app if "Hey Siri" isn't recognized.
>
> **Question 10**: Do Apple's iPhone devices collect audio recordings of users without consent?
>
> **Apple's Response to Question 10**: No.[10]

26.     More recently, Apple ran television commercials declaring "Privacy.  That's iPhone" and further stating "[i]f privacy matters in your life, it should matter to the phone your life is on." Apple also bought a billboard at CES 2019, a consumer electronics convention held in Las Vegas, which read:  "What happens on your iPhone, stays on your iPhone."  Unfortunately, Apple doesn't live up to the privacy protections it claims it offers.

## II.     Users of Siri Devices Reasonably Expected That Their Private Conversations Would Not Be Intercepted, Recorded, Disclosed, or Otherwise Misused

27.     Plaintiffs' and Class Members' expectation of privacy in their confidential and private communications, which Apple intercepted, recorded, disclosed, or otherwise misused, is deeply enshrined in California's Constitution.  Article I, section 1 of the California Constitution

---

*in*, DAILY MAIL (Aug 28, 2019), https://www.dailymail.co.uk/sciencetech/article-7404513/Apple-APOLOGIZES-Siri-listening-practices-says-program-apply-opt-in.html.

[10]     *See* Letter from Timothy Powderly, Director, Federal Government Affairs, Apple, to Representative Greg Walden, United States House of Representatives (Aug. 7, 2018), https://www.macrumors.com/2018/08/07/apple-responds-to-house-on-privacy/.

provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, ***and privacy***."  Art. I., Sec. 1, Cal. Const.  [Emphasis added].

28.     The phrase "***and privacy***" was added in 1972 after voters approved a proposed legislative constitutional amendment designated as Proposition 11.  Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating in relevant part:

> ***The right of privacy is the right to be left alone.*** It is a fundamental and compelling interest. It protects **our homes**, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion, and our freedom to associate with the people we choose.  ***It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us.***
>
> ***Fundamental to our privacy is the ability to control circulation of personal information.*** This is essential to social relationships and personal freedom. The proliferation of government and business records over which we have no control limits our ability to control our personal lives. Often we do not know that these records even exist and we are certainly unable to determine who has access to them.[11] [Emphasis added].

29.     Consistent with the language of Proposition 11, a number of studies examining the collection of consumers' personal data confirms that the surreptitious taking of personal, confidential, and private information from hundreds of thousands of individuals, as Apple has done here, violates expectations of privacy that have been established as general social norms.  Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.  Indeed, a recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing their data, and the same percentage believe

---

[11]     Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) at 27.

internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[12]  Similarly, a study published in the *Harvard Business Review* shows that consumers are largely unaware of how their personal information is used by businesses, with fewer than 20% of consumers realizing that they share their communication history, IP addresses, and web-surfing history when using a standard web browser.[13]  A recent article published by *USA Today* revealed that 93% of parents who use voice-activated devices say "it is important to know when their family's voices are being recorded [and an] equal number said it's important to control whatever information is collected about them."[14]  It also is simply common sense that voice-activated software like Siri should only become activated when a hot word is spoken or the device is manually triggered.

30.     The expectation of privacy is heightened in one's own home, which historically is a legally protected zone of privacy.  Indeed, the passage of California's Proposition 11 evidences that voters sought to definitively ensure that a right of privacy was recognized in one's own home.  It is undeniable that Siri Devices are used in the home, and some can **only** be used in the home.  As the name implies, HomePod speakers, necessarily, are located in the home.  And, market research indicates that one-quarter of smart speakers are located in the bedroom, where there is an even greater expectation of privacy.[15]

31.     However, **regardless** of where a Siri Device is used, Apple **itself** assures Plaintiffs and Class Members that Siri Devices will **only** listen to and record their private confidential

---

[12]     *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[13]     Timothy Morey, Theodore Forbath, and Allison Shoop, *Customer Data: Designing for Transparency and Trust*, HARVARD BUSINESS REVIEW (May 2015), https://hbr.org/2015/05/customer-data-designing-for-transparency-and-trust.

[14]     Edward C. Baig, *Hey, Apple and Alexa: Parents worry voice assistants can listen in on kids, survey finds*, USA TODAY (Mar. 28, 2019), https://www.usatoday.com/story/tech/talkingtech/2019/03/28/parents-dont-want-smart-speakers-to-secretly-record-kids-survey/3288806002/.

[15]     Dave Chaffey, *Consumer use of voice-controlled digital assistants / smart speakers*, SMART INSIGHTS (Jan. 15, 2018), https://www.smartinsights.com/digital-marketing-strategy/consumer-use-of-voice-controlled-digital-assistants-smart-speakers/.

communications and transmit the recordings thereof to Apple if users give consent by speaking a hot word or otherwise activating "active listening" mode.  Accordingly, in its official privacy policy specific to the Siri Devices, "Ask Siri, Dictation & Privacy ("Siri Privacy Policy"),"[16] Apple states that "Siri is designed to protect your information and enable you to choose what you share."[17]

32.     As to sharing personal information with third parties, Apple denies sharing any of users' personal information absent their explicit consent or authorization.  For example, prior to recently updating its privacy policy following the filing of this Complaint, Apple's Approach to Privacy webpage – which is expressly integrated into Apple's Privacy Policy[18] – stated that "***personal data should always be protected on [the Siri Device] and never shared without [users'] permission.***"[19] [Emphasis added].  Apple then gives guarantees of its commitment to protecting users' privacy, by stating in relevant part, "We're always up front about what we collect from you, and we give you the controls to adjust these settings."[20]  The Approach to Privacy webpage also states that "Apps can use Siri to respond to your requests or send audio to Apple to transcribe to text – ***but only if you give your permission first***."[21] [Emphasis added].

33.     These assurances confirm the reasonableness of Plaintiffs' and Class Members' expectation of privacy in the context of their homes and in the presence of Apple Devices ***in any location***.  Based on Apple's representations, Plaintiffs and Class Members did not expect that their private and confidential information would be intercepted, recorded, disclosed, or otherwise misused, including by being listened to by unauthorized third parties.  Despite Apple's assurances, Apple intercepted, recorded, disclosed, and otherwise misused intimate conversations, including,

---

[16]     APPLE, Ask Siri, Dictation & Privacy, https://support.apple.com/en-us/HT210657.

[17]     *Id.*

[18]     Siri Devices are subject to Apple's SLAs, which expressly adopt and incorporate Apple's Privacy Policy.  Apple assures users that their "information will be treated in accordance with Apple's Privacy Policy."

[19]     Apple,     Privacy,     This     is     how     we     protect     your     privacy, https://web.archive.org/web/20190801204312/https://www.apple.com/privacy/approach-to-privacy/ (archive dated August 1, 2019).

[20]     *Id.*

[21]     *Id.*

AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 4:19-cv-04577-JSW

*inter alia*, private discussions between doctors and patients, confidential business deals, and sexual encounters, for Apple's own business and commercial purposes.

### III.   Apple Intercepts, Records, Discloses, and Otherwise Misuses Individuals' Private and Confidential Communications Without Consent or Authorization

34.    On July 26, 2019, *The Guardian* reported that Apple has been recording individuals confidential and private conversations without their consent and has been storing and sending those recordings to humans for review: "[A] small portion of Siri recordings are passed on to contractors working for the company around the world [who] are tasked with grading the responses on a variety of factors, including whether the activation of the voice assistant was deliberate or accidental, whether the query was something Siri could be expected to help with and whether Siri's response was appropriate [.]"[22]

35.    According to a whistleblower contractor, Siri Devices can be accidentally woken up by a "sound of a zip," or, in case of an Apple Watch, by raising the watch to one's mouth and beginning to talk, in which case Siri is automatically activated.  The accidental triggers on Apple Watch are "incredibly high," making Apple Watch, along with the HomePod, the most frequent source of accidental recordings.[23]  Once activated, Siri records everything within range of the Siri Devices' microphone and sends it to Apple's servers.  Thus, far from requiring a "clear, unambiguous trigger," as Apple claimed in its response to Congress, Siri can be activated by nearly anything.

36.    Users' confidential conversations following these false triggers, as well as Siri's responses to them, include "countless instances of recordings featuring private discussions between doctors and patients, confidential business deals, sexual encounters, and so on."[24]  As reported by *The Guardian*, these recordings can be as long as 30 seconds and "are accompanied by user data showing location, contact details, and app data."[25]  As such, they contain significant levels of

---

[22]    *The Guardian* Article, *supra* n.1.

[23]    *Id.*

[24]    *Id.*

[25]    *Id.*

AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 4:19-cv-04577-JSW

identifying information from which the users' identity can be ascertained, in violation of users' privacy rights.

37.     Notwithstanding the severity of these violations, Apple does little to address and remedy the problem, including having no specific procedures in place to deal with sensitive recordings, other than reporting accidental triggers as a "technical problem."[26]  To make things worse, Apple does not vet the personnel who review and listen to the recordings, nor does it meaningfully restrict the scope of data that contractors have access to.[27]  What Apple does have in place, instead, are performance quotas to encourage its contractors to "get through work as fast as possible."[28]  This is because Apple is singularly focused on its own financial and commercial benefit, which is to sell as many Siri Devices as possible, and to generate significant profit, even when it is to the detriment of Plaintiffs and Class Members.

38.     Following the publication of *The Guardian* Article, Apple admitted that Apple reviews a portion of the audio recordings and their computer-generated transcripts to measure how well Siri was responding and to improve its reliability.[29]  In an official statement, published to its website on August 28, 2019, Apple acknowledged it failed to "fully liv[e] up to [its] high ideals."[30] In the context of the same announcements, Apple announced a temporary suspension of its human review program and the revisions to its policies, including adding an opt in feature for users who elect to participate in human review of their recorded interactions with Siri.[31]  Additionally, Apple committed to no longer retain audio recordings of Siri interactions.[32]

39.     As with the recordings Apple obtains with consent, Apple analyzes the recordings it obtains where no hot word has been uttered or button pushed to improve the functionality of Siri,

---

[26]    *Id.*

[27]    *Id.*

[28]    *Id.*

[29]    Apple, Newsroom, Improving Siri's privacy protections (Aug. 28, 2019), https://www.apple.com/newsroom/2019/08/improving-siris-privacy-protections/.

[30]    *Id.*

[31]    *Id.*

[32]    *Id.*

1   and thereby market and sell more Siri Devices.  By analyzing consumers' conversations without

2   their authorization or consent, Apple is profiting from its invasion of such consumers' privacy.

3       40.     Significantly, Siri makes no distinction between the voices of adults and children.

4   As a result, Apple is recording children's conversations, and disclosing the content of those

5   communications to third parties, whenever those children say a word that *remotely* sounds like a hot

6   word to the Siri Device.  This is especially troubling as children *cannot* consent to being recorded

7   by the Siri Device or to having their communications disclosed.

8       41.     Apple therefore engaged in several unlawful actions by capturing Plaintiffs' and

9   Class Members' communications without the utterance of a hot word or manual activation of the

10  Siri Device, and subsequently disclosing those communications without authorization.  As set forth

11  with specificity in the Claims for Relief, Apple:  (1) intentionally intercepted oral communications

12  without consent, and subsequently disclosed to third parties and used those communications in

13  violation of the Wiretap Act, 28 U.S.C. §2511(1)(a), (c), (d); (2) intentionally made unauthorized

14  connections with Plaintiffs' and Class Members' Siri Devices and transmitted to Apple's servers

15  recordings of Plaintiffs' and Class Members' communications and then knowingly divulged those

16  communications to third parties in violation of the SCA, 18 U.S.C. §2701(a) and §2702(a)(1); (3)

17  intentionally made unauthorized connections with Plaintiffs' and Class Members' Siri Devices and

18  willfully learned the contents of Plaintiffs' and Class Members' communications without consent

19  and used that information for its own business purposes in violation of CIPA, Cal. Penal Code

20  §631(a); (4) intentionally recorded Plaintiffs' and Class Members' confidential communications

21  without consent in violation of CIPA, Cal. Penal Code §632; (5) intentionally intruded into

22  Plaintiffs' and Class Members' private conversations in violation of their privacy rights under

23  California common law and the California Constitution; (6) breached material terms of its contract

24  with Plaintiffs and Class Members; and (7) engaged in unfair and unlawful acts in violation of the

25  UCL.

26      42.     Given the concealed and secretive nature of Apple's conduct, more evidence

27  supporting the allegations in this Complaint will be uncovered after a reasonable opportunity for

28  discovery.

**IV.     Apple's Unlawful Actions Have Harmed Plaintiffs**

43.     Plaintiffs here each either owned and/or interacted with a Siri Device during the Class Period and their conversations were intercepted, recorded, disclosed, or otherwise misused by Apple without their consent or authorization.  Each Plaintiff continues to own and/or interact with a Siri Device, and therefore, each remains as risk that their conversations continue to be intercepted, recorded, disclosed, or otherwise misused by Apple without their consent or authorization.

44.     Plaintiffs Lopez and A.L. own an iPhone XR and iPhone 6.  Plaintiffs Lopez and A.L. interacted with Siri on their iPhone XR and iPhone 6 devices repeatedly during the Class Period.  As described above, Apple and these Siri Devices intentionally accessed Plaintiffs' communications without authorization and unlawfully recorded Plaintiffs Lopez and A.L. without their consent on multiple occasions, including when they failed to utter a hot word.

45.     Plaintiff Henry owns an iPhone 7 Plus.  Plaintiff Henry interacted with Siri on his iPhone 7 Plus repeatedly during the Class Period.  As described above, Apple and this Siri Device intentionally accessed Plaintiff's communications without authorization and unlawfully recorded Plaintiff Henry without his consent on multiple occasions, including when he failed to utter a hot word.

46.     Plaintiff Harms owns an iPhone 7 and iPhone XR.  Plaintiff Harms interacted with Siri on his iPhone 7 and iPhone XR devices repeatedly during the Class Period.  As described above, Apple and these Siri Device intentionally accessed Plaintiff's communications without authorization and unlawfully recorded Plaintiff Harms without his consent on multiple occasions, including when he failed to utter a hot word.

47.     At no point did Plaintiffs authorize Apple to intercept, record, and otherwise misuse conversations that are not preceded by a hot word or in instances where the Siri Device was not manually activated.  Plaintiffs Lopez, A.L., Henry, and Harms, therefore, did not agree to having Apple intercept, record, disclose, or otherwise misuse their conversations through their respective Siri Devices.   Moreover, Apple could not have obtained consent from Plaintiff A.L., a minor without an Apple account, and who otherwise could not have provided valid consent as a minor. Plaintiffs would not have purchased, or would have paid less for their Siri Devices had they known

14

1    that Apple engaged in the unlawful actions described herein.

2        48.     Plaintiffs would like to continue to use Siri Devices in the future, but will be

3    uncertain as to whether Apple ceased its unlawful practices and violation of their privacy rights

4    without the equitable relief requested herein, specifically an injunction prohibiting Apple from

5    engaging in the unlawful practices alleged herein.   Indeed, although Apple has temporarily

6    suspended the human review program, and has afforded users the ability to opt in or out of the

7    review program, Apple has not agreed to terminate the human review program nor has Apple agreed

8    to cease intercepting or recording consumers' conversations.  Finally, Apple has not agreed to delete

9    all prior recorded and stored conversations.  Thus, an injunction is required to prohibit Apple from

10   engaging in such practices.

11                      **TOLLING OF THE STATUTE OF LIMITATIONS**

12       49.     The applicable statutes of limitations have been tolled by Apple's knowing and active

13   concealment and denial of the facts alleged herein, namely its practice of intercepting, recording,

14   disclosing, and misusing users' private and confidential communications.   Plaintiffs and Class

15   Members could not have reasonably discovered the truth about Apple's practices until shortly before

16   this class action litigation was commenced.

17       50.     As alleged in detail herein, Apple expressly and impliedly assured consumers that

18   Siri Devices will *only* listen to and record their voice with the consumers' consent, by uttering a hot

19   word, by manually pressing a button on the device to enable "active listening," and in the case of

20   Apple Watch, by raising the Apple Watch to one's mouth and beginning to talk, and that it will not

21   share personal information with third parties without consent.   Accordingly, Apple denies listening

22   to and recording users' conversations absent the utterance of a hot word, manual activation, or

23   otherwise triggering the "active listening" mode.  Apple policies likewise deny that audio recordings

24   from Siri Devices will be shared with third parties.

25       51.     Furthermore, Plaintiffs and Class Members also have a reasonable expectation of

26   privacy in oral and electronic communication regardless of Apple's express assurances.   This

27   expectation is particularly heightened where, as here, such communication occurs within one's

28   home, which is a zone of privacy uniformly recognized by state and federal privacy laws.

52.     Thus, based on Apple's representations and Plaintiffs' and Class Members' expectations of privacy, Plaintiffs and Class Members would not have been able to uncover the facts underlying their claims prior to the publication of *The Guardian* Article on July 26, 2019, which exposed Apple's practices of intercepting, recording, and sharing with unauthorized third parties, users' private and confidential information.  This is because all relevant facts were in the possession of Apple who actively concealed their existence.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All individual purchasers of a Siri Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Apple without their consent from at least as early as October 12, 2011 to the present (the "Class Period").  Within the Class is a Subclass of those who are or were minor children and were recorded by a Siri Device during the Class Period ("Minors Subclass").[33]

54.     Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

55.     **Ascertainability:** Membership of the Class is defined based on objective criteria, and individual members will be identifiable from Defendant's records, including the Apple accounts associated with each Siri Device.

56.     **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable.  The Class likely consists of thousands of individuals, if not millions of individuals, and their members can be identified

---

[33]     Plaintiffs have defined the Class based on currently available information and hereby reserve the right to amend the definition of the Class, including, without limitation, the Class Period.

1  through Defendant's records.

2      57.   **Predominant Common Questions:** The Class's claims present common questions

3  of law and fact, and those questions predominate over any questions that may affect individual Class

4  members.  Common questions for the Class include, but are not limited to, the following:

5              a.   Whether Siri Devices intercept or record individuals' conversations absent

6                   that user uttering a hot word or otherwise activating the device;

7              b.   Whether Siri Devices record the conversations of minors who interact with

8                   them;

9              c.   Whether individuals who use Siri Devices have a reasonable expectation of

10                  privacy under federal and California law;

11             d.   Whether Apple's practices of intercepting, accessing, listening to, recording,

12                  sharing, storing, and otherwise misusing users' private and confidential

13                  information and other personal information violated state and federal privacy

14                  laws;

15             e.   Whether Apple's practices of intercepting, accessing, listening to, recording,

16                  sharing, storing, and otherwise misusing users' private and confidential

17                  information and other personal information constitute a breach of the contract

18                  that exists with Plaintiffs and Class Members;

19             f.   Whether Plaintiffs and Class Members are entitled to declaratory and/or

20                  injunctive relief to enjoin the unlawful conduct alleged herein; and

21             g.   Whether Plaintiffs and Class Members have sustained damages as a result of

22                  Apple's conduct, and, if so, what is the appropriate measure of damages or

23                  restitution.

24     58.   **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the

25  proposed Class.  Plaintiffs and Class members suffered an invasion of privacy as a result of

26  Defendant's wrongful conduct that is uniform across the Class.

27     59.   **Adequate Representation:** Plaintiffs have and will continue to fairly and adequately

28  represent and protect the interests of the Class.  They have retained counsel competent and

experienced in complex litigation and class actions, including privacy violations.  Plaintiffs have no interest that is antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

60.    **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

61.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

62.    California's substantive laws apply to every member of the Class, regardless of where in the United States the Class Members reside.  Defendant's SLA states:

> **12. Controlling Law and Severability**. This License will be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law principles. This License shall not be governed by the United Nations Convention on Contracts for the International Sale of Goods, the application of which is expressly excluded.[34]

63.    By choosing California law for the resolution of disputes in the agreement, Apple concedes that it is appropriate for this Court to apply California law to the instant dispute.

64.    Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution.  California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating

---

[34]    *See* APPLE, Software License Agreements, *supra* n.7.

1   state interests that ensure that the choice of California state law is not arbitrary or unfair.

2   65.     Defendant's United States headquarters and principal place of business is located in

3   California.  Defendant also owns property and conducts substantial business in California, and

4   therefore California has an interest in regulating Defendant's conduct under its laws.  Defendant's

5   decision to reside in California and avail itself of California's laws, and to engage in the challenged

6   conduct from and emanating out of California, renders the application of California law to the claims

7   herein constitutionally permissible.

8   66.     California is also the state from which Defendant's alleged misconduct emanated.

9   This conduct similarly injured and affected Plaintiffs and all other Class members.

10  67.     The application of California laws to the Class is also appropriate under California's

11  choice of law rules because California has significant contacts to the claims of Plaintiffs and the

12  proposed Class, and California has a greater interest in applying its laws here than any other

13  interested state.

14  **CLAIMS FOR RELIEF**

15  **FIRST CLAIM FOR RELIEF**

16  **Violation of the Wiretap Act**
**Title 1 of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. §2510, *et seq*.)**
17  **(On Behalf of Plaintiffs and the Class)**

18  68.     Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with
19  the same force and effect as if fully restated herein.

20  69.     The Wiretap Act prohibits the intentional interception by any person of the content
21  of any wire, oral, or electronic communications without the consent of at least one authorized party
22  to the communication.

23  70.     "Oral communication" is defined as "any oral communication uttered by a person
24  exhibiting an expectation that such communication is not subject to interception under
25  circumstances justifying such expectation, but such term does not include any electronic
26  communication[.]"  18 U.S.C. §2510(2).

27

28

AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 4:19-cv-04577-JSW

71.     "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4).

72.     "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. §2510(8).

73.     "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. §2510(6).

74.     Plaintiffs and Class Members, as individuals, are persons as defined under §2510(6).

75.     Apple, as a corporation, is a person as defined under 18 U.S.C. §2510(6).

76.     Plaintiffs and Class Members owned or interacted with Siri through Siri Devices during the Class Period.

77.     Siri is a device for purposes of the Wiretap Act because it is a software program used to intercept oral communications.

78.     Plaintiffs' and Class Members' private and confidential verbal communications that were intercepted in real time by Siri when a hot word was not uttered or in instances when the Siri Device was not manually activated are "oral communications" within the meaning of 18 U.S.C. §2510(2).

79.     Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Siri is supposed to function and based on Apple's own assurances, that Apple was not intercepting, recording, disclosing, or using their oral communications unless they uttered a hot word or otherwise activated the Siri Device.  Siri was not an intended party to or recipient of Plaintiffs' and Class Members' private and confidential oral communications.

80.     Pursuant to 18 U.S.C. §2511(1)(a), Apple, through its design, authorship, programming, knowing and intentional installation, activation, and/or other involvement with Siri and Siri Devices, intentionally intercepted, intercepts, or endeavored to intercept, the content of oral

communications made by Plaintiffs and Class Members without obtaining actual consent from any authorized party to the oral communication.

81.    Interception of Plaintiffs' and Class Members' private and confidential oral communications without their consent occurs when the Siri Device switches to active listening mode without the utterance of a hot word or manual activation of the Siri Device.  This interception occurred during transmission, as Siri operates in real time to acquire the content of Plaintiffs' and Class Members' oral communications.  The contents of the oral communications intercepted are the verbatim utterances of Plaintiffs and Class Members.

82.    Plaintiffs and Class Members could not have provided consent to interception of their oral communications because such consent could only apply to instances when a hot word was uttered or the Siri Device was manually activated, and not otherwise.

83.    Additionally, Plaintiffs and Class Members who are minors never consented to being recorded or having their communications disclosed by Apple, nor did Apple even attempt to seek such consent.  The parents of Plaintiffs and Class Members who are minors likewise never consented to Apple recording or disclosing their children's interactions with Siri.

84.    Pursuant to 18 U.S.C. §2511(1)(c), Apple intentionally disclosed, discloses, or endeavored to disclose to third parties the contents of Plaintiffs' and Class Members' oral communications while knowing or having reason to know that the information was obtained through the interception of the oral communications in violation of 18 U.S.C. §2511(1)(a).

85.    After Apple intentionally intercepts the contents of Plaintiffs' and Class Members' oral communications without their consent, Siri records and transmits the intercepted communications over the internet to Apple's servers for analysis and storage.  Apple then intentionally discloses these recordings of the contents of Plaintiffs' and Class Members' intercepted communications or transcripts of these recordings to third parties in order to improve the functionality of Siri for Apple's own financial and commercial benefit, to develop a virtual assistant superior to Apple's competitors, and to generate substantial profit.

86.    Pursuant to 18 U.S.C. §2511(1)(d), Apple intentionally used, uses, or endeavors to use the contents of Plaintiffs' and Class Members' oral communications knowing or having reason

to know that the oral communication was obtained through interception in violation of 18 U.S.C. §2511(1)(a).

87.     Apple intentionally uses the contents of Plaintiffs' and Class Members' intercepted communications to improve the functionality of Siri for Apple's own financial and commercial benefit, to develop a virtual assistant superior to Apple's competitors, and to generate substantial profit.

88.     The practices complained of in this Count fall outside of the scope of Apple's ordinary course of business because they violate Apple's own policies and are in contradiction to the generally understood manner in which voice recognition software like Siri is supposed to function.

89.     Apple's actions were at all relevant times knowing, willful, and intentional as evidenced by Apple's admission that a portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Siri for Apple's own financial and commercial benefit, to develop a virtual assistant superior to Apple's competitors, and to generate substantial profit.

90.     Apple intercepted, disclosed, and used the contents of Plaintiffs' and Class Members' oral communications in reckless disregard for Plaintiffs' and Class Members' privacy rights and for its own financial benefit to profit from the improved functionality of Siri and to generate substantial profit.

91.     As a result, Plaintiffs and Class Members have suffered harm and injury due to the interception, disclosure, and/or use of private and personal, confidential, and sensitive communications.

92.     Pursuant to 18 U.S.C. §2520, Plaintiffs and Class Members have been damaged by the interception, disclosure, and/or use of their communications in violation of the Wiretap Act and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and the Class and any profits made by Apple as a result of the violation or (b) statutory damages of

whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

## SECOND CLAIM FOR RELIEF

**Violation of the SCA**
**Title II of the ECPA (18 U.S.C. §2701, *et seq.*)**
**(On Behalf of Plaintiffs and the Class)**

93.     Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

94.     Although Plaintiffs believe that they have independent claims under both the Wiretap Act and the SCA, in the event that the Court determines any of the allegations are contradictory, Plaintiffs plead in the alternative.

95.     The SCA prohibits a person from intentionally accessing without authorization, or exceeding authorization to access, a facility through which an "electronic communication service" is provided, and thereby obtains an "electronic communication" while it is in "electronic storage." 18 U.S.C. §2701(a).

96.     The SCA provides that a person "providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service[.]" 18 U.S.C. §2702(a)(1).

97.     "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]" 18 U.S.C. §2510(12).

98.     "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]" 18 U.S.C. §2510(17)(A)-(B).

99.     "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications[.]"   18 U.S.C. §2510(15).

100.     "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. §2510(6).

101.     Plaintiffs and Class Members, as individuals, are persons as defined under 18 U.S.C. §2510(6).

102.     Apple, as a corporation, is a person as defined under 18 U.S.C. §2510(6).

103.     Plaintiffs and Class Members owned or interacted with Siri through Siri Devices during the Class Period.

104.     Siri is a service that provides Plaintiffs and Class Members the ability to send and receive electronic communications to and from Apple's servers over the internet and thus, is an "electronic communication service" within the meaning of the SCA.  Apple provides an electronic communication service "to the public" because the Siri is a software program that anyone within a certain proximity to a Siri Device can use and because Siri Devices are available for purchase and use by anyone.

105.     Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Siri is supposed to function and based on Apple's own assurances, that Apple was not accessing, recording, or disclosing their communications unless they uttered a hot word or manually activated the Siri Device.  Apple was not an intended party to or recipient of Plaintiffs' and Class Members' private and confidential communications.

106.     Apple made unauthorized connections with Plaintiffs' and Class Members' Siri Devices and transmitted to Apple's servers recordings of communications not preceded by the utterance of a hot word or where the Siri Device was not otherwise activated.

107.     Siri is required for the transmission of an electronic communication to Apple and is the facility through which Apple provides an electronic communication service (receiving and responding to Plaintiffs' and Class Members' queries).

108.     Once Siri switches into active listening mode, it records "sounds, data, or intelligence" that is then transmitted over the internet to Apple's servers, which are located all over

AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 4:19-cv-04577-JSW

the world, for analysis and storage.  Thus, Plaintiffs' and Class Members' interactions with Siri constitute "electronic communications" for purposes of 18 U.S.C. §2701(a).

109.   Siri listens for hot words by recording and analyzing short snippets of audio, which is stored locally in the Siri Device.  Audio stored in a Siri Device is continuously overwritten until a hot word is detected or the device is manually activated.  Pursuant to 18 U.S.C. §2701(a)(1), Apple accesses this temporary, intermediate storage without authorization when Siri sends the electronic communication to its servers without a hot word being uttered or without the Siri Device being manually activated.

110.   Plaintiffs and Class Members could not have provided consent or authorization to Apple to access their electronic communications because such consent or authorization could only apply to instances when a hot word was uttered or the Siri Device was manually activated, and not otherwise.

111.   Additionally, Plaintiffs and Class Members who are minors never consented to being recorded or having their communications disclosed by Apple, nor did Apple even attempt to seek such consent.  The parents of Plaintiffs and Class Members who are minors likewise never consented to Apple recording or disclosing their children's interactions with Siri.

112.   Apple intentionally accessed without authorization Plaintiffs' and Class Members' Siri Devices and obtained Plaintiffs' and Class Members' electronic communications in reckless disregard for Plaintiffs' and Class Members' privacy rights and for its own financial benefit to profit from the improved functionality of Siri and to generate substantial profit.

113.   Apple's servers also store Plaintiffs' and Class Members' recorded audio for purposes of back-up.  According to Apple, Plaintiffs and Class Members can access this back-up audio to view it or delete it.

114.   Pursuant to 18 U.S.C. §2702(a)(1), Apple knowingly divulged the contents of Plaintiffs' and Class Members' communications while they were in electronic storage when it transmitted the recorded audio and/or transcripts to third parties for analysis or other purposes, including improving the functionality of Siri for Apple's own financial benefit and to generate substantial profit.

115.    Apple knowingly divulged Plaintiffs' and Class Members' communications in reckless disregard for Plaintiffs' and Class Members' privacy rights and for its financial and commercial benefit, to profit from the improved functionality of Siri and to generate substantial profit.

116.    Apple's actions were at all relevant times knowing, willful, and intentional as evidenced by Apple's admission that a portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Siri for Apple's own financial benefit, to generate substantial profit.

117.    As a result of Apple's violations of the SCA, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights, due to the unauthorized access and disclosure of private and personal, confidential, and sensitive communications.

118.    Pursuant to 18 U.S.C. §2707, Plaintiffs and Class Members are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the sum of the actual damages suffered by Plaintiffs and the Class and any profits made by Apple as a result of the violation, but in no case less than the minimum statutory damages of $1,000 per person; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

### THIRD CLAIM FOR RELIEF

**Violation of the CIPA**
**Cal. Penal Code §631(a)**
**(On Behalf of Plaintiffs and the Class)**

119.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

120.    Cal. Penal Code §630 provides that "[t]he Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

121.   Cal. Penal Code §631(a) prohibits the use of "any machine, instrument, or contrivance, or . . . any other manner" to "intentionally tap[], or make[] unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument" *or* to "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state."

122.   Cal. Penal Code §631(a) further prohibits the "use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."

123.   Pursuant to Cal. Penal Code §7, Apple, as a corporation, is a "person."

124.   Plaintiffs and Class Members owned or interacted with Siri through Siri Devices during the Class Period.

125.   Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Siri is supposed to function and based on Apple's own assurances, that Apple was not accessing, recording, or learning the contents of their communications unless they uttered a hot word or manually activated the Siri Device.  Apple was not an intended party to or recipient of Plaintiffs' and Class Members' confidential communications.  Apple's actions would be highly offensive to a reasonable person.

126.   Apple made unauthorized connections with Plaintiffs' and Class Members' Siri and Siri Devices and transmitted to Apple's servers Plaintiffs' and Class Members' communications not preceded by the utterance of a hot word or where the Siri Device was not manually activated.

127.   Apple, and those who aided or were employed by Apple, willfully and without the consent of all parties read, attempted to read, or learned the content of, Plaintiffs' and Class Members' communications without the consent of all parties to the communication while the same was in transit or being sent from or received at any place within the state.  Apple recorded and transmitted to Apple, Plaintiffs' and Class Members' communications not preceded by the utterance of a hot word or where the Siri Device was not manually activated and then transferred those communications to third parties for analysis for the purpose of reading or learning the content of

Plaintiffs' and Class Members' communications to improve the functionality of Siri, and to generate significant profit.

128.    After Apple obtained Plaintiffs' and Class Members' communications by unauthorized means in violation of CIPA, Apple used the contents of those communications by transferring them to third parties in order to improve the functionality of Siri and to generate significant profit.

129.    Plaintiffs and Class Members could not have provided consent or authorization because such consent or authorization could only apply to instances when a hot word was uttered or the Siri Device was manually activated, and not otherwise.

130.    Additionally, Plaintiffs and Class Members who are minors never consented to being recorded by Apple, nor did Apple even attempt to seek such consent.  The parents of Plaintiffs and Class Members who are minors likewise never consented to Apple recording their children's interactions with Siri.

131.    Each of the actions taken by Apple and complained of herein extends beyond the normal occurrences, requirements, and expectations regarding the facilitation and transmission of queries via Siri and Siri Devices.

132.    Apple's acts in violation of CIPA occurred in the State of California because those acts resulted from business decisions, practices, and operating policies that Apple developed, implemented, and utilized in the State of California.  Apple developed, designed, built, and physically placed in California Siri used by Apple via Siri Devices that violate CIPA.

133.    Apple has publicly acknowledged that such unauthorized actions occurred during the Class Period.

134.    Apple's acts and practices complained of herein, engaged in for purposes of acquiring and using the content of Plaintiffs' and Class Members' communications to improve the functionality of Siri for Apple's own financial benefit and to generate significant profits, violated and violate Cal. Penal Code §631.

135.    Apple's actions were at all relevant times knowing, willful, and intentional as evidenced by Apple's admission that the recordings it shares with its contractors are intended to

1   determine whether the user intended to activate Siri's listening mode, and thereby were made

2   without use of a hot word, and its use of the information to, among other things, improve the

3   functionality of Siri for Apple's own financial benefit, to generate significant profits.  Apple's

4   actions were done in reckless disregard for Plaintiffs' and Class Members' privacy rights.

5       136.   As a result of Apple's violations of CIPA, Plaintiffs and Class Members have

6   suffered harm and injury, including but not limited to the invasion of their privacy rights.

7       137.   Apple is able, and the Court should require it, to destroy the recordings of Plaintiffs'

8   and the Class Members' interactions with Siri Devices, and to implement functionality sufficient to

9   prevent unauthorized recordings in the future.

10      138.   Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining

11  Apple from engaging in the unlawful conduct alleged in this claim and requiring Apple to delete all

12  recordings of Class Members, to cease further recording, and to implement functionality sufficient

13  to prevent unauthorized recordings in the future, and other appropriate equitable relief, including

14  but not limited to improving its privacy disclosures and obtaining adequately informed consent; (2)

15  damages of $5,000 per violation under Cal. Penal Code §637.2; and (3) costs and reasonable

16  attorneys' fees under Cal. Civ. Proc. Code §1021.5.

17                          **FOURTH CLAIM FOR RELIEF**

18                              **Violation of the CIPA**
                               **Cal. Penal Code §632**
19                        **(On Behalf of Plaintiffs and the Class)**

20      139.   Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with

21  the same force and effect as if fully restated herein.

22      140.    Cal. Penal Code §632 prohibits eavesdropping upon or recording of any confidential

23  communication, including those occurring among the parties in the presence of one another or by

24  means of a telephone, telegraph or other device, through the use of an electronic amplifying or

25  recording device without the consent of all parties to the communication.

26      141.   Pursuant to Cal. Penal Code §7 and §632(b), Apple, as a corporation, is a "person."

27      142.   Plaintiffs and Class Members owned or interacted with Siri through Siri Devices

28  during the Class Period.

143.   Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Siri is supposed to function and based on Apple's own assurances, that Apple was not recording them unless they uttered a hot word or manually activated the Siri Device.  Apple was not an intended party to or recipient of Plaintiffs' and Class Members' confidential communications.  Apple's actions would be highly offensive to a reasonable person.

144.   Siri and Siri Devices created recordings that were transmitted to Apple of Plaintiffs' and Class Members' confidential communications not preceded by the utterance of a hot word or where the Siri Device was not manually activated during the Class Period.  These recordings were made without Plaintiffs' consent.

145.   Plaintiffs and Class Members could not have provided consent or authorization because such consent or authorization could only apply to instances when a hot word was uttered or the Siri Device was manually activated, and not otherwise.

146.   Additionally, Plaintiffs and the Class Members who are minors never consented to being recorded by Apple, nor did Apple even attempt to seek such consent.  The parents of Plaintiffs and Class Members who are minors likewise never consented to Apple recording their children's interactions with such Siri Devices.

147.   Apple has publicly acknowledged that such unauthorized recording occurred during the Class Period.

148.   By recording Plaintiffs and Class Members without consent when a hot word was not uttered or the Siri Device was not manually activated, Apple "intentionally and without the consent of all parties to a confidential communication" used an "electronic amplifying or recording device to . . . record the confidential communication" in violation of California law.  Cal. Penal Code §632.

149.   Apple engaged in the acts and practices complained of herein for purposes of acquiring and using the content of Plaintiffs' and Class Members' communications to improve the functionality of Siri for Apple's own financial benefit, to generate significant profits.

150.   Apple's actions were at all relevant times knowing, willful, and intentional as evidenced by Apple's admission that a significant portion of the recordings it shares with its

contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Siri for Apple's own financial benefit, to target personalized advertising to users, and to generate significant profits.  Apple's actions were done in reckless disregard for Plaintiffs' and Class Members' privacy rights.

151.    As a result of Apple's violations of CIPA, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

152.    Apple is able, and the Court should require it, to destroy the unauthorized recordings of Plaintiffs' and the Class Members' interactions with Siri Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

153.    Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining Apple from engaging in the unlawful conduct alleged in this claim and requiring Apple to delete all recordings of Class Members, to cease further recording, and to implement functionality sufficient to prevent unauthorized recordings in the future, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent; (2) damages of $5,000 per violation under Cal. Penal Code §637.2; and (3) costs and reasonable attorneys' fees under Cal. Civ. Proc. Code §1021.5.

**FIFTH CLAIM FOR RELIEF**

**Intrusion Upon Seclusion**
**(on Behalf of Plaintiffs and the Class)**

154.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

155.    Plaintiffs asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

156.    Apple's business practice of intercepting, recording, transmitting, and disclosing Plaintiffs' and Class Members' communications on the Siri Devices without their consent constituted an intentional intrusion upon the Plaintiffs' and Class Members' solitude or seclusion in

31

that Apple effectively placed itself in the middle of a conversation to which it was not invited, welcomed, or authorized.

157.   Plaintiffs and Class Members did not consent to, authorize, or know about Apple's intrusion at the time it occurred.  Plaintiffs and Class Members never agreed that Siri would record their conversations without the utterance of a hot word or it being manually activated, whether it be via consent provided through Plaintiffs' and Class Members' Apple accounts, internet service providers, or web-browsers, and never agreed that Apple would disclose those recorded conversations to third parties.  None of the Subclass Members consisting of minor children gave consent or authorization to Apple to intrude upon, record, transmit, or disclose their conversations and/or interactions with the Siri Devices.

158.   Apple's intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion without consent would be highly offensive to a reasonable person.  Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Siri is supposed to function and based on Apple's own assurances, that Apple was not listening to, recording, disclosing, or misusing their oral communications unless they uttered a hot word or manually activated the Siri Device.

159.   Apple's intentional intrusion into Plaintiffs' and Class Members' private conversations was highly offensive to a reasonable person in that it violated federal and state criminal and civil laws designed to protect individual privacy.

160.   The surreptitious taking and disclosure of personal, confidential, and private information from hundreds of thousands of individuals was highly offensive because it violated expectations of privacy that have been established by general social norms.  Privacy polls and studies consistently show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is harvested or shared.

161.   Apple intentionally engages in the misconduct alleged herein to improve the functionality of Siri for Apple's own financial benefit, to develop a virtual assistant superior to Apple's competitors, and to generate substantial profit.

162.    As a result of Apple's actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

163.    Unwanted access to data by electronic or other covert means, in violation of the law or social norms is actionable under California law.

164.    Plaintiffs and Class Members have been damaged as a direct and proximate result of Apple's invasion of their privacy and are entitled to just compensation.

165.    Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as well as disgorgement of profits made by Apple as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

## SIXTH CLAIM FOR RELIEF

### Invasion of Privacy
### Art. I, Sec. 1 of the California Constitution
### (On Behalf of Plaintiffs and the Class)

166.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

167.    Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  Art. I., Sec. 1, Cal. Const.

168.    To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

169.    The right to privacy in California's constitution creates a right of action against private and government entities.

170.    Apple has intruded upon Plaintiffs' and Class Members' legally protected privacy interests, including, *inter alia*: (i) interests in precluding the dissemination or misuse of sensitive and confidential information ("informational privacy"); (ii) interests in making intimate personal

33

decisions or conducting personal activities without observation, intrusion, or interference ("autonomy privacy"); (iii) the Wiretap Act as alleged herein; (iv) the SCA as alleged herein; (v) CIPA; and (vi) the Apple SLA and Privacy Policy and other public assurances that Apple does not intercept, record, disclose, and/or use people's conversations without their consent and/or without Plaintiffs' and Class Members' speaking the hot words that switch Siri Devices into active listening mode.

171.   The confidential and sensitive information, which Apple intercepted, recorded, transmitted, and disclosed without Plaintiffs' and Class Members' authorization and/or consent included, *inter alia*, Plaintiffs' and Class Members' private discussions with their doctors, business deals, and sexual encounters.  Plaintiffs and Class Members had a legally protected informational privacy interest in the confidential and sensitive information as well as an autonomy privacy interest in conducting their personal activities without observation, intrusion, or interference.

172.   Plaintiffs and Class Members had a reasonable expectation of privacy in the circumstances in that:  (i) Defendant's invasion of privacy occurred during private and confidential conversations that Plaintiffs and Class Members had to the exclusion of everyone else; (ii) Plaintiffs and Class Members did not consent or otherwise authorize Apple to intercept, record, disclose, or use their private information; (iii) Plaintiffs and Class Members could not reasonably expect Apple would commit acts in violation of federal and state civil and criminal laws protecting privacy; (iv) Apple affirmatively assured Plaintiffs and Class Members it would not listen to, record, disclose, and/or use their private communications without their consent or authorization by speaking a hot word or manually activating the Siri Device into active listening mode.

173.   Apple's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that:  (i) the invasion occurred within a zone of privacy protected by the California Constitution, namely the collection and stockpiling of unnecessary information by businesses without consent, and the misuse of information gathered for one purpose in order to serve other purposes; (ii) the invasion deprived Plaintiffs and Class Members of the ability to control circulation of personal information, which is considered fundamental to the right to privacy; and

(iii) the invasion violated several federal and state criminal laws, including, *inter alia*, the Wiretap Act, the SCA, and CIPA.

174.    Apple's invasion violated the privacy rights of **at least** hundreds of thousands of Class Members, including Plaintiffs, without their authorization or consent.  Committing criminal acts against **at least** hundreds of thousands of Class Members, including Plaintiffs, constituted an egregious breach of social norms.

175.    The surreptitious and unauthorized interception, recording, disclosure, and misuse of hundreds of thousands of Class Members', including Plaintiffs', personal confidential information constituted an egregious breach of social norms.

176.    Apple lacked any compelling or legitimate business interest in listening to, recording, disclosing, and misusing the personal private and confidential information of **at least** hundreds of thousands of Class Members, including Plaintiffs, who did not consent or authorize Apple's behavior.

177.    Apple intentionally engages in the misconduct alleged herein to improve the functionality of Siri for Apple's own financial benefit, to generate substantial profit.

178.    As a result of Apple's actions, Plaintiffs and Class Members have been damaged as a direct and proximate result of Apple's invasion of their privacy and are entitled to just compensation.

179.    Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as well as disgorgement of profits made by Apple as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

## **SEVENTH CLAIM FOR RELIEF**

### **Breach of Contract**
### **(On Behalf of Plaintiffs and the Class)**

180.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

181.    Plaintiffs purchased one or more Siri Devices.

35

182.    Plaintiffs entered into a contract with Apple by purchasing the Siri Devices, which are subject to Apple's SLAs.  Plaintiffs have fully complied with their obligations under the SLA with regard to their use of Apple's services.

183.    The SLA expressly adopts and incorporates Apple's Privacy Policies, which are thus part of the contract between the parties.  The SLA incorporates Apple's representations regarding Siri stating that:

> Certain features like Analytics, Location Services, Siri and Dictation may require information from your iOS Device to provide their respective functions.  When you turn on or use these features, details will be provided regarding what information is sent to Apple and how the information may be used.

The SLA also promises that: "At all times your information will be treated in accordance with Apple's Privacy Policy.[35]

184.    The Privacy Policy allows Apple to collect certain personal information from its customers, but only upon request by Apple and consent of the customers.  The Privacy Policy provides that "You may be asked to provide your personal information anytime you are in contact with Apple or an Apple affiliated company… You are not required to provide the personal information that we have requested…"[36]

185.    As with the SLA, the Privacy Policy expressly integrates Apple's other privacy related representations as follows:

> In addition to this Privacy Policy, we provide data and privacy information imbedded in our products connected with our Data & Privacy Icon for certain features that ask to use your personal information.[37]

186.    Apple's Approach to Privacy policy is one such document.  That policy provides that "Your personal data should always be protected on your device and never shared without your permission."[38]  The Approach to Privacy policy further provides that "Sometimes we use your data

---

[35]    Apple, Privacy, Privacy Policy, *supra* n.8.

[36]    *Id.*

[37]    *Id.*

[38]    APPLE, Privacy, This is how we protect your privacy, *supra* n.19.

to provide you with a more personalized experience. We're always up front about what we collect from you, and we give you the controls to adjust these settings."[39]   The Approach to Privacy policy also states that "Apps can use Siri to respond to your requests or send audio to Apple to transcribe to text – but only if you give your permission first."[40]

187.   Apple provides a privacy policy specific to the Siri Devices, "Ask Siri, Dictation & Privacy." The Siri Privacy Policy states that "Siri is designed to protect your information and enable you to choose what you share."[41]   It further provides that "When you make requests, Siri sends certain data about you to Apple to help respond to your requests."[42]

188.   As set forth above, one underlying premise of Apple's privacy policies is that customers' data will not be shared with third parties without such customers' express consent. Under the Siri Privacy Policy, recordings of users' interactions with Siri Devices may only be shared with Apple when the user makes an explicit request of Siri, *i.e.*, uses the hot word "Siri." In violation of the SLA and Privacy Policies, Siri Devices experience "false accepts," where the device automatically begins recording conversations despite the user not using a hot word. As a result, Siri Devices record users' private conversations, including Plaintiffs' private conversations. Worse, Apple shared these recordings with third parties such as subcontractors.

189.   At no point did Plaintiffs consent to these unlawful recordings. Nor did Apple inform Plaintiffs that it was sharing their sensitive personal information with third parties.

190.   By recording and disclosing to third parties Plaintiffs' private conversations without their consent, Apple has breached material terms of the SLA and Privacy Policies incorporated thereunder.

191.   As a result of Apple's breach of the SLA and Privacy Policy, Plaintiffs' have suffered damages. Specifically, the services Plaintiffs received in exchange for the purchase price of Siri Devices were worth less than the services they agreed to accept because Plaintiffs' information was

---

[39]   *Id*.

[40]   *Id*.

[41]   Apple, Ask Siri, Dictation & Privacy, *supra* n.16.

[42]   *Id*.

1   recorded without their consent and divulged to third parties.  Plaintiffs would not have purchased,

2   or would not have paid as high a price, for the Siri Devices if they had known that Apple would

3   breach the SLA and Privacy Policy by intercepting, recording, disclosing, and misusing Plaintiffs

4   private conversations.

**EIGHTH CLAIM FOR RELIEF**

**Violation of the California Unfair Competition Law
Cal. Business & Professions Code §17200, *et seq.*
(On Behalf of Plaintiffs and the Class)**

8   192.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with

9   the same force and effect as if fully restated herein.

10   193.    Apple engaged in business acts and practices deemed "unlawful" under the UCL,

11   because, as alleged above, Apple unlawfully intercepted, recorded, disclosed, and otherwise

12   misused Plaintiffs' and Class Members' interactions without consent in violation of the Wiretap

13   Act, SCA, California common law, California Constitution, CIPA, and Cal. Penal Code §§631 and

14   632.  In addition, Apple's breach of its privacy policy alleged above constitutes a violation of Cal.

15   Bus. & Prof. Code §22576.

16   194.    Apple also engaged in business acts and practices deemed "unlawful" under the

17   UCL, because, Apple unlawfully intercepted, recorded, disclosed, and otherwise misused Plaintiff

18   A.L.'s and minor Class Members' interactions without consent, which violates public policy as

19   declared by specific statutory provisions, including Cal. Fam. Code §6701 and §6710, which

20   prohibit Defendant from obtaining consent by minors.

21   195.    Specifically, Cal. Fam. Code §6701 states that: "A minor cannot do any of the

22   following: (a) Give a delegation of power . . . ."  Cal. Fam. Code §6710 states that: "Except as

23   otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority

24   or within a reasonable time afterwards or, in case of the minor's death within that period, by the

25   minor's heirs or personal representative."

26   196.    Apple did not obtain the minor Plaintiff A.L.'s consent to intercept, record, disclose,

27   or use their confidential communications.  Apple could not obtain consent to intercept, record,

28   disclose or use the minor Plaintiff A.L.'s confidential communications.  To the extent that Apple

1  attempts to claim that it obtained the minor Plaintiff A.L.'s consent, pursuant to Cal. Fam. Code

2  §6710, Plaintiff A.L. disaffirms such consent.

3  197.    Apple also engaged in business acts or practices deemed "unfair" under the UCL

4  because, as alleged above, Apple failed to disclose during the Class Period that these Siri Devices

5  were intercepting, recording, disclosing and otherwise misusing Plaintiffs' and Class Members'

6  speech without their consent.  Unfair acts under the UCL have been interpreted using three different

7  tests: (1) whether the public policy which is a predicate to a consumer unfair competition action

8  under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory

9  provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business

10 practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is

11 substantial, not outweighed by any countervailing benefits to consumers or competition, and is an

12 injury that consumers themselves could not reasonably have avoided.  Defendant's conduct is unfair

13 under each of these tests.  Apple's conduct alleged is unfair under all of these tests.

14 198.    As described above, Apple's conduct violates the policies of the statutes referenced

15 above.  The gravity of the harm of Apple's secret intercepting, recording, disclosure, and other

16 misuse of Plaintiffs' and Class Members' communications, including those by minors, is significant

17 and there is no corresponding benefit to consumers of such conduct.  Finally, because Plaintiffs and

18 Class Members were completely unaware of Apple's secret recordings and disclosure, they could

19 not have possibly avoided the harm.

20 199.    Had Plaintiffs known that their communications would be intercepted, recorded,

21 disclosed, and misused, they would not have purchased a Siri Device, or would have paid less for

22 them.    Plaintiffs and Class Members have a property interest in any recordings of their

23 communications.   By surreptitiously intercepting, recording, disclosing, or otherwise misusing

24 Plaintiffs' and Class Members' communications, Apple has taken property from Plaintiffs and Class

25 Members without providing just or any compensation.

26 200.    Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining

27 Apple from engaging in the unlawful conduct alleged in this claim and requiring Apple to delete all

28 recordings of Class Members, to cease further recording, to implement functionality sufficient to

1  prevent unauthorized recordings in the future, to cease disclosing communications of the Class to

2  third parties without prior consent, and other appropriate equitable relief, including but not limited

3  to improving its privacy disclosures and obtaining adequately informed consent; and (2) restitution

4  of Plaintiffs' and Class Members' money and property lost as a result of Apple's acts in violation

5  of the UCL.

**<u>NINTH CLAIM FOR RELIEF</u>**

**Request for Relief under the Declaratory Judgment Act**
**28 U.S.C. §2201, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

9        201.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with

10  the same force and effect as if fully restated herein.

11        202.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, this Court is

12  authorized to enter a judgment declaring the rights and legal relations of the parties and grant further

13  necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are

14  tortious and that violate the terms of the federal and state statutes described in this complaint.

15        203.    An actual controversy has arisen in the wake of Defendant's intercepting, recording,

16  disclosure, and misuse of Plaintiffs' and Class members' communications without their consent as

17  alleged herein in violation of Defendant's common law and statutory duties.

18        204.    Plaintiffs continue to suffer injury and damages as described herein as Defendant

19  continues to record Plaintiffs' and Class members' communications, including communications by

20  minors whose consent to record Defendant cannot obtain. Moreover, although Apple has

21  temporarily suspended the human review program, Apple has not agreed to terminate the program

22  nor has Apple agreed to cease intercepting or recording consumers' conversations.

23        205.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter

24  a judgment declaring, among other things, the following:

25              a.    Defendant continues to owe a legal duty to not intercept, record, disclose, and

26                    otherwise misuse Plaintiffs' and Class Members' confidential

27                    communications under, *inter alia*, the common law, the Wiretap Act, the

28                    SCA, CIPA, Cal. Penal Code §§631 and 632, Cal. Bus. & Prof. Code §22576,

1                and Cal. Fam. Code §6710;

2        b.     Defendant continues to be in breach of its contract with Plaintiffs and

3              members of the Class and Subclass;

4        c.     Defendant continues to breach its legal duties and be in breach of its contract

5              with Plaintiff and Class Members by continuing to intercept, record, disclose

6              and misuse Plaintiffs' and Class Members' confidential communications; and

7        d.     Defendant's ongoing breaches of its legal duty and breach of contract

8              continue to cause Plaintiffs and the Class Members harm.

9     206.    The Court should also issue corresponding injunctive relief, including but not limited

10 to enjoining Apple from engaging in the unlawful conduct alleged in this claim and requiring Apple

11 to delete all recordings of Plaintiffs and Class Members, to cease further recording, and to implement

12 functionality sufficient to prevent unauthorized recordings in the future, and other appropriate

13 equitable relief, including but not limited to improving its privacy disclosures and obtaining

14 adequately informed consent.

15     207.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable

16 injury and lack an adequate legal remedy in the event of Defendant's ongoing conduct

17     208.    Federal and state laws prohibit, among other things, interception, recording,

18 disclosure, and other misuse of confidential communications without the consent, particularly those

19 that take place in the sanctity of one's own home – a historically protected zone of privacy.

20 California specifically recognizes privacy as a fundamental right.  Given that Apple admits that it

21 continues to intercept, record, disclose, and misuse confidential communications, including those of

22 minors, the risk of continued violations of federal and California law is real, immediate, and

23 substantial.  Plaintiffs do not have an adequate remedy at law because many of the resulting injuries

24 are reoccurring and Plaintiffs will be forced to bring multiple lawsuits to rectify the same conduct.

25     209.    The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the

26 hardship to Defendant if an injunction is issued.  On the other hand, the cost to Defendant of

27 complying with an injunction by complying with federal and California law and by ceasing to

28 engage in the misconduct alleged herein is relatively minimal, and Defendant has a pre-existing

1  legal obligation to avoid invading the privacy rights of consumers.

2       210.    Issuance of the requested injunction will serve the public interest by preventing

3  ongoing interception, recording, disclosure, and misuse of confidential communications without

4  consent, and intercepting, recording, disclosure, and misuse of confidential communications of

5  minors, thus eliminating the injuries that would result to Plaintiffs, the Class, and the Subclass, and

6  the potentially hundreds of thousands of consumers who purchased Siri Devices.

7  **PRAYER FOR RELIEF**

8       WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class respectfully

9  request that the Court enter an order:

10       A.    Certifying this case as a class action on behalf of the Class and Subclass defined

11  above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as class

12  counsel;

13       B.    Declaring that Apple's actions, as set out above, violate the Wiretap Act cited herein;

14       C.    Declaring that Apple's actions, as set out above, violate the SCA cited herein;

15       D.    Declaring that Apple's actions, as set out above, violate California's privacy laws

16  cited herein;

17       E.    Declaring that Apple's actions, as set out above, constitute breach of contract;

18       F.    Declaring that Apple's actions, as set out above, violate California's Bus. & Prof.

19  Code cited herein;

20       G.    Requiring Apple to delete all recordings of the members of the Class and the

21  Subclass, cease further recording, and implement functionality to prevent further recording of the

22  Class and the Subclass without prior consent, and to cease disclosing communications of the Class

23  and the Subclass to third parties without prior consent;

24       H.    Requiring Apple to undertake measures to cure the harm caused to the Class and

25  Subclass by its wrongdoing, as alleged herein, including, but not limited to, improving its privacy

26  disclosures and obtaining adequately informed consent;

27       I.    Awarding damages, including nominal and statutory damages, and restitution where

28  applicable, to Plaintiffs and the Class and Subclass in the amount to be determined at trial;

J.      Awarding Plaintiffs and the Class and Subclass their costs of suit, including reasonable attorneys' and experts' fees and expenses;

K.      Awarding Plaintiffs and the Class and Subclass pre-and post-judgment interest, to the extent allowable;

L.      Enjoining Apple from further engaging in the unlawful conduct alleged herein;

M.      Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Class and Subclass; and

N.      Awarding such other and further relief as the Court deems reasonable and just.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  November 7, 2019                    **LEXINGTON LAW GROUP**

                                            */s/ Mark N. Todzo*
                                            Mark N. Todzo (Bar No. 168389)
                                            Eric S. Somers (Bar No. 139050)
                                            503 Divisadero Street
                                            San Francisco, CA  94117
                                            Telephone: (415) 913-7800
                                            Facsimile: (415) 759-4112
                                            mtodzo@lexlawgroup.com

                                            Vincent Briganti (*pro hac vice*)
                                            Christian Levis (*pro hac vice*)
                                            Andrea Farah (*pro hac vice*)
                                            **LOWEY DANNENBERG, P.C.**
                                            44 South Broadway, Suite 1100
                                            White Plains, NY 10601
                                            Telephone: (914) 997-0500
                                            Facsimile: (914) 997-0035
                                            vbriganti@lowey.com
                                            clevis@lowey.com
                                            afarah@lowey.com

                                            Joseph P. Guglielmo (*pro hac vice*)
                                            Erin Green Comite (*pro hac vice*)
                                            **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                            The Helmsley Building
                                            230 Park Avenue, 17th Floor
                                            New York, NY 10169-1820
                                            Telephone: (212) 223-6444
                                            Facsimile: (212) 223-6334
                                            jguglielmo@scott-scott.com
                                            ecomite@scott-scott.com

Stephanie A. Hackett (Bar. No. 238655)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway
Suite 3300
San Diego, CA  92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
shackett@scott-scott.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: (205) 612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*

AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 4:19-cv-04577-JSW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on November 7, 2019, at San Francisco, California.


*/s/ Mark N. Todzo*
Mark N. Todzo (Bar No. 168389)

AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 4:19-cv-04577-JSW