ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
AMANDA C. FITZSIMMONS (Bar No. 258888)
amanda.fitzsimmons@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (*pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (*pro hac vice*)
eric.roberts@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, and FUMIKO LOPEZ, as guardian of A.L., a minor, LISHOMWA HENRY, and JOSEPH HARMS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>APPLE INC., a Delaware corporation,<br><br>                    Defendant. | CASE NO. 5:19-CV-04577-JSW<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    February 28, 2020<br>Time:    9:00 a.m.<br>Crtrm:   5 (2nd Floor, Oakland)<br>Judge:   Hon. Jeffrey S. White<br><br>Complaint filed:  August 7, 2019 |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION...................................................................................................1

II.     SUMMARY OF ARGUMENT ............................................................................2

III.    BACKGROUND FACTS .....................................................................................3

        A.      Siri Technology and Audio Recordings. .................................................3

        B.      The Siri Grading Program. ......................................................................4

        C.      Plaintiffs' Claims.....................................................................................4

IV.     ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3)) ............................................5

V.      LEGAL STANDARD ..........................................................................................5

VI.     ARGUMENT ........................................................................................................5

        A.      Plaintiffs lack standing under Article III of the U.S. Constitution.........6

        B.      Plaintiffs fail to state a claim for violation of the federal Wiretap Act and
                Section 631(a) of the CIPA. ....................................................................6

                1.      Apple did not "intercept" Plaintiffs' communications. .............7

                2.      Apple did not "intentionally" intercept communications.........8

                3.      Plaintiffs do not set forth the "private" communications at issue. ............8

                4.      Plaintiffs fail to plead a lack of consent. ...................................9

                        a.      Plaintiffs Lopez, Henry, and Harms consented to the
                                collection. .......................................................................9

                        b.      Cal. Fam. Code §§ 6701 and 6710 do not apply to A.L.'s
                                claims. ...........................................................................10

        C.      There is no alleged wire communication under Section 631(a)..........10

        D.      Plaintiffs cannot state a claim for unlawful disclosure under the Wiretap
                Act. .........................................................................................................11

        E.      Plaintiffs have not plausibly alleged a violation of the SCA. ..............11

                1.      Plaintiffs have not plausibly alleged a violation of section
                        2701(a)(1)..................................................................................11

    a.  Apple did not access a "facility through which an electronic communication service is provided." ...........................................11

    b.  Any "access" by Apple was "authorized." ..................................12

    c.  The allegations defeat the requisite element of intent. ................13

   2.  Plaintiffs have not plausibly alleged a violation of section 2702(a)(1) because Apple is not an "electronic communication service" provider, and even if it were, its alleged conduct is exempt. ..................13

F.  Plaintiffs fail to state a claim for violation of CIPA Section 632. ......................14

   1.  Plaintiffs, not Apple, used the device to record a communication. ..........14

   2.  The allegations negate the element of "intent" under Section 632. .........15

   3.  Plaintiffs do not set forth the "confidential" communications at issue. ....................................................................................................15

G.  Apple has not violated Plaintiffs' privacy rights. ...............................................16

H.  Plaintiffs fail to state a claim for breach of contract. ........................................17

I.  Plaintiffs fail to state a claim for violation of the UCL. .....................................17

J.  Plaintiffs' claim for declaratory relief fails. ......................................................19

VII.  CONCLUSION ...........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..........................................................................................5, 10

*Baltazar v. Apple Inc.,*
  2011 WL 6747884 (N.D. Cal. Dec. 22, 2011) .......................................................17

*Bardin v. DaimlerChrysler Corp.,*
  136 Cal. App. 4th 1255 (2006) ..............................................................................19

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................5, 6

*C.M.D. ex rel. De Young v. Facebook, Inc.,*
  621 F. App'x 488 (9th Cir. 2015)...........................................................................10

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ............................................................................................2, 6

*Cline v. Reetz-Laiolo,*
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ...................................................................7

*Cousineau v. Microsoft Corp.,*
  6 F. Supp. 3d 1167 (W.D. Wash. 2014) ................................................................12

*Crowley v. CyberSource Corp.,*
  166 F. Supp. 2d 1263 (N.D. Cal. 2001) ...............................................2, 7, 12, 14

*Davis v. HSBC Bank Nevada, N.A.,*
  691 F.3d 1152 (9th Cir. 2012)...........................................................................3, 19

*Dyer v. Nw. Airlines Corps.,*
  334 F. Supp. 2d 1196 (D.N.D. 2004) .....................................................................17

*Faulkner v. ADT Sec. Servs., Inc.,*
  706 F.3d 1017 (9th Cir. 2013)..........................................................................15, 16

*Flanagan v. Flanagan,*
  27 Cal. 4th 766 (2002)......................................................................................2, 15

*Fogelstrom v. Lamps Plus, Inc.,*
  195 Cal. App. 4th 986 (2011)................................................................................16

*Garcia v. City of Laredo,*
  702 F.3d 788 (5th Cir. 2012)..................................................................................12

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ...................................................................19

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994)....................................................................................................16

*Holden v. Hagopian*,
    978 F.2d 1115 (9th Cir. 1992)......................................................................................7

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017) ......................................................................16

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ..........................................................10

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................2, 12, 16

*In re Jetblue Airways Corp. Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005)........................................................................13

*In re Nw. Airlines Privacy Litig.*,
    2004 WL 1278459 (D. Minn. June 6, 2004) ..............................................................17

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003) ...................................................................................2, 7, 8

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...........................................................5, 9, 16, 17

*Jayne v. Bosenko*,
    2014 WL 2801198 (E.D. Cal. Jun. 19, 2014).............................................................8

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017).....................................................................................3

*Matera v. Google Inc.*,
    2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)............................................................6

*Monreal v. GMAC Mortg., LLC*,
    948 F. Supp. 2d 1069 (S.D. Cal. 2013) .................................................................3, 19

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009)......................................................................................11

*People v. Buchanan*,
    26 Cal. App. 3d 274 (1972)...................................................................................3, 15

*People v. Superior Court of Los Angeles County*,
    70 Cal. 2d 123 (1969)................................................................................................15

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...........................................................3, 9, 13

*Quadrant Info. Servs., LLC v. LexisNexis Risk Sol'ns, Inc.*,
    2012 WL 3155559 (N.D. Cal. Aug. 2, 2012) .................................................18

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) .....................................................18, 19

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) .............................................................19

*Sanders v. Robert Bosch Corp.*,
    38 F.3d 736 (4th Cir. 1994) ................................................................................8

*Satchell v. Sonic Notify, Inc.*,
    234 F. Supp. 3d 996 (N.D. Cal. 2017) .........................................................2, 9

*Shwarz v. U.S.*,
    234 F.3d 428 (9th Cir. 2000) ..............................................................................3

*Skapinetz v. CoesterVMS.com, Inc.*,
    2019 WL 2579120 (D. Md. June 24, 2019) ....................................................13

*Spindler v. Johnson & Johnson Corp.*,
    2011 WL 13278876 (N.D. Cal. Jan. 21, 2011) ..................................3, 18, 19

*Sud v. Costco Wholesale Corp.*,
    229 F. Supp. 3d 1075 (N.D. Cal. 2017) ............................................3, 18, 19

*Sunbelt Rentals, Inc. v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) ..............................................................8

*Theofel v. Farey–Jones*,
    359 F.3d 1066 (9th Cir. 2004) ..........................................................................13

*U.S. v. Amen*,
    831 F.2d 373 (2d Cir. 1987) ...............................................................................9

*U.S. v. Corona-Chavez*,
    328 F.3d 974 (8th Cir. 2003) ..............................................................................9

*U.S. v. McIntyre*,
    582 F.2d 1221 (9th Cir. 1978) ............................................................................9

*U.S. v. Van Poyck*,
    77 F.3d 285 (9th Cir. 1996) ................................................................................9

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) (J. White) ...............................7

STATUTES

18 U.S.C. § 2510 ..............................................................................................................1

18 U.S.C. § 2510(2) ..........................................................................................................9

18 U.S.C. § 2510(4) ..........................................................................................................7

18 U.S.C. § 2510(5)(a)(ii) ..............................................................................................14

18 U.S.C. § 2510(15) .......................................................................................................11

18 U.S.C. § 2511(1) ..........................................................................................................6

18 U.S.C. § 2511(1)(c) .....................................................................................................11

18 U.S.C. § 2511(2)(d) ......................................................................................................9

18 U.S.C. § 2701(a) ..........................................................................................................13

18 U.S.C. § 2701(a)(1) ....................................................................................2, 11, 12, 13

18 U.S.C. § 2702(a)(1) ....................................................................................2, 11, 13, 14

18 U.S.C. § 2702(b)(3) .............................................................................................3, 14

Cal. Bus. & Prof. Code § 17200, *et seq.* ......................................................................3

Cal. Bus. & Prof. Code § 22576 ....................................................................................18

Cal. Bus. & Prof. Code § 22577 ....................................................................................18

Cal. Fam. Code § 6701 ...............................................................................................5, 10

Cal. Fam. Code § 6710 ...............................................................................................5, 10

Cal. Penal Code § 631(a) ......................................................................................... passim

Cal. Penal Code § 632 .......................................................................................1, 5, 14, 15

Cal. Penal Code § 632(b) ...............................................................................................15

Civ. L.R. 7-4(A)(3) ............................................................................................................5

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1) ....................................................................................................1

Fed. R. Civ. P. 12(b)(6) .................................................................................................1, 5

U.S. Constitution Article III .....................................................................................2, 5, 6

1

<u>**NOTICE OF MOTION AND MOTION**</u>

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

     **PLEASE TAKE NOTICE** that on February 28, 2020, at 9:00 a.m., or as soon thereafter

4

as this matter may be heard by the Honorable Jeffrey S. White in Courtroom 5, 2nd Floor, of the

5

above-entitled Court located at 1301 Clay Street, Oakland, California, 94612, Defendant Apple

6

Inc. ("Apple") will, and hereby does, move to dismiss with prejudice the Amended Class Action

7

Complaint ("Complaint") of Plaintiffs Fumiko Lopez, Fumiko Lopez, as guardian of the minor,

8

A.L., Lishomwa Henry, and Joseph Harms (collectively, "Plaintiffs"), individually and on behalf

9

of all others similarly situated, and each claim asserted therein against Apple.

10

     Apple brings this Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and

11

12(b)(6) because Plaintiffs lack standing and fail to state a claim for relief against Apple. This

12

Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities,

13

Declaration of Isabelle L. Ord ("Ord Declaration") and exhibits thereto, Request for Judicial

14

Notice ("RJN"), and all pleadings, arguments, and matters before the Court.

15

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

16

**I.**     **INTRODUCTION**

17

     The Complaint should be dismissed because it lacks essential allegations to sustain any

18

claim and instead relies on speculation in a failed attempt to assert inapplicable legal theories.

19

Plaintiffs are iPhone owners who use Siri, Apple's proprietary voice command technology. Apple

20

gives the users of devices with Siri choices to enable or disable Siri and Siri features. When a user

21

enables Siri, the user's device responds to voice commands (*e.g.*, "What's the weather?" or "Call

22

Mom"), and if enabled, Siri responds to "Hey Siri" or other activation commands (*e.g.*, pressing a

23

button) and follows the user's voice directions. Siri "hears" a user's commands through the

24

microphone on the device. Sometimes, the device mishears "Siri" (or misinterprets another form

25

of trigger) and responds when a user did not intend to summon Siri. But where people may blush

26

and laugh when a human does this, the Complaint attempts to equate Siri's mistake to an invasion

27

of user privacy and a violation of criminal "anti-surveillance" statutes, including sections 631(a)

28

and 632 of the California Invasion of Privacy Act ("CIPA"), 18 U.S.C. § 2510 (the "Wiretap

1

1    Act"), and the Stored Communications Act, 18 U.S.C. §§ 2701(a)(1) and 2702(a)(1) ("SCA"). As

2    set forth below, these laws do not apply, and they have not been violated.

3            The Complaint also asserts that Apple violated a contract and Plaintiffs' common law and

4    constitutional rights to privacy by using contractors to "grade" Siri recordings so Apple could

5    improve Siri. But there are no allegations that any actual inadvertent recording of any Plaintiff

6    occurred, or that any such recording was among the small fraction of recordings graded. There is

7    only speculation that this happened because a news article reported it as a possibility. Regardless,

8    Apple denies that its grading program violated the laws, contract, or other rights to privacy on

9    which the Complaint relies.

10           Apple believes that privacy is a fundamental human right. Apple does not sell or monetize

11   Siri recordings. Also, unlike other digital assistants, Siri recordings are associated with a random,

12   device-generated identifier, not with a user's Apple ID or phone number. Moreover, Apple has

13   enhanced how it protects its customers' privacy and stopped all grading of users' Siri audio unless

14   and until they expressly **opt-in** to grading. The fundamental premise of the Complaint—that Apple

15   violated users' privacy—is unsupported by the allegations and contradicted by Apple's

16   commitment to privacy. Apple respectfully requests dismissal of the Complaint with prejudice.

17   **II.     SUMMARY OF ARGUMENT**

18           The Complaint fails to state any claims against Apple and should be dismissed. First,

19   Plaintiffs' sparse allegations and impermissible speculation do not establish Article III standing.

20   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Second, the failure to allege any

21   information about any actual recording prevents a determination that the contents were private or

22   confidential. *E.g.*, *Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996 (N.D. Cal. 2017); *Flanagan*

23   *v. Flanagan*, 27 Cal. 4th 766 (2002). This also precludes Plaintiffs' claims that their privacy has

24   been violated. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012).

25           The CIPA, Wiretap Act, and SCA do not apply to the Siri recordings captured by users'

26   Siri-enabled devices. *E.g.*, *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001);

27   *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1040. Even if they did, Apple lacked the

28   requisite intent under these statutes because the recordings at issue were inadvertent. *E.g.*, *In re*

1  *Pharmatrak*, *Inc.*, 329 F.3d 9 (1st Cir. 2003); *People v. Buchanan*, 26 Cal. App. 3d 274 (1972).

2  Also, collection and use of Siri recordings was authorized by statute and Plaintiffs' consent. *E.g.*,

3  *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014); 18 U.S.C. § 2702(b)(3). Neither

4  accidental recordings nor grading constitutes a breach of Apple's iOS Software License

5  Agreement ("SLA") or a violation of Apple's privacy disclosures, which state that Siri may

6  experience errors and allow Apple to use service providers to help improve Siri.

7       For the same reasons, Plaintiffs fail to support their derivative claim that Apple violated

8  the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq. E.g.*, *Sud v. Costco*

9  *Wholesale Corp.*, 229 F. Supp. 3d 1075 (N.D. Cal. 2017); *Spindler v. Johnson & Johnson Corp.*,

10  2011 WL 13278876 (N.D. Cal. Jan. 21, 2011). Plaintiffs also lack statutory standing to pursue

11  their UCL claim. *E.g.*, *Spindler*, 2011 WL 13278876. Dismissal of the declaratory relief claim,

12  which is derivative of Plaintiffs' other claims, is also required. *Monreal v. GMAC Mortg., LLC*,

13  948 F. Supp. 2d 1069 (S.D. Cal. 2013) (dismissing "entirely commensurable" claim).

14  ## III.   BACKGROUND FACTS[1]

15  ### A.   Siri Technology and Audio Recordings.

16       "Siri is a voice-activated 'intelligent assistant'" that gives iPhone users like Plaintiffs the

17  ability to give voice commands to their Siri-enabled devices. Compl. ¶¶ 2, 13-16, 18, 43-46. Users

18  can enable or disable Siri at any time. *Id.* ¶ 2, ¶ 32 ("Apps can use Siri to respond to your requests

19  or send audio to Apple to transcribe to text—but only if you give your permission first."); *see also*

20  "Ask Siri, Dictation & Privacy," Ex. A. According to the Complaint, Plaintiffs want to continue

21  using Siri and have a "general understanding of how voice recognition software like Siri is

22  supposed to function . . . ." Compl. ¶¶ 79, 105, 125, 143, 158.

23  _____

24  [1] This summary assumes "the veracity of" any "well-pleaded factual allegations." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). In the RJN, Apple requests that the Court

25  take notice under the incorporation-by-reference doctrine of documents selectively quoted in the Complaint, including the "Ask Siri, Dictation & Privacy" statement ("Ex. A"), SLA ("Ex. B."),

26  Privacy Policy ("Ex. C"), "Approach to Privacy" web page ("Ex. D"), and the Powderly letter ("Ex. E"), attached to the Ord Declaration. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152,

27  1160 (9th Cir. 2012) (quotation omitted). The Court need not assume the truth of any allegation

28  contradicted by judicially noticeable facts. *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).

Siri responds to users' verbal commands in certain instances by making and transmitting audio recordings of user commands to remote computers, which generate a response through Siri (*e.g.*, an answer to "What's the weather?"). *Id.* ¶¶ 18-19, 21. A device only transmits audio when Siri is "activated," in "active listening mode" following a "trigger," and when transmission is required. *Id.* ¶¶ 4, 18-19, 21, 25, 31. At all other times, a chip on the device passively waits to detect a trigger, such as "Hey Siri" to verbally summon Siri or the press of a button to activate Siri. *Id.* ¶¶ 4, 19, 21. When "Hey Siri" is enabled, the device "listens" for "Hey Siri" by locally analyzing "short snippets of audio" on the device, which are "stored locally" and "continuously overwritten" on the device's short-term memory. *Id.* ¶¶ 20-21, 25. When a device sends a recording, it has only a random identifier and is not "linked to [a user's] Apple ID, email address, or other data Apple may have from [the user's] use of other Apple services." Ex. A. These recordings also are "not used to build a marketing profile" or "sold to anyone." *Id.*

Plaintiffs want to use Siri to respond to their verbal commands, and Lopez, Henry, and Harms concede that they consented to recordings. *See* Compl. ¶¶ 82, 110, 129, 145, 158, 188. But, based on a July 2019 article in the *Guardian*, they challenge "false triggers" that occur when a device mishears a verbal cue and prepares to respond by recording and transmitting audio. *See id.* ¶¶ 5, 34, 36, 41, 81, 106, 126, 144, 157, 170, 189. The Complaint alleges that since users do not consent to these recordings, especially in private settings, they violate users' privacy. *Id.* ¶ 41.

**B.      The Siri Grading Program.**

To improve Siri, humans "grade" a small number of audio recordings and Siri's responses to assess the accuracy of the Siri trigger and Siri's response. *Id.* ¶¶ 5-6, 34, 38. Without any other facts, Plaintiffs cite the *Guardian* article to speculate that graders received "identifying information" with recordings, such as "location, contact details, and app data," but ***notably not*** a user's name or Apple ID. *Id.* ¶ 36. Apple formerly used contractors for audio grading, but replaced the program with an opt-in program where all graders are employees of Apple. *Id.* ¶¶ 5, 6, 34-35, 38; Ex. A. Apple does not use the recordings for any purpose other than improving Siri, does not use them to build a marketing profile, and does not sell them. *Cf.* Compl. ¶ 6.

**C.      Plaintiffs' Claims.**

Plaintiffs allege that—at some unstated time—their devices "intentionally accessed" "communications without authorization and unlawfully recorded" them "without their consent" when they did not say "Hey Siri." *Id.* ¶¶ 44-46. Plaintiff A.L. also alleges that as a minor she lacks capacity to consent under Cal. Fam. Code §§ 6701 and 6710. *Id.* ¶¶ 40, 47, 53, 194-96. Beyond general allegations gleaned from the *Guardian* article, the Complaint does not allege any actual recording for any Plaintiff, when it occurred, how it was triggered, whether consent was given, whether its contents were private, or whether it was graded. *See id.* ¶¶ 44-47.

## IV.    ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3))

Do Plaintiffs have Article III standing, and do they state any claim against Apple by establishing: (1) intentional interception of a private communication (Wiretap Act and Penal Code § 631(a)); (2) unlawful access or disclosure under the SCA; (3) intentional recording of a confidential communication under Penal Code § 632; (4) the existence and breach of a contract; (5) any privacy-based claim without an intrusion by Apple; (6) violations of the UCL; (7) a claim for declaratory relief; (8) that A.L may disaffirm consent to Siri under Cal. Family Code §§ 6701 or 6710; or (9) that Plaintiffs did not consent to inadvertent recordings while using and continuing to use Siri after notice of inadvertent triggers?

## V.    LEGAL STANDARD

Rule 12(b)(6) requires dismissal where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This requires more than conclusory allegations "that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 556-57). "Mere conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014).

## VI.    ARGUMENT

1

A.      **Plaintiffs lack standing under Article III of the U.S. Constitution.**

2      Dismissal is required for lack of Article III standing because Plaintiffs do not adequately

3 allege any actual or imminent injury-in-fact. *Clapper*, 568 U.S. at 410. Although the Complaint

4 alleges generally that Apple "intercepted, recorded, disclosed, or otherwise misused" a recording

5 following a false trigger, Plaintiffs do not allege any actual instance of recording or grading.

6 Rather, Plaintiffs rely on impermissible speculation that this may have occurred based on a news

7 article. Compl. ¶¶ 27, 33, 43. A complaint cannot proceed based solely on speculation and legal

8 conclusions couched as fact. *See Twombly*, 550 U.S. at 555.

9      The allegations here are no different than those in *Clapper*. In *Clapper*, U.S. citizens

10 challenged a government program through which their conversation with non-U.S. individuals

11 may be intercepted. 568 U.S. at 404-06. The Supreme Court held that the plaintiffs lacked Article

12 III standing because the alleged injury was based on a "highly attenuated chain of possibilities,"

13 including bare speculation that the government would (1) imminently ***target*** any communications,

14 (2) obtain authorization to proceed, (3) succeed in acquiring communications, and (4) that any

15 plaintiff would be a party to such communications. *Id.* at 411-15. The Complaint here similarly

16 relies on attenuated possibilities. There are no Plaintiff-specific facts, and the Complaint assumes,

17 without any basis, that Plaintiffs' devices may have triggered inadvertently and recorded a private

18 communication, which was then among the small number of recordings graded, and that the

19 recording was somehow identifiable to Plaintiffs. Each link in this chain is more attenuated than

20 the last. There is a real risk that no-injury class actions, alleging hypothetical privacy harms, will

21 swarm the federal courts if plaintiffs can dilute the standing requirement by relying on generalized

22 information rather than their own, actual injury. The Complaint should be dismissed in its entirety.

23

B.      **Plaintiffs fail to state a claim for violation of the federal Wiretap Act and**

24 **Section 631(a) of the CIPA.**

25      The Wiretap Act prohibits certain interceptions of oral, wire, or electronic

26 communications. 18 U.S.C. § 2511(1). A violation of Section 631(a) occurs when a person "reads,

27 or attempts to read, or to learn the contents or meaning of any message, report, or communication

28 while the same is in transit or passing over any wire, line, or cable." *Matera v. Google Inc.*, 2016

1    WL 5339806, at *10 (N.D. Cal. Sept. 23, 2016). "The analysis for a violation [of Section 631(a)]

2    is the same as that under the federal Wiretap Act." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000,

3    1051 (N.D. Cal. 2018) (citation omitted). Here, the Complaint does not adequately plead that

4    Apple "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to

5    intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a

6    device." *In re Pharmatrak, Inc.*, 329 F.3d at 18 (applying Wiretap Act).

### 1.    Apple did not "intercept" Plaintiffs' communications.

8        Apple cannot have violated either the Wiretap Act or Section 631(a) unless it intercepted a

9    communication. *See, e.g.*, *Cline*, 329 F. Supp. 3d at 1051. The Wiretap Act defines "intercept" to

10   mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication

11   through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). A court

12   "need not accept a conclusory allegation that conduct alleged in the complaint constituted an

13   interception under the Wiretap Act." *Crowley*, 166 F. Supp. 2d at 1268 (citing *Holden v.

14   Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992)).

15       Courts routinely hold that the intended recipient of a communication does not "intercept"

16   that communication. In *Crowley*, for example, a plaintiff asserted that Amazon intercepted and

17   disclosed the plaintiffs' emails. 166 F. Supp. 2d at 1263. The court concluded that there was no

18   interception because Amazon was the intended recipient: "Holding that Amazon, by receiving an

19   e-mail, intercepted a communication within the meaning of the Wiretap Act would be akin to

20   holding that one who picks up a telephone to receive a call has intercepted a communication and

21   must seek safety in an exemption to the Wiretap Act." *Id.* at 1269; *see also Yunker v. Pandora

22   Media, Inc.*, 2013 WL 1282980, at *8 (N.D. Cal. Mar. 26, 2013) (J. White) (dismissing Wiretap

23   Act claim where plaintiff directed communication to defendant).

24       Here, the Complaint cannot plausibly allege that *Apple* activates Siri or the device's

25   microphone, and therefore cannot establish an "interception." The user creates the recordings, and

26   Siri is an intended recipient of the user's recordings. Indeed, all the conduct that results in

27   transmission of a recording to Apple (including false triggers) occurs on the user's device and

28   requires the user's input. First, the user must enable Siri (including, potentially, "Hey Siri"). Ex. E

at 8. Second, the user must activate Siri with a trigger (*e.g.*, "Hey Siri"). Apple does not receive

audio where Siri is not triggered by the user, where the user has not enabled (or has disabled) Siri,

or when the user turns off the device. While Apple constantly seeks to improve Siri and reduce

false triggers, Siri currently cannot distinguish between intentional and inadvertent recordings to

terminate transmission of inadvertent recordings. Thus, there is no prohibited "interception" under

the Wiretap Act or Section 631(a), and the claims should be dismissed.

### 2. Apple did not "intentionally" intercept communications.

Both the Wiretap Act and Section 631(a) prohibit only ***intentional*** interceptions, not

inadvertent recordings, as alleged here. *See* Cal. Penal Code § 631(a); *In re Pharmatrak, Inc.*, 329

F.3d at 23 ("inadvertent interceptions are not a basis for criminal or civil liability under" the

Wiretap Act); *Sanders v. Robert Bosch Corp.*, 38 F.3d 736 (4th Cir. 1994) (holding inadvertent

recordings by defective handset microphone did not violate Wiretap Act); *Jayne v. Bosenko*, 2014

WL 2801198, at *25 (E.D. Cal. Jun. 19, 2014) (dismissing Wiretap Act claim because recording

system inadvertently recorded call).

The Complaint does not plausibly allege, other than in the most conclusory fashion, that

***Apple*** intended to record Plaintiffs' private communications. A ***device*** listens passively and only

records audio following a Siri trigger ***initiated by the user's*** voice or action. For this reason,

Apple's receipt of recordings does not satisfy the intent element under the Wiretap Act or Section

631(a). *See Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1030 (N.D. Cal. 2014) (holding

that "the requisite intentional conduct [was] lacking" where receipt of text messages was "entirely

[plaintiff's] doing"). Moreover, Plaintiffs concede the recordings were "accidental." Compl. ¶¶ 34,

35, 37. Such allegations negate any possible conclusion that Apple intended to record private

moments, a point underscored because Apple uses random identifiers for all Siri recordings to

prevent identifying the particular user and grades (anonymized) samples to identify and ***prevent***

false triggers, *id.* ¶¶ 6, 38, 39, 85. Accordingly, the claims should be dismissed.

### 3. Plaintiffs do not set forth the "private" communications at issue.

Even if the Wiretap Act and Section 631(a) applied to these facts, Plaintiffs must still

allege facts sufficient to warrant the inference that an actual intercepted communication was one in

1  which (1) they had "a subjective expectation of privacy," and (2) that "expectation was objectively

2  reasonable." *U.S. v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978) (citation omitted); 18 U.S.C.

3  § 2510(2). Without well-pleaded facts concerning the specific communications at issue, the Court

4  is left with only conclusory allegations that are insufficient to satisfy these requirements. *See, e.g.*,

5  *Satchell*, 234 F. Supp. 3d at 1008. Here, Plaintiffs generally allege only that they had their iPhones

6  with them in circumstances that might give rise to an expectation of privacy, but provide no details

7  of any actual recorded private communication. Apple respects Plaintiffs' privacy, but it is sheer

8  speculation that any Plaintiff had a private communication inadvertently recorded and then graded.

9  The Court should therefore dismiss Plaintiffs' claims. *Id.*

10                    **4.      Plaintiffs fail to plead a lack of consent.**

11             Under the Wiretap Act, but not Section 631(a), a person may lawfully "intercept a wire,

12  oral, or electronic communication . . ." if he "has been given prior consent to such interception" by

13  a party to the communication. 18 U.S.C. § 2511(2)(d). Consent may be explicit or implied. *See*

14  *U.S. v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *U.S. v. Amen*, 831 F.2d 373, 378 (2d Cir.

15  1987); *U.S. v. Corona-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003). Here, Plaintiffs fail to plead the

16  requisite absence of consent.

17                    **a.      Plaintiffs Lopez, Henry, and Harms consented to the collection.**

18             Plaintiffs (except A.L.) admittedly consented to have their Siri-enabled iPhones "listen to,

19  record and share their conversations" in response to a trigger (*e.g.*, "Hey Siri"). Compl. ¶¶ 4, 82,

20  110, 129, 145, 158, 188. Their claims of interception are predicated on inadvertent recordings that

21  allegedly were made without Plaintiffs' consent following a false trigger. *Id.* ¶¶ 81, 126. As a

22  matter of law, however, Plaintiffs consented to these recordings too by enabling and using Siri and

23  continuing to use Siri while knowing that they may inadvertently trigger Siri. *See, e.g.¸ In re*

24  *Yahoo Mail Litig.*, 7 F. Supp. 3d at 1032 (granting motion to dismiss based on consent of users to

25  conduct); *Perkins*, 53 F. Supp. 3d at 1212 (granting motion to dismiss where disclosure was

26  presented before wrongful conduct); *Van Poyck*, 77 F.3d at 292 (finding implied consent based on

27  disclosures before call monitoring and taping).

28             Plaintiffs have control over Siri, which can be enabled or disabled at any time. Ex. E at 8.

CASE NO. 5:19-CV-04577-JSW    APPLE'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

1    Before enabling Siri, Plaintiffs agreed to the SLA, Compl. ¶ 182, which informs users that

2    operation of iOS software on the device may not be "error-free." Ex. B § 7.4. Also, implicit in

3    Plaintiffs' discussion of Siri "waking up" based on a "sufficiently high confidence score," Compl.

4    ¶ 21, is the acknowledgement that 100% accuracy is not required. Finally, Siri always presents a

5    visual indicator to a user when it is activated and recording. Ex. E at 9. Plaintiffs claim a "general

6    understanding of how voice recognition software like Siri is supposed to function," Compl. ¶¶ 79,

7    88, 105, 125, 143, 158, and cannot disclaim the basic common sense notion that software, like

8    humans, is not perfect 100% of the time. *See Iqbal*, 556 U.S. at 663-64 (a court may "draw on its

9    judicial experience and common sense."). By continuing to use Siri under these circumstances,

10   Plaintiffs affirmed their consent to the inadvertent recordings.

11           **b.**      **Cal. Fam. Code §§ 6701 and 6710 do not apply to A.L.'s claims.**

12         California Family Code §§ 6701 and 6710 provide that minors are incapable of entering

13   contracts and therefore can disaffirm contractual arrangements. *See, e.g.*, Compl. ¶¶ 47, 83, 111,

14   130, 146, 194-96. These provisions deal only with contract law and do not address a situation such

15   as this one, where the claims are not based on an allegation that A.L. entered into a contract with

16   Apple. *See, e.g.*, *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *14 n.11 (N.D. Cal. Mar.

17   18, 2014) (rejecting argument that Family Code § 6701 applied in case involving Wiretap Act);

18   *see also C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488 (9th Cir. 2015) (holding

19   provisions inapplicable). Although that is reason enough to reject the application of the Family

20   Code here, the Complaint's allegations demonstrate that A.L. interacts with Siri on the iPhone 6

21   with the full knowledge and consent of A.L.'s guardian. Compl. ¶¶ 43, 48. The guardian's consent

22   makes the question of A.L.'s ability to consent a red herring. Finally, the allegations of A.L.'s

23   continued use with knowledge of A.L.'s guardian are inconsistent with any "disaffirmance" of

24   consent. *See C.M.D. ex rel. De Young*, 621 F. App'x at 489 (affirming dismissal; no manifestation

25   of intent to disaffirm where there was continued use of service). The claims based on A.L's minor

26   status therefore fail and should be dismissed for the same reasons as the other Plaintiffs' claims.

27        **C.**     **There is no alleged wire communication under Section 631(a).**

28         Unlike the Wiretap Act, Section 631(a) applies only to wire communications and prohibits

1    tapping or making "unauthorized connections with" "any telegraph or telephone wire, line, cable,

2    or instrument," or attempting to read or learn the contents of communications "in transit or passing

3    over any wire, line, or cable . . . ." Cal. Penal Code § 631(a). Here, the Complaint alleges that

4    Apple "connected" with Plaintiffs' devices and Siri (not a wire, line, cable, or instrument) and

5    intercepted "oral communications" (not wire communications), requiring dismissal of the Section

6    631(a) claim. *See* Compl. ¶¶ 77, 126.

7        **D.    Plaintiffs cannot state a claim for unlawful disclosure under the Wiretap Act.**

8        In order to state a claim for unlawful disclosure under § 2511(1)(c) of the Wiretap Act,

9    Plaintiffs must plead the disclosure of a communication that was unlawfully intercepted under the

10   Wiretap Act.  *Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009). The Complaint's failure to satisfy

11   the elements for pleading an unlawful interception under the Wiretap Act therefore requires

12   dismissal of the claim that Apple unlawfully disclosed intercepted recordings to service providers.

13       **E.    Plaintiffs have not plausibly alleged a violation of the SCA.**

14       Plaintiffs fail to plausibly allege a violation under either the "access" or "disclosure"

15   sections of the SCA. 18 U.S.C. §§ 2701(a)(1); 2702(a)(1). Under section 2701(a)(1), a person may

16   not access a wire or electronic communication while in "electronic storage" by accessing without

17   authorization "a facility through which an electronic communication service is provided." Under

18   section 2702(a)(1), "a person or entity providing an electronic communication service to the public

19   shall not," subject to certain exceptions, "knowingly divulge to any person or entity the contents of

20   a communication while in electronic storage by that service . . . ." An "electronic communication

21   service" is "any service which provides to users thereof the ability to send and receive wire or

22   electronic communications." 18 U.S.C. § 2510(15).

23       **1.    Plaintiffs have not plausibly alleged a violation of section 2701(a)(1).**

24           **a.    Apple did not access a "facility through which an electronic communication service is provided."**

25   Plaintiffs' SCA allegations fail to distinguish between the "facility," "electronic

26   communication service," and "communications." In one allegation, for example, Siri is the

27   "electronic communication service" that allows users to "send and receive electronic

28   communications," with Apple as the recipient. Compl. ¶ 104. Three paragraphs later, Siri is the

1 | "facility" and *Apple* provides the "electronic communication service." *Id.* ¶ 107. Siri cannot be

2 | both the "facility" and the "electronic communication service," and it makes no sense for Apple to

3 | be both the service and the recipient of the communication. Furthermore, the Complaint does not

4 | allege unauthorized access of Siri. Rather, Plaintiffs allege that Apple accessed *their devices*. *Id.*

5 | ¶ 109 ("Apple accesses this temporary, immediate storage [on the Siri Device] without

6 | authorization . . . ."); ¶ 112 ("Apple intentionally accessed without authorization Plaintiffs' and

7 | Class Members' Siri Devices . . . ."). Regardless of what is intended, the Complaint does not

8 | plausibly allege that Apple accessed a "facility" providing an "electronic communication service."

9 | As to Plaintiffs' iPhones, they are not a "facility." As a court in this district concluded, an

10 | iPhone is not a "facility" under the SCA because the device "does not 'provide [] an electronic

11 | communication service' simply by virtue of *enabling use* of electronic communication services"

12 | (like the cellular provider's network). *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1057-58

13 | (emphasis added). Other courts have reached the same result for similar technologies. *See*

14 | *Cousineau v. Microsoft Corp.*, 6 F. Supp. 3d 1167, 1175 (W.D. Wash. 2014) (phone not a

15 | "facility"); *Garcia v. City of Laredo*, 702 F.3d 788, 793 (5th Cir. 2012) (same).

16 | As to Siri, it is neither the "facility" nor the "electronic communication service." Plaintiffs

17 | describe Siri as a "virtual assistant," which allows a user to control a Siri-enabled device using

18 | voice commands *in lieu* of a touchscreen or keyboard. Since the device cannot be a facility "by

19 | virtue of enabling use of electronic communication services," *In re iPhone Application Litig.*, 844

20 | F. Supp. 2d at 1057-58, it makes even less sense to treat Siri as a facility for enabling use of the

21 | device. Likewise, Siri is not an "electronic communication service" because it is not a conduit for

22 | any communication. Rather, it is voice command technology that, with the user's device, converts

23 | verbal "request[s] into code" that can be acted on in response to the user's command or inquiry.

24 | Compl. ¶ 19; *see Crowley*, 166 F. Supp. 2d at 1270 (holding section 2701(a)(1) inapplicable where

25 | defendant's website allowed customers to communicate only with defendant). The Complaint does

26 | not, and cannot, identify any "facility" or "electronic communication service," which requires

27 | dismissal of the section 2701(a)(1) claim with prejudice.

28 | **b.      Any "access" by Apple was "authorized."**

1    Even if Plaintiffs properly asserted that Apple accessed Siri or their devices, Plaintiffs fail

2    to allege that such access was unauthorized in violation of the SCA. 18 U.S.C. § 2701(a). "[T]he

3    Ninth Circuit has analogized authorization under the SCA to consent that defeats a common law

4    trespass claim." *Perkins*, 53 F. Supp. 3d at 1211 (citing *Theofel v. Farey–Jones*, 359 F.3d 1066,

5    1072 (9th Cir. 2004)). "If words or conduct are reasonably understood by another to be intended

6    as consent, they constitute apparent consent and are as effective as consent in fact." *Id.* (quotation

7    omitted). Moreover, despite "subtle differences between the consent exception to Wiretap Act

8    liability and the authorization exception to SCA liability," "the question under both is essentially

9    the same." *Perkins*, 53 F. Supp. 3d at 1212. Plaintiffs implicitly (if not explicitly) consented to

10    alleged access by continuing to use Siri after receiving both constructive and actual notice that Siri

11    may falsely trigger and transmit audio to Siri, requiring dismissal of the claim.

12                                **c.    The allegations defeat the requisite element of intent.**

13    Plaintiffs also fail to allege the requisite intent under section 2701(a)(1) of the SCA. *See*

14    *Skapinetz v. CoesterVMS.com, Inc.*, 2019 WL 2579120, at *6-7 (D. Md. June 24, 2019) (applying

15    SCA; "a defendant acts intentionally if his conduct or its result is a product of his conscious

16    objective; inadvertent access will not suffice"). Because Plaintiffs affirmatively allege that the

17    recordings are "accidental," *see* Section VI.B.2, the claim should be dismissed.

18                        **2.    Plaintiffs have not plausibly alleged a violation of section 2702(a)(1)
                                because Apple is not an "electronic communication service" provider,
19                               and even if it were, its alleged conduct is exempt.**

20    The disclosure provision of the SCA does not apply because Apple is not an "electronic

21    communication service" provider. 18 U.S.C. § 2702(a)(1). The disclosure provision does not apply

22    to "companies that provide traditional products and services *over* the Internet as opposed to

23    ***Internet access*** itself." *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307

24    (E.D.N.Y. 2005) (emphasis added). Here, the Complaint acknowledges that Siri provides Plaintiffs

25    the "ability to send and receive electronic communications to and from Apple's servers," Compl.

26    ¶ 104, not to communicate with other Apple customers or others. A company is not subject to

27    liability under section 2702(a)(1) just because it provides a service that allows for the transmission

28    of electronic communications between itself and its customers. *See, e.g.*, *id.* (collecting cases); *see*

*also Crowley*, 166 F. Supp. 2d at 1270. There is no basis for applying section 2702(a)(1).[2]

If section 2702(a)(1) applied, Apple's disclosure of recordings to service providers for grading would be exempt under section 2702(b)(3), which allows disclosure of communications "with the lawful consent of the originator." Under Apple's Privacy Policy, Plaintiffs consented to disclosures to contractors "to provide or improve [Apple's] products and services." Ex. C. Also, in the "Ask Siri, Dictation, and Privacy" disclosure, Apple states that "[b]y using Siri and Dictation, you agree and consent to Apple's and its subsidiaries' and agents' transmission, collection, maintenance, processing, and use of this information, including your voice input data and Siri Data, to provide and improve Siri and dictation functionality in Apple products and Services." Ex. A. When Apple transmitted Siri recordings to service providers for grading, which Plaintiffs concede was intended to "improve the quality of Siri voice assistant dictation," Compl. ¶¶ 5, 6, 38, 39, Apple had "the lawful consent of the originator" (*i.e.*, the device user).[3]

### F.    Plaintiffs fail to state a claim for violation of CIPA Section 632.

Plaintiffs also allege that Apple violated Section 632 because Apple "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device . . . record[ed] the confidential communication." Compl. ¶¶ 139-53. The claim fails for three reasons.

#### 1.    Plaintiffs, not Apple, used the device to record a communication.

To be liable under Cal. Penal Code § 632, Apple must be the "person" who used a device to "record[] the [subject] communication." Other than conclusory allegations and bare recitals of the elements, the Complaint fails to make any plausible claim that Apple controlled or used Plaintiffs' devices to record them. Rather, the Complaint and the documents it incorporates

---

[2] If Apple were an "electronic communication service" provider, Plaintiffs' Wiretap Act claim would fail. Plaintiffs allege that Apple used Siri-enabled devices to intercept their communications, Compl. ¶ 80, but the Wiretap Act excludes "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . ***being used by a provider of wire or electronic communication service*** in the ordinary course of its business." 18 U.S.C. § 2510(5)(a)(ii) (emphasis added). Thus, the first and second claims are incompatible.

[3] To be clear, Apple's service providers have obligations to ensure that they "protect [users'] information" in accordance with Apple's Privacy Policy. Ex. C.

1  demonstrate that Plaintiffs had exclusive control over their "devices," including the ability to

2  enable or disable Siri or to turn the device off. *See* Section VI.B.4.a. Every action that allows the

3  device to transmit recordings (including false triggers) occurs on the device in the user's control,

4  and outside the control of Apple. Section III.A. Section 632 does not apply.

5        **2.        The allegations negate the element of "intent" under Section 632.**

6        The allegations of the Complaint also negate any conclusion that Apple intended to record

7  confidential communications. As the California Supreme Court has explained, a claim under

8  Section 632 must allege intent to record a confidential communication:

> [I]t is not the purpose of the statute to punish a person who intends to make a recording but only a person who intends to make a recording of a confidential communication. For example, a person might intend to record the calls of wild birds on a game reserve and at the same time accidentally pick up the confidential discussions of two poachers. To hold the birdwatcher punishable under the statute for such a fortuitous recording would be absurd. We reject [the] contention that the mere intent to activate a tape recorder which subsequently 'by chance' records a confidential communication is sufficient to constitute an offense under the section. We conclude that a necessary element of the offense . . . . is [a]n intent to record a confidential communication.

14  *People v. Superior Court of Los Angeles County*, 70 Cal. 2d 123, 133 (1969); *see also Buchanan*,

15  26 Cal. App. 3d at 288-89 (switchboard operator who inadvertently listened to communication did

16  not violate Section 632). Because the Complaint acknowledges that the recordings were

17  inadvertently triggered by the users and "accidental," the Section 632 claim must be dismissed.

18        **3.        Plaintiffs do not set forth the "confidential" communications at issue.**

19        Section 632 prohibits recording of a "confidential communication," meaning "any

20  communication carried on in circumstances as may reasonably indicate that any party to the

21  communication desires it to be confined to the parties thereto . . ." but not a "communication made

22  in a public gathering" or "in any other circumstance in which the parties to the communication

23  may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code

24  § 632(b); *see also Flanagan*, 27 Cal. 4th at 768 (Section 632 requires an objectively reasonable

25  expectation of privacy). Plaintiffs must therefore "allege facts that would lead to the plausible

26  inference that [the communication was] a confidential communication—that is, a communication

27  that [they] had an objectively reasonable expectation was not being recorded." *Faulkner v. ADT*

28  *Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013). Here, as in *Faulkner*, the Complaint should be

1   dismissed because "too little is asserted in the complaint about . . . the particular circumstances of"

2   any conversation that Plaintiffs contend was recorded without consent. *Id.* at 1020. To be clear,

3   Apple protects *all* Siri recordings, using random identifiers to anonymize them and otherwise

4   adhering to its Privacy Policy. The statute, however, requires that Plaintiffs plead sufficient facts

5   to test whether a communication occurred in circumstances (*e.g.*, a public gathering) where

6   Plaintiffs did not intend for it to be confidential.

7       **G.      Apple has not violated Plaintiffs' privacy rights.**

8       Apple believes that privacy is a fundamental human right and is committed to protecting

9   its customers' privacy. Here, Apple challenges only whether the Complaint's claims for intrusion

10  on seclusion and violation of the right to privacy under the California Constitution are sufficiently

11  pleaded. These claims are subject to a "combined inquiry" that requires, among other things, an

12  intrusion upon a person's reasonable expectation of privacy. *In re Facebook Internet Tracking*

13  *Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) (internal quotations omitted). "The plaintiff in

14  an invasion of privacy action must have conducted himself or herself in a manner consistent with

15  an actual expectation of privacy, *i.e.*, he or she must not have manifested by his or her conduct a

16  voluntary consent to the invasive actions of defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at

17  1037-38 (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994)). Here, Plaintiffs

18  continue to use Siri despite knowing that Siri would not be error-free and even after discovering

19  that it sometimes inadvertently activates. Moreover, the recordings were never associated with an

20  identifiable user when they came to Apple or when Apple's service providers graded them. Ex. A.

21      Courts have dismissed similar privacy claims where the allegations are little better than

22  bare allegations of the elements or depict routine commercial behavior. *See, e.g.*, *In re iPhone*

23  *Application Litig.*, 844 F. Supp. 2d at 1063 (dismissing privacy claims based on disclosures of

24  unique device identifier number, personal data, and geolocation); *In re Yahoo Mail Litig.*, 7 F.

25  Supp. 3d at 1040 (interception and distribution of emails insufficient to establish privacy

26  violation); *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("routine

27  commercial behavior" not "egregious breach of social norms"). Courts also have dismissed claims

28  where plaintiffs fail to allege facts regarding the particular communications allegedly intercepted.

1    *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041 (collecting cases and dismissing claim

2    because allegations were "simply a bare recitation of the elements of a privacy claim").

3         **H.    Plaintiffs fail to state a claim for breach of contract.**

4         The contract that forms the basis of Plaintiffs' contract claim allegedly consists of the iOS

5    SLA, Apple's Privacy Policy, and privacy pages from Apple's website. Compl. ¶¶ 182-89.

6    Plaintiffs allege that Apple promised in the SLA to treat customer information in accordance with

7    its Privacy Policy, and that in "Apple's Approach to Privacy," incorporated into the Privacy

8    Policy, Apple promised that personal data "would never be shared without your permission." *Id.*

9    ¶¶ 183, 186. Plaintiffs also cite Apple's statements that it enables customers to "choose what they

10   share." *Id.* ¶¶ 186-87. By aggregating these documents, the Complaint claims that Apple breached

11   its promises because (i) devices "experience 'false accepts,'" and record users' private

12   communications, *id.* ¶ 188; and (ii) Apple disclosed Siri recordings for grading, *id.* ¶ 189.

13        Apple stands by its Privacy Policy and other privacy disclosures and is proud of its stance

14   on privacy. While Apple reserves the right to argue that the various statements relied on in the

15   Complaint do not constitute a contract, the Complaint cannot proceed because it has not

16   adequately pleaded a breach. The Complaint cannot manufacture a breach of contract through

17   selective quotations to broad statements of company policy taken out of context from disparate

18   pages or documents on Apple's website. *See, e.g.*, *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d

19   1196, 1200 (D.N.D. 2004) (dismissing claim; "broad statements of company policy do not

20   generally give rise to contract claims"); *In re Nw. Airlines Privacy Litig.*, 2004 WL 1278459, at *6

21   (D. Minn. June 6, 2004) (no contract claim based on privacy policy). Moreover, the Court must

22   look to the documents themselves. *Baltazar v. Apple Inc.*, 2011 WL 6747884, at *2 (N.D. Cal.

23   Dec. 22, 2011). Here, the Complaint omitted Apple's truthful disclaimers and disclosures that

24   affirmatively defeat the claims: in the SLA, Apple disclosed that Siri would not be "error-free"

25   (such as the false triggers), and in the Privacy Policy and other documentation disclosed that

26   Apple and its contractors could use recordings to improve Siri. *See* Exs. A, B, C; *Baltazar*, 2011

27   WL 6747884, at *3 (dismissing breach of contract claim based in part on disclosures).

28        **I.    Plaintiffs fail to state a claim for violation of the UCL.**

Plaintiffs' UCL claim also must be dismissed for several reasons. First, Plaintiffs lack standing because the Complaint is devoid of facts from which to reasonably infer that any Plaintiff actually lost money or property. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (dismissing UCL claim); *Spindler*, 2011 WL 13278876, at *8 (dismissing UCL claim without factual allegations that plaintiffs "paid any monies"). In a boilerplate allegation, the Plaintiffs allege they "would not have purchased" or "would have paid less" for an iPhone and had "a property interest" in their recordings. Compl. ¶ 199. But, Plaintiffs do not actually allege buying their devices, when they did, or what they paid. Plaintiffs also do not allege any ownership of or value in the inadvertent Siri recordings. Bare recitation of elements is not enough for standing. *Quadrant Info. Servs., LLC v. LexisNexis Risk Sol'ns, Inc.*, 2012 WL 3155559, at *4 (N.D. Cal. Aug. 2, 2012) (court not bound to accept conclusory allegations of economic loss).

Second, Plaintiffs fail to establish a predicate violation, as required for a claim under the "unlawful" prong of the UCL. *Sud*, 229 F. Supp. 3d at 1088. If the UCL claim relies on alleged violations of the Wiretap Act, SCA, CIPA, Family Code, common law, or California constitution, the claim is defective for the same reasons as the underlying claims. *See id.* (dismissing UCL claim); *Rojas-Lozano*, 159 F. Supp. 3d at 1117 (same). Plaintiffs also separately allege that Apple violated the California Online Privacy Protection Act ("OPPA"), Cal. Bus. & Prof. Code § 22576, by failing to comply with its posted Privacy Policy. Compl. ¶ 193. As stated in Section VI.H, the Complaint does not allege an actionable violation of Apple's Privacy Policy, so there is no violation of OPPA or the UCL. *See Sud*, 229 F. Supp. 3d at 1088. Instead, Apple's Privacy Policy refers to information "that can be used to identify or contact a single person" such as a user's "name, mailing address, phone number, email address, contact preferences, device identifiers, IP address, location information, credit card information, and [social media] profile information." Ex. C; *compare with* Cal. Bus. & Prof. Code § 22577 (defining "personally identifiable information"). Siri recordings, however, are associated with random device identifiers, not tied to an identifiable individual; thus, they do not fit this definition. Even assuming that Siri recordings qualify, Apple discloses that it may "use personal information to help . . . create, develop, operate, deliver, and improve our products" and "services" and "provide third parties with certain personal information

to provide or improve our products and services." Ex. C.

Third, Plaintiffs cannot generically label alleged conduct "unfair" under the UCL's "tethering" or "balancing" tests. The tethering test requires that the alleged misconduct be "tethered to specific constitutional, statutory, or regulatory provisions." *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) (quoting *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1274 (2006)). The balancing test requires that the alleged misconduct be "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," considering both the harm and utility of the conduct. *Sud*, 229 F. Supp. 3d at 1089. Here, the allegations of unfairness fail the tethering test because they, like the faulty allegations of unlawfulness, rely on the same "statutes referenced above." *See Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1146 (N.D. Cal. 2013) (dismissing UCL claim); *Sanders*, 672 F. Supp. 2d at 989 (same). The allegations also fail the balancing test because there is nothing inherently immoral, unethical, oppressive, unscrupulous, or injurious about offering consumers a market-leading and well-liked feature such as Siri. Apple disclosed that its software would not be "error-free," Ex. B, and no reasonable consumer would expect today's voice-command technology to perform better than the human ear. Moreover, the Complaint undercuts its own conclusory allegation that any "harm" to consumers "is significant" and without a "corresponding benefit" by acknowledging that it is necessary to grade recordings (especially false triggers) to improve Siri. *Compare* Compl. ¶ 198 *with id.* ¶¶ 5-6, 38-39. The unfairness claim must be dismissed. *Davis*, 691 F.3d at 1171 (dismissal affirmed where complaint fails to allege facts showing business practice is unfair) (quotation omitted); *Rojas-Lozano*, 159 F. Supp. 3d at 1118 (dismissing UCL claim where "benefit" to consumer was availability of service); *Spindler*, 2011 WL 13278876, at *7 (allegations did not demonstrate that alleged harm outweighed utility to defendants or offended public policy).

### J.    Plaintiffs' claim for declaratory relief fails.

Plaintiffs' request for declaratory relief is "entirely commensurate" with each of the other claims, and should be dismissed for this reason. *See Monreal*, 948 F. Supp. 2d at 1081.

## VII.    CONCLUSION

Apple respectfully requests dismissal of the Complaint with prejudice.

1   Dated: December 20, 2019      **DLA PIPER LLP (US)**

2

     By: /s/ *Isabelle Ord*

3          ISABELLE L. ORD
         Attorneys for Defendant APPLE INC.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:19-CV-04577-JSW     APPLE'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT