Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA  94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
esomers@lexlawgroup.com

*Attorney for Plaintiffs*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as guardian of A.L., a minor, LISHOMWA HENRY, and JOSEPH HARMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a Delaware corporation,<br><br>Defendant. | Case No.: 4:19-cv-04577-JSW<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT<br><br>Judge: Jeffrey S. White<br>Date: February 28, 2020<br>Time: 9:00 a.m.<br>Dept.: Courtroom 5 – 2nd Floor |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     SUMMARY OF ARGUMENT ...................................................................... 1

III.    ISSUES TO BE DECIDED ............................................................................ 2

IV.     FACTUAL BACKGROUND ......................................................................... 2

V.      ARGUMENT ................................................................................................. 4

        A.      Plaintiffs Have Standing Under Article III of the U.S. Constitution .......... 4

        B.      Plaintiffs State a Claim for Violation of the Wiretap Act and
                Section 631(a) of the CIPA ........................................................... 5

                1.      Apple "Intercepts" Plaintiffs' Communications ............................. 6

                2.      Apple's Interception Was Intentional .......................................... 7

                3.      Plaintiffs Allege Private Communications in Which They
                        Have Reasonable Expectation of Privacy ....................................... 8

                4.      Apple Lacked Consent to Record Plaintiffs' Confidential
                        Communications ........................................................................ 9

        C.      Plaintiffs Allege Violation of Section 631(a) Regardless of Wire
                Communications .......................................................................... 11

        D.      Plaintiffs Plead Unlawful Disclosure Under the Wiretap Act .................. 11

        E.      Plaintiffs State a Claim for Violation of the Stored Communications
                Act .......................................................................................... 12

                1.      Apple's Siri Service Constitute a "Facility" Under the SCA ........ 12

                2.      Plaintiffs Allege Unauthorized Access to Communications
                        Facility .................................................................................... 13

                3.      Plaintiffs and the Class Never Consented to Apple's Practices .... 13

        F.      Plaintiffs State a Claim for Violation of Section 632 of the CIPA ........... 14

                1.      Apple – Not Plaintiffs – Recorded Plaintiffs' and the Class'
                        Confidential Communication .......................................................... 14

                2.      Apple's Interception Was Intentional .......................................... 15

                3.      Plaintiffs Have Alleged Confidential Communication Under
                        Section 632 .............................................................................. 15

        G.      Plaintiffs State a Claim for Violation of Plaintiffs' and Class' Privacy
                Rights ...................................................................................... 16

H.    Plaintiffs State a Claim for Breach of Contract..........................................17

I.    Plaintiffs State a Claim Under California's Unfair Competition Law ......18

J.    Plaintiffs State a Valid Claim for Declaratory Judgment..........................19

VI.    CONCLUSION .....................................................................................................19

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5
*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .......................................................................................4

6

7
*Backhaut v. Apple, Inc.*,
 74 F. Supp. 3d 1033 (N.D. Cal. 2014) ..............................................7, 8

8
*Baltazar v. Apple Inc.*,
 2011 U.S. Dist. Lexis 147502 (N.D. Cal. Dec. 22, 2011)......................17, 18

9

10
*Campbell v. Facebook Inc.*,
 77 F. Supp. 3d 836 (N.D. Cal. 2014) .........................................1, 2, 10

11

12
*Chavez v. Blue Sky Nat. Beverage Co.*,
 340 F. App'x 359 (9th Cir. 2009).........................................................1, 5

13
*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ...........................................................................5

14

15
*Crowly v. CyberSource Corp.*,
 166 F. Supp. 2d 1263 (N.D. Cal. 2001) ...........................................6

16
*Davis v. HSBC Bank Nevada, N.A.*,
 691 F.3d 1152 (9th Cir. 2012)...........................................................19

17

18
*C.M.D. ex rel. De Young v. Facebook, Inc.*,
 621 F. App'x 488 (9th Cir. 2015).......................................................10

19

20
*Doe 1 v. AOL LLC*,
 719 F. Supp. 2d 1102 (N.D. Cal. 2010) ...........................................5

21
*Dyer v. Nw. Airlines Corps.*,
 334 F. Supp. 2d 1196 (D.N.D. 2004) ...............................................18

22

23
*Eichenberger v. ESPN, Inc.*,
 876 F.3d 979 (9th Cir. 2017)...............................................................4

24

25
*Faulkner v. ADT Sec. Servs., Inc.*,
 706 F.3d 1017 (9th Cir. 2013)...........................................................16

26
*Flanagan v. Flanagan*,
 27 Cal. 4th 766 (2002)..............................................................1, 14, 15

27

28
*Folgelstrom v. Lamps Plus, Inc.*,
 195 Cal. App. 4th 986 (2011)...........................................................17

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ......................................................................2, 3, 19

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. CA 2019) ................................................................................18

*In re Google, Inc. Cookie Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3d Cir. 2015) .................................................................................................5

*In re Google Inc. Gmail Litig.*,
    Case No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept 26, 2013) ..............2, 10, 11

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................12, 17

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003) .......................................................................................... *passim*

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) (Koh, J.) .............................................................9, 16, 17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    Case No. 16-MD-2752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...................................19

*Jayne v. Bosenko*,
    No. 2:08-cv-02767-MSB, 2014 WL 2801198 (E.D. Cal. June 19, 2014)...................................8

*Katz v. United States*,
    389 U.S. 347 (1967) .............................................................................................................8

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)........................................................................................................18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ..............................................................................................4

*Mass. v. E.P.A.*,
    549 U.S. 497 (2007) .............................................................................................................4

*Matera v. Google Inc.*,
    Case No. 15-cv-0406-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)................1, 6, 9, 11

*McDonald v. Kiloo ApS*,
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) ..........................................................................2, 16

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012)...........................................................................2, 17

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009).........................................................................................6, 12

*Patel v. Facebook,*
    290 F. Supp. 3d 948 (N.D. Cal. 2018) ...................................................................1, 4

*People v. Buchanan,*
    26 Cal. App. 3d 274 (1972) ........................................................................................15

*People v. Superior Court of Los Angeles Cty.,*
    70 Cal. 2d 123 (1969)..................................................................................................15

*Perkins v. LinkedIn Corp.,*
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......................................................................13

*Pirozzi v. Apple, Inc.,*
    966 F. Supp. 2d 909 (N.D. Cal. 2013) .........................................................................4

*Rackemann v. LISNR, Inc.,*
    Case No. 1:17-cv-00624, 2017 WL 4340349 (S.D. Ind. Sept. 29, 2017) ...................9

*Rogers v. Ulrich,*
    52 Cal. App. 3d 894 (1975) ........................................................................................14

*Rojas v. HSBC Card Servs. Inc.,*
    20 Cal. App. 5th 427 (2018)...................................................................................2, 15

*Sanders v. Robert Bosch Corp.,*
    38 F.3d 736 (4th Cir. 1994)..........................................................................................8

*Satchell v. Sonic Notify, Inc.,*
    234 F. Supp. 3d 996 (N.D. Cal. 2017) (White, J.) ...................................................6, 8

*Siripongs v. Calderon,*
    35 F.3d 1308 (9th Cir. 1994), *as amended* (Oct. 13, 1994) ........................................6

*Sunbelt Rentals, Inc. v. Victor,*
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) .........................................................................8

*Tavernetti v. Superior Court,*
    22 Cal. 3d 187 (1978)..................................................................................................11

*Theofel v. Farey-Jones,*
    359 F.3d 1066 (9th Cir. 2004) ....................................................................................13

*Thompson v. Dulaney,*
    970 F.2d 744 (10th Cir. 1992) ....................................................................................12

*United States v. Smith,*
    155 F.3d 1051 (9th Cir. 1998)................................................................................6, 13

*Yunker v. Pandora Media, Inc.,*
    No. 11-cv-03113, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)................................6

**Statutes, Rules & Regulations**

U.S. Constitution Article III ................................................................................................1, 4, 5

U.S. Code

    18 U.S.C. §2510, *et seq.*................................................................................................1

    18 U.S.C. §2510(15) ....................................................................................................12

    18 U.S.C. §2511(1)(a) ...................................................................................................5

    18 U.S.C. §2511(1)(c) ...................................................................................................5

    18 U.S.C. §2511(1)(d) ...................................................................................................5

    18 U.S.C. §2701, *et seq.*...............................................................................................1

    18 U.S.C. §2701(a).......................................................................................................12

    18 U.S.C. §2702(a)(1)..............................................................................................12, 14

Federal Rules of Civil Procedure

    Rule 12(b)(6) ...............................................................................................................19

California Code

    Cal. Bus. & Prof. Code §17200......................................................................................1

    Cal. Bus. & Prof. Code §17204....................................................................................18

    Cal. Penal Code §632 ..............................................................................................14, 15

    Cal. Penal Code §631(a).......................................................................................... *passim*

    Cal. Penal Code §632(c)..............................................................................................15

## I.    INTRODUCTION

In the Amended Complaint ("AC"),[1] Plaintiffs allege that Apple Inc. ("Apple" or "Defendant") surreptitiously listens to Plaintiffs' and Class Members' confidential communications, including those which occur within the sanctity of consumers' own homes.  Worse, Apple records these conversations and transmits them to third-party vendors.  Apple does this without Plaintiffs' and the Class' knowledge or authorization in violation of Apple's promises that it would not listen to, record, disclose, and/or use users' private communications without their consent.  Apple's conduct invades Plaintiffs' and the Class' constitutional, statutory, and common law privacy rights, and thereby violates federal and California laws, including the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. §2510, *et seq*., Stored Communications Act ("SCA"), 18 U.S.C. §2701, *et seq.*, California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, and constitutes a breach of contract between Apple and Plaintiffs and the Class.

## II.    SUMMARY OF ARGUMENT

Plaintiffs have Article III standing because they have suffered actual, concrete, and particularized injury, which is the invasion of their privacy interest, *Patel v. Facebook*, 290 F. Supp. 3d 948, 954 (N.D. Cal. 2018), and because they overpaid for Siri Devices.  *Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x 359, 360–61 (9th Cir. 2009).

Plaintiffs and Class Members have a reasonable expectation that their private conversations will not be listened to or recorded absent their knowledge or authorization, *Flanagan v. Flanagan*, 27 Cal. 4th 766, 769 (2002), based on the context of the conversations, Plaintiffs' choice not to activate Siri Devices into listening mode, and Apple's own assurances in its privacy policies. *Matera v. Google Inc.*, Case No. 15-cv-0406-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014).  Therefore, Apple's conduct of surreptitiously listening, recording, and disseminating of Plaintiffs' private discussions between doctors and patients, confidential business deals, and sexual encounters violated Plaintiffs' federal and California privacy law, California Unfair Competition Law, and constituted a breach of contract

---

[1]    Amended Class Action Complaint, ECF No. 48 (Nov. 7, 2019).

between Apple and the Plaintiffs and the Class.  *See McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1037 (N.D. Cal. 2019); *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1033 (C.D. Cal. 2012).

Apple cannot excuse away its conduct by claiming that Apple's unlawful interception was "unintentional" because Apple obtained users' recordings for its own financial benefit, *In re Pharmatrak, Inc*., 329 F.3d 9 (1st Cir. 2003), and because Apple took no steps to remedy the purportedly "accidental" recordings.  *Rojas v. HSBC Card Servs. Inc*., 20 Cal. App. 5th 427 (2018). Neither can Apple successfully argue that it obtained consent from Plaintiffs by virtue of its disclosures.  Such consent would be directly contrary to Apple's express representations, and as such, could hardly be sufficiently specific and unambiguous.  *See In re Google Inc. Gmail Litig*., Case No. 13-MD-02430-LHK, 2013 WL 5423918, at *14 (N.D. Cal. Sept 26, 2013); *Campbell*, 77 F. Supp. 3d at 847.  That Apple's conduct was directly contrary to its written privacy policies is also sufficient to state a claim for a breach of contract and UCL violation based on contravention of California's public policy of protecting consumer data.  *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016).

## III.     ISSUES TO BE DECIDED

Whether Plaintiffs plead sufficient facts, taken as true, to state a claim for relief in the AC.

## IV.     FACTUAL BACKGROUND

Apple develops and manufactures Siri, an artificial intelligence-based, voice-recognition software, which is pre-installed on devices manufactured by Apple.  ¶18.[2]  Siri allows individuals to use their voice to ask questions and receive answers based on information available on the internet, and to give instructions for simple tasks that Siri executes, such as playing music, setting alarms and controlling other internet-connected home devices. *Id.*  To do that, Siri must be placed into "active listening" mode, by either uttering a "hot word" or by pressing a button on the device on which it is installed.  ¶¶19, 21.  For example, if a user asks Siri, "Hey, Siri, what is the weather in Los Angeles?", the Siri Device will provide a response based on information available on the

---

[2]     All references to "¶_" and "¶¶__" are to the AC and emphasis is added unless otherwise indicated.

internet.  *Id.*

Plaintiffs and Class Members have a reasonable expectation of privacy in their confidential communications, particularly those that take place in the sanctity of one's own home.  ¶30. California recognizes privacy as a fundamental right, and accordingly, the California Constitution, as well as California privacy laws, prohibit, *inter alia*, eavesdropping, recording, and sharing of confidential communications without the consent of all parties to the communication.  ¶¶27-28. Consumer studies confirm that the surreptitious taking of personal, confidential, and private information from individuals seriously offends consumers' expectations of privacy. ¶29.  Well aware of these expectations, Apple ***itself*** expressly and impliedly assures users that Siri Devices will ***only*** listen to and record their private, confidential communications ***if*** users speak a hot word or otherwise manually activate "active listening" mode.  ¶31.  To that effect, Apple's official privacy policy concerning the Siri Devices ("Privacy Policy")" states that "Siri is designed to protect your information and enable you to choose what you share."  *Id.*  Apple's Approach to Privacy webpage similarly stated that "personal data should always be protected [ ] and never shared without [users'] permission."  ¶32.  Moreover, if an individual were to ask Siri "Are you always listening," Siri is programmed to respond: "***I only listen when you're talking to me.***"  ¶24.  In, response to a July 2018 Congressional inquiry, Apple confirmed that "iPhone doesn't listen to consumers, except to recognize the clear, unambiguous audio trigger 'Hey Siri.'"  ¶25.

Contrary to Apple's representations, Apple has intercepted, recorded, disclosed, and misused private conversations of thousands of individuals, including minors, without consent.  ¶34. According to a July 26, 2019 investigative report in *The Guardian,* Apple collected audio recordings of Siri users in numerous instances where a hot word was never spoken.  ¶35.  The audio Apple recorded include countless instances of recordings featuring private discussions between doctors and patients, confidential business deals, and sexual encounters.  ¶36.  Critically, Apple disclosed these recordings to subcontractors for review and analysis and without users' knowledge.  ¶37. Following the publication of *The Guardian* Article, Apple admitted that Apple reviews a portion of the audio recordings and their computer-generated transcripts to assess Siri's reliability.  ¶¶38-39. Apple acknowledged its conduct failed to "fully liv[e] up to [its] high ideals" and announced a

3

1  temporary suspension of its human review program and the revisions to its policies relating to the

2  use of recorded interactions with Siri.  ¶38.

3  **V.     ARGUMENT**

4       A motion to dismiss should be denied where the complaint "'state[s] a claim to relief that is

5  plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).[3]  "A claim has facial plausibility

6  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

7  the defendant is liable for the misconduct alleged."  *Id.*  The court must accept factual allegations in

8  the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.

9  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

10       **A.      Plaintiffs Have Standing Under Article III of the U.S. Constitution**

11       To establish Article III standing, a plaintiff must demonstrate, *inter alia*, that he or she

12  suffered a concrete and particularized injury that is either actual or imminent.  *Mass. v. E.P.A.,* 549

13  U.S. 497, 517 (2007).  A plaintiff may demonstrate standing under distinct theories for separate

14  claims.  *See Pirozzi v. Apple, Inc.,* 966 F. Supp. 2d 909 (N.D. Cal. 2013).  Invasion of a privacy

15  interest confers standing under Article III, even without further harm. *See Eichenberger v. ESPN,*

16  *Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("every disclosure of an individual's 'personally identifiable

17  information' and video-viewing history offends the interests that the statute protects"); *Patel*, 290

18  F. Supp. 3d at 954 (invasion of a protected privacy interest confers standing without any "additional

19  injury").

20       Apple attacks Plaintiffs' Article III standing on the grounds that Plaintiffs fail to allege "any

21  actual or imminent injury-in-fact."  MTD[4] at 6.  Yet, Plaintiffs allege that despite its express

22  representations to the contrary (¶¶24-26, 31-32), Apple disclosed Plaintiffs' private information to

23  human reviewers around the globe without Plaintiffs' knowledge or authorization.  ¶¶34-38.  This

24  conduct violates Plaintiffs' federal and California statutory rights under the Wiretap Act (¶¶68-92),

25  the Stored Communications Act (¶¶93-118), the UCL (¶¶192-200), and the California privacy laws

---

3       Unless otherwise indicated, citations are omitted and emphasis is added.

4       Defendant Apple Inc.'s Notice of Motion and Motion to Dismiss Amended Class Action
Complaint, and Memorandum of Points and Authorities in Support Thereof, ECF No. 54 (Dec. 20,
2019) ("MTD").

1    (¶¶119-179).  As a result, Plaintiffs sufficiently allege injury-in-fact.  *In re Google, Inc. Cookie*

2    *Placement Consumer Privacy Litig.*, 806 F.3d 125, 150 (3d Cir. 2015) (recognizing that

3    dissemination of personal information where a user expected privacy confers Article III standing).

4        Moreover, economic harm based on the "benefit of the bargain" has been recognized as a

5    viable basis for standing.  *See, e.g., Chavez,* 340 F. App'x 359 at 360-61.  Plaintiffs allege concrete

6    economic injury in that: (i)  they did not receive the full privacy protections for which they paid

7    Apple (¶43); and (ii) they overpaid for Siri Devices, which are worth less due to Apple's invasion

8    of Plaintiffs' privacy (¶47).  *See, e.g.*, *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal.

9    2010) (plaintiffs pleaded injury in fact where defendant's "collection and disclosure of [plaintiffs']

10   undeniably sensitive information is not something that [plaintiffs] bargained for when they signed

11   up and paid fees for [defendant's] service").

12       Relying on *Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013), Apple contends that

13   Plaintiffs lack Article III standing because their allegations are based on "attenuated possibilities."

14   MTD at 6.  But *Clapper* is inapposite: the plaintiffs in *Clapper* merely speculated – without offering

15   "any evidence," of prior monitoring – that the Government would target their communications at

16   some point in the future.  *See Clapper,* 568 U.S. at 411.  Here, Apple, in fact, surreptitiously listened

17   to Plaintiffs' confidential conversations (¶¶33, 36) and transmitted these private discussions to

18   human reviewers for analysis (¶¶34, 36-37), along with other identifying data, such as users'

19   location, contact details, and app data.  ¶36.  Accordingly, *Clapper* stands in a stark contrast to this

20   case, and as such, does not compel the result Defendant suggests.

21       **B.      Plaintiffs State a Claim for Violation of the Wiretap Act and
              Section 631(a) of the CIPA**

22

23       Plaintiffs allege that Apple surreptitiously listens to Plaintiffs' and Class' confidential

     communications and discloses those communications to third parties without consent.  ¶¶34-41.

24   This conduct violates the Wiretap Act, which arises when any person "intentionally intercepts . . .

25   any wire, oral, or electronic communication" (18 U.S.C. §2511(1)(a)); or "intentionally discloses"

26   or "uses" "the contents of any wire, oral, or electronic communication," while "knowing or having

27   reason to know that the information was obtained through the [unlawful] interception."  18 U.S.C.

28   §2511(1)(c)-(d).  Such conduct also violates Section 631(a) of the CIPA, which similarly prohibits

5

1  unlawful wiretapping and its elements overlap with those of the Wiretap Act.  *Matera,* 2016 WL

2  5339806, at *10.

### 1.    Apple "Intercepts" Plaintiffs' Communications

4        For purposes of the Wiretap Act, the word "intercept" entails "*actually* acquiring the

5  contents of a communication."  *United States v. Smith,* 155 F.3d 1051, 1058 (9th Cir. 1998)

6  (emphasis in original).  An "acquisition" occurs "'when the contents of a wire communication are

7  captured or redirected in any way,'" *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009), and the entity

8  who "captured" or "redirected" it also had some measure of control over the communication.

9  *Siripongs v. Calderon*, 35 F.3d 1308 (9th Cir. 1994), *as amended* (Oct. 13, 1994).  As this Court has

10  previously held, a smartphone technology that turned on the smartphone's microphone and recorded

11  surrounding conversations, amounted to a "'capture' of the contents of an oral communication," and

12  therefore satisfied the meaning of "interception" under the Wiretap Act.  *See Satchell v. Sonic Notify,*

13  *Inc.,* 234 F. Supp. 3d 996, 1006 (N.D. Cal. 2017) (White, J.).

14        Plaintiffs here allege that Apple captured Plaintiffs' and Class' private communications by

15  designing Siri to spontaneously turn on and record their conversations.  ¶¶34, 36, 38, 81.  The

16  captured communications occurred without Plaintiffs' utterance of a hot word or manual activation,

17  demonstrating users' reasonable expectation that the communications would remain private.  ¶¶27-

18  33; *see* Sec. IV.B.3 *infra*.[5]  These allegations are sufficient to establish that Apple's surreptitious

19  listening, recording, and dissemination constitutes "interception" under the Wiretap Act.  *See*

20  *Satchell,* 234 F. Supp. 3d at 1007-08.  Cases on which Apple relies do not support Apple's

21  contention that Siri was the intended recipient of Plaintiffs' communications.  For example, the

22  plaintiff in *Crowly v. CyberSource Corp.,* 166 F. Supp. 2d 1263, 1265 (N.D. Cal. 2001), voluntarily

23  gave his personally identifiable information such as e-mail address, mailing address, and credit card

24  number to Amazon, which then transmitted the information to a third party for verification.  *Id.*  The

25  court in *Crowley* found that Amazon was a second party to an electronic communication sent by

26

27

---

28  [5]      To the extent Defendant repeats the same arguments in various sections of its MTD, in the
interest of avoiding needless repetition, Plaintiffs incorporate their arguments in opposition from all
other sections along with the authority cited in therein.

1   plaintiff.  *Id.* at 1269.  Similarly, in *Yunker v. Pandora Media, Inc.,* No. 11-cv-03113, 2013 WL

2   1282980, at *7 (N.D. Cal. Mar. 26, 2013) (J.,White), the plaintiff voluntarily provided his personally

3   identifiable information to Pandora.  Unlike in *Crowly* and *Pandora*, Apple intercepted Plaintiffs'

4   and Class' oral communications without their consent, authorization, or knowledge.  ¶¶77, 79-81.

5   *Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033, 1042-43 (N.D. Cal. 2014).

6          To be sure, Apple cannot excuse away its unlawful listening, recording, and dissemination

7   by blaming Plaintiffs for its own faulty design (MTD at 7-8), which allows "false triggers" of Siri

8   by "nearly anything," including by a "sound of a zip" and without any input from Plaintiffs and the

9   Class.  ¶35.  As set forth in detail in Section IV.B.2 *infra*, Apple was well aware of the existence of

10  Siri's spontaneous recording, yet took no steps to remedy the faulty design.  *Id.* Instead, Apple

11  benefited from it to the detriment of Plaintiffs and the Class.  ¶¶ 34-38.

### 2.      Apple's Interception Was Intentional

13         Apple contends that Plaintiffs cannot prove its conduct was "intentional," as required under

14  the Wiretap Act and Section 631(a) because: (1) Apple's interception of Plaintiffs' and Class'

15  confidential communication was "accidental" ; and (2) Apple uses "random identifies for all Siri

16  recordings."  MTD at 8.  Apple's arguments fail because they contradict Plaintiffs' allegations

17  evidencing Apple's consciousness of wrongdoing.  Plaintiffs allege – and Apple admitted – that

18  Apple obtained users' recordings for its own commercial and financial benefit, namely, to measure

19  how well Siri was responding, to improve its reliability, and to generate profit.  *See, e.g.,* ¶¶5, 37-

20  39, 85, 87, 89-90.  In fact, Apple imposed performance quotas on the human reviewers to encourage

21  the review of as many recordings as possible, without regard to whether such recordings were made

22  without users' consent.  ¶37.  *See Pharmatrak,* 329 F.3d at 23 ("An interception may be more likely

23  to be intentional when it serves a party's self-interest to engage in such conduct.").

24         Moreover, the AC alleges that Apple knew that Siri was designed to continuously listen to

25  Plaintiffs' and Class' conversations and to record them – including in instances where sounds

26  remotely resembling a hot word are uttered –  and to transmit the recording to its own servers and

27  to human reviewers for analysis.  ¶¶34-37.  Despite knowing that at least a portion of the audio

28  recordings resulted from false triggers, Apple took no steps to remedy the allegedly "accidental"

7

recordings, including having no specific procedures in place to deal with sensitive recordings, vetting third-party contractors, or restricting contractors' access to the scope of data. ¶37. Thus, instead of screening for false accepts – and immediately deleting them – Apple retained these recordings and gratuitously used them for its own financial benefit. *Id.* Clearly, Apple's actions were not a result of inadvertence, but instead, a deliberate corporate practice aimed at enhancing its own profits. *See, e.g., Backhaut,* 74 F. Supp. 3d at 1044 (finding Apple intentionally intercepted users' text messages where it knew of the defect yet failed to remedy it).

Cases cited by Defendant hardly supports its position. *See, e.g., Sunbelt Rentals, Inc. v. Victor,* 43 F. Supp. 3d 1026, 1030 (N.D. Cal. 2014) (finding lack of intent where the transmission of text messages to defendant was entirely of the plaintiff's own doing.); *Sanders v. Robert Bosch Corp.,* 38 F.3d 736 (4th Cir. 1994) (no one knew of the microphone's design defect and none of defendant's employees ever listened to, or recorded, any conversations by means of the defective microphone); *Jayne v. Bosenko,* No. 2:08-cv-02767-MSB, 2014 WL 2801198, at *25-26 (E.D. Cal. June 19, 2014) (granting summary judgment where employee testified she did not know she had to request that attorney calls not be automatically recorded.) Accordingly, Plaintiffs sufficiently allege that Apple's conduct was intentional for purposes of the Wiretap Act and Section 631(a).

### 3. Plaintiffs Allege Private Communications in Which They Have Reasonable Expectation of Privacy

Courts recognize individuals' expectation of privacy in their confidential and private communications, particularly those that take place in the sanctity of one's home. *See, e.g., Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring) ("[A] man's home is, for most purposes, a place where he expects privacy . . . ."). In an attempt to fit the Plaintiffs' allegations within those in *Satchell*, 234 F. Supp. 3d at 1008 (where plaintiffs failed to allege "oral communications"), Apple mischaracterizes Plaintiffs' AC to merely allege that "[Plaintiffs] had their iPhones with them in circumstances that *might* give rise to an expectation of privacy." MTD at 9. To be sure, the AC alleges that Plaintiffs and the Class have a reasonable expectation that their private conversations – including discussions between doctors and clients, business deals, and sexual encounters – will not be listened to or recorded absent the utterance of a hot word or manual

8

activation of Siri's listening mode.  ¶¶27-33.  This reasonable expectation is based on: (i) the context and setting in which the confidential conversations occurred, namely the solitude of their homes (¶¶30, 33); (ii) the choice not to speak a hot word or manually activate the Siri Devices (¶¶18-20, 29); (iii) Apple's own assurances in its Software License Agreement ("SLA") and Privacy Policy that the audio recordings will not be shared with third parties (¶¶31-33).  *See Matera,* 2016 WL 5339806, at *10 ("courts across the country have found that the unauthorized interception of an individual's private communications may state a claim for common law invasion of privacy").  *C.f. Rackemann v. LISNR, Inc.,* Case No. 1:17-cv-00624, 2017 WL 4340349, at *5 (S.D. Ind. Sept. 29, 2017) (noting that plaintiff's inability to "pinpoint the precise dates and times that his smartphone was activated" is not fatal).

### 4. Apple Lacked Consent to Record Plaintiffs' Confidential Communications

As the party seeking the benefit of the consent defense – and because Plaintiffs have pled that Plaintiffs and Class Members do not consent to the interception, recording, and disclosure of their confidential communications (*see, e.g.*, ¶¶111-112) – "the burden is on [Apple] to prove that it obtained consent."  *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (Koh, J.).

### a. Plaintiffs Lopez, Henry, and Harms Never Consented to the Collection of Their Confidential Information

Apple argues that Plaintiffs consented to Apple's "collection" of their private communications following a false trigger "by enabling and using Siri and continuing to use Siri while knowing that they may inadvertently trigger Siri."  MTD at 9.  This is simply false and contrary to the allegations in the complaint.  ¶¶5, 7, 47, 157, 191, 199.  Apple also argues that Plaintiffs consented to the recordings of their private communications when they agreed to the SLA, which informs users that the operation of iOS software on the device "***may*** not be 'error free.'" MTD at 10.  However, Plaintiffs' case does not rest on whether Apple's privacy policy explicitly promised Siri to operate error-free.  Rather, it rests on Apple's express and implied assurances to Plaintiffs and the Class that Siri Devices will not listen and record their private, confidential communications, absent Plaintiffs' unequivocal consent, *i.e.*, the utterance of a hot word or manual activation of Siri Devices.  ¶¶30-33.  Contrary to its representations, Apple recorded and used

1   Plaintiffs' confidential communications without their consent.

2       Moreover, to establish that consent was given, Apple must show that the language upon

3   which it relies is specific and unambiguous. *See, e.g.¸ Campbell,* 77 F. Supp. 3d at 847 (disclosure

4   that Facebook "'***may use*** the information [it] received about [users]'" for "'***data analysis***'" was "not

5   specific enough" to establish express consent to the scanning of users' messages for use in targeted

6   advertising). Here, for there to be consent, a reasonable user viewing Apple's SLA or Privacy Policy

7   would have to understand that Apple listens to their communications – including without the

8   utterance of a hot word or manual activation – and discloses the contents thereof to third parties for

9   analysis. The SLA, which merely warns users that the device "***may*** not be 'error free'" does not

10  achieve that objective. *See Google Inc. Gmail Litig.*, 2013 WL 5423918, at *14 (no consent where

11  Google's Terms of Service and Privacy Policy did not "specifically mention the content of users'

12  emails to each other or to or from non-users").

13          **b.      Minor Plaintiffs Never Consented to Apple's Surreptitious
                      Listening**

14

15      Apple was obligated to secure consent from minors, including A.L. prior to intercepting their

16  confidential communications. *Pharmatrak*, 329 F.3d at 19 ("[T]he burden is on [Apple] to prove

17  that it obtained consent."). Apple cannot do so for the same reasons it cannot establish consent as to

18  Plaintiffs, namely because it made express representations directly contrary and inconsistent with

19  any purported consent. *See* Sec. IV.B.a. Further, Apple's other argument that "A.L. interacts with

20  [and uses] Siri" with full knowledge and consent of A.L.'s guardian" (MTD at 10) completely

21  misses the mark. A.L.'s mere interaction with and use of Siri is not at issue in this case. At issue is

22  Apple's surreptitious listening, recording, and dissemination of A.L.'s interactions with Siri, of

23  which neither A.L. nor A.L.'s guardian had any knowledge. ¶¶24-39. Apple's cited authority,

24  *C.M.D. ex rel. De Young v. Facebook, Inc.,* 621 F. App'x 488 (9th Cir. 2015), is of no avail to its

25  argument because there, unlike here, the defendant's contract fully disclosed the practices of

26  collecting personal data during the use of their service. *See id.* at 489 (Facebook's terms of service

27  included a provision that gave Facebook the right to use their names and likenesses in

28  advertisements.). No such disclosure was made by Apple here.

C.    **Plaintiffs Allege Violation of Section 631(a) Regardless of Wire Communications**

Section 631(a) proscribes three separate acts: (1) intentional wiretapping, (2) willful attempts to learn the contents of a communication in transit, and (3) attempts to use or publicize information obtained in either manner.  *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192-193 (1978).  Plaintiffs' allegations that: (i) Apple made a secret and unauthorized connection with Plaintiffs' Siri Devices (¶¶34, 36, 38); (ii) through which it learned the contents of Plaintiffs' confidential communications (¶¶33, 36); and (iii) transmitted the contents thereof to Apple's servers for Apple's own financial benefit (¶¶36-37) suffice to state a claim for violation of Section 631(a).  *See, e.g.*, *Matera*, 2016 WL 5339806, at *10 ("unauthorized interception of an individual's private communications may state a claim for common law invasion of privacy").

Without offering a single supporting authority, Apple seeks to constrain the application of §631(a) to only "wire communications."  MTD at 10-11.  In so doing, Apple ignores the independent second clause of §631(a) which applies to "any message, report, or communication," "being sent from, or received at any place within this state" without regard to whether such connection was made with via a telephone, wire, line, cable, or instrument.  *See* Cal. Penal Code §631(a).  Thus, contrary to Apple's argument, §631(a) expressly applies to unlawful acts other than those occurring on wires, lines, and cables.  *See Google Inc. Gmail Litig.*, 2013 WL 5423918, at *20 ("[there is] no reason to conclude that the limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause of the statute should be imported to the second clause of the statute").  Moreover, Apple fails to explain why Siri does not fall within the definition of an instrument, which Plaintiffs allege Apple intercepted.  ¶¶126-129.  *See* Cal. Penal Code §631(a); *see also Google Inc. Gmail Litig.*, 2013 WL 5423918, at *21 ("[T]he California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme.").  Accordingly, Plaintiffs stated a claim for violation of Section 631(a).

D.    **Plaintiffs Plead Unlawful Disclosure Under the Wiretap Act**

To establish use and disclosure liability, "a defendant must be shown to have been aware of the factual circumstances that would violate the statute . . . and that the defendant knew [or had a reason to know], *inter alia,* that neither party to the intercepted conversation had consented to the

11

interception." *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992). As set forth in detail in Sec. IV.B.2 *supra*, the AC is replete with allegations that evidence Apple's awareness and consciousness of wrongdoing. *See id.* These allegations easily establish unlawful disclosure by Apple in contravention of §2511 of the Wiretap Act. Apple's case does not demand a different result. *See Noel,* 568 F.3d at 751 (holding that Plaintiff could not claim a use or disclosure violation based on the dissemination of the phone conversations that plaintiff himself intercepted.)

### E.    Plaintiffs State a Claim for Violation of the Stored Communications Act

The SCA provides a private cause of action against anyone who: "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) initially exceeds an authorization to access that facility. . . while it is in electronic storage in such system . . . ." 18 U.S.C. §2701(a). The SCA also prohibits a person or entity providing an electronic communication service from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. §2702(a)(1). Plaintiffs here allege that Apple accesses Siri when it is not authorized to do so and no consent has been given. These allegations are sufficient to plead an SCA claim.

### 1.    Apple's Siri Service Constitute a "Facility" Under the SCA

While not defined in the statute, a "facility" for purposes of the SCA is considered to be something through which an electronic communication service is provided. *See In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1057 (N.D. Cal. 2012). An electronic communications service is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. §2510(15). Web servers and computer servers generally meet such criteria. *See Pharmatrak,* 329 F.3d at 14 . Here, Plaintiff alleges that Apple's Siri is the "facility" through which Apple gained unauthorized access to, or exceeded authorization to access, Plaintiffs' personal conversations when Siri transmitted these communications to Apple's servers without a hot word being uttered or Siri being otherwise manually activated. ¶¶107-109. Apple knowingly divulged the contents of those conversations when it transmitted the communications to third parties. ¶¶114-115.

1

### 2.    Plaintiffs Allege Unauthorized Access to Communications Facility

2    While the term "access" is not defined within the SCA, courts have construed the term as

3    "*being in position* to acquire the contents of a communication." *Smith*, 155 F.3d at 1058 (emphasis

4    in original).  Thus, someone accesses a communications facility "by simply making ***unauthorized***

5    ***use of [a] . . . password and roaming about [a facility]***," even without recording or disclosing data

6    stored on that system.  *Id.*

7    Plaintiffs' AC establishes Apple's unauthorized access by alleging that Apple itself

8    expressly and impliedly assured Plaintiffs and the Class that Siri would only listen to, record, and

9    disseminate their conversations with their ***consent***, which can ***only*** be given by uttering "hot words,"

10    manually pressing a button, or lifting one's Apple Watch to their mouth and beginning to speak.

11    ¶¶4; 31-33.  Despite the limitation to Apple's authorization to access personal communications,

12    Apple placed itself, and third parties, in a position from which it could acquire the contents of

13    Plaintiffs' communications.  ¶¶34-42.  These allegations are sufficient to establish unauthorized

14    access.

15    Furthermore, Apple exceeded any authorization it may have had given that Plaintiffs never

16    consented to Apple's retention, processing, and dissemination of Plaintiffs' communications.  *See*

17    *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004) ("Section 2701(c)(1) therefore provides

18    no refuge for a defendant who procures consent by exploiting a known mistake that relates to the

19    essential nature of his access.").  *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014),

20    on which Apple relies, is distinguishable.  In *Perkins*, defendant's disclosures of its data collection

21    were sufficiently detailed such that reasonable users would have understood that defendant was

22    collecting plaintiffs' data.  *Id.* at 1212.  In contrast, Apple's policies never disclosed Apple's

23    recording and dissemination of users' personal communications absent hot word or manual

24    activation.  Therefore, Apple's access of this type of communication was not authorized in the first

25    place, and any subsequent access (or use) of the information on Apple's servers, was likewise

26    unauthorized.

27    ### 3.    Plaintiffs and the Class Never Consented to Apple's Practices

28    Apple repeats the mantra that its illicit practices were "accidental" (MTD at 13), and

13

therefore, Plaintiffs cannot establish the element of "intent" for purposes of the SCA. *Id.* These arguments fail for the same reasons they fail in the context of the federal Wiretap Act and the CIPA claims. *See* Secs. IV.B.2 *supra*.

In a related argument, Apple contends that its conduct is "exempt" from liability under Section 2702(a)(1) because Plaintiffs consented to the access, use, and dissemination of their confidential communications because Apple's Privacy Policy allows it to do so. MTD at 14. Apple, however, ignores the provision of the Privacy Policy that is specific to audio information, which expressly prohibits the conduct alleged in the AC. The Privacy Policy and the Ask Siri, Dictation & Privacy documents state that such information will only be collected when the audio features are in use. *See, e.g.*, Declaration of Isabelle L. Ord, ECF No. 54-1, Exs. C at 1 ("When you **use** Siri and Dictation, the things you say and dictate will be sent to Apple to process your requests."). Here, the AC alleges that Apple obtains and disseminates recordings when the audio devices are ***not*** in use – when no hot word is communicated or physical activation has occurred. Accordingly, rather than permit the conduct complained of, the Privacy Policy prohibits it.

### F.    Plaintiffs State a Claim for Violation of Section 632 of the CIPA

To state a claim under California Penal Code §632, a plaintiff must allege (1) an electronic recording of or eavesdropping on (2) a confidential communication (3) to which all parties did not consent. *Flanagan*, 27 Cal. 4th at 769. Plaintiffs' allegations that Apple records their confidential communications without consent do just that.

#### 1.    Apple – Not Plaintiffs – Recorded Plaintiffs' and the Class' Confidential Communication

Without authority, Apple argues – as it did for purposes of the Wiretap Act, the SCA, and Section 631(a) of the CIPA – that it cannot be liable under Section 632 because Plaintiffs had the ability to "turn the device off." MTD at 15. Apple's argument completely misses the mark. A claim for violation of Section 632 of the CIPA cannot – and does not – rest on the ability of the complaining party to turn off the intercepted device. This is because eavesdropping is, by definition, "secret," and therefore, unknown to the parties whose conversation is being monitored by an unannounced second auditor. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("eavesdrop," as used in §632, refers to a third party ***secretly*** listening to a conversation between two other parties.).

14

1   Because Apple eavesdropped on Plaintiffs' and Class' confidential conversations without making

2   its presence known (¶¶ 34-36), it deprived Plaintiffs and the Class of the choice to keep their

3   conversations private, contrary to their privacy expectations.  Allowing Apple to deflect liability by

4   blaming Plaintiffs for not turning off their Siri Devices (MTD at 15) impermissibly defeats the

5   purpose of Section 632.

6              **2.        Apple's Interception Was Intentional**

7          Apple's next contention – that Section 632 does not apply because Apple's unlawful

8   interception of Plaintiffs' and Class' confidential communication was "inadvertently triggered"

9   (MTD at 15) – fails for the same reasons as set forth in detail by Plaintiffs in the context of the

10  Wiretap Act (*see* Section IV.B.2 *supra*), namely because Apple obtained users' audio recordings

11  for its own financial and commercial benefit (¶¶ 37-39) and because it failed to remedy the known

12  design flaw of Siri's spontaneous triggers (¶ 37).  Cases cited by Apple do not support its position

13  because they are easily distinguishable on their facts.  In *People v. Superior Court of Los Angeles*

14  *Cty.,* 70 Cal. 2d 123, 125 (1969), the inadvertent recording occurred in the context of ***testing*** the

15  performance of audio-recording equipment, and in *People v. Buchanan*, 26 Cal. App. 3d 274 (1972),

16  a switchboard operator "inadvertently" overheard a telephone conversation during the "***moment***[ ]"

17  in time that she was required to stay on the line to ensure a proper connection.  *See also Rojas,* 20

18  Cal. App. 5th 427 (distinguishing *Buchanan* and noting "there was nothing inadvertent or

19  momentary" about HSBC recording 317 telephone calls).

20              **3.        Plaintiffs Have Alleged Confidential Communication Under Section 632**

21          Section 632(c) defines "confidential communication" as "any communication carried on in

22  circumstances as may ***reasonably indicate*** that ***any party*** to the communication ***desires*** it to be

23  ***confined to the parties thereto*** . . . "  Cal. Penal Code §632(c).  As articulated in a unanimous

24  decision of the California Supreme Court, the test whether a conversation is confidential hinges on

25  whether a party to that conversation has an "objectively reasonable expectation that the conversation

26  is not being overheard or recorded" ***regardless of the content of the conversation***.  *Flanagan,* 27

27  Cal. 4th at 776-77.  Apple's argument that Plaintiffs failed to allege "confidential communication"

28  (MTD at 15-16) is the same argument as that set forth by Apple in the context of the Wiretap Act

1  and Section 631(a) and fails for the same reasons here.  *See* Section IV.B.3 *supra.*  Apple's purported

2  authority, *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013), does not salvage

3  its argument.  Unlike here, the plaintiff in *Faulkner* made "bare bones allegations" of his expectation

4  of privacy in a business call he placed in order to "dispute a charge."  *Id.*  Expectedly, those

5  allegations were insufficient to create an inference of confidential conversation.

6      **G.**    **Plaintiffs State a Claim for Violation of Plaintiffs' and Class' Privacy Rights**

7        Where a claim for violation of privacy under the California Constitution is asserted in

8  combination with the tort claim of intrusion upon seclusion, California courts examine two parallel

9  elements: (1) the nature of the intrusion upon reasonable expectations of privacy; and (2) the

10  offensiveness or seriousness of the intrusion.  *Kiloo ApS*, 385 F. Supp. 3d at 1037.  Plaintiffs'

11  allegations easily satisfy both elements.

12        Apple does not – and cannot – challenge Plaintiffs' allegations regarding the reasonable

13  expectation of privacy in the confidential communications nor the offensiveness of its conduct.

14  MTD at 16.  So instead, Apple attacks: (i) Plaintiffs' allegedly continued use of Siri; and (ii) the

15  sufficiency of Plaintiffs' allegations.  *Id.*  Apple's arguments fail.  Apple's first contention that

16  Plaintiffs' continued use of Siri constitutes consent finds no basis in law.  In fact, Yahoo has asserted

17  the exact same arguments in *Yahoo Mail*, 308 F.R.D. 577, which this Court has squarely rejected as

18  "***overly narrow*** in the consumer protection context."  *Id.* at 588. There, the Court explained that

19  construing users' continued use as a consent would put plaintiffs in a catch-22, requiring them to

20  allege both that (1) plaintiffs discontinued the use to avoid consent and (2) continued the use in order

21  to establish injury for purposes of standing.  *Id.*  Apple's argument should be rejected here too.

22        Apple's other contention that Plaintiffs failed to "sufficiently plead[]" claims for violation

23  of their privacy rights (MTD at 16) likewise fails.  Plaintiffs allege the type of information Apple

24  accessed (¶¶34-36); the means by which Apple recorded the communications (*id.*); the method by

25  which Apple's vendors gained access to the recordings (¶36); the purpose for which Apple recorded

26  and disseminated such communications (¶37); and the studies and consumer surveys establishing

27  social norms relating to Apple's intrusion (¶29).  Courts have previously found similar allegations

28  sufficient.  *See Kiloo ApS*, 385 F. Supp. 3d at 1035 ("Plaintiffs state in detail what data was secretly

collected, how the collection was done, and how the harvested data was used" and established via consumer surveys the alleged offensiveness of recording.); *also see Mintz,* 906 F. Supp. 2d at 1033 (expectation of privacy found in email where plaintiff was the sole account holder, only used his email for personal matters, had the email account password protected, and did not give consent to defendants to access it).

Defendant's cases are to no avail.  In *Yahoo Mail,* plaintiffs "'allege[d] no facts regarding the content of their emails, the intent in sending the emails, the circumstances under which the emails were sent, or who the recipients were[.].'"  *Id.* at 1039.  The court in *Yahoo* was essentially asked to recognize a protected privacy interest "in email *generally . . . **regardless of the specific content in the emails***."  (first emphasis in original).  *Id.* at 1040.   Apple's other cases are equally inapposite: *See also Folgelstrom v. Lamps Plus, Inc.,* 195 Cal. App. 4th 986 (2011), as modified (June 7, 2011) (concerning retailer obtaining customer's ZIP code); *iPhone Application*, 844 F. Supp. 2d at 1063 (unique device identifier number, personal data, and geolocation was not sufficiently serious to constitute "egregious breach").

### H.    Plaintiffs State a Claim for Breach of Contract

Apple's contracts promise that: (1) the Siri Devices will only record communications when the device is in use, *i.e.*, when a hot word has been spoken; and (2) that recordings made from such Devices will not be shared with third parties without consent.  ¶¶31-32, 186-188.  These guarantees are made in Apple's privacy policies, which are expressly incorporated in Apple's SLA, and are therefore, part of the contract between Apple and Plaintiffs and the Class.  ¶¶182-185.  Contrary to these representations, the Siri Devices record conversations absent the utterance of a hot word or manual activation, and disseminate the conversations to third-parties without Plaintiffs' consent.  ¶¶35-36, 188-189.  Consequently, Apple has breached its contract with Plaintiffs and the Class. ¶190.

In arguing that the promises Apple is alleged to have breached are not part of the contract (MTD at 16-17), Apple relies on *Baltazar v. Apple Inc.*, 2011 U.S. Dist. Lexis 147502, *8 (N.D. Cal. Dec. 22, 2011), which is entirely inapposite.  MTD at 17-22.  In *Baltazar*, the breach of contract claim rested on a promise made in an iPad commercial that iPads would work "relentlessly outdoors

17

1   in sunlight" based on a few seconds long commercial that showed the iPad in an outdoor setting.

2   *Id.*, at *8.  In contrast, the promises given by Apple are set forth in the Privacy Policies that are

3   expressly incorporated into the SLA (¶¶182-185), and as such, are part of the bargain between Apple

4   and Plaintiffs and the Class.  *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F.

5   Supp. 3d 767, 791 (N.D. CA 2019).  Apple's policy is also unlike the policy at issue in *Dyer v. Nw.*

6   *Airlines Corps.*, 334 F. Supp. 2d 1196, 2000 (D.N.D. 2004) on which Apple relies, because there,

7   the promises appeared on a website, which, unlike here, was not linked to any contract.

8       Apple argues that Plaintiffs' breach of contract claim fails to adequately allege a breach

9   because the contracts provide that: (1) Apple's services will not be error-free; and (2) Apple and its

10  contractors may use recordings to improve Siri.  MTD at 17.  This is the same argument Apple

11  asserts over and over and fails for the same reason as set forth by Plaintiffs above.  *See e.g.,* Sec.

12  IV.B.2.  Accordingly, Apple's purported disclosures do not excuse its breaches of contract.

13      **I.    Plaintiffs State a Claim Under California's Unfair Competition Law**

14      Apple challenges Plaintiffs' UCL claims by arguing that Plaintiffs: (i) do not have standing

15  under the UCL; (ii) have not adequately pled a predicate violation of law under the UCL's

16  "unlawful" prong; and (iii) have not adequately alleged that Apple's conduct violates the UCL's

17  "unfair" prong.  MTD at 18-19.  Each challenge fails.

18      First, Plaintiffs have adequately alleged their standing pursuant to the UCL as they have

19  alleged they've suffered "injury in fact" and have "lost money or property" as a result of Apple's

20  violations.  Cal. Bus. & Prof. Code §17204.  Indeed, Plaintiffs plainly allege that they would not

21  have purchased, or would not have paid as high a price for, their Siri devices had they known that

22  Apple was intercepting, recording, and otherwise misusing their conversations without their

23  authorization.  ¶¶7, 47, 191, 199; *see also* Sec. IV.A. *supra*.  These allegations fall directly within

24  the holding of the California Supreme Court that economic loss under the UCL includes paying

25  more or acquiring less in a transaction than one should have.  *Kwikset Corp. v. Superior Court*, 51

26  Cal. 4th 310, 323 (2011).

27      Second, Plaintiffs have adequately alleged that Apple has violated at least three distinct

28  statutes:  the Wiretap Act, the SCA, and the CIPA.  *See* Sec. IV.B-F *supra*.  Consequently, Plaintiffs

have adequately alleged predicate violations of law pursuant to the UCL's "unlawful" prong.  *See In re Yahoo! Inc. Customer Data Sec. Breach Litig*., Case No. 16-MD-2752, 2017 WL 3727318, at *23 (N.D. Cal. Aug. 30, 2017) ("To the extent that Plaintiffs have sufficiently alleged these stand-alone causes of action, Plaintiffs have also alleged violations of the unlawful prong of the UCL.").

Third, while Apple argues that the utility of their devices outweighs the harm to Plaintiffs and, therefore, claims under the UCL's "unfair" prong must fail, such arguments are directly contradicted by the allegations in the AC.  California courts apply a balancing approach, which requires courts to "weigh 'the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'"  *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1169 (9th Cir. 2012). Here, Plaintiffs have clearly alleged that the utility of Apple's Siri devices is heavily outweighed by the harm suffered by Plaintiffs and the class.  Plaintiffs allege that each of Apple's unconsented recordings is an "egregious breach of social norms" and that Apple "intentionally, willfully, and knowingly violated consumers' privacy rights, including within the sanctity of consumers' own homes where they have the greatest expectation of privacy."  ¶¶5, 6, 168.  Such allegations satisfy the unfairness prong of the UCL.  *See Anthem, Inc. Data Breach,* 162 F. Supp. 3d at 990 (finding the unfair prong satisfied where defendants' actions violated California's public policy of protecting consumer data).  Accordingly, Plaintiffs' claims under the unlawful and unfair prongs of the UCL should be upheld.

## J.    Plaintiffs State a Valid Claim for Declaratory Judgment

Apple's challenge to Plaintiffs' Declaratory Judgment count fails.  On a motion to dismiss under Rule 12(b)(6), the only issue is whether the plaintiff has stated claim for declaratory relief.

## VI.    CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety.

Dated:  January 29, 2020               **LEXINGTON LAW GROUP**

*/s/ Mark N. Todzo*
Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
503 Divisadero Street
San Francisco, CA  94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com

19

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

John T. Jasnoch (Bar No. 281605)
Stephanie A. Hackett (Bar. No. 238655)
Hal C. Cunningham (Bar No. 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com
shackett@scott-scott.com
hcunningham@scott-scott.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: (205) 612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*