ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
AMANDA C. FITZSIMMONS (Bar No. 258888)
amanda.fitzsimmons@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (*pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (*pro hac vice*)
eric.roberts@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, and FUMIKO LOPEZ, as guardian of A.L., a minor, LISHOMWA HENRY, and JOSEPH HARMS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a Delaware corporation,<br><br>Defendant. | CASE NO. 5:19-CV-04577-JSW<br><br>**DEFENDANT APPLE INC.'S STATEMENT OF RECENT DECISION**<br><br>[RE: ECF 54]<br><br>Date:   N/A<br>Time:   N/A<br>Crtrm:   5 (2nd Floor, Oakland)<br>Judge:   Hon. Jeffrey S. White<br><br>Complaint filed:  August 7, 2019 |

1    Pursuant to Northern District of California Civil Local Rule 7-3(d)(2), Defendant Apple

2   Inc. ("Apple") respectfully submits this Statement of Recent Decision to bring to the Court's

3   attention the following relevant judicial opinion issued by the Honorable Beth Labson Freeman of

4   the United States District Court for the Northern District of California, which was issued after

5   Apple filed its Reply in Support of its Motion to Dismiss the Amended Class Action Complaint:

6       • *In Re Google Assistant Privacy Litigation*, Case No. 19-cv-04286-BLF, 2020 WL

7         2219022 (N.D. Cal. May 6, 2020).

8    A true and correct copy of this decision is attached hereto as Exhibit A.

9   Dated: May 12, 2020                    **DLA PIPER LLP (US)**

10                                         By: /s/ *Amanda C. Fitzsimmons*

11                                            RAJ N. SHAH
                                             ISABELLE L. ORD
12                                           AMANDA C. FITZSIMMONS
                                             ERIC M. ROBERTS
13
                                             Attorneys for Defendant APPLE INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

2020 WL 2219022
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

IN RE GOOGLE ASSISTANT
PRIVACY LITIGATION

Case No. 19-cv-04286-BLF
|
Signed 05/06/2020

**ORDER RE DEFENDANTS' MOTION TO DISMISS**

[Re: ECF 56]

BETH LABSON FREEMAN, United States District Judge

 **\*1** The instant litigation comprises two separately-filed cases that the Court has consolidated. *See* ECF 42 (consolidating *Kumandan et al. v. Google LLC et al.*, Case No. 19-cv-04286-BLF and *Galvan et al. v. Google LLC et al.*, Case No. 19-cv-04360-BLF). Both cases charge Defendants Google LLC and Alphabet, Inc. with unlawfully intercepting, recording, disclosing, and using the private conversations of thousands of users of the Google Assistant software. Presently before the Court is Defendants' motion to dismiss the entire consolidated suit. ECF 56. Having considered the parties' arguments and the applicable law, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss; further, any dismissals are WITH LEAVE TO AMEND.

**I. BACKGROUND**

This is a putative consumer class action concerning the Google Assistant, a virtual assistant software developed by Defendants Google LLC and Alphabet, Inc. for use on various "Google Assistant Enabled Devices" ("GAEDs") manufactured by Defendants and by third parties. Specifically, the operative Consolidated Amended Class Action Complaint ("Consolidated FAC"), which was filed on October 25, 2019, ECF 48, contains the following allegations:

The Google Assistant is a voice-activated software, which means that users can ask questions of and give instructions to the Google Assistant using their voices. ECF 48 ("Consol. FAC") ¶¶ 2, 22. This software comes preloaded onto certain devices, such as the Google Home, the Google Pixel smartphones, and third party-manufactured smartphones that use the Google Android operating system; it can also be installed on a range of devices. *Id.* ¶ 2. Because the Google Assistant is voice-activated, it is constantly listening for "hotwords"—i.e., "Okay Google" or "Hey Google." *Id.* ¶ 22. It does this by recording and analyzing short snippets of audio, which are stored locally in the Google Assistant Enabled Device's random-access memory ("RAM"); these snippets are continuously overwritten, however, if no hotwords are detected. *Id.* ¶ 23. When the hotwords are detected, the Google Assistant switches into "active listening" mode, meaning that it begins recording and analyzing audio in order to carry out the user's command. *Id.* ¶ 24. The Google Assistant can also be manually activated by pressing a button on the device. *Id.*

Plaintiffs allege that Defendants also keep and use the audio recordings for two purposes other than carrying out the user's command: (1) to target personalized advertising to users, and (2) to improve the voice recognition capabilities of the Google Assistant. *Id.* ¶ 25. The focus of this suit is the latter. Citing a 2019 news article by VRT NWS, Plaintiffs allege that the Google Assistant produces a script of each audio recording that it stores; Defendants then task human subcontractors with comparing the script to the audio recording to check the accuracy of the Google Assistant's interpretation. *Id.* ¶ 35. In a blog post responding to this and similar reports, Google apparently confirmed that it uses human reviewers to analyze audio recordings, but stated that only "0.2 percent" of all audio recordings are subject to such analysis. *Id.* ¶ 39.

 **\*2** Sometimes, the Google Assistant may be triggered into active listening mode when the Google Assistant misperceives other words as the hotwords. This is known as a "false accept." *Id.* ¶ 39. Plaintiffs believe that in such situations, Defendants do not destroy the audio recordings, but rather continue to use them for personalized advertising and to analyze the accuracy of the Google Assistant—just as Defendants would do with authorized recordings. *Id.* ¶¶ 38, 41. As evidence, Plaintiffs point to the investigation carried out by VRT NWS, in which VRT NWS reviewed "more than a thousand" audio recordings and "identified 153 conversations" that were recorded due to false accepts. *Id.* ¶ 36.

This suit is based on Defendants' use of audio recordings in "false accept" situations. In Plaintiffs' view, such use is an invasion of privacy, especially because many of the

recorded conversations take place in individuals' homes. *Id.* ¶¶ 27-30. Plaintiffs also believe that this practice contravenes the privacy assurances that Defendants make to users in their Privacy Policy. *Id.* ¶ 31. Finally, Plaintiffs are particularly troubled by the fact that some of the recordings include the conversations of children because they do not believe that these children can consent to being recorded. *Id.* ¶ 42.

Based on the foregoing, Plaintiffs have sued Google LLC and its parent company Alphabet Inc. under various state and federal laws. There are 12 claims in the Consolidated FAC: (1) violation of the federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*; (2) violation of the federal Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq.*; (3) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a); (4) violation of the CIPA, Cal. Penal Code § 632; (5) intrusion upon seclusion under California common law; (6) invasion of privacy, in violation of Article I, Section 1 of the California Constitution; (7) breach of contract under California common law; (8) breach of express warranty under Cal. Comm. Code § 2313; (9) breach of the implied warranty of merchantability under Cal. Comm. Code § 2314; (10) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; (11) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (12) request for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* Consol. FAC ¶¶ 76-252.

These claims are brought by five Named Plaintiffs:

- Plaintiff Asif Kumandan is a resident of Kings County, New York. Consol. FAC ¶ 13. He alleges that he owned a Google Pixel smartphone during the Class Period (defined below) and that he "interacted with the Google Assistant on his Google Pixel repeatedly." *Id.* ¶ 52.

- Plaintiff Melissa Spurr is a resident of Union County, New York. *Id.* ¶ 14. She alleges that she owned a Google Home device during the Class Period and that "she interacted with this Google Home device repeatedly." *Id.* ¶ 51.

- Plaintiff B.S. is a minor member of Plaintiff Spurr's household; as such, she has allegedly interacted with Plaintiff Spurr's Google Home device during the Class Period. *Id.* ¶¶ 15, 51. She brings suit by and through her legal guardian, Plaintiff Spurr. *Id.* ¶ 15.

- E.G., is a member of Plaintiff Galvan's household; she was a minor during a portion of the Class Period but now brings suit on her own. *Id.* ¶¶ 17, 53. Plaintiff E.G. alleges that she owned a Samsung Galaxy Tab device on which she activated the Google Assistant. *Id.* ¶ 53. She further alleges that she interacted with the Samsung Galaxy Tab device repeatedly during the Class Period. *Id.*

- Lourdes Galvan is a resident of Los Angeles County, California. *Id.* ¶ 16. She alleges that she interacted with Plaintiff E.G.'s Samsung Galaxy Tab device during the Class Period. *Id.* ¶ 53.

**\*3** To be precise, all five Named Plaintiffs assert Counts 1-7 and 11-12 on behalf of themselves and the following nationwide "Class":

> All individual purchasers of a Google Assistant Enabled Device, who reside in the United States and its territories and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were shared with third parties without their consent from at least as early as May 18, 2016 to the present, or during the applicable statute of limitations period (the "Class Period").

Consol. FAC ¶ 60. As for Counts 8, 9, and 10, Plaintiffs Kumadan and Spurr assert these claims on behalf of themselves and the "Google Manufactured Device Subclass," which is defined as:

> A Subclass of individual purchasers of a Google Manufactured Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were

shared with third parties without their consent during the Class Period.

*Id.*

Defendants now move to dismiss the Consolidated FAC in full pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 56 ("Mot.") at 1. The motion has been fully briefed and was heard on April 9, 2020. ECF 58 ("Opp."); ECF 61 ("Reply"); ECF 75 (hearing).

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). In other words, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.' " *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

A court's review on a 12(b)(6) motion to dismiss "is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Moreover, in evaluating the complaint, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). At the same time, a court need not accept as true "allegations that contradict matters properly

subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

## III. REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

**\*4** Defendants have submitted six exhibits that they ask the Court to review in ruling on their motion to dismiss. *See* ECF 56-1 ¶¶ 2-7; *id.* at Ex. A-F. Defendants believe these exhibits are either incorporated by reference by the Consolidated FAC or subject to judicial notice.

There are two doctrines that permit district courts to consider material outside the pleadings without converting a motion to dismiss into a motion for summary judgment: judicial notice under Federal Rule of Evidence 201 and incorporation by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). The judicial notice doctrine permits a court to take judicial notice of matters that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. For instance, though public records are generally subject to judicial notice, a court may not take judicial notice of disputed facts within public records. *Id.*

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. This doctrine permits a court to consider a document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court generally "may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Khoja*, 899 F.3d at 1003 (internal quotations omitted). Because all inferences must still be drawn in the nonmoving party's favor, however, "it is improper to assume the truth of an incorporated

document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

Having reviewed the basic principles of judicial notice and incorporation by reference, the Court turns to each of the six documents Defendants have submitted. Plaintiffs have not opposed the Court's consideration of any of the documents at issue.

Exhibit A is a copy of the 2019 news report by VRT NWS cited by Plaintiffs in Consolidated FAC. ECF 56-1, Ex. A; *see* Consol. FAC ¶¶ 34-38. Defendants ask the Court to treat the article as incorporated by reference; Defendants also argue that the article is subject to judicial notice, as it "appears on [a] publicly accessible website." Mot. at 2-3. It is well-established that "[c]ourts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotations omitted); *see also Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087 n.2 (9th Cir. 2018) ("We take notice of the fact of publication, but do not assume the truth of the article's contents."). The Court therefore takes judicial notice of the fact that VRT NWS published each of the allegations contained in the article, but not of the truth of those allegations. As Defendants do not ask the Court to treat the contents of the article as true—indeed, they dispute its truth—the Court need not reach the issue of incorporation by reference. The request for judicial notice is GRANTED, with the caveats just described.

 **\*5** Defendants similarly ask the Court to consider Exhibit B —the Google blog post referenced in the Consolidated FAC, *see* Consol. FAC ¶ 39—as incorporated by reference or as a judicially-noticeable website. Mot. at 2-3; ECF 56-1, Ex. B. Again, Defendants do not ask the Court to treat the contents of the blog post as true. Thus, as with the VRT NWS article, the Court takes judicial notice of the blog post for the fact that Google made the statements it contains, but not for the truth of those statements. The request for judicial notice is GRANTED as stated; the Court need not decide whether the blog post was incorporated by reference.

Exhibits C and D are copies of Defendants' Terms of Service ("TOS") and Privacy Policy, respectively. ECF 56-1, Ex. C (Google Terms of Service), Ex. D (Privacy Policy). These documents "form the basis" for Plaintiffs' claims for breach of contract (Count 7) and breach of express warranty (Count

8), as they contain the contract terms and warranty terms that were allegedly breached. *See* Consol. FAC ¶¶ 189-199, 210. Defendants' request to incorporate by reference the Terms of Service and Privacy Policy is therefore GRANTED. *See Ritchie*, 342 F.3d at 908; *accord Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 n.1 (N.D. Cal. 2019) (granting Facebook's request to incorporate by reference the Terms of Service because the consolidated complaint relied upon them to allege the breach of contract claims and statutory claims).

Lastly, Exhibit E purports to be a copy of the "Google Home Warranty – United States" and Exhibit F purports to be a copy of the "Hardware limited warranty for Android Hardware devices, including the Pixel smartphone." ECF 56-1 ¶¶ 6-7; *see id.* Ex. E-F. These documents are not incorporated by reference by the Consolidated FAC; rather, Defendants ask the Court take judicial notice of them because "they appear on publicly accessible websites and their authenticity cannot be reasonably questioned." Mot. at 3 (citing *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010)). The Court agrees that the existence of these documents is a judicially noticeable fact, and therefore GRANTS Defendants' unopposed request.

*See, e.g., Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (collecting cases in which courts have taken judicial notice of publicly available policies and agreements). The Court notes, however, that its judicial notice does not establish that these documents are "valid or binding contracts." *Datel Holdings*, 712 F. Supp. 2d at 984.

## IV. DISCUSSION

Defendants move to dismiss all the claims in the Consolidated FAC; Plaintiffs, of course, oppose the motion. Because the legal requirements for each claim differ substantially, the Court considers the sufficiency of Plaintiffs' allegations as to each set of claims *seriatim*.

### A. Count 1: Federal Wiretap Act

The Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. §§ 2510–2520, "is designed to prohibit 'all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials engaged in investigation of specified types of major crimes.' " *Greenfield v. Kootenai County*, 752 F.2d 1387, 1388 (9th Cir. 1985) (quoting S. Rep. No. 1097, 90th Cong., 2d Sess.). In Count 1 of the Consolidated FAC, Plaintiffs allege that the Defendants

violated 18 U.S.C. § 2511(1)(a), which makes it unlawful for a person to "intentionally intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." *Id.* § 2511(1)(a); *see* Consol. FAC ¶¶ 88-91. The Wiretap Act also imposes liability on any person who "intentionally discloses" to "any other person the contents of any wire, oral, or electronic communication," or "intentionally uses" the "contents of any wire, oral or electronic communication" while "knowing or having reason to know that the information was obtained through the [unlawful] interception," *id.* § 2511(1)(c)-(d); Plaintiffs allege that Defendants also violate this provision. *See* Consol. FAC ¶¶ 92-95

**\*6** Defendants contend that Plaintiffs have failed to adequately plead either of their theories because (1) Plaintiffs have not shown that any interception was "intentional" rather than inadvertent, (2) Plaintiffs have not identified any specific "oral communications" that were allegedly intercepted, (3) Defendants' conduct falls within the "ordinary course of business exception," and (4) Plaintiffs have not shown that Defendants used or disclosed information they knew to be unlawfully obtained. Mot. at 4-8. The Court addresses each argument below.

### i. "Intentional" Interception

As the text of the statute makes clear, the Wiretap Act prohibits only interception that is "intentional, as opposed to inadvertent." *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1030 (N.D. Cal. 2014) (citing *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742–43 (4th Cir. 1994)). Defendants emphasize that Plaintiffs' claim is based only on "false accepts," which Defendants maintain are definitionally inadvertent rather than intentional. Mot. at 4-5. That is, false accepts are a defect rather than an intended feature of the Google Assistant. *Id.* Plaintiffs respond that Defendants' knowledge of the defect combined with its failure to remedy it or to destroy the recordings suffice to make its conduct "intentional" under the statute. ECF 58 ("Opp.").

The intent requirement under § 2511 requires the interception to have been "purposeful[ ] and deliberate[ ]" and not "a result of accident or mistake." *United States*

*v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015); *accord In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003) ("An act is not intentional if it is the product of inadvertence or mistake."). Although inadvertent interceptions are plainly not actionable, several courts have rejected a defendant's claim that the interception was inadvertent where the defendant was aware it was occurring. The case most similar to this one is *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033 (N.D. Cal. 2014), in which the court allowed a Wiretap Act claim to proceed despite Apple's contention that it had "mistakenly" intercepted the messages at issue. *Id.* at 1044. The court held that Plaintiffs' allegations that Apple knowingly allowed the defect to recur and "even charged consumers $19 to 'fix' the problem" were sufficient to "foreclose[ ] the possibility that Apple's actions were the product of inadvertence or mistake." *Id.* This reasoning is consistent with that of courts outside this Circuit. *See Abraham v. Cty. of Greenville, S.C.*, 237 F.3d 386, 392 (4th Cir. 2001) (upholding a jury's finding of intent under § 2511 based on evidence that the County knew it "might be inadvertently eavesdropping" on judges' conversations using a recording system intended only for "administrative personnel and the guards in the jail" yet never informed the judges); *Anderson v. City of Columbus, Georgia*, 374 F. Supp. 2d 1240, 1247 (M.D. Ga. 2005) (denying summary judgment on the issue of intent under § 2511 because "evidence exists that Turner was aware of the glitch in the recording system when the headsets were used. Therefore, a reasonable jury could conclude that Turner knew that the system would record Plaintiff, and she intentionally failed to tell Plaintiff how to prevent the recording").

The Court agrees with Plaintiffs and these various courts that interceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action. And indeed, the Consolidated FAC alleges that Defendants are aware of false accepts and the recordings they cause to be made, yet have not fixed the problem. *See* Consol. FAC ¶¶ 38-39. At the same time, the Court finds persuasive Defendants' argument that some *de minimis* error rate in the Google Assistant may be tolerated without exposing them to liability; after all, even the human ear misinterprets words and sounds at times. For that reason, the degree of error will likely be material to the ultimate factual determination of whether Defendants' conduct was intentional. At the motion to dismiss stage, however—

construing the allegations in Plaintiffs' favor—the Court will not assume that the rate of false accepts is *de minimus*.

**\*7** Besides, Plaintiffs' objection is not only to Defendants' failure to prevent recordings caused false accepts—which may be a tall order—but also to Defendants' failure to destroy the audio recordings produced by false accepts. Plaintiffs allege that Defendants persist in using the recordings for personalized advertising or to improve the functionality of the Google Assistant, even after they become aware of their provenance. FAC ¶¶ 38-39. That Defendants allegedly do not destroy the audio recordings further supports an inference that the interception is "intentional."

The Court therefore rejects Defendants' argument that Plaintiffs have not adequately pleaded "intentional" interception. To be clear, the Court does not hold that inaction in the face of a known design defect necessarily makes an interception "intentional" under the Wiretap Act—only that the facts alleged here are sufficient to survive a motion to dismiss.

### ii. "Oral Communications"

Defendants' second argument for dismissal concerns the requirement that a plaintiff show interception of a "wire, oral, or electronic communication." 18 U.S.C. § 2511(a)(1). Defendants argue that Plaintiffs' claim, despite being premised on the alleged interception of "oral communications," has failed "to identify a single oral communication that they contend was intercepted." Mot. at 5-6. Moreover, the Wiretap Act defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation," 18 U.S.C. § 2510(2); i.e., an oral communication in which the speaker had a "reasonable expectation of privacy," *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978). Defendants therefore assert that Plaintiffs must not only identify intercepted oral communications, they must also show that those communications were subject to a reasonable expectation of privacy. Mot. at 5-6.

In response, Plaintiffs point first to the 153 recordings due to false accepts that VRT NWS discovered in the course of reporting its 2019 news piece. Consol. FAC § 36. To show that

these conversations were subject to a reasonable expectation of privacy, VRT NWS's description of these conversations as including "bedroom conversations, conversations between parents and their children," and "professional phone calls containing lots of private information." *Id.* But Plaintiffs do not allege that any of these 153 recordings covered Plaintiffs' communications rather than the communications of unnamed third parties. Hence, these allegations do not suffice to show that Plaintiffs' own oral communications were intercepted, which they must do. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotations omitted).

As for the allegations regarding the Named Plaintiffs themselves, the Court finds these to be too vague. *See* Consol. FAC ¶¶ 51-53. At the outset, the Court rejects Defendants' suggestion that Plaintiffs must identify specific communications that Plaintiffs reasonably believed to be private and that were wrongly recorded. The Court is not convinced that Plaintiffs are required to produce such details at the pleading stage, prior to discovery. At the motion hearing, Defendants represented that through their accounts, users can view all their past conversations with the Google Assistant, including false accepts. If that is the case, Plaintiffs are advised to avail themselves of that information. But the Court believes it would be enough for Plaintiffs to show that they frequently have oral communications near their respective Google Assistant Enabled Devices under circumstances giving rise to a reasonable expectation of privacy. That, coupled with the allegations that false accepts routinely occur, would support an inference that false accepts had private conversations intercepted.

**\*8** In their Opposition, Plaintiffs maintain that they have done this. Opp. at 6. Not so. The Consolidated FAC contains insufficient detail regarding the particular circumstances under which Plaintiffs used their Google Assistant Enabled Devices. The Consolidated FAC merely alleges that Plaintiffs' conversations were "confidential" without alleging any facts regarding the participants in the conversations, the locations of the conversations, or examples of content from the conversations. *Cf. In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (finding plaintiffs' allegations that their emails were "private" to be "fatally conclusory"). Nor does the bare

allegation that each Named Plaintiff "interacted with" their device "repeatedly" establish that those devices necessarily picked up private conversations, or that any expectation of privacy was reasonable. *Cf. Sunbelt Rentals, Inc. v. Victor, 43 F. Supp. 3d 1026, 1035 (N.D. Cal. 2014)* ("[T]here is no legally protected privacy interest and reasonable expectation of privacy in electronic messages, in general. Rather, a privacy interest can exist, if at all, only with respect to the content of those communications.") (internal quotations omitted).

This problem is especially glaring for Plaintiffs Kumandan, Galvan, and E.G., who allegedly interacted with smartphones. After all, smartphones are by their nature mobile and are frequently used in public places. The allegations as to Plaintiffs Spurr and B.S. also fall short. Though they allegedly interacted with a Google Home device—which presumably is less mobile—Plaintiffs make no allegations as to where the Google Home device was located and how Plaintiffs used it. Consol. FAC ¶ 51. Under these circumstances, the Court cannot infer that the Plaintiffs themselves had "oral communications" intercepted, as necessary under the Wiretap Act.

Accordingly, the Court must GRANT Defendants' motion to dismiss. That dismissal is with LEAVE TO AMEND, as leave ordinarily must be granted in this Circuit and Defendants have articulated no reason it should not be. *See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003)* (citing *Foman v. Davis, 371 U.S. 178, 182 (1962)*).

### iii. Ordinary Course of Business Exception

Although the Court must dismiss the Wiretap Act claim for failure to adequately plead "oral communications," the Court proceeds to address Defendants' other proposed grounds for dismissal. The next of these is Defendants' contention that the "ordinary course of business exception" inoculates its alleged interceptions here. The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *18 U.S.C. § 2510(4)*. In other words, there is no illegal interception without the use of a "device." *Accord In re Yahoo Mail Litig., 7 F. Supp. 3d at 1026.* The Wiretap Act then goes on to carve out from its definition of "device" "any telephone or

telegraph instrument, equipment or facility, or any component thereof ... being used by a provider of wire or electronic communication service *in the ordinary course of business.*" *Id. § 2510(5)(a)(ii);* the "ordinary course of business" exception refers to this carve-out.

Defendants claim that their alleged conduct falls within the ordinary course of business exception because "the Assistant cannot operate unless it records and transmits audio to Google." Mot. at 7. They further assert that any false accepts are "incidental to" the necessary transmissions. *Id.* (citing *In re Google Inc. Gmail Litig., No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)*).

In response, Plaintiffs contend that Defendants are not a provider of "electronic communication service" ("ECS") as required for the exception to apply. Opp. at 7 (quoting *18 U.S.C. § 2510(5)(a)(ii)*). The Wiretap Act defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *18 U.S.C. § 2510(15).* Of relevance here, "oral communications" are distinct from both "wire communications" and "electronic communications" under the Wiretap Act. *See 18 U.S.C. §§ 2510(1), (2), (12); Siripongs v. Calderon, 35 F.3d 1308, 1320 (9th Cir. 1994)* (treating the intercepted communication as an "oral communication" because police "acquired only what they recorded Siripongs saying into the mouthpiece, not what was transmitted over the wire"). Plaintiffs maintain that Defendants "cannot be considered" an ECS provider "in the instance when it is recording Plaintiffs' private oral communication" because oral communications are not "wire or electronic communications." Opp. at 7.

**\*9** Plaintiffs misunderstand Defendants' argument, however. The "wire or electronic communication service" that the Google Assistant purports to provide is the transmission of valid commands from the user to Defendants' servers, which carry out the commands. These commands arguably constitute "electronic communications," which "means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." *18 U.S.C. § 2510(12).* In simple terms—and as described in the Consolidated FAC, *see id.* ¶ 24—the

Google Assistant translates a user's verbal command (e.g., "Hey Google, what is the weather forecast?") into electronic signals and then transmits those signals to the recipient, the relevant Google server. The Google Assistant could thus be seen as providing an electronic communication service. [1]

[1]    Defendants point out that Plaintiffs allege in the Consolidated FAC that the Google Assistant is an "electronic communication service" within the meaning of the SCA, 18 U.S.C. § 2702(a). Consol. FAC ¶ 112. Although true, this allegation is not dispositive. First of all, Plaintiffs are entitled to plead claims in the alternative: Plaintiffs may have pleaded that SCA claim in the event the Wiretap Act claim was found to be precluded by the ordinary course of business exception. Besides, the Court is not required to accept the purely legal conclusion offered by the allegation.

Nevertheless, the Court need not conclusively decide the merits of this issue, which has not been treated in any depth by the parties. Even assuming the Google Assistant is an electronic communication service provider, the ordinary course of business exception does not preclude Plaintiffs' Wiretap Act claims.

As Defendants themselves acknowledge, "the ordinary course of business exception ... offers protection from liability only where an electronic communication service provider's interception *facilitates* the transmission of the communication at issue or *is incidental to* the transmission of such communication." *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *8. False accepts certainly do not "facilitate" the functioning of the Google Assistant; they are, in both parties' views, produced by the malfunctioning of the Google Assistant. The question becomes, then, whether false accepts are so unavoidable that they could fairly be considered "incidental to" the Google Assistant's ordinary functioning. But as noted earlier, the degree to which that false accepts are unavoidable is a factual issue, unsuited for resolution at the pleading stage. *See Khoja*, 899 F.3d at 1003. Moreover, the Court is not aware of any cases applying the exception to interceptions that are allegedly the product of a defect. Hence, even if Defendants are providers of electronic communication services, there is a question of fact as to whether false accepts are "incidental to" the transmission of legitimate commands by the Google Assistant. Plaintiffs' Wiretap Act claim is not subject to dismissal on the basis of the ordinary course of business exception.

#### iv. Use or Disclosure

Plaintiffs' Wiretap Act claim also asserts the theory that Defendants "used" and "disclosed" unlawfully intercepted information, which is itself unlawful under 18 U.S.C. §§ 2511(1)(c)-(d). *See generally Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009). Of relevance to this claim, Plaintiffs allege that Defendants used the unlawfully created audio recordings to personalize advertising and to improve the voice recognition capabilities of the Google Assistant. *See* Consol. FAC ¶¶ 41, 95. Plaintiffs further allege that, in order to accomplish the latter, Defendants disclosed the audio recordings to third party subcontractors. *Id.* ¶¶ 35-39.

Defendants move to dismiss this theory on two grounds. First, they correctly point out that liability for disclosure or use is contingent on the original interception being unlawful. *Noel*, 568 F.3d at 751; *see* Mot. at 8. Because the Court has just determined that Plaintiffs have not adequately pleaded the unlawfulness of the interceptions, their use or disclosure claim likewise fails.

**\*10** Defendants' second argument implicates the requirement under §§ 2511(1)(c)-(d) that a defendant "*know[ ] or hav[e] reason to know* that the information was obtained through" an interception that violates the Wiretap Act. 18 U.S.C. §§ 2511(1)(c)-(d). Defendants maintain that Plaintiffs "have not and cannot allege that Google knew that the information allegedly disclosed or used came from an intercepted communication (rather than a communication intended for the Assistant) or that such interception was prohibited by the Wiretap Act." Mot. at 8. The argument appears to be that Defendants reasonably believed each audio recording to be the result of a legitimate command at the time when it sent the recording to a third party for analysis or used it to customize advertising.

To be sure, Defendants may mount a defense based on this argument. But Plaintiffs have specifically pleaded that "even after Google discovers that it has wrongly recorded a conversation, it nonetheless keeps and analyzes the recording." Consol. FAC ¶ 38. In other words, Plaintiffs allege that Defendants knew each recording was the product of an

unauthorized interception at the time of their alleged use and disclosure. The Court must construe this allegation to be true at the motion to dismiss stage, despite Defendants' assertion to the contrary. Accordingly, the Court will dismiss the "use" or "disclosure" theory, but not on the ground that Defendants lacked knowledge of the antecedent interception.

**B. Count 2: Stored Communications Act**

Count 2 alleges violations of the Stored Communications Act ("SCA"). As the Ninth Circuit has explained, the SCA is modeled off the common law of trespass. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072–73 (9th Cir. 2004). "Just as trespass protects those who rent space from a commercial storage facility to hold sensitive documents, the Act protects users whose electronic communications are in electronic storage with an ISP or other electronic communications facility." *Id.* (internal quotations and citations omitted). Thus, the SCA forbids making unlawful access to a stored communication, imposing liability on any person or entity who:

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a).

Subsection (c) goes on to state that subsection (a) does not apply "to conduct authorized" "(1) by the person or entity providing a wire or electronic communications service; [or] (2) by a user of that service with respect to a communication of or intended for that user." 18 U.S.C. § 2701(c)(1); *accord Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1271 (N.D. Cal. 2001). However, an ECS provider still "shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service"; if it does so, it is liable for unlawful disclosure of customer communications under § 2702(a). 18 U.S.C. § 2702(a) (1). The Consolidated FAC asserts claims for unlawful access pursuant to § 2701(a) and unlawful disclosure pursuant to § 2702(a). Consol. FAC ¶¶ 117-124. In their motion to dismiss, Defendants argue that "Plaintiffs cannot state a claim under either provision." The Court disagrees: Although Plaintiffs have not pleaded a claim for unlawful access, Count 2 may proceed based on a theory of unlawful disclosure.

**i. Unlawful Access under 18 U.S.C. § 2701(a)**

To make out a claim under either subsection of 18 U.S.C. § 2701(a), Plaintiffs must show that Defendants "(1) gained unauthorized access to a 'facility' where it (2) accessed an electronic communication in 'electronic storage.' " *In re Facebook, Inc. Internet Tracking Litig.*, No. 17-17486, 2020 WL 1807978, at *13 (9th Cir. Apr. 9, 2020). The SCA defines "electronic storage" as

**\*11** (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication;

18 U.S.C. §§ 2711(1), 2510(17). The SCA does not, however, provide a statutory definition of "facility," which is a separate element of an SCA claim. *See In re Facebook*, 2020 WL 1807978, at *13, *14 n.10. Nor has the Ninth Circuit provided much guidance on interpreting the term.

In their motion to dismiss, Defendants argue that a facility must be "physical means or equipment," such as a server. Mot. at 9 (quoting *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 335 (D.D.C. 2011)). Defendants believe that Plaintiffs have failed to identify a qualifying "facility" providing "electronic storage" that has allegedly been accessed. *See* Mot at 9; Reply at 5. The Consolidated FAC indicates that the Google Assistant "is the facility through which Google provides an electronic service." Consol. FAC ¶ 115. In their Opposition brief, Plaintiffs reiterate that the Google Assistant is a "facility" within the meaning of the SCA, *see* Opp. at 9; Plaintiffs also offer another possible "facility": Defendants' "remote servers," *see id.* (citing Consol. FAC ¶¶ 43, 93). Defendants maintain that neither qualifies. *See* Mot at 9; Reply at 5.

Turning first to whether the Google Assistant is a "facility," the Court notes that Plaintiffs have not been consistent or precise as to what they mean by the "Google Assistant." For clarity, the Court uses "Google Assistant" to refer to the virtual assistant software and not the Google Assistant Enabled Device onto which it may be pre-installed or downloaded. *See* Consol. FAC ¶¶ 21, 112. Without adopting Defendants' definition of "facility" as "physical" equipment, the Court is skeptical that software could properly be considered a facility. Regardless whether a facility is necessarily "physical," it indisputably must provide "electronic storage." It is not alleged that the Google Assistant itself—which, as a "computer program," is comprised of lines of code—provides electronic storage of any kind. *See* Consol. FAC ¶ 21. Rather, the Consolidated FAC states that a Google Assistant Enabled Device's RAM stores the snippets of audio that are continuously being analyzed by the Google Assistant. *See id.* ¶ 23.

It is perhaps unsurprising, then, that Plaintiffs do not attempt to argue that the Google Assistant software is a "facility" in their Opposition brief; they assert instead that their devices' RAM constitutes the facility from which their communications were accessed "while they were temporarily stored" there. Opp. at 9. Defendants object that a user's personal device cannot be a "facility" under the SCA. It is true that courts in this Circuit and others have interpreted "facility" to exclude users' personal devices. *See, e.g.,* *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 147-48 (3d Cir. 2015); *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 845 (N.D. Cal. 2017), *aff'd,* 956 F.3d 589 (9th Cir. 2020); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057-58 (N.D. Cal. 2012); *Freedom Banc Mortg. Servs., Inc. v. O'Harra*, No. 2:11–cv–01073, 2012 WL 3862209, at *9 (S.D. Ohio Sept. 5, 2012). Even the Ninth Circuit has alluded to the SCA as "cover[ing] access to electronic information stored in *third party* computers." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014); *see also* *Theofel*, 359 F.3d at 1072–73 ("Just as trespass protects those who rent space from a commercial storage facility to hold sensitive documents, the Act protects users whose electronic communications are in electronic storage *with an ISP or other electronic communications facility*.") (internal quotations and citation omitted).

**\*12** These courts have focused on the requirement that the facility be one "through which an electronic communication

service is provided." 18 U.S.C. § 2701(a)(1). As the Fifth Circuit put it, "[t]he relevant 'facilities' that the SCA is designed to protect are not computers that *enable* the use of an electronic communication service, but instead are facilities that are *operated by* electronic communication service providers and used to store and maintain electronic storage." *Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 792 (5th Cir. 2012) (emphasis in original) (holding that plaintiff's cell phone was not a "facility"). An individual's personal device "does not *provide* an electronic communication service just because the device *enables* use of electronic communication services," *id.* (emphasis in original); rather, that device is, in every practical sense, the "user." Moreover, as another court in this district pointed out, a contrary reading would "render other parts of the statute illogical," such as the provision at 18 U.S.C. § 2701(c)(1) permitting an ECS provider to authorize access to the facility. *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1058 ("It would certainly seem odd that the provider of a communication service could grant access to one's home computer to third parties, but that would be the result of plaintiff's argument."); *see also* *In re Google*, 806 F.3d at 147 ("And this is consistent with the Act's purpose: home computers are already protected by the Fourth Amendment, so statutory protections are not needed.").

Thus, the weight of authority supports Defendants' position. Plaintiffs, meanwhile, have failed even to respond, let alone show that the Google Assistant Enabled Devices at issue are factually distinct from the above situations. Under these circumstances, the Court does not believe Plaintiffs' current allegations permit an inference that their personal Google Assistant Enabled Devices constitute "facilities."

Plaintiffs also argue that "Google's remote servers" constitute the requisite facilities. Opp. at 9. But of course, Defendants have authorization to access their own servers. *See* 18 U.S.C. § 2701(c)(1); *accord* *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026–27 ("The SCA grants immunity to 18 U.S.C. § 2701(a) claims to electronic communication service providers ... for accessing content on their own servers."); *In re Google, Inc. Privacy Policy Litig.*, No. C–12–01382–PSG, 2013 WL 6248499, at *12 (N.D. Cal. Dec. 3, 2013) ("Whatever the propriety of Google's actions, it plainly authorized actions that it took itself."). Hence, though the servers are indisputably "facilities," there cannot have been "unauthorized access" by Defendants. Any claim that Defendants improperly "process[ed]" or "disseminat[ed]"

Plaintiffs' communications, Mot. at 10, is properly brought under ⬜ 18 U.S.C. § 2702(a), as assessed below.

Because Plaintiffs have not pleaded unauthorized access to a "facility" within the meaning of the SCA, their SCA claim under § 2701(a) is DISMISSED. Although the Court is skeptical that Plaintiffs will be able to articulate yet another theory of unlawful access to an electronic storage "facility", the Court will nonetheless grant LEAVE TO AMEND.

### ii. Unlawful Disclosure under ⬜ 18 U.S.C. § 2702(a)

Next, turning to Plaintiffs' claim for unlawful disclosure ⬜ 18 U.S.C. § 2702(a), Plaintiffs allege that Defendants did not have authorization to disclose any audio recordings or transcripts resulting from false accepts, but nonetheless did so "for analysis or other purposes, including improving the functionality of Google Assistant for Google's own financial benefit and targeting personalized advertising to users." Consol. FAC ¶ 122.

First, to the extent Plaintiffs assert a claim based on Defendants' use of audio or transcripts to "target[ ] personalized advertising to users," the Court agrees with Defendants that this claim fails. There are no allegations in the Consolidated FAC suggesting that Defendants disclose any information to "third parties" to accomplish this purpose. Defendants' own use of Plaintiffs' data for advertising purposes does not constitute an unlawful "disclosure." The Court therefore DISMISSES WITH LEAVE TO AMEND any claim based on targeted advertising.

On the other hand, the Consolidated FAC does contain allegations of disclosure to third parties for the purpose of improving the Google Assistant's voice recognition functionality; these third parties are the "subcontractors" Defendants allegedly use to perform the relevant analysis. *See* Consol. FAC ¶¶ 35, 39. Defendants move to dismiss this claim on the ground that any disclosure was consented to by Plaintiffs. Mot. at 10. As relevant here, ⬜ § 2702(b)(3) permits an ECS provider to divulge the contents of a communication "with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computer service." Defendants say that Plaintiffs (the originator of the purported communications) explicitly consented to any disclosure to

"subcontractors" that Defendants may have used by agreeing to Defendants' Privacy Policy. Mot. at 10-11. Plaintiffs acknowledge that they are bound by the Privacy Policy, which forms the basis for their breach of contract and breach of express warranty claims. *See* Consol. FAC ¶¶ 2, 192, 210. The question then becomes whether the Privacy Policy adequately indicated to users that Defendants would engage in the disclosures at issue, such that users could fairly be said to have "agreed" to these disclosures. *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019). The Court considers this question "objectively, from the perspective of a reasonable ... user." *Id.*

**\*13** The Privacy Policy, of which the Court has taken judicial notice, *see infra* Part III, contains a section entitled "When Google shares your information." ECF 56-1 at 30. That section states, "We do not share your personal information with companies, organizations, or individuals outside of Google except in the following cases." ECF 56-1 at 30. It then goes on to state that one of these instances is "for external processing":

> We provide personal information to our affiliates and other trusted businesses or persons to process it for us, based on our instructions and in compliance with our Privacy Policy and other appropriate confidentiality and security measures. For example, we use service providers to help us with customer support.

*Id.* at 31.

Plaintiffs contend that this provision is too general to conclusively establish consent, and the Court agrees. *See* Opp. at 11. The Privacy Policy says nothing about the types of information that Defendants might send to "affiliates and other trusted business or persons" for "processing." Critically, moreover, the Privacy Policy does not indicate that such "processing" might involve human reviewers listening to the audio. Under these circumstances, the Court cannot say that a reasonable user reading the Privacy Policy must have understood it to cover the disclosures alleged in the Consolidated FAC. As the party seeking the benefit of an exception, Defendants have the burden to establish the

existence of consent. *See* In re Yahoo Mail Litig., 7 F. Supp. 3d at 1028. It also bears repeating that, at the motion to dismiss stage, the Court must give Plaintiffs the benefit of all reasonable inferences. Where, as here, "the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendants'] favor." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 789.

Other courts in this district have come to the same conclusion when evaluating similarly vague language. In particular, the instant terms bear a close resemblance to those in *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014). There, Facebook's counsel argued that disclosure "that Facebook 'may use the information we received about you' for 'data analysis.' " *Id.* at 847. The court held, however, that "this disclosure is not specific enough to establish that users expressly consented to the scanning of the content of their messages ... for alleged use in targeted advertising." *Id.*; *see also id.* at 848 ("[A]ny consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising."). The court in *In re Facebook, Inc., Consumer Privacy User Profile Litigation* made a similar point: "Although Facebook points to a section in its Data Use Policy entitled 'Service Providers' which says 'we give your information to the people and companies that help us provide, understand, and improve the services we offer,' that statement does not come close to disclosing the massive information-sharing program with business partners that the plaintiffs allege in the complaint." 402 F. Supp. 3d at 792. So too here.

In an effort to supplement the Privacy Policy's notice regarding information sharing, Defendants highlight another provision in the Privacy Policy:

> **\*14** We also use your information to ensure our services are working as intended, such as tracking outages or troubleshooting issues that you report to us. And we use your information to make improvements to our services —for example, understanding which search terms are most frequently misspelled helps us improve spell-

check features used across our services.

ECF 56-1 at 24. However, this provision comes in a different section of the Privacy Policy, entitled "Why Google collects data." A reasonable user cannot be expected to connect the two sections and anticipate that Defendants may use "external processing" for any purpose for which Defendants collect data. Put another way, although users may have consented to Google's *collection* of their data to "to improve the functionality of the Assistant," Mot. at 11 (quoting Consol. FAC ¶ 122), that consent does not reasonably extend to *disclosure* of data. The Court DENIES Defendants' motion to dismiss the § 2702(a) claim on the ground that Plaintiffs' consented to any disclosures.

Defendants assert an additional reason for dismissal in a footnote: They maintain that their subcontractors are "employees or agents" and not "third parties" under § 2702(a). *See* Mot. at 10-11 n.3. The Court rejects this argument, which is hardly even developed. That the putative third parties here are referred to as "subcontractors" does not, by itself, defeat Plaintiffs' claim. After all, whether an entity is a "third party" within the meaning of the statute is a factual question, interrogating the relationship between the entity and the provider. Moreover, the relevant facts are likely unavailable to Plaintiffs prior to discovery. Construing the allegations in Plaintiffs' favor, the Court finds that the "subcontractors" may be third parties, which suffices at the motion to dismiss stage. Defendants' motion to dismiss for failure to plead that subcontractors are "third parties" is DENIED.

In sum, the Court finds that Plaintiffs have adequately pleaded a claim for unlawful disclosure under 18 U.S.C. § 2702(a) based on Defendants' disclosure of audio and transcripts to subcontractors for analysis "to improve the functionality" of the Google Assistant.

### C. Counts 3 and 4: California Invasion of Privacy Act

Counts 3 and 4 of the Consolidated FAC assert violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.* Consol. FAC ¶¶ 127-146. The CIPA is the California state law analogue to the federal Wiretap Act, enacted in 1967 in response to "advances in science and technology [that] have led to the development of new devices

and techniques for the purpose of eavesdropping upon private communications." Cal. Penal Code § 630; *see Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014). Two provisions of the CIPA are implicated in the instant case: Count 3 asserts a violation of California Penal Code § 631, which addresses "wiretapping," and Count 4 asserts a violation of California Penal Code § 632, which addresses "eavesdropping."

Defendants move to dismiss both counts on several grounds, as set forth below.

### i. Section 631

To briefly describe the statutory framework, California Penal Code § 631 addresses "wiretapping." As relevant here, § 631(a) imposes liability upon

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained

**\*15** ....

Cal. Penal Code § 631(a). The California Supreme Court has clarified that this lengthy provision contains three operative clauses protecting against "three distinct and mutually independent patterns of conduct": (i) "intentional wiretapping," (ii) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (iii) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22 Cal.

3d 187, 192 (1978); *accord In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at \*15 (N.D. Cal. Sept. 26, 2013). Count 3 purports to allege violations of all three clauses in that "(i) Google made an unauthorized connection with Class Members' GAEDs; (ii) through the unauthorized interception, Google learned the contents of Plaintiffs' and Class Members' confidential communications; and (iii) Google transmitted the contents of the confidential communications to Google's servers as well as to third-party vendors." Opp. at 13 (citations omitted); *see* Consol. FAC ¶¶ 135-36.

In their motion to dismiss, Defendants argue that Plaintiffs cannot state a claim based on any of the three types of conduct prohibited by § 631(a) because the provision prohibits only connections with a "wire, line, or cable" and hence "does not apply to in-person verbal communications" Mot. at 13. The Court considers this argument as to each clause.

Beginning the first clause of § 631(a), Defendants are correct that it protects only communications that are made over a "wire, line, or cable." This is evident from the plain text of the statute: The first clause expressly requires that the unauthorized "connection" be made with "any telegraph or telephone wire, line, cable, or instrument." Cal. Penal Code § 631(a); *accord Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at \*18 (N.D. Cal. Aug. 12, 2016) (explaining that "the first clause" of § 631(a) is "limited to communications passing over 'telegraph or telephone' wires, lines, or cables"). Plaintiffs do not dispute this; they also do not explain how their allegations satisfy the requirement of a "telegraph or telephone wire, line, cable, or instrument." Nor does the Consolidated FAC suggest that the Google Assistant operates using telegraph or telephone wires. In light of the foregoing, the Court finds that Plaintiffs fail to state a claim for violation of § 631(a) based on intentional wiretapping.

The Court turns next to the second clause, which applies to any person who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." 18 U.S.C. § 631(a). Defendants argue that this clause also requires a "wire,

line, or cable." Plaintiffs object, citing *In re Google Inc. Gmail Litigation*, 2013 WL 5423918. But that case simply stands for the proposition that "the limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause of the statute" is not "imported to the second clause of the statute"; it did not find that the second clause lacked the requirement of a "wire, line, or cable." *Id.* at *20; *accord Matera*, 2016 WL 8200619, at *18 (explaining that "the second clause prohibits the unauthorized interception of communications passing over 'any wire, line, or cable' ").

**\*16** However, Plaintiffs also point out that the second clause applies if a communication is "in transit or passing over any wire, line, or cable, *or is being sent from, or received at any place within this state.*" Because the clause is written in the disjunctive, the Court agrees that it could be read to cover messages "being sent from, or received at any place within this State," without regard to whether the sending and receiving makes use of a "wire, line, or cable." *See* Opp. at 13.

At the same time, California courts have often distinguished the essential concepts of eavesdropping under § 632 and wiretapping under § 631 on the ground that eavesdropping "does not require an unauthorized *connection* to a transmission line, whereas wiretapping does." *People v. Guzman*, 11 Cal. App. 5th 184, 192 n.7 (Ct. App. 2017), *aff'd*, (2019) (emphasis in original). And, as already noted, the California Supreme Court summarized the second clause as proscribing "wilfully attempting to learn the contents or meaning of a communication in transit *over a wire.*" *Tavernetti*, 22 Cal. 3d at 192. Yet, the question of whether a defendant may be liable under § 631(a) for reading or attempting to read communications not sent over a wire, line or cable does not appear to have been squarely considered by other courts.

This Court may also leave that question to another day. That is because Plaintiffs have not plausibly alleged that their communications were being "sent from," or received at any place within this State." Although it may be possible for a communication to be "sent" or "received" without use of a wire, line or cable, it cannot fairly be said that a face-to-face conversation between two people in the same location involves "sending" or "receiving" communications within the meaning of the § 632. Per the Consolidated FAC, the "communications" of which the Defendants are alleged to

have "learned the contents" are oral conversations that took place in the presence of Plaintiffs' GAEDs. But as already discussed, Plaintiffs have not alleged any information about these conversations—they have not even plausibly alleged that they themselves were party to intercepted conversations. Of particular relevance here, there are no facts from which the Court could infer that any communications were being "sent from" and "received at" different locations; on the contrary, the Consolidated FAC suggests that the conversations were had in person. The Court therefore GRANTS Defendants' motion to dismiss any claim based on the second clause of § 631(a).

Last, the third clause covers any "attempt[ ] to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti*, 22 Cal. 3d at 192. In other words, Plaintiffs must establish that the information at issue—here, the recordings and transcripts that Defendants' allegedly analyzed—was obtained through a violation of the first or second clauses. Because Plaintiffs have not done so, they also have failed to plead a violation of the third clause of § 631(a).

For these reasons, Count 3 is DISMISSED. Although Plaintiffs' theories as currently alleged do not appear to be compatible with § 631, the Court will nevertheless grant LEAVE TO AMEND to clarify those theories.

### ii. Section 632

Defendants next challenge Plaintiffs' claim under California Penal Code § 632, which addresses "eavesdropping on or recording confidential communications." Specifically, § 632(a) imposes liability upon

> **\*17** A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communications is carried on among the parties in the presence of

one another or by means of a telegraph, telephone, or other device, except a radio....

"California courts interpret 'eavesdrop,' as used in section 632, to refer to a third party secretly listening to a conversation between two other parties." *Thomasson v. GC Services Ltd. P'ship*, 321 Fed. App'x. 557 (9th Cir. 2008) (citing *Ribas v. Clark*, 38 Cal.3d 355, 363 (1985)); *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) (§ 632 prohibits "unconsented-to eavesdropping or recording of conversations"). Count 4 alleges that Defendants violate this provision by "creat[ing] recordings ... of Plaintiffs' and Class Members' confidential communications not preceded by the utterance of a hot word or where the Google Assistant Enabled Device was not manually activated." Consol. FAC ¶ 152.

A claim under § 632 bears many similarities to a claim under the federal Wiretap Act. *See, e.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("Because NovelPoster is unable to allege a violation of the Wiretap Act, it is also unable to allege a violation of CIPA."). In particular, it covers only (1) "confidential communications" and (2) "intentional" conduct. Defendants therefore move to dismiss the § 632 claim for two of the reasons already discussed as to Count 1: that Plaintiffs have not adequately pleaded that their conversations were "confidential" or that Defendants' alleged interceptions were "intentional" rather than inadvertent.

Taking the latter first, the Court considered the parties' arguments regarding whether Defendants' conduct could be considered "intentional" as to Plaintiffs' Wiretap Act claim. As explained, the Court finds that Defendants' failure to rectify the defect causing "false accepts" or destroy the recordings produced under such circumstances could plausibly be considered "intentional" rather than "a result of accident or mistake." *See supra* Part IV.A.i. The result is the same under the CIPA, as the CIPA does not define "intentional" more restrictively than the Wiretap Act. *See* Mot. at 13; *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018) ("[T]he recording of a confidential conversation is intentional if the person using the recording equipment does so with the purpose or desire of recording

a confidential conversation, or *with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation.*") (quoting *People v. Superior Court of Los Angeles Cty.*, 70 Cal. 2d 123, 134 (1969)) (emphasis in original). Defendants' motion to dismiss for failure to plead "intentional" eavesdropping is therefore DENIED.

In the same vein, though, the Court agrees that Plaintiffs have not adequately pleaded "confidential communications." The California Supreme Court has held that a conversation is "confidential" under § 632 "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 n. 7 (2006); *see also Faulkner v. ADT Sec. Services, Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). Neither party disputes that this standard is the same as the "reasonable expectation of privacy" required under the Wiretap Act, 18 U.S.C. § 2510(2). *See* Mot. at 14; Opp. at 15. The Court already concluded that the Consolidated FAC does not adequately demonstrate Plaintiffs' reasonable expectation of privacy in the conversations that the Google Assistant alleged intercepted and recorded. *See supra* Part IV.A.ii. That same defect afflicts Plaintiffs' § 632 claim, wherefore the Court must GRANT Defendants' motion to dismiss Count 4. As with the Wiretap Act claim, the Court gives LEAVE TO AMEND.

**\*18** Having dismissed Count 4 for failure to allege "confidential communications," the Court need not address Defendants' additional argument that Plaintiffs "have not alleged facts showing that the parties did not consent to the alleged recording." Mot. at 14. The Court nonetheless advises Plaintiffs to further develop their contention that Defendants lacked consent to listen or record, as required to state a claim under § 632(a). Plaintiffs' allegation that the recordings "were made without Plaintiffs' consent" is conclusory. Consol. FAC ¶ 152. Meanwhile, Plaintiffs made little effort to respond to Defendants' argument in their Opposition briefing, opting to reference their arguments regarding consent under the SCA, 18 U.S.C. § 2702(a). But the SCA claim concerned unlawful disclosure to third parties—not the initial recording of Plaintiffs' conversations. Moreover, whereas consent is a defense under the SCA, "[i]t appears that, under California law, the plaintiff bringing a

CIPA claim has the burden to prove that the defendant lacked consent to record. *Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App'x 989, 990 n.1 (9th Cir. 2019). Plaintiffs therefore cannot simply rest on their arguments regarding consent as to the SCA claim.

### D. Counts 5 and 6: Common Law Intrusion upon Seclusion and Invasion of Privacy

Plaintiffs' next two claims are also California state law claims: Count 5 is the common law tort of intrusion upon seclusion and Count 6 is invasion of privacy in violation of the California Constitution, Art. I, Sec. 1. Consol. FAC ¶¶ 162, 187. Defendants move to dismiss both claims. Because the common law and constitutional sources of privacy protection under California law are closely related, the Court treats them together. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

To state a claim for intrusion upon seclusion, a plaintiff must allege "(1) intrusion into a private place, conversation or matter (2) in a manner highly offensive to a reasonable person." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998). As to the first element, the plaintiff must have had an "objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.* at 232. "The second common law element essentially involves a policy determination as to whether the alleged intrusion is "highly offensive" under the particular circumstances." *Hernandez*, 47 Cal. 4th at 287. "Relevant factors include the degree and setting of the intrusion, and the intruder's motives and objectives." *Id.*

To allege a violation of California's constitutional right to privacy, a plaintiff must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994)). Regarding the first element, the California Supreme Court has explained that "[l]egally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal

activities without observation, intrusion, or interference ('autonomy privacy')." *Hill*, 7 Cal. 4th at 35. The third element, meanwhile, requires the invasion to be "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Id.* at 37.

In this case, Plaintiffs allege that Defendants' practice of "intercepting, recording, transmitting, and disclosing" Plaintiffs' communications in false accept situations "constitute[s] an intentional intrusion" upon Plaintiffs' seclusion "in that Google effectively placed itself in the middle of a conversation to which it was not invited." Consol. FAC ¶ 164. Plaintiffs further allege that this same practice invades Plaintiffs' informational privacy interest "in the confidential and sensitive information" contained in their communications as well as Plaintiffs' autonomy privacy interest "in conducting their personal activities." *Id.* ¶ 179.

**\*19**  As evident from the foregoing, the constitutional and common law causes of action overlap substantially. Accordingly, the California Supreme Court has recognized that "the largely parallel elements of these two causes of action" require a court to consider "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Hernandez*, 47 Cal. 4th at 288. In their motion to dismiss, Defendants argue that (1) Plaintiffs have failed to allege a "reasonable expectation of privacy" in the communications at issue and (2) the alleged intrusion is not sufficiently "offensive" or "serious" to support a claim for invasion of privacy or intrusion upon seclusion. Mot. at 15.

First, Defendants contend that Plaintiffs have not shown that they had a "reasonable expectation of privacy" in the conversations upon which Defendants allegedly intruded. Mot. at 15. They are correct. As the Court already explained with respect to Plaintiffs' Wiretap Act claim, Plaintiffs have not alleged sufficient information about the conversations that were allegedly intercepted and recorded to establish that they were had under circumstances that would give rise to a reasonable expectation of privacy. *See supra* Part IV.A.ii. That deficiency is fatal to Plaintiffs' claims for invasion of privacy and intrusion upon seclusion.

In addition, Defendant argue that Plaintiffs have not alleged sufficient facts to establish a "highly offensive" or "serious"

invasion of privacy. Mot. at 15-16. It is true, as Defendants emphasize, that "[t]he California Constitution and the common law set a high bar" for an intrusion to be actionable. *Low*, 900 F. Supp. 2d at 1025 (collecting cases). Many courts have found that the collection—and even disclosure to certain third parties—of personal information about the users of a technology may not constitute a sufficiently "egregious breach of social norms" to make out a common law or constitutional privacy claim. *See, e.g., In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (no intrusion claim based on Google's collection and disclosure of users' data, including their browsing histories); *Low*, 900 F. Supp. 2d at 1025 (finding that LinkedIn did not commit a "highly offensive" invasion of users' privacy by disclosing users' browsing histories to third parties); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding no invasion of privacy based on Defendants' disclosure of each user's addresses, geolocation, the unique device identifier assigned to the user's device, gender, age, time zone, and information about app usage). These courts have characterized the collection and disclosure of such data as "routine commercial behavior." *Low*, 900 F. Supp. 2d at 1025 (quoting *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011)).

Nonetheless, the Court is not persuaded that the conduct Plaintiffs have described is not "highly offensive" or "serious" as a matter of law. Although it is a close call, the Court believes that a reasonable person could find Defendants' alleged conduct to be "highly offensive."

To begin with, the Court observes that courts have repeatedly found the surreptitious recording of a plaintiff's conversations or activity to constitute an actionable intrusion. *See, e.g., Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 237, 955 P.2d 469, 494 (1998), *as modified on denial of reh'g* (July 29, 1998); *Safari Club Int'l v. Rudolph*, No. SACV131989JVSANX, 2014 WL 12577408, at *8 (C.D. Cal. May 14, 2014). Plaintiffs' allegations that Defendants recorded their private conversations without authorization could be considered more analogous to these surreptitious recording cases than cases involving, for instance, browsing history. That human reviewers are alleged to listen to the recordings makes the analogy to surreptitious recording especially apt.

**\*20** In any event, determining whether an intrusion is "highly offensive" requires a fact-intensive inquiry that "examine[s] all of the surrounding circumstances." *Hernandez*, 47 Cal. 4th at 295. Such an inquiry cannot be conducted at the motion to dismiss stage where, as here, there are open factual questions regarding "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 2020 WL 1807978, at *11 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."). In particular, false accepts are, by definition, situations in which the user is not attempting to use the relevant technology. A reasonable person could thus find that Defendants have no justifiable "motive" or "objective" for making the alleged interceptions, or that the "degree" of the intrusion is especially great. *See id.* ("Plaintiffs' allegations of surreptitious data collection when individuals were not using Facebook are sufficient to survive a dismissal motion on the issue.").

Many other factual circumstances remain to be ascertained. Take for instance the frequency with which false accepts occur and the amount of information that is subsequently recorded. As the California Supreme Court has recognized in the context of surreptitious surveillance, the scope or frequency of recording affects the offensiveness and seriousness of the privacy intrusion; "electronic surveillance that is persistent and pervasive may constitute a tortious intrusion on privacy even when conducted in a public or semi-public place." *Hernandez*, 47 Cal. 4th at 297. Other relevant factors include the content of the recordings and the degree to which the recordings are anonymized.

In sum, Plaintiffs have failed adequately to plead claims for intrusion upon seclusion or invasion of privacy because they have not established a reasonable expectation of privacy in the conversations or the recordings thereof. If they are able to do so, however, the Court believes that any dispute regarding the offensiveness of Defendants' alleged conduct is ill-suited for resolution on a motion to dismiss. Defendants' motion to dismiss Counts 5 and 6 is GRANTED WITH LEAVE TO AMEND.

### E. Count 7: Common Law Breach of Contract

Count 7 is a claim for breach of contract based on Defendants' Terms of Service ("TOS") and the Privacy Policy contained therein. Consol. FAC ¶¶ 188-201. In order to plead a claim for breach of contract, Plaintiffs must allege: (1) the existence of a contract with Defendants, (2) their performance under that contract, (3) Defendants breached that contract, and (4) they suffered damages. *In re Facebook, Inc. Internet Tracking Litig.*, 2020 WL 1807978, at *14 (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). Defendants move to dismiss on the grounds that (1) Plaintiffs have failed to identify the specific provisions that have allegedly been breached; (2) there has been no breach, in any event; and (3) Plaintiffs have not alleged an adequate damages theory. *See* Mot. at 16-18.

### i. Specific Contractual Provisions

The Court begins with Defendants' contention that Plaintiffs have not identified the specific contractual provisions creating the obligation Defendants are said to have breached, which the Court confirms Plaintiffs must do. *See* *Miron v. Herbalife Int'l, Inc.*, 11 Fed. App'x. 927, 929 (9th Cir. 2001); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011).

Defendants do not dispute that the TOS and the Privacy Policy are binding agreements to which they are parties. *See* Mot. at 16. Hence, there is no dispute that any provisions contained therein would be actionable in Plaintiffs' breach of contract claim. The Consolidated FAC alleges that Defendants breached the provision of the Privacy Policy promising, "We do not share your personal information with companies, organizations, or individuals outside of Google except in the following cases": "with your consent," "with domain administrators," "for external processing," and "for legal reasons." ECF 56-1 at 31-32; *see* Consol. FAC ¶¶ 192-93. Under the subheading entitled "with your consent," the Privacy Policy elaborates:

> **\*21** We'll share personal information outside of Google when we have your consent. For example, if you use Google Home to make a reservation through a booking service, we'll get your permission before sharing your

name or phone number with the restaurant. We'll ask for your explicit consent to share any sensitive personal information.

*See* ECF 56-1 at 30. The Consolidated FAC specifically highlights the statement, "We'll ask for your explicit consent to share any sensitive personal information." *See* Consol. FAC ¶ 193. The Court finds these provisions to be alleged with particularity, as required to state a claim for breach of contract.

However, these are the only contractual provisions that may form the basis for Plaintiffs' breach of contract claim. As the Court will explain, the other provisions referenced in the Consolidated FAC are not actionable.

First, in their Opposition brief, Plaintiffs assert a violation of another provision of the Privacy Policy: one stating that Defendants "may" collect "voice and audio information when you use audio features." Opp. at 18 (quoting ECF 56-1 at 22). The Consolidated FAC makes no reference to this provision, which means the Court cannot consider it to be alleged for purposes of the instant motion. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Additionally, Plaintiffs attempt to base their contract claim upon various provisions from different websites, including the "Google Nest Help Center" and the "Google Safety Center." *See* Consol. FAC ¶¶ 193-94. Plaintiffs assert that these websites are "incorporated into Google's TOS or Privacy Policy" by virtue of the following provision in the TOS:

> Our Services are very diverse, so sometimes additional terms or product requirements (including age requirements) may apply. Additional terms will be available with the relevant Services, and those additional terms become part of your agreement with us if you use those Services.

Consol. FAC ¶ 191; *see* ECF 56-1 at 13. But this vague statement is hardly sufficient to establish that the particular websites cited by Plaintiffs are part of the TOS or otherwise are binding upon the parties. Although it certainly possible that statements on the cited websites constitute binding agreements between the parties, Plaintiffs have not plausibly alleged this to be so.

All told, the only specific contractual terms allegedly breached are Defendants' promises in the Privacy Policy (1) not to share users' "personal information" "outside of Google" except in the four stated circumstances (2) to "ask for [users'] explicit consent to share any sensitive personal information."

### ii. Breach

The Court now turns to whether Plaintiffs have plausibly alleged that Defendants breached these terms of the Privacy Policy. In Plaintiffs' view, these provisions amount to a promise that Defendants will not share users' "personal information" with "companies organizations, or individuals outside of Google *except ... [with the express consent of the user].*" Opp. at 19 (alterations in original). Plaintiffs then assert that Defendants violate this promise by "shar[ing] the audio recording obtained from Plaintiffs and the Class with third-party vendors without Plaintiffs' consent in order to improve the functionality of the Google Assistant and not for external processing of users' request or queries." *Id.*

 **\*22**  At the outset, the Court observes that in paraphrasing the relevant terms, Plaintiffs have altered them. Remember, the Privacy Policy listed four circumstances under which it would share users' personal information: "with your consent," "with domain administrators," "for external processing," and "for legal reasons." To establish a breach, then, Plaintiffs must not only plead that Defendants lacked consent, but also that their conduct does not fall within the other three circumstances. The Consolidated FAC has not done this. It all but ignores the existence of these three circumstances, focusing only on the alleged lack of consent. *See* Consol. FAC ¶¶ 197-99.

The Consolidated FAC falls short for another reason: It does not adequately plead that Plaintiffs' "personal information" has been shared. The vague and conclusory allegation that Plaintiffs "private conversations" were recorded and disclosed does not suffice. Consol. FAC ¶ 199. As already

discussed multiple times, Plaintiffs have not plausibly alleged that Plaintiffs' own conversations were intercepted. *See supra* Part IV.A.ii. Relevant here, the Consolidated FAC contains no allegations describing the content of those conversations or the circumstances under which they were had. *See id.* In the absence of such allegations, the Court has no basis upon which to infer that Plaintiffs' "sensitive personal information" is implicated.

For these reasons, the Court finds that Plaintiffs have not stated a claim for breach of contract and DISMISSES Count 7. The Court will grant LEAVE TO AMEND.

### iii. Damages

Although the Court need not do so, it now briefly considers the parties' arguments regarding Plaintiffs' damages theories. Plaintiffs proffer three damages theories: (1) benefit of the bargain, (2) "harm to [Plaintiffs'] "privacy interests," and (3) "disgorgement of profits made by Google as a result of its breach of contract." Consol. FAC ¶ 201; *see* Opp. at 19. Defendants believe all of these theories to be flawed. *See* Mot. at 18-19.

The first theory is benefit of the bargain damages: "Plaintiffs seek damages resulting from their overpayment for the GAEDs, which they allege are worth less due to Google's breaches of contract." Opp. at 19; *see* Consol. FAC ¶ 201. Also known as expectation damages, a benefit of the bargain measure of damages is intended "to give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract." *Coughlin v. Blair,* 262 P.2d 305, 314 (Cal. 1953); *see also Twin City Fire Ins. Co. v. Philadelphia Life Ins. Co.,* 795 F.2d 1417, 1425 (9th Cir. 1986).

Courts have approved damages based on benefit of the bargain in several technology cases involving privacy. For instance, in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* Plaintiff Mortensen alleged that he paid "$19.95 each year since December 2007 for Yahoo's premium email service" but did not acquire the full value of Yahoo's service because it was not secure. *313 F. Supp. 3d 1113, 1130 (N.D. Cal. 2018).* There, Plaintiff Mortensen plausibly lost the benefit of the bargain in that he received a less valuable email service than the one he paid for. *See id.* Similarly, in *In re*

*Anthem, Inc. Data Breach Litig.*, plaintiffs paid premiums to defendants for health insurance plans. No. 15-MD-02617-LHK, 2016 WL 3029783, at *7-*8 (N.D. Cal. May 27, 2016). When the defendants experienced various breaches of its database containing individuals' health record information, the plaintiffs alleged, *inter alia*, that the defendants had breached their privacy policies. *Id.* at *9. The Court allowed the plaintiff to pursue a theory of benefit of the bargain losses on the theory that some portion of their premiums went toward paying for robust security measures, which they allegedly did not receive. *Id.* at *13.

**\*23**  In this case, however, Plaintiffs have not alleged that they paid anything to Defendants for the Google Assistant. Not only does the Consolidated FAC say nothing about any fee or premium paid, it appears that the Google Assistant is available free of charge for use on Google Assistant Enabled Devices. *See* Consol. FAC ¶ 21. As a result, it cannot be said that Plaintiffs received less than what they paid for—they appeared to have paid nothing. *See In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (rejecting plaintiffs' benefit of the bargain theory because "the FAC fails to allege that Plaintiffs actually provided consideration for the security services which they claim were not provided"). The Court therefore does not believe that benefit of the bargain is a viable damages theory.

On the other hand, Plaintiffs' second theory of damages—harm to their privacy interests—is more promising. Generally, a plaintiff may seek damages for "the detriment caused by the breach." *Stephens v. City of Vista*, 994 F.2d 650, 657 (9th Cir. 1993) (citing Cal. Civ. Code § 3300). In this case, the detriment Plaintiffs say they suffered was an invasion of their privacy. Plaintiffs are entitled to seek compensatory damages or perhaps nominal damages for such harm. *See In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 802; Cal. Civ. Code § 3360. The problem is that Plaintiffs have not sufficiently alleged an invasion of their privacy in the Consolidated FAC. As the Court has explained, the Consolidated FAC does not plausibly allege that Plaintiffs' own private conversations were intercepted. *See* Part IV.A.ii. If Plaintiffs are able to cure that deficiency, the Court believes they would be able to seek damages based on harm to their privacy interests.

Plaintiffs' third theory of damages suffers from a similar problem, but may also be viable. That theory is that Plaintiffs are entitled to "disgorgement of profits made by Google as a

result of its breach of contract." Consol. FAC ¶ 201. The Ninth Circuit has said that "under California law, a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim, such that disgorgement is a proper remedy." *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 Fed. App'x 665, 669 (9th Cir. 2010) (citing *Ajaxo Inc. v. E\*Trade Group, Inc.*, 135 Cal. App 4th 21, 56-57 (2005)). The Ninth Circuit has further held that "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *In re Facebook, Inc. Internet Tracking Litig.*, 2020 WL 1807978, at *5-*6.

To plead a theory of disgorgement, Plaintiffs must show "that they retain a stake in the profits garnered." *Id. at *6*. Plaintiffs attempt to plead that they are entitled to the "substantial profits" that Defendants' have earned using their "personal information" because Defendants' use was unauthorized. Consol. FAC ¶¶ 199-200. But Plaintiffs have not adequately alleged that their unspecified "personal information" has financial value or that Defendants have profited from the information. Although courts have found that individuals' browsing history may plausibly carry financial value, *In re Facebook, Inc. Internet Tracking Litig.*, 2020 WL 1807978, at *6., Plaintiffs have not pleaded any description of the "personal information" that Defendants' allegedly used. Without such facts, Plaintiffs' assertion that Defendants garnered "substantial profits" from the information is purely conclusory. *See, e.g., Varga v. Wells Fargo Bank, N.A.*, 796 Fed. App'x 430, 431 (9th Cir. 2020) ("Varga's conclusory assertion that she was 'deprived of the contractual and consumer protections and benefits' of the notice provision is insufficient to plausibly allege" damages.). Should Plaintiffs cure this deficiency, however, the Court believes they could plausibly demonstrate that any profits were unjustly earned by virtue of Defendants' use being allegedly unauthorized. *In re Facebook, Inc. Internet Tracking Litig.*, 2020 WL 1807978, at *6.

### F. Counts 8, 9, 10: Breach of Warranty

**\*24**  Counts 8, 9, and 10 are claims for breach of express and implied warranty; Counts 8 and 9 are brought under California state law and Count 10 is brought under the federal Magnuson-Moss Warranty Act. Unlike the other counts, these are asserted only by Plaintiffs Kumandan and Spurr, based upon their purchases of GAEDs manufactured

by Defendants. Specifically, Plaintiff Kumandan allegedly purchased a Google Pixel smartphone and Plaintiff Spurr allegedly purchased a Google Home. The three claims assert essentially the same factual basis for relief: Defendants made affirmations of fact or promises to consumers that they would not intercept, record, or use the consumers' communications unless hotwords were uttered or the device was manually activated; Defendants subsequently breached these promises.

Defendants move to dismiss Counts 8, 9, and 10 on various grounds. As set forth below, the motion GRANTED WITH LEAVE TO AMEND as to all three claims.

### i. Breach of Express Warranty

Count 8 alleges a breach of express warranty. Consol. FAC ¶¶ 202-210. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Cal. Comm. Code § 2313. To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury. Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (1986). To satisfy the first element, a plaintiff must identify a "specific and unequivocal written statement," Maneely v. Gen. Motors Corp., 108 F.3d 1176, 1181 (9th Cir. 1997), "relating to the title, character, quality, identity, or condition of the sold goods," In re Sony PS3 Other OS Litig., 551 Fed. App'x 916, 919 (9th Cir. 2014). The statement need not be in a formal warranty document; for instance, "statements made in a manufacturer's advertising that are 'disseminated to the consuming public in order to induce sales' can create express warranties." Birdsong v. Apple Inc., No. C 06-02280 JW, 2007 WL 9723505, at *5 (N.D. Cal. Dec. 14, 2007) (quoting Keith v. Buchanan, 173 Cal. App. 3d 13, 22 (1985)).

Defendants move to dismiss this claim for two reasons. First, Defendants argue that Plaintiffs have not alleged the exact terms of the warranty, as they are required to do at this stage, see, e.g., Blennis v. Hewlett-Packard Co., No. C 07-00333 JF, 2008 WL 818516, at *2 (N.D. Cal. Mar. 25, 2008). Mot. at 19. In response, Plaintiffs simply refer to the Court to its arguments regarding breach of contract (Count 7). Opp.

at 20; see Part IV.E.i. In so doing, Plaintiffs seem to imply that the same provisions of the Privacy Policy and Terms of Service that form the basis for their contract claim are also the relevant warranty terms for their warranty claim. But as Defendants emphasize, the "sold goods" here are the GAEDs that Plaintiffs purchased—not the Google Assistant software. Plaintiffs have not shown the cited provisions of the Privacy Policy relate to the Google Home or Google Pixel—let alone that they amount to an "explicit guarantee" about the quality or character of either product. Hadley v. Kellogg Sales Co., 273 F. Supp. 3d 1052, 1092 (N.D. Cal. 2017). Indeed, the cited provisions—which are general assurances about Defendants' use and disclosure of user information—do not allude to any particular product or products.

Most of the statements that Plaintiffs cite from the "Google Nest Help Center" and the "Google Safety Center" webpages fare no better. See Consol. FAC ¶¶ 193-195. There is one statement, however, that could plausibly be construed as an express warranty term for the Google Home. In the Frequently Asked Questions section of the Google Nest Help Center cite, Defendants provided the following response to the question, "Is Google Home recording all of my conversations?":

> **\*25** No. Google Home listens in short (a few seconds) snippets for the hotword. Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard. When Google Home detects that you've said "Ok Google" or "Hey Google," or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request. You can delete these recordings through My Activity anytime.

*Id.* ¶ 195. This passage pertains to the Google Home device and describes the way that it functions. The Court finds

that this statement about the Google Home is sufficiently specific and unequivocal, and could plausibly be considered a promise that the Google Home will delete any recordings "if the hotword is not detected." However, Plaintiffs have not adequately alleged that the promise was breached. *See* Mot. at 17-18. As described in the Consolidated FAC, false accepts are situations in which a hotword *is* detected, albeit mistakenly. Plaintiffs must plausibly plead that retaining recordings when a hotword is *mistakenly* detected violates a promise to delete recording if a hotword is *not* detected. They have not yet done so.

Accordingly, because Plaintiffs have not identified any particular warranty term that has plausibly been breached, Count 8 is DISMISSED WITH LEAVE TO AMEND.

The Court also briefly addresses Defendants' second ground for dismissal: They argue in a footnote that the Google Home and Google Pixel "are subject to express limited warranties which state that they are the only express warranty that Google provides for these devices, and provide an exclusive remedy in the event a defect arises during the warranty period." Mot. at 19 n.4. In other words, Defendants disclaim any express warranties beyond the ones they have submitted in their request for judicial notice. ECF 56-1 ¶¶ 6-7; *see id.* Ex. E-F. In Part III, the Court took judicial notice of the existence of the two documents—the "Google Home Warranty – United States" and the "Hardware limited warranty for Android Hardware devices, including the Pixel smartphone"—because they are available on public websites. However, the Court made clear that its judicial notice does not establish that these documents are "valid or binding contracts." *Datel Holdings*, 712 F. Supp. 2d at 984. That is because the binding effect of the documents is not a matter that "cannot reasonably be questioned," Fed. R. Evid. 201.

Consequently, the Court cannot yet determine whether the two documents asserted by Defendants operate to preclude any warranty claim based other statements Defendants have made. *See Ladore v. Sony Computer Entm't Am.*, *LLC*, 75 F. Supp. 3d 1065, 1074 (N.D. Cal. 2014) ("[T]he Court will not consider whether Sony may have effectively disclaimed any express warranties in its Terms of Service or Software License."). Therefore, Count 8 is not subject to dismissal on that basis.

To summarize, then, Defendants' motion to dismiss Count 8 is GRANTED WITH LEAVE TO AMEND for failure to plead a

prima facie case of breach of express warranty, but not based on the disclaimer proffered by Defendants.

### ii. Breach of Implied Warranty

Next, Defendants move to dismiss Count 9, Plaintiffs' claim for breach of the implied warranty of merchantability. Consol. FAC ¶¶ 211-222; *see* Mot. at 20-21. Plaintiffs have asserted Count 9 under California Commercial Code § 2314, which is modeled on the Uniform Commercial Code. *See* Consol. FAC ¶ 217; Opp. at 20-21. Defendants move to dismiss this claim for three reasons, but the Court need only reach the first: that Plaintiffs' claims are barred by an explicit disclaimer of the implied warranty of merchantability in its Terms of Service.

**\*26** Defendants cite the following provision from their Terms of Service, of which the Court has taken judicial notice, *see supra* Part III:

> Other than as expressly set out in these terms or additional terms, neither Google nor its suppliers or distributors make any specific promises about the services. For example, we don't make any commitments about the content within the services, the specific functions of the services, or their reliability, availability, or ability to meet your needs. We provide the services "as is."
>
> *Some jurisdictions provide for certain warranties, like the implied warranty of merchantability, fitness for a particular purpose and non-infringement. To the extent permitted by law, we exclude all warranties.*

ECF 56-1 at 16. Plaintiffs do not dispute that they are bound by the TOS or that the disclaimer contained therein covers the implied warranty of merchantability asserted in Count 9. Cal. Com. Code § 2316(2) (providing that a disclaimer of the implied warranty of merchantability "must mention merchantability and in case of a writing must be conspicuous").

Plaintiffs nonetheless challenges the validity of the disclaimer by arguing that it is "unconscionable in that it 'creates an overly harsh or one-sided result that shocks the conscience.' " Opp. at 22. But Plaintiffs have alleged no facts to support this argument, which is made in a scant few sentences in their Opposition brief. They simply assert the TOS is "a non-negotiable contract of adhesion." *Id.* That is not enough,

for not all contracts of adhesion are unconscionable. Under California law, a contract provision is unconscionable, and therefore unenforceable, only if it is both procedurally and substantively unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113-14 (2000). Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power,"; substantive unconscionability focuses on " 'overly harsh' or 'one-sided' results." *Id.* Plaintiffs have made no non-conclusory allegations to establish either element.

Meanwhile, this Court and other courts in this district have dismissed implied warranty claims based on similar disclaimers. *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 944 (N.D. Cal. 2018) (collecting cases). Under these circumstances, the Court is not persuaded by Plaintiffs' cursory argument that the instant disclaimer is unconscionable.

The Court will therefore enforce the disclaimer and GRANT Defendants' Motion to Dismiss the implied warranty claim. The Court will grant LEAVE TO AMEND to allege further facts in support of Plaintiffs' unconscionability argument.

### iii. Magnuson-Moss Warranty Act

Count 10 alleges a violation of the federal Magnuson-Moss Warranty Act based on breach of the implied warranty of merchantability. Consol. FAC ¶¶ 223-233. Although the Magnuson-Moss Warranty Act creates a separate federal cause of action for breach of an implied warranty, it directs courts to state law to determine the meaning and scope of the implied warranty. *See* 15 U.S.C. § 2301(7); *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009). In this case, Plaintiffs have predicated their Magnuson-Moss Warranty Act claim on a breach of California state warranty law. *See* Opp. at 22. The Court has found Plaintiffs' claim for breach of implied warranty under California law (Count 9) to be inadequately pleaded; consequently, Plaintiffs' claim under the Magnuson-Moss Warranty Act must also be dismissed.

*See Birdsong*, 590 F.3d at 958 n.2 (dismissing plaintiffs' claims under the Magnuson-Moss Act "because we conclude that the plaintiffs have failed to state a claim for breach of an express or implied warranty" under California law). Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND.

### G. Count 11: California UCL

**\*27** Count 11 is brought under California's Unfair Competition Law ("UCL"), which prohibits any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The California Supreme Court has clarified that the UCL, because it is "written in the disjunctive," prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts of practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *accord Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). To plead a UCL claim, a plaintiff's allegations must show that a defendant's conduct violates one of these three "prongs." *Id.* In addition, because a UCL claim may only be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition," Cal. Bus. & Prof. Code § 17204, a plaintiff must "demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). This requirement is sometimes referred to as "UCL standing." *Id.* at 320-21.

In their motion to dismiss, Defendants contend that Plaintiffs have failed to allege economic injury, which would preclude any UCL claim. Defendants also challenge the sufficiency of Plaintiffs' allegations as to each of the three prongs ("unlawful," "unfair," and "fraudulent").

### i. Economic injury

The Court begins by addressing Defendants' contention that Plaintiffs have not alleged economic injury, as necessary to bring a UCL claim. Under California law, a UCL plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). "There are innumerable ways in which economic injury" may be shown; for instance:

> A plaintiff may (1) surrender in
> a transaction more, or acquire in

a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Id.* at 323.

In the instant case, Plaintiffs advance two theories of economic injury. First, Plaintiffs allege overpayment for their Google Assistant Enabled Devices, i.e. "that they would not have purchased their GAEDs, or would have paid less for them, if they had known that Google was intercepting, recording, disclosing, and otherwise misusing their conversations without their authorization." Opp. at 22 (citing Consol. FAC ¶¶ 7, 54, 241). Certainly, overpayment is an economic injury under the UCL. *See, e.g.,* *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018). The question becomes whether Plaintiffs have pleaded sufficient facts to establish overpayment here.

On that issue, Defendants maintain that the Consolidated FAC contains insufficient details regarding Plaintiffs' purchase of their Google Assistant Enabled Devices. Mot. at 22; Reply at 13. According to Defendants, the Consolidated FAC merely alleges that Plaintiffs "owned" and "interacted" with GAEDs and not that they purchased their devices. *Id.* (citing Consol. FAC ¶¶ 51-53). That is true of Named Plaintiff B.S., who allegedly interacted with a GAED that he did not own. *See* Consol. FAC ¶ 51. It is also true of Named Plaintiffs Galvan and E.G., who allegedly interacted with a device that was not manufactured by Defendants, the Samsung Galaxy Tab. *See id.* ¶ 53. Because these Named Plaintiffs have failed to allege that they actually paid any money for a Google Assistant Enabled Device, they cannot have been injured by overpayment.

**\*28** By contrast, the Consolidated FAC does allege that Plaintiffs Kumandan and Spurr "purchased their Google Manufactured Device either directly from Google or from actual or apparent agents of Google." Consol. FAC ¶ 215. This allegation suffices to support an inference that Plaintiffs Kumandan and Spurr paid for their respective GAEDs.

Defendants raise no other objection to the overpayment theory of damages. The Court therefore finds that Plaintiffs Kumandan and Spurr have plausibly alleged they would not have purchased their GAEDs, or would have paid less for them, if they had been aware of Defendants' practices with regard to false accepts.

Plaintiffs' second theory of economic injury is that Defendants "wrongfully monetized and profited from Plaintiffs' personal content and information, which is of value, entitling Plaintiffs to restitution." Opp. at 23. According to Plaintiffs, "[e]ntitlement to restitution is sufficient to demonstrate a loss of money or property under the UCL." Opp. at 23.

The Court does not doubt that claims for restitution are often based on actual loss of money or property, as in the cases Plaintiffs cite. *See* *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *32 (N.D. Cal. May 27, 2016) ("All California Plaintiffs paid premiums, which were in turn used to pay for services by Defendants."); *In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2014 WL 988889, at *5 (N.D. Cal. Mar. 10, 2014) ("Plaintiffs have alleged sufficient facts to show standing based on the diminished battery life."). But Plaintiffs are not absolved of their burden to plead economic injury by their conclusory assertion that they are entitled to restitution. Plaintiffs' allegation that Defendants "wrongfully monetized and profited from Plaintiffs' personal content and information" does not give rise to an inference that Plaintiffs "lost money or property," Cal. Bus. & Prof. Code § 17204. As another court in this district has explained, claiming that a defendant "may have gained money through its sharing or use of the plaintiffs' information" is "different from saying the plaintiffs lost money." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 804.

Moreover, Plaintiffs have not shown that they are, in fact, entitled to restitution under the UCL. The California Supreme Court has "defined an order for 'restitution' as one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken.' "

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Of relevance here, restitution is distinguished from disgorgement. " 'Disgorgement' is a broader remedy than restitution" in that disgorgement "has been used to refer to surrender of all profits earned as a

result of an unfair business practice *regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice.*" *Id.* at 1145 (emphasis in original). By contrast, restitution under the UCL must "restore the status quo" by "returning to the plaintiff" funds taken from him or "benefits in which the plaintiff has an ownership interest." *Id.* at 1148-49. Put another way, restitutionary disgorgement "focuses on the plaintiff's loss, and nonrestitutionary disgorgement "focuses on the defendant's unjust enrichment." *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (2014). Although the defendant's benefit and the plaintiff's loss are often the same, nonrestitutionary disgorgement may also be had "where a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss." *Id.* (internal quotations and alterations omitted).

**\*29** Plaintiffs say they are entitled to restitution because Defendants "wrongfully monetized and profited from Plaintiffs' personal content and information." Opp. at 23. But "plaintiff's assertion that defendants received ill-gotten gain does not make a viable UCL claim unless the gain was money in which plaintiff had a vested interest." *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 455 (2005). Here, as discussed in connection with Plaintiffs' breach of contract claim, *see supra* Part IV.E.iii, Plaintiffs have not shown that they have a vested interest in any money earned from unspecified "personal content and information."

To be clear, the Court is not requiring Plaintiffs to show they are entitled to restitution under the UCL in order to establish their standing under the UCL. *See Kwikset Corp.*, 51 Cal. 4th at 337 (holding that standing is not dependent on eligibility for restitution). But where, as here, Plaintiffs themselves base their standing on eligibility for restitution, Plaintiffs' failure to plead their entitlement to restitution under the UCL is fatal.

In sum, the Court GRANTS Defendants' motion to dismiss Plaintiff Galvan's, Plaintiff B.S.'s, and Plaintiff E.G.'s UCL claims for failure to adequately plead economic injury; the Court will GRANT LEAVE TO AMEND, however, because they may able to remedy that defect. Plaintiffs Kumandan and Spurr have adequately pleaded economic injury. Because their UCL claims shall go forward, the Court proceeds to consider of the adequacy of Plaintiffs' pleadings under each prong of the UCL.

### ii. Unlawful Prong

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180. In other words, to be "unlawful" under the UCL, Defendants' conduct must violate another "borrowed" law. *HSBC Bank Nevada*, 691 F.3d at 1168. "Virtually any state, federal or local law can serve as the predicate for an action under section 17200." *Id.* (quoting *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002)) (alterations omitted). Here, Plaintiffs predicate their "unlawful" claim on Defendants' alleged violations of (1) the Wiretap Act, (2) the SCA, (3), the CIPA, (4) the Magnuson-Moss Warranty Act, (5) Cal. Bus. & Prof. Code § 22576,[2] for having breached the Privacy Policy, (6) the California Constitution's right of privacy, and (7) the common law prohibition of intrusion upon seclusion. Opp. at 24; *see* Consol. FAC ¶ 235.

[2]
> This provision states:
> An operator of a commercial Web site or online service that collects personally identifiable information through the Web site or online service from individual consumers who use or visit the commercial Web site or online service and who reside in California shall be in violation of this section if the operator fails to comply with the provisions of Section 22575 or with the provisions of its posted privacy policy in either of the following ways:
> (a) Knowingly and willfully.
> (b) Negligently and materially.
>
> Cal. Bus. & Prof. Code § 22576. Plaintiffs allege that Defendants violate this provision by virtue of its breach of contract, as alleged in Count 7. Opp. at 24; *see* Consol. FAC ¶ 235.

Because Plaintiffs assert each of these alleged violations as independent counts, the Court has already considered the adequacy of Plaintiffs' allegations as to those counts. The Court's findings in that regard are equally determinative of the validity of Plaintiffs' UCL claim. Accordingly, the Court must DISMISS WITH LEAVE TO AMEND any claims based on (1) the Wiretap Act, as alleged in Count 1; (2) Section 2701(a)

of the Wiretap Act, as alleged in Count 2; (3) the CIPA, as alleged in Counts 3 and 4; (4) the Magnuson-Moss Warranty Act, as alleged in Count 10; (5) Cal. Bus. & Prof. Code § 22576, as alleged in Count 7; (6) the California Constitution's right of privacy, and (7) the common law prohibition of intrusion upon seclusion. On the other hand, Plaintiffs have stated a UCL claim based on a violation of Section 2702(a) of the SCA, which the Court found to be sufficiently pleaded in Count 2. *See supra* Part IV.ii.

**\*30**  Although not addressed in Plaintiffs' Opposition brief, the Consolidated FAC also alleges an "unlawful" claim based on California Family Code § 6701, *see* Consol. FAC ¶¶ 236-38, which provides:

> Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative.

The Consolidated FAC alleges that Defendants have run afoul of this provision by failing to obtain "minor Plaintiff B.S.'s or E.G.'s consent to intercept, record, disclose, or use their confidential communications." Consol. FAC ¶ 238.

In their motion to dismiss, Defendants argue that Plaintiffs have not shown how the facts of this case implicate a minor's right of disaffirmance. Mot. at 24. The Court agrees that it is not clear how Plaintiffs' allegations pertain to the statute, and Plaintiffs have provided no explanation in their Opposition briefing. Based on Plaintiffs' lack of response, the Court considers the claim based on California Family Code § 6701 abandoned and the argument conceded. *Montgomery v. Specialized Loan Servicing, LLC*, 772 Fed. App'x 476, 477 (9th Cir. 2019) ("The district court properly dismissed plaintiffs' remaining claims because plaintiffs failed to respond to the arguments raised in defendants' motion to dismiss these claims.") (citing *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)).

For these reasons, Plaintiffs may proceed with their UCL claim premised on Section 2702(a) of the SCA; Defendants' motion to dismiss is otherwise GRANTED.

### iii. Fraudulent Prong

The UCL also provides a cause of action again "fraudulent" business acts or practices. "A business practice is fraudulent under the UCL if members of the public are likely to be deceived." *HSBC Bank Nevada*, 691 F.3d at 1169 (citing *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008)). In their Opposition brief, Plaintiffs argue that they "adequately allege affirmative misrepresentations" and "omissions," which are presumably meant to form the basis of a claim that Plaintiffs have engaged in "fraudulent" business practices. Opp. at 23. But the Consolidated FAC does not purport to assert a claim under the fraudulent prong of the UCL. *See* Consol. FAC ¶¶ 234-242. Furthermore, the Consolidated FAC makes no mention of "affirmative misrepresentations" or "omissions"; certainly, it has not identified any misrepresentations or omissions with particularity.

The lack of specific allegations regarding the allegedly fraudulent business practices is especially problematic here because claims under the fraudulent prong of the UCL are subject to "the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). To satisfy Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Plaintiffs have not done any of the above. Defendants' motion to dismiss is therefore GRANTED WITH LEAVE TO AMEND.

### iv. Unfair Prong

**\*31**  Last, Plaintiffs allege that Defendants have "engaged in business acts or practices deemed 'unfair' under the UCL." Consol. FAC ¶ 239.

"The UCL does not define the term 'unfair.' In fact, the proper definition of 'unfair' conduct against consumers is

currently in flux among California courts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (internal quotations omitted). For some years, the California Courts of Appeal formulated different tests, such as whether the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Cel-Tech*, 20 Cal. 4th at 184 (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999)) ("*South Bay* test"), or whether "the gravity of the harm to the alleged victim" outweighs "the utility of the defendant's conduct," *id.* (quoting *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104 (1996)) ("*State Farm Fire* test"). Then, in *Cel-Tech*, the California Supreme Court appeared to confine "unfair" to "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." 20 Cal. 4th at 187. "It further required that 'any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.' " *HSBC Bank Nevada*, 691 F.3d at 1170 (quoting *Cel-Tech*, 20 Cal. 4th at 185). The *Cel-Tech* Court explained that the prior definitions were "too amorphous" and "provide[d] too little guidance to courts and businesses." *HSBC Bank Nevada*, 691 F.3d at 1169 (quoting *Cel–Tech*, 20 Cal. 4th at 185).

However, the *Cel-Tech* court expressly limited its decision, stating, "Nothing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as 'fraudulent' or 'unlawful' business practices or 'unfair, deceptive, untrue or misleading advertising.' " *Cel–Tech*, 20 Cal. 4th at 187 n.12. Consequently, California courts remain divided on whether the *Cel-Tech* definition applies to "consumer actions" or whether the *State Farm Fire* and *South Bay* tests remain valid. *See* *HSBC Bank Nevada*, 691 F.3d at 1170. The Ninth Circuit has noted this continued controversy but awaits the California Supreme Court's resolution of it. *See id.*; *Hodsdon*, 891 F.3d at 866.

In this case, the parties follow the Ninth Circuit's lead and argue under both *Cel-Tech* and the prior balancing tests from *State Farm Fire* and *South Bay*. *See* Consol. FAC ¶ 239.

First, as to Plaintiffs' claim that Defendants' conduct is unfair under the *Cel-Tech* test, the Court agrees with Defendants that Plaintiffs have not alleged any harm to competition or violation of the "letter, policy, or spirit of the antitrust laws," *HSBC Bank Nevada*, 691 F.3d at 1170. *See* Mot. at 24. Indeed, the Court cannot discern a single allegation in the Consolidated FAC pertaining to competitive harm. Plaintiffs' brief in Opposition makes no attempt to explain or defend their omissions, wherefore the Court considers the claim abandoned. *See* *Montgomery*, 772 Fed. App'x at 477.

**\*32** Second, as to the pre-*Cel-Tech* definitions of "unfair," some courts have treated the *State Farm Fire* and *South Bay* tests as distinct tests; others, including the Ninth Circuit, have referred to them together as the "balancing test," *see* *HSBC Bank Nevada*, 691 F.3d at 1169; *Accord* *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1146 (N.D. Cal. 2013). In any event, the parties agree that both tests require the Court to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Mot. at 25; Opp. at 25 (quoting *HSBC Bank Nevada*, 691 F.3d at 1169). Plaintiffs say that Defendants' actions have harmed Plaintiffs by "illegally wiretapping and wrongfully transmitting to third parties Plaintiffs' confidential communications." Opp. at 25. Defendants object that, considering the substantial benefit the Google Assistant provides to consumers, Plaintiffs "cannot reasonably allege" that the utility of their Google Assistant Enabled Devices is outweighed by the "occasional error" of false accepts. Mot. at 25.

Just how "occasional" the error is, however, is a question of fact that remains unanswered at this stage. Moreover, the harm that is asserted here is the invasion of privacy, which is difficult to quantify. The Court cannot say, as a matter of law, that the utility of the Google Assistant necessarily outweighs the harm from false accepts. *Accord* *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1117 (N.D. Cal. 2015) ("The cost-benefit analysis this test calls for is not properly suited for resolution at the pleading stage."); *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ("While the benefits of Apple's conduct may ultimately outweigh the harm to consumers, this is a

factual determination that cannot be made at this stage of proceedings.").

The Court nevertheless finds that Plaintiffs' "unfair" claim is deficient because, as discussed in Part IV.A.ii., the Named Plaintiffs failed to adequately plead that their own conversations were intercepted and that those conversations were subject to a reasonable expectation of privacy. That failure means that Plaintiffs have not adequately pleaded "harm to the alleged victim" for purposes of their UCL claim. The Court therefore must DISMISS Plaintiffs' claims under the "unfair" prong of the UCL but will GRANT LEAVE TO AMEND.

### H. Count 12: Declaratory Judgment

Defendants do not move to dismiss Count 12, Plaintiffs' request for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* Count 12 may proceed.

## V. ORDER

For the foregoing reasons, the Court rules on Defendants' motion to dismiss the 12 Counts in the Consolidated FAC as follows:

- Count 1: GRANTED WITH LEAVE TO AMEND.

- Count 2: GRANTED WITH LEAVE TO AMEND as to the claim under 18 U.S.C. § 2701(a); DENIED as to the claim under 18 U.S.C. § 2702(a).

- Count 3: GRANTED WITH LEAVE TO AMEND.

- Count 4: GRANTED WITH LEAVE TO AMEND.

- Count 5: GRANTED WITH LEAVE TO AMEND.

- Count 6: GRANTED WITH LEAVE TO AMEND.

- Count 7: GRANTED WITH LEAVE TO AMEND.

- Count 8: GRANTED WITH LEAVE TO AMEND.

- Count 9: GRANTED WITH LEAVE TO AMEND.

- Count 10: GRANTED WITH LEAVE TO AMEND.

- Count 11: GRANTED WITH LEAVE TO AMEND as to the fraudulent and unfair prongs; DENIED as to the unlawful prong.

Any amended complaint is **due by June 5, 2020**. Plaintiffs are directed to file a redlined complaint as an attachment to any amended complaint. Leave to amend is restricted to the defects discussed in this Order and in Defendants' motion; Plaintiff may not add new parties or claims without obtaining prior express leave of the Court. However, to the extent Plaintiffs fail to cure the defects identified by this Order, their claims will be subject to dismissal with prejudice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 2219022

---

**End of Document**                              © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.   28