ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
AMANDA C. FITZSIMMONS (Bar No. 258888)
amanda.fitzsimmons@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (*pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (*pro hac vice*)
eric.roberts@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

Attorneys for Defendant
APPLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as guardian of A.L., a minor, LISHOMWA HENRY, JOSEPH HARMS, JOHN TROY PAPPAS, and DAVID YACUBIAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>APPLE INC., a Delaware corporation,<br><br>    Defendant. | CASE NO. 5:19-CV-04577-JSW<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 23, 2021<br>Time: 9:00 a.m.<br>Crtrm: 5 (2nd Floor, Oakland)<br>Judge: Hon. Jeffrey S. White<br><br>Complaint filed: August 7, 2019 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    SUMMARY OF ARGUMENT ............................................................................. 2

III.   BACKGROUND FACTS ..................................................................................... 3

    A.     Siri Technology and Audio Recordings. ................................................. 3

    B.     Plaintiffs' allegations. ............................................................................. 4

IV.    ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3)) ............................................ 5

V.     LEGAL STANDARD ........................................................................................... 5

VI.    ARGUMENT ........................................................................................................ 6

    A.     Plaintiffs lack standing under Article III of the U.S. Constitution......................... 6

        1.     Plaintiffs fail to allege a concrete and particularized privacy injury. .......... 6

        2.     Plaintiffs fail to allege a concrete and particularized economic injury. .................................................................................................... 8

    B.     Plaintiffs fail to state a claim for violation of the federal Wiretap Act. .................. 9

        1.     Plaintiffs fail to allege an interception. ....................................... 9

        2.     Apple did not "intentionally" intercept communications......................... 10

        3.     Plaintiffs' allegations demonstrate consent to the erroneous recordings. .................................................................................... 12

        4.     Plaintiffs have not sufficiently alleged an unlawful disclosure. .............. 12

    C.     Plaintiffs fail to state a claim for violation of CIPA Section 632. ....................... 13

    D.     Apple has not violated Plaintiffs' privacy rights................................................... 13

    E.     Plaintiffs fail to state a claim for breach of contract. ............................................ 15

    F.     Plaintiffs fail to state a claim for violation of the UCL. ...................................... 15

    G.     Plaintiffs' claim for declaratory relief fails......................................................... 16

VII.   CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................................ 5

*Backhaut v. Apple Inc.,*
    74 F. Supp. 3d 1033 (N.D. Cal. 2014) ............................................................................. 11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................................... 5, 6

*Beyer v. Symantec Corp.,*
    2019 WL 935135 (N.D. Cal. Feb. 26, 2019) ................................................................... 16

*Cahen v. Toyota Motor Corp.,*
    717 F. App'x 720 (9th Cir. 2017) .......................................................................... 3, 8, 16

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .................................................................................................. 2, 5, 8

*Davis v. HSBC Bank Nevada, N.A.,*
    691 F.3d 1152 (9th Cir. 2012) ........................................................................................... 3

*Eclectic Props. E, LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) ....................................................................................... 7, 10

*Faulkner v. ADT Sec. Servs., Inc.,*
    706 F.3d 1017 (9th Cir. 2013) ......................................................................................... 13

*Flanagan v. Flanagan,*
    27 Cal. 4th 766 (2002) ...................................................................................................... 2

*Fogelstrom v. Lamps Plus, Inc.,*
    195 Cal. App. 4th 986 (2011) .......................................................................................... 14

*Herskowitz v. Apple Inc.,*
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) .......................................................................... 15

*Hill v. Nat'l Collegiate Athletic Ass'n,*
    7 Cal. 4th 1 (1994) .......................................................................................................... 14

*In re Facebook Internet Tracking Litig.,*
    263 F. Supp. 3d 836 (N.D. Cal. 2017) ............................................................................ 13

*In re Facebook Internet Tracking Litig.,*
    956 F.3d 589 (9th Cir. 2020) ........................................................................................... 15

CASE NO. 5:19-CV-04577-JSW
APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

*In re Google Assistant Privacy Litigation* case,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................... 11

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................... 2, 14

*In re LinkedIn User Privacy Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) ............................................................... 15

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003) .................................................................................... 2

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................. 6, 14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................................. 3

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) .............................................................................. 3

*Levitt v. Yelp! Inc.*,
    2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ...................................................... 7

*Minkler v. Apple Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ................................................................. 15

*Monreal v. GMAC Mortg., LLC*,
    948 F. Supp. 2d 1069 (S.D. Cal. 2013) ......................................................... 3, 16

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009) .............................................................................. 12

*People v. Buchanan*,
    26 Cal. App. 3d 274 (1972) ........................................................................... 2, 13

*People v. Superior Court of Los Angeles County*,
    70 Cal. 2d 123 (1969) ........................................................................................ 13

*Percival v. Poon*,
    2021 WL 962701 (W.D. Wash. Mar. 15, 2021) ................................................ 12

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ........................................................... 2, 12

*Quadrant Info. Servs., LLC v. LexisNexis Risk Sol'ns, Inc.*,
    2012 WL 3155559 (N.D. Cal. Aug. 2, 2012) ..................................................... 16

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ......................................................... 3, 16

iv

*Satchell v. Sonic Notify, Inc.*,
    234 F. Supp. 3d 996 (N.D. Cal. 2017) ...................................................................... 2, 8, 10

*Shwarz v. U.S.*,
    234 F.3d 428 (9th Cir. 2000) .................................................................................. 3, 7, 10

*Spokeo, Inc. v. Robins*,
    --- U.S. ---, 136 S. Ct. 1540 (2016) .................................................................................. 5

*U.S. v. Amen*,
    831 F.2d 373 (2d Cir. 1987) ........................................................................................... 12

*U.S. v. McIntyre*,
    582 F.2d 1221 (9th Cir. 1978) .......................................................................................... 9

*U.S. v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) .......................................................................................... 9

*U.S. v. Van Poyck*,
    77 F.3d 285 (9th Cir. 1996) ............................................................................................ 12

*Valley Forge Christian Col. v. Americans United for Separation of Church & State*,
    454 U.S. 464 (1982) .......................................................................................................... 5

*Wheaton v. Apple Inc.*,
    2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) ................................................................. 6

**STATUTES**

18 U.S.C. § 2510 .................................................................................................................... 9

18 U.S.C. § 2511 ............................................................................................................... 9, 12

Cal. Bus. & Prof. Code § 17200 ............................................................................................ 3

Cal. Penal Code § 632(a) ................................................................................................. 5, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9 ....................................................................................................... 3, 15, 16

Fed. R. Civ. P 12 ..................................................................................................... 1, 2, 5, 9

CASE NO. 5:19-CV-04577-JSW
APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 23, 2021, at 9:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Jeffrey S. White in Courtroom 5, 2nd Floor, of the above-entitled Court located at 1301 Clay Street, Oakland, California, 94612, Defendant Apple Inc. ("Apple") will, and hereby does, move to dismiss with prejudice the Second Amended Class Action Complaint of Plaintiffs Fumiko Lopez; Fumiko Lopez as guardian of the minor, A.L.; Lishomwa Henry; Joseph Harms; John Pappas; and David Yacubian ("Plaintiffs"), individually and on behalf of all others similarly situated, and each claim asserted therein.

Apple brings this Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Plaintiffs lack standing and fail to state a claim for relief against Apple. This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, Declaration of Isabelle L. Ord ("Ord Declaration") and exhibits thereto, Request for Judicial Notice ("RJN"), and all pleadings, arguments, and matters before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

The Second Amended Complaint ("Complaint") is Plaintiffs' third attempt to set forth plausible allegations that the Siri feature on their iPhones and other Apple devices accidentally triggered and recorded Plaintiffs' private conversations without their consent, and that Apple shared those recordings with its third-party contractors. As the Court held in its order dismissing the First Amended Complaint ("FAC"), speculation and conjecture are not sufficient to state a claim. *See generally* ECF No. 65 ("Order"). Despite two amendments and the addition of two new Plaintiffs (Pappas and Yacubian), this latest attempt still falls short of pleading specific allegations necessary to show that Siri inadvertently recorded Plaintiffs' actual private communications. *See id.* 5:21-6:1.

Indeed, three of the six Plaintiffs (Lopez, A.L., and Pappas) never even allege that Siri accidentally triggered on their devices and instead speculate that Siri must have "surreptitious[ly] record[ed]" them because they allegedly received targeted advertising on the internet. These Plaintiffs' allegations, however, reveal that their claim is predicated on conjecture and suffers a factual disconnect because: (1) they received the targeted ads even when Siri was not enabled; and

1

APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

(2) third parties (*e.g.*, Yahoo, Facebook, Instagram) published the ads, not Apple. There are no facts, much less plausible facts, that tie Plaintiffs' receipt of targeted ads to their speculation that Siri must have been listening to their conversations, and Apple must have used Siri to facilitate targeted ads by third parties. The remaining three Plaintiffs allege that they observed Siri inadvertently triggering on their devices but cannot identify a single instance of Siri capturing any actual communication, let alone a confidential one, as their claims require. Finally, none of the Plaintiffs allege that their actual communications were disclosed to any third-party. As such, the Complaint remains devoid of the specific allegations required to plead Article III standing. Further, the claims should be dismissed under Rule 12(b)(6) because Plaintiffs fail to plead one or more required elements for each claim. For these reasons, the Court should again dismiss all claims, this time without leave to amend.

## II.       SUMMARY OF ARGUMENT

The Complaint fails in multiple ways. First, the sparse allegations and impermissible speculation do not establish Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). Second, Plaintiffs' failure to allege any information about any actual recording does not state a Wiretap Act or CIPA claim, which require an actual interception of a communication that was private, confidential, or subject to a reasonable expectation of privacy. *E.g.*, *Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996 (N.D. Cal. 2017); *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002). This also precludes Plaintiffs' claims that their privacy was violated. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012). Third, Plaintiffs plead themselves out of court by alleging facts ***contrary*** to the intent element required for a claim under the Wiretap Act or CIPA. *E.g.*, *In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003); *People v. Buchanan*, 26 Cal. App. 3d 274 (1972). Although the Court previously accepted as true an allegation that Apple "fails to take remedial action" to address inadvertent recordings, Order 9:2, the new Complaint contradicts this allegation and demonstrates that Apple has affirmatively taken steps to improve the functionality of Siri. Furthermore, any collection and use of Siri recordings was authorized by statute and by Plaintiffs. *E.g.*, *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014). Fourth, neither accidental recordings nor grading are inconsistent with Apple's iOS Software License Agreement ("SLA") or Apple's privacy disclosures, which state that Siri may experience errors and allow Apple to use

CASE NO. 5:19-CV-04577-JSW
APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

1  service providers to help continuously improve Siri. Fifth, the defects in the other claims are fatal to

2  the claim under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq. E.g.*,

3  *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101 (N.D. Cal. 2016). The UCL claim also fails

4  because Plaintiffs lack statutory standing, *e.g.*, *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720 (9th

5  Cir. 2017) (failure to plead overpayment claim), and failed to plead fraud with particularity, Fed. R.

6  Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009). Finally, the declaratory relief

7  claim is derivative and must be dismissed for the same reasons as the other claims. *Monreal v. GMAC*

8  *Mortg., LLC*, 948 F. Supp. 2d 1069 (S.D. Cal. 2013).

9  **III.    BACKGROUND FACTS**[1]

10       **A.    Siri Technology and Audio Recordings.**

11           Siri is, among other things, a voice-activated software that users choose to enable on their

12  devices through an enrollment process and can turn off at any time. SAC ¶¶ 2, 31, 53-54, 56, 67; *see*

13  *also* "Ask Siri, Dictation & Privacy," Ord Decl., Ex. C. A device transmits Siri audio recordings to

14  remote computers for processing only when necessary, and only if Siri is in "active listening mode"

15  following a "trigger." SAC ¶¶ 4, 53-54, 56, 60, 66. Depending on the device and the user's

16  preferences, Siri triggers may include the verbal "Hey Siri" cue, the press of a button, or an arm

17  gesture (when wearing an Apple Watch). *Id.* ¶¶ 4, 54, 56. If "Hey Siri" (the verbal trigger) is enabled,

18  the device analyzes and continuously overwrites "short snippets of audio" on the device's short-term

19  memory until it detects a "Hey Siri" utterance. *Id.* ¶¶ 55-56, 60. Siri recordings are associated with a

20  random identifier, not a user's Apple ID, name, or email address; are "not used to build a marketing

21  profile" or "sold to anyone"; and are used only for the purpose of improving Siri. Ord Decl., Ex. C.

22           Plaintiffs acknowledge they have a "general understanding of . . . voice recognition software

23  ───────────────────

24  [1] This summary assumes "the veracity of" any "well-pleaded factual allegations." *Kwan v.*
   *SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). The Court need not assume the truth of any

25  allegation contradicted by judicially noticeable facts. *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir.
   2000). The Court already took notice of documents under the incorporation-by-reference doctrine,

26  ECF No. 65: Privacy Policy (Ord Decl., Ex. A), "Approach to Privacy" web page (Ord Decl., Ex. B),
   "Ask Siri, Dictation & Privacy" statement (Ord Decl., Ex. C), and SLA (Ord Decl., Ex. D). Apple

27  requests the Court again take notice of these documents, as well as the 2016 MacRumors Article (Ord
   Decl., Ex. E). SAC ¶¶ 6, 72. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).

28

3

like Siri" and want to use the technology. SAC. ¶¶ 109, 127, 142. Thus, this case is not about Siri recordings, in general, but only recordings allegedly generated by "false triggers." *Id.* ¶¶ 5, 25, 34, 47, 69, 71, 77, 109, 111, 112, 127-29, 141-42, 154, 173. The Complaint alleges that since users do not consent to accidental recordings in private settings, the recordings violate users' privacy. *Id.* ¶ 77.

### B.      Plaintiffs' allegations.

Plaintiffs allege that their devices "unlawfully recorded" them "without their consent" when they unintentionally activated Siri. SAC ¶¶ 15, 21, 30, 39, 45. Although Plaintiffs claim their devices recorded conversations in their "home, bedroom, and car, [and] other places where [Plaintiffs had] a reasonable expectation of privacy," they fail to allege facts to support this conclusory allegation, including the details of any actual communication, whether it actually was intercepted, or whether it then was sent to a third party for grading. *See id.* ¶¶ 16, 24, 33, 47.

**Lopez and A.L.** never allege they experienced any actual false triggers. *Id.* ¶¶ 13-20. Rather, they allegedly received "targeted advertisements" in search results on the internet and in "third-party applications" after referring to certain name brands during allegedly private discussions. *Id.* ¶ 17. They do not allege when or where these discussions took place, the nature of the discussions, or that their devices were present. *Id.* ¶ 20. Plaintiffs acknowledge Apple may not have provided the ads, and speculate that they may have come from unidentified third-parties Plaintiffs refer to, without *any* factual support, as Apple "partners." *Id.* ¶ 17. Lopez and A.L. concede that despite disabling Siri, they continue to receive targeted ads. *Id.* ¶ 20.s

**Henry** alleges that "Siri automatically triggered with high frequency at least once a week since the time he purchased his iPhone in July 2017." *Id.* ¶ 25. He suggests Siri recorded "background noise or noise coming from the TV," but does not allege a specific instance when Siri recorded him during a private conversation. *Id.* ¶¶ 21-29. Henry speculates that Apple may have "surreptitious[ly] record[ed]" him because third parties sent him targeted advertising. *Id.* ¶ 26. Henry has not stopped using Siri and bought a new Siri-enabled device after filing this lawsuit. *Id.* ¶ 22.

**Harms** alleges Siri inadvertently triggered in May 2019 when he was having a conversation with a friend in his bedroom. *Id.* ¶ 34. Harms realized that Siri had triggered and made a comment to his friend. *Id*. While he was aware that Siri activated, he does not allege whether he turned off Siri or

4

1   continued his conversation, much less the contents of his discussion.

2         **Pappas** alleges that in December 2020, more than a year after the *Guardian* article that

3   prompted this action, he discussed a "private health concern" with his "physician in the presence of

4   his iPhone." *Id*. ¶ 40. Pappas does not allege that Siri triggered during this conversation, or recorded

5   it, and instead relies on the same targeted advertising theory as Lopez, A.L., and Henry. *See id*. ¶ 41.

6         **Yacubian** does not identify any conversations that were recorded, but instead claims that "on

7   numerous occasions, [S]iri would ask him what he was searching for" without his manual input. *Id*.

8   ¶ 47. While he alleges that "some of these" inadvertent triggers occurred in his "car, bedroom, and

9   office," he does not allege that he was engaged in any conversations at the time or the nature of such

10   conversations. *Id*. At some point, Yacubian allegedly de-activated "Hey Siri." *Id*. ¶¶ 44, 47-48.

11   **IV.    ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3))**

12         Do Plaintiffs have Article III standing? Do Plaintiffs state any claim against Apple for:

13   (1) intentional interception and disclosure of a private communication under the Wiretap Act;

14   (2) intentional recording of a confidential communication under Penal Code § 632; (3) breach of a

15   contract; (4) invasion of privacy; (5) violations of the UCL; or (6) declaratory relief?

16   **V.    LEGAL STANDARD**

17         Rule 12(b)(1) requires dismissal where plaintiffs lack Article III standing. *Valley Forge*

18   *Christian Col. v. Americans United for Separation of Church & State*, 454 U.S. 464, 475-76 (1982).

19   Plaintiffs must allege that they "(1) suffered injury in fact, (2) that is fairly traceable to the challenged

20   conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

21   *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016). Article III demands more than just

22   speculation; a plaintiff must allege an actual or imminent injury-in-fact. *Clapper*, 568 U.S. at 410.

23         Rule 12(b)(6) requires dismissal where a complaint fails to allege "enough facts to state a

24   claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

25   "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted

26   unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Twombly*, 550 U.S. at 555 (facts alleged

27   must "raise a right to relief above the speculative level"). The allegations must allow "the court to

28   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678. This requires more than conclusory allegations "that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 556-57). "Mere conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014).

## VI.    ARGUMENT

### A.    Plaintiffs lack standing under Article III of the U.S. Constitution.

#### 1.    Plaintiffs fail to allege a concrete and particularized privacy injury.

The Complaint does not plead an Article III injury-in-fact to any privacy interest of any Plaintiff and should again be dismissed. As the Court previously found:

> the Plaintiffs' claims of statutory privacy harm rest on an attenuated chain of possibilities that (1) their iPhones were accidentally triggered at some point, (2) the accidental triggers occurred in a context where Plaintiffs had a reasonable expectation of privacy, and (3) (for some claims) Plaintiffs' communications were part of the 'small portion' of recordings sent to third party contractors.

Order 5:17-21. "Absent factual allegations regarding the rate of accidental triggers on devices that Plaintiffs actually own, as well as their *particular* use of those devices in contexts where they had a reasonable expectation of privacy, the injury remains too speculative for Article III standing." *Id.* 5:21-6:1. Although Plaintiffs add new boilerplate allegations that they used devices in non-public circumstances (*e.g.*, at home), they notably do not allege facts supporting their speculative conclusion that **their** devices recorded a confidential communication following an accidental trigger and that the resulting recording was sent to a third party for grading.

Lopez, A.L., Henry, and Pappas recognize this and try a different tact, speculating without factual support that Siri must have recorded them accidentally because they received targeted ads. SAC ¶¶ 17, 26, 40-41. These allegations impermissibly embed a giant leap in logic that Apple (through Siri) must be behind their receipt of targeted internet ads from third parties. *See Wheaton v. Apple Inc.*, 2019 WL 5536214, at *5 (N.D. Cal. Oct. 25, 2019) (dismissing complaint that made conclusory connection, without well-pleaded facts, between receipt of junk mail and an alleged unlawful disclosure of personal information). The suggestion is, in fact, implausible in light of the rest of the Complaint, and Plaintiffs "plead" themselves "out of court." *See In re Yahoo*, 7 F. Supp.

CASE NO. 5:19-CV-04577-JSW
APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

3d at 1024. Indeed, Lopez, A.L., Henry, and Pappas do not allege that Siri activated during discussions where they supposedly referred to certain "brands," nor do they allege any process by which those brands appeared in targeted ads. They also acknowledge that third parties (*e.g.*, Yahoo, Facebook, Instagram, or others) showed these ads, and provide no factual basis for the speculative suggestion that these are Apple's "partners" or that "only" through Siri and Apple could such ads be "pinpointed" to Plaintiffs. SAC ¶¶ 17, 26, 42. In short, Plaintiffs do "not support the logical leap that" Apple was responsible for the alleged ads. *See Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *5 (N.D. Cal. Oct. 26, 2011) (applying *Iqbal* plausibility standard), *aff'd*, 765 F.3d 1123 (9th Cir. 2014).

Further, Plaintiffs admit they received targeted ads *after* disabling "Hey Siri," which belies any speculative contention that they received these ads because Siri "surreptitiously recorded" their conversations. As stated in Apple's disclosures incorporated into the Complaint, Siri recordings are "not used to build a marketing profile" or "sold to anyone." Ord Decl., Ex. C. The Court should disregard Plaintiffs' conclusory and implausible conclusions to the contrary. *Shwarz*, 234 F.3d at 435. In any event, it is far more plausible that Plaintiffs' use of the internet and independent interactions with these third parties were the bases for any targeted ads, and Plaintiffs must offer factual allegations "tending to exclude the possibility" of an "innocent alternative." *See Eclectic Props. E, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-99 (9th Cir. 2014). By failing to even attempt to rule out the numerous alternative explanations for the ads, Plaintiffs' fail plausibly to allege that Apple is the source of the alleged ads, let alone that Apple surreptitiously used Siri to record Plaintiffs' confidential communications.

Henry, Harms, and Yacubian allege that their devices inadvertently triggered but do not allege that their confidential communications were recorded or sent to third parties. Henry alleges "he observed that Siri automatically triggered with high frequency" but recorded "background noise or noise coming from the TV," not confidential communications. SAC ¶ 25. Harms alleges that Siri accidentally triggered in May 2019, but he realized Siri had triggered and stopped (or had informed choice to stop) his conversation. *Id.* ¶ 34. Yacubian alleges that Siri sometimes "ask[ed] him what he was searching for even though he had not activated" Siri, and that these "unsolicited intrusions" occurred in his "car, bedroom, and office." *Id.* ¶ 47. As with the other Plaintiffs, however, Yacubian

does not allege that he was engaged in confidential communications at the time, and an "unsolicited" interruption is not enough to sustain the claims. Ultimately, Plaintiffs rely on "legal conclusions couched as fact that are not sufficient under *Twombly* and *Iqbal*." *Satchell*, 234 F. Supp. 2d at 1008 (dismissing claim of interception based on presence of a device in allegedly private settings).

These deficiencies are even more glaring for the speculative claim that Apple allegedly disclosed Plaintiffs' confidential Siri recordings to third parties for grading. As the Court previously found, there are no allegations that ***Plaintiffs'*** confidential recordings (as opposed to those of unknown persons referred to in press clippings) were disclosed to third parties. Order 10:16-21. Thus, the privacy theory of injury impermissibly continues to rely on a "highly attenuated chain of possibilities" for both the interception and disclosure-based claims. *Clapper*, 568 U.S. at 411-15.

### 2.    Plaintiffs fail to allege a concrete and particularized economic injury.

In dismissing the FAC, the Court found the allegations insufficient to show Plaintiffs "overpaid for the devices," which would require (at minimum) an allegation that "they purchased their devices in reliance on particular representations that Siri would not be accidentally triggered." Order 6:10-22. The Complaint does not cure this defect or plead an economic injury-in-fact.

Plaintiffs still do not adequately plead they overpaid for Siri because they do not identify an Apple promise that Siri would operate error-free or never accidentally trigger. *See Cahen*, 717 F. App'x at 723-24 (merely alleging overpayment insufficient for Article III injury). Pappas and Lopez, for example, do not allege *any* representations they saw or relied on in buying their devices. SAC ¶¶ 15, 38-43. Harms allegedly "read Apple's representations regarding Siri's activation during the initial set up of his iPhone," *id.* ¶ 31, but not before purchase. A.L., Henry, and Harms allege they saw "and relied upon television advertisements by Apple regarding Siri's voice activation capabilities," but none of them identify any representation (pre- or post-purchase), much less one "that Siri would not be accidentally triggered." *See* SAC ¶¶ 15, 22, 31; Order 6:18-21. To the extent Plaintiffs imply a representation Siri would perform without error, the Complaint is devoid of support. Apple provided Siri "as is" and disclaimed that Siri would be "error free" in the SLA. Ord Decl., Ex. D.

Henry, alone, alleges he "reviewed" and understood from "Apple's privacy policy" that "Siri will only activate upon the utterance of a hot word or manual activation." SAC ¶ 22. But Henry does

CASE NO. 5:19-CV-04577-JSW
APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

not cite any provision in Apple's Privacy Policy that supports this understanding, Ord Decl., Ex. A, and his claim he would not have purchased an iPhone in the absence of such promises cannot be reconciled with his purchase of a new Siri-enabled device in 2020, SAC ¶ 22. Yacubian alleges that he relied on a "'Hey Siri' ad showing people using the 'Hey Siri' function all over the world for a variety of different tasks, including looking up words, songs and contacts," but fails to allege that this ad promised "Siri would not be accidentally triggered." *See* Order 6:18-21; SAC ¶ 44. Plaintiffs knew of and had their chance to cure these defects in the FAC, but they manifestly did not. The Complaint again should be dismissed under Rule 12(b)(1), without further leave to amend.

### B. Plaintiffs fail to state a claim for violation of the federal Wiretap Act.

Plaintiffs also fail to allege plausible claims for relief under Rule 12(b)(6). A violation of the Wiretap Act requires that a person "intentionally intercept[] . . . any wire, oral, or electronic communication" or "intentionally disclose[]" or "use[]" the contents of any such communication, while "knowing or having reason to know that the information was obtained through the [unlawful] interception." 18 U.S.C. §§ 2511(1)(a), (c)-(d). Plaintiffs fail to sufficiently allege that (1) Apple intercepted private communications, (2) Apple acted with intent, (3) Plaintiffs did not consent, and (4) under section 2511(1)(c), Apple intentionally disclosed the private communications.

### 1. Plaintiffs fail to allege an interception.

The Wiretap Act defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The term "intercept" means to "*actually* [acquire] the contents of a communication[.]" *U.S. v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998) (emphasis in original); *see generally* 18 U.S.C. § 2510. Plaintiffs must also allege facts sufficient to warrant an inference that the intercepted communication was one in which (1) they had "a subjective expectation of privacy," and (2) that "expectation was objectively reasonable." *U.S. v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978) (citation omitted); 18 U.S.C. § 2510(2) ("oral communication" encompasses "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . ."). Here, Plaintiffs fail to identify *any* intercepted communication, let alone one in which they had an expectation of privacy.

1    As explained above in Section VI.A.1, Lopez, A.L, Henry, and Pappas's claims must be

2    dismissed. They jump to the unsupported conclusion that Apple must have intercepted their

3    conversations because they received targeted ads from third parties related to brands they discussed.

4    However, these allegations are not plausible, do not pass muster under *Iqbal*/*Twombly*, and are

5    refuted by the Complaint and the materials incorporated therein by reference. *See Shwarz*, 234 F.3d at

6    435; *Eclectic Props.*, 751 F.3d at 996-99. Specifically, Siri recordings are not used "to build a

7    marketing profile" or "sold to anyone," and are used only to improve Siri. Ord Decl., Ex. C.

8    Henry and Yacubian allege that their Siri devices inadvertently triggered with "high

9    frequency" or on "numerous occasions," SAC ¶¶ 25, 47. But these allegations do not, standing alone

10   or combined with the other allegations, plausibly support Plaintiffs' conclusion that their ***confidential***

11   communications were recorded. *See Satchell*, 234 F. Supp. 2d at 1008.

12   Harms alone purports to identify an actual conversation during which Siri accidentally

13   triggered. SAC ¶ 34. However, he acknowledges that he noticed "Siri spontaneously activate" and

14   made "a remark about Siri to his friend." *Id.* Plaintiff Harms does not allege that he continued the

15   conversation, nor any details about that conversation. Finally, while he claims the inadvertent trigger

16   itself was "highly offensive," this is not a case about unwanted interruptions to a conversation.

17   Instead, Harms was required (but failed) to plausibly allege that Apple intercepted a confidential

18   communication. *See Satchell*, 234 F. Supp. 3d at 1008.

19                    **2.      Apple did not "intentionally" intercept communications.**

20   In its Order dismissing the FAC, the Court found that while the "question [was] close,"

21   Plaintiffs satisfied the intent element of the Wiretap Act claim because the Court was required to

22   accept as true the allegation that "Apple fails to take remedial action while knowing of the accidental

23   activations." Order 8:14-9:4. Despite finding this element satisfied for pleading purposes, the Court

24   noted that it was "difficult to see how Apple could intentionally allow accidental Siri triggers to

25   proceed only to use the intercepted information to prevent accidental triggers." *Id.* The statement

26   proved prescient.

27   In their failed attempt to rectify other deficiencies identified by the Court, Plaintiffs make two

28   concessions that negate the intent element. First, the Complaint contradicts its own claim that Apple

                                                  10

*sought* to *surreptitiously* intercept communications not intended for Siri by acknowledging that Siri alerts users when it activates (even inadvertently). SAC ¶¶ 25, 34, 47. Second, Plaintiffs incorporate evidence of Apple's work to reduce accidental triggers of Siri. The Complaint relies on an article describing Apple's efforts to improve Siri, which has led to "Siri's error rate [being] lowered by more than a factor of two . . . ." *See* Ord Decl., Ex. E. These new allegations render the case distinguishable from the *Backhaut* and *Google* cases the Court previously cited in its Order.

In *Backhaut*, the court found that the plaintiffs alleged intent by pleading facts showing that: (1) Apple identified an issue with iMessage, (2) had the ability to fix it (and would for a fee), and (3) did not fix it generally. *Backhaut v. Apple Inc.*, 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014). Unlike the plaintiffs' allegations in *Backhaut*, Plaintiffs have not alleged that there is a fixable issue that Apple refuses to fix. Rather, the Complaint demonstrates that Apple continually strives to and succeeds in reducing the inadvertent trigger rate, and any remaining imperfections are not the result of an intentional violation of the Wiretap Act but rather inherent to an evolving and complex technology. This dictates a conclusion that Plaintiffs fail to plead an intentional interception.

In the *In re Google Assistant Privacy Litigation* case, there was no mention of allegations that Google improved the Google Assistant to reduce the false trigger rate. *See* 457 F. Supp. 3d 797 (N.D. Cal. 2020). The Court also inferred intent because Google used inadvertent recordings to provide personalized advertising (arguing that it was allowed to do so), not just improve the service. *Id.* at 815, 819. As explained above, Apple does not use Siri recordings for marketing purposes and Plaintiffs do not and cannot make similar allegations here. Ord Decl., Ex. C (Siri recordings are "not used to build a marketing profile" or "sold to anyone").

Apple believes that privacy is a fundamental human right and designed Siri so users could enable or disable it at any time. Apple actively works to improve Siri to prevent inadvertent triggers and provides visual and audio cues (acknowledged by several Plaintiffs) so users know when Siri is triggered. SAC ¶¶ 6, 25, 34, 47; *see also* Ord Decl., Ex. C; Ord Decl., Ex. E. Plaintiffs' allegations, as a whole, do not support the requisite inference of intent, and the claim under the Wiretap Act should be dismissed.

////

CASE NO. 5:19-CV-04577-JSW
APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

### 3.   Plaintiffs' allegations demonstrate consent to the erroneous recordings.

Under the Wiretap Act, a person may lawfully "intercept a wire, oral, or electronic communication . . ." if he "has [been] given prior consent to such interception" by a party to the communication. 18 U.S.C. § 2511(2)(d). Consent may be explicit or implied. *See U.S. v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *U.S. v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987). Courts apply a "reasonable user" standard to determine consent under the Wiretap Act. *See Perkins*, 53 F. Supp. 3d at 1212. "Drawing all inferences" in Plaintiffs' favor, the Court previously was unwilling to infer consent based on a disclaimer in the SLA stating services like Siri would not be "error free" and Plaintiffs' alleged understanding of how voice assistants work. Order 10:1-13, 10 n.4; *see also* SAC ¶¶ 22, 31, 55-56, 109, 127, 142. However, new allegations in the Complaint demonstrate that Plaintiffs were aware when Siri activated and therefore consented to any recording if they continued to speak thereafter. For example, Henry admits he has observed, since July 2017, "that Siri automatically triggered," SAC ¶ 25; Harms was "prompted" to "make a remark" when Siri activated, *id*. ¶ 34; and Yacubian knew Siri activated when it "ask[ed] him what he was searching for," *id*. ¶ 47. While Plaintiffs could disable "Hey Siri," some did not, and Henry purchased another Siri-capable device in 2020.

Thus, the rationale for the Court's prior reluctance to consider a consent argument at the motion to dismiss stage no longer applies. Plaintiffs' continued use of their Siri-enabled devices despite actual knowledge of accidental triggers and continued conversations despite awareness of activation is consent to any alleged interception thereafter. *See Perkins*, 53 F. Supp. 3d at 1212-13 (dismissing Wiretap Act claims where defendant presented disclaimer immediately prior to the moment of the alleged wrongful conduct and "Plaintiffs have consented to or authorized the [interception]"); *Percival v. Poon*, 2021 WL 962701, at *4–5 (W.D. Wash. Mar. 15, 2021) ("If Ms. Percival was aware that Ms. Poon was recording and chose to speak with her anyway, her [Wiretap Act] claim fails."). For this additional reason, the Wiretap Act claim should be dismissed.

### 4.   Plaintiffs have not sufficiently alleged an unlawful disclosure.

To plead an additional claim under § 2511(1)(c) of the Wiretap Act, Plaintiffs must plead (1) an unlawful interception under the Wiretap Act, and (2) an actual disclosure. *Noel v. Hall*, 568

F.3d 743, 751 (9th Cir. 2009). The defects in the interception claim, set forth above, also require dismissal of the disclosure claim. Moreover, the Court found the allegations of the FAC insufficient to state a disclosure claim. Order 10:16-21. Plaintiffs have not remedied this defect and do not allege that *their* confidential recordings (if any) were ever disclosed to third parties. A generalized statement that some "small portion" of Siri recordings were reviewed by third parties, SAC ¶ 69, falls short of the allegations needed to sustain the inference that any of Plaintiffs' recordings were among the small number of graded recordings, much less that any such recording was confidential.

### C. Plaintiffs fail to state a claim for violation of CIPA Section 632.

Section 632 of CIPA prohibits using a device to "eavesdrop upon or record" confidential communications "intentionally and without the consent of all parties." Cal. Penal Code § 632(a). The Court previously dismissed Plaintiffs' Section 632 claim because Plaintiffs failed to allege "that their own confidential communications were intercepted." Order 16:19-26 (citing *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013)). The same deficiency requires dismissal of the current Complaint. *See* Sections VI.A.1 and VI.B.1.

The claim also warrants dismissal because there is no basis to infer that Apple intended to record Plaintiffs' confidential communications. *People v. Superior Court of Los Angeles County*, 70 Cal. 2d 123, 133 (1969) (requiring intent to record a confidential communication); *see also Buchanan*, 26 Cal. App. 3d at 288-89 (operator who inadvertently listened to communication did not violate Section 632). As with the Wiretap Act claim, the Complaint's new allegations disprove the inference of intent that Plaintiffs seek to draw regarding inadvertent recordings. Section VI.B.2.

### D. Apple has not violated Plaintiffs' privacy rights.

When brought together, claims for intrusion upon seclusion and violation of the right to privacy under the California Constitution are subject to a "combined inquiry" into "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification or other relevant interests." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017). The Court previously found that Plaintiffs failed to allege "specific circumstances to show that Apple intercepted their confidential communications" or that "the scale or pervasiveness of the accidental triggers itself gives rise to a privacy invasion."

Order 18:3-4. Plaintiffs did not cure these defects. *See* Sections VI.A.1 and VI.B.1.

The Complaint's new allegations negate Plaintiffs' prior conclusions, on which the Court previously relied, that the challenged conduct violated "some reasonable expectation [of privacy] prior to the publication [of the *Guardian* article] based on Apple's own privacy policy." *See* Order 18:21-24. It is now clear that multiple Plaintiffs (at least Henry and Harms) knew that accidental triggers had occurred and continued to use their devices before the *Guardian* article was released. Section VI.B.3; *see also In re Yahoo*, 7 F. Supp. 3d at 1037-38 (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994)) ("The plaintiff in an invasion of privacy action must have conducted himself or herself in a manner consistent with an actual expectation of privacy, *i.e.*, he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant."). Additionally, the Complaint incorporates an article that, consistent with Apple's commitment to privacy, describes Apple's efforts to reduce Siri's error rate. *See* Ord Decl., Ex. E. Apple disclosed to Plaintiffs that third parties may review recordings to improve Siri. *See* SAC ¶ 69; Ord Decl., Ex. A (consenting to disclosures to contractors "to provide or improve [Apple's] products and services"); Ord Decl., Ex. C ("By using Siri and Dictation, you agree and consent to Apple's and its subsidiaries' and agents' transmission, collection, maintenance, processing, and use of this information, including your voice input data and Siri data, to provide and improve Siri and dictation functionality in Apple products and services.").

Plaintiffs have not alleged that recordings of their communications were graded or that Apple used the small number of recordings it sent to graders other than to improve Siri. Plaintiffs also do not allege the "scale or pervasiveness of the accidental triggers itself gives rise to a privacy invasion" because they fail to plead even a single confidential communication of their own that was recorded. These shortcomings, combined with Apple's use of random identifiers to ensure that recordings were not associated with an identifiable user, belie any reasonable inference of offensiveness. *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (dismissing claims based on disclosure of unique device identifier number, personal data, and geolocation); *In re Yahoo*, 7 F. Supp. 3d at 1040 (interception and distribution of emails insufficient to establish violation); *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("routine commercial behavior" not "egregious breach of

CASE NO. 5:19-CV-04577-JSW
APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

social norms").

**E.     Plaintiffs fail to state a claim for breach of contract.**

To plead a breach of contract, Plaintiffs must allege (1) a contract, (2) their performance, (3) Apple's breach, and (4) damages. *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020). The Court dismissed Plaintiffs' contract claim in the FAC because they "fail[ed] to allege facts showing interception and disclosure in their particular circumstances." Order 19:28-20:1. The repleaded contract claim fares no better as the Plaintiffs again fail to plead a breach or damages. Sections VI.A.1, VI.B.1, VI.B.4

Plaintiffs impermissibly seek to imply a term into the SLA and Privacy Policy that Siri would never accidentally trigger. *Id.* However the SLA expressly states that Siri is provided "as is" and disclaims that Siri would be "error free." Ord Decl., Ex. D; *see Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1141 (N.D. Cal. 2013) (dismissing contract claim "in light of the express provisions"); *see also Minkler v. Apple Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (enforcing "as is" disclaimer of implied promises). For similar reasons, Plaintiffs do not (and cannot plausibly) allege damages, since there is no basis to claim they paid for a Siri feature that would never accidentally trigger. *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (rejecting theory where Plaintiffs did not allege paying for the services they claimed they were not provided). For each of these reasons, Plaintiffs' breach of contract claim should be dismissed.

**F.     Plaintiffs fail to state a claim for violation of the UCL.**

Plaintiffs add a claim of fraud to their previous UCL claims of unlawful and unfair conduct. SAC ¶¶ 176-82. Plaintiffs fail to plead the new fraud claim with specificity, as required under Rule 9(b), making only generic references to ads and failing to identify any ads that promised Siri would not accidentally trigger. *Id* ¶¶ 15, 22, 31, 44. The UCL claim also does not satisfy requirements established by this Court's dismissal Order.

First, Plaintiffs still lack statutory standing, which requires dismissal of the UCL claim. The Court's Order required Plaintiffs to allege "they actually purchased the devices and . . . saw Apple's [alleged] representations prior to the purchase." Order 20:22-21:2. The amended claim continues to rely on boilerplate assertions that Plaintiffs "would not have purchased" or "would have paid less" for

CASE NO. 5:19-CV-04577-JSW
APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

their devices, without alleging, as Rule 9(b) requires, they actually saw any representation that Siri would not accidentally trigger, much less where and when they saw it (*i.e.*, before purchase). Adding bare allegations of a purchase is not adequate to sustain an overpayment claim. *Cahen*, 717 F. App'x at 723-24 (overpayment claim dismissed); *Beyer v. Symantec Corp.*, 2019 WL 935135, at *3-4 (N.D. Cal. Feb. 26, 2019) (same). Also, a boilerplate allegation that Plaintiffs have "a property interest" in their recordings, SAC ¶ 181, does not confer standing. *See Quadrant Info. Servs., LLC v. LexisNexis Risk Sol'ns, Inc.*, 2012 WL 3155559, at *4 (N.D. Cal. Aug. 2, 2012).

Second, as with the FAC, Plaintiffs' failure to plead a predicate violation of other laws is fatal to a claim under the "unlawful" prong. Order 21:3-4 (citing *Rojas-Lozano*, 159 F. Supp. 3d at 1120).[2]

Third, as to Plaintiffs' unfairness claim, although the Court previously found that a "reasonable consumer could plausibly conclude that the harm from interception of confidential communications outweighs the utility from having Siri," Order 21:10-12, Plaintiffs were not put to this Hobson's choice. Plaintiffs could disable "Hey Siri" while still using Siri (*e.g.*, through touch activation), a choice three Plaintiffs now admit they made. SAC ¶¶ 20, 48. The remaining three Plaintiffs continued using "Hey Siri," and Henry bought a new Siri-enabled device, *id.* ¶ 22. In light of Plaintiffs' new allegations demonstrating that Siri's utility outweighed any alleged harms for at least half of the named Plaintiffs, the unfairness claim fails.

### G. Plaintiffs' claim for declaratory relief fails.

Plaintiffs' claim for declaratory relief must be dismissed because it is "entirely commensurate" with the other claims, which fail. *See Monreal*, 948 F. Supp. 2d at 1081.

## VII. CONCLUSION

Apple respectfully requests dismissal of the Complaint with prejudice.

Dated: April 20, 2021                                DLA PIPER LLP (US)

                                By:  /s/ *Isabelle Ord*
                                _____
                                ISABELLE L. ORD
                                Attorneys for Defendant APPLE INC.

---

[2] The Complaint continues to refer to the California Online Privacy Protection Act ("OPPA"), Cal. Bus. & Prof. Code § 22576. Plaintiffs abandoned this theory, and it was dismissed. Order 21 n.7.

CASE NO. 5:19-CV-04577-JSW
APPLE'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT