Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
Radhika Gupta (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com
rgupta@lowey.com

*Counsel for Plaintiffs*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as guardian of A.L., a minor, LISHOMWA HENRY, JOSEPH HARMS, JOHN TROY PAPPAS, and DAVID YACUBIAN, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>               Defendant. | Docket No.:  4:19-cv-04577-JSW<br><br>**NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 30(d)(2)**<br><br>Date: September 1, 2023<br>Time: 9:00 a.m.<br>Courtroom: 5, 2nd Floor<br><br>Judge: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................. ii

NOTICE OF MOTION ......................................................................................................... 1

   I.   INTRODUCTION ................................................................................................ 1

   II.  STATEMENT OF FACTS ................................................................................... 2

   III. ARGUMENT ....................................................................................................... 3

      A.  Legal Standard ............................................................................................. 3

      B.  Extensive Speaking Objections and Witness Coaching ............................... 5

      C.  Improper "Scope" Objections and Instructions to the Witness to Not Answer

          Deposition Questions ................................................................................... 7

      D.  Mr. Roberts Failed to Exhibit Professionalism and Civility ....................... 11

          i.    Mr. Roberts' Outburst About Audio/Video Setup .............................. 11

          ii.   Mr. Roberts' Outburst About Zoom Link E-mailed to the Witness ................... 12

          iii.  Mr. Roberts' Outburst About Hard Copy and Electronic Exhibits ...................... 13

   IV. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Detoy v. City & Cnty. of San Francisco*,
 196 F.R.D. 362 (N.D. Cal. 2000)........................................................................................ 10

*Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*,
 150 F.R.D. 525 (E.D. Pa. 1993) ........................................................................................... 6

*Holloway v. Cnty. of Orange*,
 No. SACV 19-01514-DOC (DFMx), 2021 WL 430697 (C.D. Cal. Jan. 11, 2021) ............... 11

*Humphreys v. Regents of Univ. of Cal.*, No. C,
 04-03808SI, 2006 WL 870963 (N.D. Cal. Apr. 3, 2006) ...................................................... 11

*Immunogenics Corp. v. Newport Trial Grp.*,
 No. SACV 15-02034-JVS (JCGx), 2017 WL 10562691 (C.D. Cal. Aug. 7, 2017) ............... 12

*In re Stratosphere Corp. Sec. Litig.*,
 182 F.R.D. 614 (D. Nev. 1998).............................................................................................. 6

*Iniguez v. Wayfair LLC*,
 No. 5:21-cv-00880-MWF (SPx), 2022 WL 4606190 (C.D. Cal. May 16, 2022).................... 16

*La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*,
 No. 17-cv-1124-MMA(WVG), 2019 WL 4141237 (S.D. Cal. Aug. 30, 2019) ................... 5, 9

*Lee v. Pep Boys-Manny Moe & Jack of California*,
 No. 12-cv-05064-JSC, 2015 WL 9268118 (N.D. Cal. Dec. 21, 2015).................................... 5

*Lucas v. Breg, Inc.*,
 No. 3:15-cv-00258-BAS (NLS), 2016 WL 2996843 (S.D. Cal. May 13, 2016)................. 5, 12

*Nguyen v. LVNV Funding, LLC, et al.*,
 15-cv-0758-LAB-RBB, 2017 WL 951026, (S. D. Cal. Mar. 10, 2017) ................................. 11

*Snyder v. Alight Sols., LLC*,
 No. SACV 21-00187-CJC (KESx), 2022 WL 17185010 (C.D. Cal. Mar. 1, 2022)............... 11

*Uschold v. Carriage Services, Inc.*,
 No. 17-cv-04424-JSW (EDL), 2019 WL 1975433 (N.D. Cal. Mar. 15, 2019) ....................... 5

*Van Osten v. Home Depot, U.S.A., Inc.*,
 No. 19-cv-2106-TWR (BGS), 2021 WL 3471581 (S.D. Cal. May 4, 2021)........................... 11

**Rules**

Fed. R. Civ. P. 30 ..................................................................................................................... 4, 5

Fed. R. Civ. P. 30(b)(1)................................................................................................................. 7

NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 30(d)(2)
No.:  4:19-cv-04577-JSW

Fed. R. Civ. P. 30(b)(6)...............................................................................................3, 16

Fed. R. Civ. P. 30(c)(1).....................................................................................................16

Fed. R. Civ. P. 30(c)(2)....................................................................................................4, 6

Fed. R. Civ. P. 30(d)(2)................................................................................................1, 2, 5

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTE THAT** on September 1, 2023 at 9:00 a.m. or as soon thereafter as this Motion may be heard in the Oakland Courthouse, Courtroom 5 – located at 2nd Floor, 1301 Clay Street, Oakland, CA 94612, Plaintiffs will and hereby do move for an order for sanctions pursuant to Fed. R. Civ. P. 30(d)(2) against Defendant Apple, Inc., its counsel, DLA Piper, and its attorney, Mr. Eric Roberts, requesting as sanctions (1) that the Court compel Apple to re-produce Mr. Erik Neuenschwander for an additional four hours of deposition time; (2) attorneys' fees and costs associated with the July 7 deposition and the four-hour re-deposition of Mr. Neuenschwander; (3) attorneys' fees and costs associated with litigating this motion for sanctions; and (4) a *Clifton* Order setting forth the precise scope of conduct to which Apple's counsel must adhere at all future depositions in this action.

The Motion is based on this Notice, the Memorandum Law herein, the Declaration of Ms. Andrea Farah filed herewith and exhibits thereto, and any other information and argument presented at the time of the hearing, and any other matters that may properly come before the Court.

I.      **INTRODUCTION**

Plaintiffs Fumiko Lopez (individually and as guardian of Plaintiff A.L.), John Troy Pappas, and David Yacubian ("Plaintiffs") bring this Motion for Sanctions under Federal Rule of Civil Procedure ("Rule") 30(d)(2) against Defendant Apple, Inc. ("Apple") and its outside counsel, DLA Piper, specifically, attorney Eric Roberts. On July 7, 2023, Plaintiffs deposed Apple's corporate representative, Erik Neuenschwander (the "Witness"), in person at DLA Piper's Palo Alto offices. Mr. Roberts' unprofessional conduct before and during the deposition impeded Plaintiffs from obtaining the deposition testimony to which they are entitled. A quick glance at the transcript makes this obvious. Out of a 402-page transcript, Mr. Roberts' speaking objections and commentary take up 946 lines, totaling 38 pages. What is not obvious from the transcript is Mr. Roberts' derogatory tone, overtly aggressive and demeaning behavior and that much of the time, off and on the record, Mr. Roberts was screaming at Plaintiffs' Counsel in a manner that was not only unbecoming and unacceptable of an officer of the Court but also unnerving.  In the course of all his speaking (much of which was, in fact, screaming), Mr. Roberts berated Plaintiffs' Counsel, improperly instructed the witness not to answer, coached the witness, and deliberately used up time on the record, which Mr. Roberts knew was extremely constrained due to the Witness' being available only until 5:00 p.m. Pacific Time on that same day. Mr. Roberts' conduct created a hostile environment in which no attorney should be required to endure to examine a corporate witness.

Notably, Apple's in-house counsel was present during the entire deposition. At no point did Apple's in-house counsel attempt to restrain Mr. Roberts or expressed any disapproval of his behavior either on the record or in Plaintiffs' Counsel's presence.  Thus, Apple, at a minimum, consented to and condoned Mr. Roberts' obstructionist, inappropriate, and unprofessional behavior. Plaintiffs accordingly seek sanctions against Apple, DLA Piper, and Mr. Roberts to compensate them for the prejudice they suffered as a result of Mr. Roberts' misconduct. Specifically, Plaintiffs request as sanctions: (1) that the Court compel Apple to re-produce Mr. Neuenschwander for an additional four hours of deposition time; (2) attorneys' fees and costs associated with the July 7 deposition and the four-hour re-deposition of Mr. Neuenschwander; (3)

attorneys' fees and costs associated with litigating this Motion for Sanctions; and (4) a *Clifton Order* setting forth the precise scope of conduct to which Apple's counsel must adhere at all future depositions in this Action.

## II.   STATEMENT OF FACTS

Plaintiffs served their Rule 30(b)(6) deposition notice ("Rule 30(b)(6) Deposition Notice") on November 1, 2022. Farah Decl.¶ 3, Ex. 1[1] (Rule 30(b)(6) deposition notice). Apple informally identified Mr. Neuenschwander as the likely witness for several topics on or about on June 7, 2023 and offered Friday, July 7, 2023 as the only date on which the Witness was available to be deposed. Farah Decl., ¶ 4. On June 14, 2023, Apple served objections to and re-interpretations of the noticed deposition topics and formally designated several Rule 30(b)(6) witnesses. *Id*. at ¶ 5, Ex. 2 (Apple's Objections and Responses to Rule 30(b)(6) Notice). Upon receiving Apple's formal designation of Mr. Neuenschwander in its June 14 letter, Plaintiffs' Counsel promptly agreed to depose the Witness on Friday, July 7, 2023. *Id.* at ¶ 6, Ex. 3 (Email from Plaintiffs' Counsel to Apple's counsel, dated July 2, 2023, confirming July 7, 2023). At that same time, Plaintiffs' Counsel informed Apple that Plaintiffs' Counsel would be taking the Deposition in person in order to enhance effectiveness of the Deposition by using hard copy exhibits. *Id*.. Though Apple itself had proposed the July 7, 2023 date, Apple informed Plaintiffs' Counsel that the Witness had a hard stop at 5:00 p.m. PST. Farah Decl., ¶¶ 7, 8. Plaintiffs' Counsel agreed to accommodate Apple's restrictions. *Id.* at ¶ 7, Ex. 4. In light of the shortness of time to conduct a full 7-hour deposition prior to the 5:00 p.m. PST deadline, the Parties agreed to a start time at 8:30 a.m. PST. *Id*. at ¶ 8, Ex.5.

Following the Parties' agreement on the time, location, and scope of the Deposition, Plaintiffs' Counsel promptly served an Amended Notice of Deposition ("Amended Notice") on July 5, 2023 that set forth DLA Piper's Palo Alto office as the location of the Deposition as well as 8:30 a.m. PST start time. *See Id.* at ¶ 9, Ex. 6 (Plaintiffs' Amended Notice). The Amended

---

[1] References to "Ex. _" are to the exhibits attached to the Declaration of Andrea Farah ("Farah Decl.") filed concurrently herewith.

Notice also informed that the Deposition would be "conducted using teleconference and/or video conference technology, without a court reporter being physically present with the witness. . . [t]he court reporter will administer the oath to the witness remotely." *Id*. In the same email, Plaintiffs' Counsel requested that Apple's counsel provide a list of attendees for the Deposition along with their email addresses, including the Witness. *Id*. at ¶ 10, Ex. 10.

## III.   ARGUMENT

### A.  Legal Standard

Conduct at depositions by oral examination is governed by several authorities. First and foremost, Rule 30 allows counsel to object at the time of examination, provided that counsel does so "concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). While objections are noted on the record, "the examination still proceeds [and] the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2). In line with Rule 30(c)(2), this Court's Deposition Standing Order expressly cautions against improper objections, stating, among other things, that "[s]peaking objections or those calculated to coach the deponent are prohibited." *See* Deposition Standing Order, ¶ 4. Moreover, the Northern District of California's Guidelines for Professional Conduct ("Guidelines") mandate professionalism, stating "[l]awyers owe a duty of professionalism to their clients, opposing parties and their counsel, the courts, and the public as a whole. Those duties include, among others: civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, cooperation and competence." Guidelines (available at https://cand.uscourts.gov/forms/guidelines-for-professional-conduct/)                          ("Guidelines"). Specifically as to deposition conduct, the Guidelines reiterate that "most objections are preserved and need be made only when the form of a question is defective or privileged information is sought" and state that "[a] lawyer should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer."  *See Guidelines,* at "As to Depositions" ¶ h. Mr. Roberts' objections violated Rule 30(c)(2), this Court's Deposition Standing Order and his personal conduct violated the duty of professionalism espoused in the Guidelines.

Rule 30(d)(2) gives the Court broad authority to "impose an appropriate sanction, including the reasonable expenses and attorney's fees incurred by any party-on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Like Rule 30(d)(2), the Deposition Standing Order warns that "[c]ounsel may be subject to sanctions if they consistently impede, or otherwise unreasonably delay, the fair examination of the deponent." *Id.*, ¶4. When considering whether to impose sanctions pursuant to Rule 30(d)(2), the Court should first determine whether a person's behavior has impeded, delayed, or frustrated the fair examination of the deponent. Fed. R. Civ. P. 30(d)(2). If it has, the Court should then determine an appropriate sanction, which include "cost resulting from obstructive tactics" and "attorney's fees incurred as a result of the improper conduct and the necessity of filing a motion with the Court." *Lee v. Pep Boys-Manny Moe & Jack of California*, No. 12-cv-05064-JSC, 2015 WL 9268118, at *3 (N.D. Cal. Dec. 21, 2015); *La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, No. 17-cv-1124-MMA(WVG), 2019 WL 4141237, at *4 (S.D. Cal. Aug. 30, 2019) (sanctions imposed where counsel demonstrated "systematic impeding, delaying, and frustrating the fair examination of" the witness.  Courts within this District regularly sanction counsel for deposition misconduct like that Mr. Roberts engaged in here. *See, e.g.*, *Uschold v. Carriage Services, Inc*., No. 17-cv-04424-JSW (EDL), 2019 WL 1975433, at *3 (N.D. Cal. Mar. 15, 2019) (awarding sanctions where counsel engaged in lengthy, argumentative speaking objections); *Silver v. BA Sports Nutrition, LLC*, No. 20-cv-00633-SI, 2021 WL735675, at *1 (N.D. Cal. Feb. 25, 2021) (awarding sanctions in the form of attorney fees, court reporter fees and re-deposition where counsel's speaking objections were exceedingly disruptive at numerous points during the deposition); *Lucas v. Breg, Inc.*, No. 3:15-cv-00258-BAS (NLS), 2016 WL 2996843 (S.D. Cal. May 13, 2016) (granting motion for sanctions when counsel asserted improper speaking objections and improperly interrupted counsel's lines of questioning).

The Court also has the authority to impose a *Clifton* Order. A *Clifton Order* is warranted where counsel demonstrates they are unable to comply with Rule 30 and it is aimed at curbing

misconduct during depositions. As the court in *Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150 F.R.D. 525, 528 (E.D. Pa. 1993), explained:

> [T]he underlying purpose of a deposition is to find out what a witness saw, heard or did, the question and answer conversation must take place between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to a deposition to testify, not to indulge in a parody of [opposing counsel], with lawyers coaching or bending the witness's words to mold a legally convenient record . . . rather a lawyer must accept the facts as they develop.

A *Clifton* Order placing substantial limitations on the conduct of Apple, Mr. Roberts, and DLA Piper is warranted to require future depositions to be properly conducted without antagonistic, improper, and harassing behavior, as discussed below.

**B.  Extensive Speaking Objections and Witness Coaching**

Mr. Roberts objected more than ***300 times*** during the 7-hour deposition (*see generally,* Deposition Transcript of Erik Neuenschwander dated July 7, 2023, attached to the Farah Decl. as Ex. 8) ("Tr.). This represents a rate of 1 objection per every 80 seconds of deposition testimony. Of those objections, at least 26 were excessive and speaking objections.

Plaintiffs' Counsel repeatedly reminded Mr. Roberts that speaking objections were prohibited by the Federal Rules and by the Court's Deposition Standing Order, which ███████ ██████████████████████████████████████████████. Ignoring this and other warnings (*see, e.g.,* ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████, Mr. Roberts nonetheless continued with his "Rambo tactics where counsel attacks or objects to every question posed, thus interfering with, or even preventing, the elicitation of any meaningful testimony and disrupting the orderly flow of the deposition." *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 618 (D. Nev. 1998). At one point, Mr. Roberts coached the witness in violation of Rule 30(c)(2). The witness was questioned about the ██████████████████████████████████████████████████

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Roberts interjected

3 before the Witness had a chance to respond, and invited the Witness to review an Appendix that

4 Apple produced in response to Plaintiffs' First Set of Interrogatories in December 2022, which the

5 Witness did not author nor contributed to—and which the Witness subsequently testified was not

6 even responsive to Plaintiffs' Counsel's question, such that Mr. Roberts' interruption was useless

7 for purposes of providing testimony in response to Plaintiffs' Counsel's question:

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮

12 By doing so, Mr. Roberts improperly attempted to influence the Witness' testimony and

13 once again unilaterally expended time on the record, only for the witness and Plaintiffs' Counsel

14 to resume questioning at the point immediately prior to Mr. Roberts' interjection. Tr. at 254:11-

15 254:20.

16 On at least 3 occasions, the question had to be repeated to the witness immediately after

17 Mr. Robert's lengthy objection, evidencing its disruptive nature. ▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23 Mr. Roberts engaged in a variety of deliberate time-wasting tactics. At one point, Mr.

24 Roberts went as far as objecting on the grounds of ▮▮▮▮▮▮▮▮ in response to Plaintiffs'

25 Counsel's examination of the Witness' knowledge of ▮▮▮▮▮▮▮▮▮▮▮

26 ▮▮▮▮▮▮▮▮▮ On another occasion, Mr. Roberts used a "scope" objection to threaten to

27 take time off from the Witness' Rule 30(b)(1) deposition. *See* Tr. 335:22-336:16 ▮▮▮▮▮

28



### C. Improper "Scope" Objections and Instructions to the Witness to Not Answer Deposition Questions

In response to Mr. Roberts' incessant objections that certain questions were "outside the scope" of the 30(b)(6) topics for which Mr. Neuenschwander was designated, Plaintiffs' Counsel offered that he could interpose a standing objection to eliminate continued disruption. Tr. 18:15-19. Mr. Roberts declined the offer, instead insisting that

One minute later, Mr. Roberts interrupted the deposition once again at length:

About thirty minutes later, Mr. Roberts derailed the deposition once again on this basis:

[REDACTED]

Even if Plaintiffs' Counsel's questions were outside of the negotiated scope of the Deposition—which they were not—it is well settled that Rule 30(b)(6) deposition notices **do not limit** the examiner to the topics listed in the notice, but rather, the "30(b)(6) notice establishes the **minimum** about which the witness must be prepared to testify, not the maximum." *See La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, No. 17-CV-1124-MMA(WVG), 2019 WL 4141237, at *7 (S.D. Cal. Aug. 30, 2019). "They do not serve as handcuffs to limit the examiner from asking, for example, basic foundational questions about the deponent or the entity itself." *Id.* (imposing sanctions under Rule 30(d)(2) due to the "hostile tone and posture" and "continuously interrupt the deposition and mercilessly harass [deposing attorney], while finding that "[e]very baseless objection, diatribe, argumentative comment, and petty argument cumulatively compounded to greatly extend the time spent in deposition.").[2] Thus, deposition notice topics are simply the basic categories that a corporate representative is supposed to competently answer questions about.

---

[2] In any event, Mr. Roberts objected to questions which *squarely* fell within the topics the Witness was designated to testify about. For example, when Plaintiffs' Counsel questioned the Witness on [REDACTED] covered under Topic No. 12—Apple's efforts to sell, license, or solicit investment in Siri or User Data—Mr. Roberts objected to the scope of the question, nonetheless. Tr. at 369:6-369:17. Mr. Roberts did the same even for questions like [REDACTED]

Ignoring yet another Rule—Rule 30(c)(2), which allows counsel to instruct the deponent not to answer a question for only three reasons: to preserve a privilege, enforce a court-ordered limitation, or bring a motion to terminate or limit the deposition—Mr. Roberts instructed the witness not to answer at least two questions on impermissible grounds and despite not satisfying any of the three enumerated circumstances contemplated by Rule 30(c)(2). *See Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 365 (N.D. Cal. 2000) ("As a rule, instructions not to answer questions at a deposition are improper."). For example, while Plaintiffs' Counsel was questioning the Witness ███████████████████████████████████ ████████ Mr. Roberts interjected, while yelling:

Thereafter, Plaintiffs' Counsel explained to Mr. Roberts that his instruction was not appropriate under Rule 30. *See* Tr. at 101:5-101: 16. Mr. Roberts continued to ignore these warnings, instead insisting that Plaintiffs' Counsel first identify the topic under which the question was presented, and ultimately instructing the witness not to answer:



Likewise, for Topic 8 that related to the User Data collected, or otherwise obtained intentionally or unintentionally about Plaintiffs, through Siri Devices, Mr. Roberts objected to scope on numerous questions that were covered under this topic.

This conduct alone is sufficient grounds for sanctions. *See Nguyen v. LVNV Funding, LLC, et al.*, No. 15-cv-0758-LAB-RBB, 2017 WL 951026 *12, (S. D. Cal. Mar. 10, 2017) ("Instructing a deponent not to answer a question on any grounds not delineated in Rule 30(c)(2) have been found to be grounds for sanctions under Rule 30(d)(2)"); *Snyder v. Alight Sols., LLC*, No. SACV 21-00187-CJC (KESx), 2022 WL 17185010, at *2 (C.D. Cal. Mar. 1, 2022) ("a relevance objection is an insufficient basis for instructing a deposition witness not to answer. This is because a deposition is meant to be a conversation between the deposing lawyer and the witness, so there is no need for the witness's lawyer to act as an intermediary by deciding which questions the witness should answer."). Courts readily impose re-deposition costs where counsel was unjustified in instructing a deponent not to answer. *Humphreys v. Regents of Univ. of Cal.*, No. C 04-03808SI, 2006 WL 870963 (N.D. Cal. Apr. 3, 2006) (awarding costs for additional half day of deposition where counsel improperly instructed deponent not to answer and because of other disruptive conduct); *Van Osten v. Home Depot, U.S.A., Inc.*, No. 19-cv-2106-TWR (BGS), 2021 WL 3471581, at *18 (S.D. Cal. May 4, 2021) (imposing sanctions under Rule 30(d)(2) for improperly instructing the witness not the answer questions); *Holloway v. Cnty. of Orange*, No. SACV 19-01514-DOC (DFMx), 2021 WL 430697, at *5 (C.D. Cal. Jan. 11, 2021) (ordering a re-deposition when counsel's improper instructions to not answer the questions impeded the fair examination of the witness).

Twenty-nine minutes before the deposition reached 7 hours on the record, Mr. Roberts interjected for another colloquy, this time to withdraw his instruction to the Witness not to answer given to the Witness two hours earlier. *See* Tr. at 375:7-375:17. At that point, Plaintiffs' Counsel had long since moved to testimony covering other topics, and thus, Mr. Roberts' withdrawal of his

instruction less than thirty minutes before the end of the deposition did not remotely remedy his improper and unjustified instructions earlier in the day. Mr. Roberts' conduct was prejudicial and inexcusable, warranting sanctions under Rule 30(d)(2). *See Nat.- Immunogenics Corp. v. Newport Trial Grp.*, No. SACV 15-02034-JVS (JCGx), 2017 WL 10562691, at *12 (C.D. Cal. Aug. 7, 2017) ("objections do not show good faith" and "does not change the impropriety of [] objections[]" while cautioning that "[counsel] should have known the legal basis of his objection before stating it.").

**D.  Mr. Roberts Failed to Exhibit Professionalism and Civility**

Both on and off the record, Mr. Roberts consistently raised his voice, making argumentative and belligerent comments. He continued to do so after Plaintiffs' Counsel objected to his screaming, on at least six occasions. *See, e.g.,* ██████████████████████████ ██████████████████████████████████████████████████ Courts easily find such conduct to be sanctionable. *See Lucas*, 2016 WL 2996843, at *3 (commentary directed at opposing counsel lacking in civility and courteousness and creating an unwelcome environment justified imposing sanctions in the form of re-deposition, reasonable attorney fees and costs associated with the re-deposition and admonishing such conduct).  As a result of Mr. Roberts' outbursts described below, the Parties were not able to start the deposition until 9:06 a.m. PST—35 minutes after the agreed-on time—which Mr. Roberts falsely represented on the record was due to ███████████████████████████████████████████████████ ██████████████████████████████████

**i.     Mr. Roberts' Outburst About Audio/Video Setup**

Immediately after Mr. Roberts' arrival at around 8:00 a.m., Plaintiffs' Counsel inquired about the audio and video setup for the witness. Mr. Roberts—who had apparently failed to review Plaintiffs' Amended Notice of Deposition, which clearly stated that the court reporter and videographer would be remote—began screaming that the Deposition was supposed to be "in-person" and that he is not required to provide "all these bells and whistles." Farah Decl., ¶ 11. Thereafter, Mr. Roberts spent about 20 minutes looking for a laptop for the witness and himself.

Farah Decl., ¶ 12. Once he was able to locate a laptop—with 10 minutes to the scheduled start of the Deposition—Mr. Roberts, still hostile and visibly frustrated, began to speak in a raised voice, insisting that he had not received the Zoom links for the Deposition, the URL links for the display of Deposition exhibits, the dial-in information to access the remote proceeding, and that his account was not setup yet, such that he could not utilize any of the remote deposition components. *Id.*. In reality, all that information was sent to Mr. Roberts and his colleagues at DLA Piper well in advance of the deposition. *Id.*

Mr. Roberts continued to argue and scream and proceeded to have yet another outburst about where the Witness will sit. Mr. Roberts had set up the witness in the middle of the conference table and Plaintiffs' Counsel, accordingly, set up their laptops next to the Witness to ensure a smooth conversation and a clean Deposition record. But Mr. Roberts started yelling again that he "will not" let the Witness sit next to the Plaintiffs' Counsel, yanked the cables and laptop set up and moved to the head of the table. This wasted another five to seven minutes as Plaintiffs' Counsel also had to move and setup their laptops again. Farah Decl., ¶ 16.

### ii. Mr. Roberts' Outburst About Zoom Link E-mailed to the Witness

As is customary in remote depositions, the noticing attorneys' office reached out to Apple's counsel, including Mr. Roberts two days prior to the scheduled Deposition as well as on the evening of, seeking the list of deposition attendees and their email addresses for the purpose of furnishing them with the Zoom links necessary to conduct remote depositions. Apple's Counsel did not respond to any of Plaintiffs' inquiries, forcing Plaintiffs' Counsel to send an over-inclusive list of potential attendees, on the eve of the Deposition to the deposition vendor, Veritext, to ensure all possible attendees were equipped with the proper links and tools to begin the Deposition on time. Upon learning that the third party vendor, Veritext, sent a Zoom link to the witness, Mr. Roberts started yelling again that Plaintiffs' counsel had contacted a represented party and continued to yell that "it is against the ethics rules" which he also put on the record as soon as the deposition started, once again falsely claiming that ███████████████████████

███████████████████████████████████████████████████

Farah Decl.¶ 13. Plaintiffs' Counsel never acknowledged or conceded that anything inappropriate, let alone violative of the ethics rules, took place in connection with the witness receiving a Zoom link from a third-party vendor, in connection with a deposition in which Apple designated them as a Witness. *Id*.

**iii.**    **Mr. Roberts' Outburst About Hard Copy and Electronic Exhibits**

Immediately before the commencement of the questioning—which was already delayed by more than 30 minutes—Mr. Roberts started screaming that Plaintiffs' counsel had come unprepared because she did not prepare a binder of exhibits for him. In fact, Plaintiffs' Counsel had prepared two binders of exhibits, one for Mr. Roberts and one for the witness, and had them delivered to DLA Piper's Palo Alto office (the location of the Deposition) the day before the Deposition. Just before the Deposition began, Mr. Roberts chose to hand his own binder to Apple's in-house counsel and an intern, who were also present, and insisted instead on viewing exhibits on the computer that he had originally objected to having to utilize.[3] Farah Decl., ¶¶ 14, 15, Ex. 9. Throughout the deposition, Mr. Roberts repeatedly complained about the "lack" of hard copy exhibits and complained about the speed at which the exhibits were being uploaded to the computer. For example, at one point, he complained:



---

[3] Had Mr. Roberts or his DLA Piper colleagues responded to Plaintiffs' counsel's multiple requests to identify the attendees at the deposition, Plaintiffs' counsel would have happily supplied binders for Apple's in-house counsel and the intern as well.



Despite having hard copies directly in front of him, Mr. Roberts instructed the witness to delay his answers while he waited for the exhibit to load on his screen. Mr. Roberts then interrupted the deposition shortly afterwards once again, complaining:



In another of his outbursts towards the end of the deposition, Mr. Roberts lamented the injustice of having to defend a deposition on a Friday:

That "Friday" was not only a regular business day, it was also the date that *Apple itself proposed* as the only day when the witness was available. Farah Decl. ¶¶ 4, 28. Mr. Roberts' conduct violated the rules of professionalism and was unbecoming of an attorney before a court. *See Iniguez v. Wayfair LLC*, No. 5:21-cv-00880-MWF (SPx), 2022 WL 4606190, at *2 (C.D. Cal. May 16, 2022) ("[d]uring depositions, the examination of the witness should proceed as it would

at trial. Fed. R. Civ. P. 30(c)(1). Counsel are expected to conduct themselves as they would in the presence of a judicial officer.").

## IV.     CONCLUSION

For the foregoing reasons, the Court should impose sanctions against Apple, Mr. Roberts and/or DLA Piper, in the form of (1) that the Court compel Apple to re-produce Mr. Neuenschwander for an additional four hours of Rule 30(b)(6) deposition time; (2) attorneys' fees and costs associated with the July 7, 2023 Deposition and the four-hour re-deposition of Mr. Neuenschwander; (3) attorneys' fees and costs associated with litigating this Motion for Sanctions; and (4) a *Clifton* Order setting forth the precise scope of conduct to which Apple's counsel must adhere at all future depositions in this action.

DATED: July 21, 2023

                                     */s/Andrea Farah*
                                     Vincent Briganti (*pro hac vice*)
                                     Christian Levis (*pro hac vice*)
                                     Margaret MacLean (pro *hac vice*)
                                     Andrea Farah (*pro hac vice*)
                                     Radhika Gupta (*pro hac vice*)
                                     **LOWEY DANNENBERG, P.C.**
                                     44 South Broadway, Suite 1100
                                     White Plains, NY 10601
                                     Telephone: (914) 997-0500
                                     Facsimile: (914) 997-0035
                                     vbriganti@lowey.com
                                     clevis@lowey.com
                                     mmaclean@lowey.com
                                     afarah@lowey.com
                                     rgupta@lowey.com

                                     Joseph P. Guglielmo (*pro hac vice*)
                                     Erin Green Comite (*pro hac vice*)
                                     **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                     The Helmsley Building
                                     230 Park Avenue, 17th Floor
                                     New York, NY 10169-1820
                                     Telephone: (212) 223-6444
                                     Facsimile: (212) 223-6334
                                     jguglielmo@scott-scott.com
                                     ecomite@scott-scott.com

John T. Jasnoch (Bar No. 281605)
Hal C. Cunningham (Bar No. 243048)
Sean C. Russell (Bar No. 308962)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com
hcunningham@scott-scott.com
srussell@scott-scott.com

Mark N. Todzo (Bar No. 168389)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: (205) 612-0243
kirk@woodlawfirmllc.com
*Attorneys for Plaintiffs*