Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

*Attorneys for Plaintiffs*

ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (*pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (*pro hac vice*)
eric.roberts@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

*Attorneys for Defendant APPLE INC.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as guardian of A.L., a minor, LISHOMWA HENRY, JOSEPH HARMS, JOHN TROY PAPPAS, and DAVID YACUBIAN, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>                Defendant. | Docket No.: 4:19-cv-04577- JSW (SK)<br><br>**JOINT DISCOVERY LETTER**<br><br>Hon. Sallie Kim |

1  Plaintiffs Fumiko Lopez (individually and as guardian of Plaintiff A.L.), John Troy Pappas, and David Yacubian ("Plaintiffs") and Apple Inc. ("Apple" or "Defendant") (collectively, the "Parties") jointly file this joint discovery letter relating to Plaintiffs' First Set of Requests for Production ("RFPs"), dated on February 18, 2022 (**Exhibit A**), and Apple's Objections and Responses to Plaintiffs' RFPs, dated March 21, 2022 (**Exhibit B**).

Lead trial counsel for the Parties hereby attest that they complied with Section 9 of the Northern District's Guidelines for Professional Conduct and this Court's Standing Order by meeting and conferring by telephone most recently, including in presence of the lead trial counsel for the Parties, on September 14, 2023, and no resolution could be reached, necessitating the submission of this joint discovery letter.

Attested to this 4th day of October, 2023.

 /s/Erin Green Comite                              /s /Isabelle L. Ord
Erin Green Comite                                  Isabelle L. Ord

*Lead Trial Counsel for Plaintiffs*                *Lead Trial Counsel for Apple Inc.*

 /s/Christian Levis                                /s/ Raj N. Shah
Christian Levis                                    Raj N. Shah

*Lead Trial Counsel for Plaintiffs*                *Lead Trial Counsel for Apple Inc.*

## I. BACKGROUND

The parties' discovery dispute relates to Plaintiffs' RFP 12, which seeks:

> Documents Relating to the economic value and/or financial benefit that You derived throughout the Relevant Time Period from Siri and Siri Devices, including Documents Relating to the nature of the economic value and/or financial benefit You derived from Siri or from any audio recordings and/or transcripts captured by Siri (*e.g.*, increased revenues from targeted advertising; or increased sales of Siri Devices due to the capability of hosting Siri) and Documents relating to the quantum of that economic value and/or financial benefit (whether calculated on a per-user basis, per-Siri Device basis, or otherwise).

Ex. A, 7. Apple's original written response provided, in part:

> Apple objects to this Request on the ground that it assumes facts and legal conclusions regarding an alleged "economic value" or "financial benefit" derived from Siri. By responding, Apple does not admit or adopt any factual or legal conclusion embedded in the Request. Apple further objects to this Request on the ground that it "is vague and ambiguous by virtue of its use of the undefined terms "economic value," "financial benefit," "derived from Siri," and "capability of hosting Siri." Apple also objects to this Request on the ground that it is overbroad, unduly burdensome, disproportional to the needs of the case, and irrelevant, including to the extent it seeks "all" such documents without geographic limitation and for an overbroad period of time, without limitation to the allegedly intentional recording of users' private communications based on alleged "Hey Siri" false accepts . . . .
>
> Subject to and without waiving any objections, Apple does not possess an internal analysis relating to the financial value of Siri to any product on which Siri is available. On the basis of Apple's objections, no further response to this Request is required or given.

Ex. B, 14-15. The Parties corresponded and telephonically met and conferred about RFP 12 numerous times over the past 15 months. Fact discovery closes December 1, 2023.

## II. PLAINTIFFS' POSITION[1]

RFP 12 seeks documents evidencing the financial benefit Apple has derived from Siri (including, but not limited to, Siri audio and transcripts). Plaintiffs identified for Apple categories of documents responsive to RFP 12 (discussed below), such as information in Apple's SEC filings and documents reflecting costs Apple avoided when it used recordings Plaintiffs allege Apple unlawfully obtained without consent to improve Siri. Apple refuses to produce such documents and should be compelled to do so. These documents are relevant to the calculation of damages as

---

[1] All "¶ __" references are to the Second Amended Class Action Complaint ("Complaint") (ECF No. 70); all emphasis is added and internal citations omitted unless otherwise stated.

1   Plaintiffs allege "Apple profited handsomely from [its] invasion of privacy by using the content
2   of conversations which Apple obtains without consent or authorization to improve the
3   functionality of Siri[.]" ¶6.  Under the Electronic Communications Privacy Act ("ECPA"),
4   Plaintiffs seek, *inter alia*, the sum of actual damages ***plus profits*** made by the violator as a result
5   of the violation.  18 U.S.C. §2520(b)-(c); ¶122.  Plaintiffs also seek disgorgement of profits for
6   Apple's intrusion upon seclusion and invasion of privacy.  ¶¶149, 163.  And, the Ninth Circuit has
7   held that "under California law, a defendant's unjust enrichment can satisfy the 'damages' element
8   of a breach of contract claim, such that disgorgement is a proper remedy.'" *Foster Poultry Farms,*
9   *Inc. v. SunTrust Bank*, 377 F. App'x 665, 669 (9th Cir. 2010).  Thus, the requested discovery is
10  relevant to establishing Apple's unjust profits from the alleged improper conduct.[2]

11      Apple, however, has produced ***no*** responsive documents.  The ***one*** document it contends it
12  produced (APL-LOPEZ_00033486) is directly responsive to RFP 4, not RFP 12.  Ex. A at 6.
13  Apple contends it conducted a good faith search and ran Plaintiffs' search terms.  Both efforts were
14  deficient.  Apple's purported "good faith search" was severely limited by its objections.
15  Specifically, Apple's response was made "***subject to***" its objections, which include that RFP 12 is
16  "irrelevant" and not "limit[ed] to the allegedly intentional recording of users' private
17  communications based on alleged 'Hey Siri' false accepts."  According to Apple's response then,
18  it only searched for any "internal analysis relating to the financial value Apple derived from Siri"
19  specifically linked to false accepts ***and*** that it unilaterally deemed relevant and not overbroad,
20  burdensome, and disproportionate.  Further, Apple only ran search terms against the documents it
21  collected from six custodians – ***none of whom were involved in finance***.  Neither of Apple's
22  undertakings were designed to discover documents responsive to RFP 12.

23      The Court should overrule Apple's unsubstantiated, boilerplate objections that the RFP is
24  "overbroad, unduly burdensome, disproportional to the needs of the case, and irrelevant[.]" Ex. B
25  at 14.  "It is well established that 'all grounds for objections to [discovery] must be stated with
26  specificity [in the initial response] or the objection is waived[.]'" *Lofton v. Verizon Wireless*

27  ---
    [2]   RFP 12 provides "increased revenues from targeted advertising" as an example of relevant
28  documents.  In a good faith effort to narrow this dispute, Plaintiffs are not seeking to compel such
    documents since Apple maintains it does not conduct targeted advertising.

JOINT DISCOVERY LETTER                         2
No.: 4:19-cv-04577-JSW

*(VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015) (alterations in orig.).  Apple provided no details to substantiate these objections either in its RFP response, as required, or in subsequent discussions.  Apple also objected that the terms "economic value," "financial benefit," "derived from Siri," and "capability of hosting Siri" are vague and ambiguous.  Ex. B at 14.  These terms, however, can be interpreted to have their ordinary meaning.  *Zucchella v. Olympusat, Inc.*, No. 19cv7335, 2021 WL 4777139, at *9 (C.D. Cal. July 27, 2021); *O. L. v. City of El Monte*, No. 20cv00797, 2021 WL 926105, at *4 (C.D. Cal. Jan. 11, 2021).  Thus, Apple cannot be permitted to withhold documents on the basis of its objections.

***Subject to these objections***, Apple responded that it "does not possess an internal analysis relating to the financial value of Siri to any product on which Siri is available."  Ex. B at 15.  This RFP, however, is broader than Apple's narrow interpretation, which is limited by its objections.  The RFP also concerns Apple's efforts to value "any audio recordings and/or transcripts captured by Siri" that it utilized to improve Siri's functionality.  Even if Apple never directly evaluated the independent worth of Siri (or its users), the information to ascertain Apple's profits from intercepting private conversations can be determined with expert analysis of the related information RFP 12 seeks.  And, there is every reason to believe that responsive documents exist.  Apple's Form 10-K SEC filings belie Apple's contention that it possesses no internal analyses relating to the financial value of Siri.  For example, according to Apple's 2022 Form 10-K, Apple has estimated the value of Siri and used its best estimates to determine its stand-alone selling price ("SSP").[3]  In its 2020 Form 10-K, Apple states it calculates the "amortization of the deferred value of . . . Siri[.]"[4]  Emails Apple produced also substantiate that Apple calculates revenue estimates specifically relating to Siri, taking into account the costs incurred and investments made in maintaining and improving Siri.  *See, e.g.*, APL-LOPEZ_02971852; APL-LOPEZ_02983378.

From an economic perspective, the costs that Apple incurs to improve Siri and the costs

---

[3]   *See*   https://www.sec.gov/Archives/edgar/data/320193/000032019322000108/aapl-20220924.htm, Note 1, at 34 (explanation of Apple's revenue recognition practices).

[4]   *See*   https://investor.apple.com/sec-filings/sec-filings-details/default.aspx?FilingId= 14468826 at 21, n.3 ("Services net sales also include ***amortization of the deferred value*** of Maps, ***Siri***, and free iCloud storage and Apple TV+ services, which are bundled in the sales price of certain products.").

JOINT DISCOVERY LETTER                                           3
No.: 4:19-cv-04577-JSW

Apple saves utilizing wrongfully obtained Siri audio and Siri transcripts are relevant for Plaintiffs' damages expert to determine the proportion of Apple's profits attributable to improving Siri through the alleged violations. Such financial metrics could include any development costs, avoided costs, saved acquisition costs, cost savings, and/or competitive advantage Apple experienced by not having to pay for audio and transcripts to utilize in improving Siri's functionality, which would have increased Apple's profits. *Cf. GoPro, Inc. v. 360Heros, Inc.*, No. 16-cv-01944-SI, 2018 WL 2197536, at *1 (N.D. Cal. May 14, 2018) (plaintiff asserted a valid damages theory "based on defendant's indirect profits measured by avoided costs—in essence, that defendant 360Heros avoided costs, thereby increasing its profits, by using GoPro's marketing images instead of creating its own"); *Rearden LLC v. Walt Disney Co.*, No. 17-CV-04006-JST, 2021 WL 4099622, at *5 (N.D. Cal. Aug. 17, 2021), *on reconsideration in part*, 2022 WL 2064976 (N.D. Cal. June 8, 2022); *HP Tuners, LLC v. Cannata*, No. 18-CV-00527, 2023 WL 1071782, at *13 (D. Nev. Jan. 27, 2023) (holding development costs "may be a sufficient proxy to determine how much costs [the defendant] saved or avoided through his alleged misappropriation"); *MedImpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19CV1865-GPC(DEB), 2022 WL 5460971, at *5 (S.D. Cal. Oct. 7, 2022).

In analogous cases, courts agree such discovery is relevant and have rejected the defendant's similar efforts to resist producing financial information. In *Campbell v. Facebook Inc.*, the plaintiffs alleged Facebook violated the ECPA by scanning private messages and sought information relating to the value or profits Facebook obtained from its alleged misconduct. The court granted the motion to compel, rejecting the same argument Apple makes here, explaining:

> Facebook, however, represents it has found no documents showing how it directly profited from the alleged interceptions, indicating that no such information exists. RFP Ltr. at 4. Seemingly, because Facebook located no information it viewed as on point, Facebook now believes it should not have to produce any other information. But as Plaintiffs point out, even though Facebook itself may not have determined the independent value or profits it obtained from scanning private messages, expert analysis of the information Plaintiffs seek may assist them in making that determination, which in turn could assist in establishing a model or methodology for class-wide relief. . . . [G]iven (1) Facebook's representation that it has not itself determined a method of valuing profits obtained from scanning users' private messages, and (2) that Facebook has not suggested an alternative way of producing

> information to assist Plaintiffs with obtaining that basic information they seek, the Court finds it reasonable that Plaintiffs should be permitted somewhat broader discovery to be able to establish a model or methodology for class-wide relief.

310 F.R.D. 439, 447-48 (N.D. Cal. 2015); *see also In re Google Assistant Privacy Litig.*, No. 19-cv-04286-BLF (N.D. Cal.), ECF No. 207 at 3-6; ECF No. 211-5 at 2-4; *Garner v. Amazon.com, Inc.*, No. C21-0750, 2022 WL 16744319, at *4 (W.D. Wash. Nov. 7, 2022).

Thus, Plaintiffs respectfully request that the Court overrule Apple's objections and order Apple to conduct a good faith search and produce documents responsive to RFP 12.

### III.   APPLE'S POSITION

Plaintiffs are needlessly wasting judicial resources by moving to compel a search Apple already completed, including *running Plaintiffs' search terms for this topic* across agreed custodians, which they only now seek to disavow as "deficient."[5] Apple completed the agreed-upon search, and any nonprivileged documents responsive to RFP 12 were produced—not, as Plaintiffs imply, withheld based on any objection.  Plaintiffs also ignore that Apple will produce a deponent in response to Rule 30(b)(6) topics regarding whether (and, if so, how) Apple performs financial valuation of Siri audio recordings and whether (and, if so, how) Apple keeps specific financial accounting records of the financial value of Siri.  Given the parties' agreement on search terms and custodians, Plaintiffs' suggestion that Apple's search was "deficient" is patently false. Regardless, Plaintiffs fail to identify any refusal or failure by Apple to search for relevant, responsive documents.  Indeed, during the parties' final "live" meet-and-confer regarding this subject on September 14, 2023, Plaintiffs stated (on video) that they are "shooting in the dark" with respect to the arguments they make here.  The Court should deny Plaintiffs' request for an order requiring Apple to complete further vague and unspecified "good faith" searches.

Plaintiffs omit material context from their argument, including the timeline of events.  RFP 12 seeks information regarding the "economic value" and "financial benefit" Apple derived from

---

[5]   The terms included various combinations of revenue*, profit*, benefit*, uplift, and the phrase "avoided cost." *Plaintiffs'* insisted Apple make this search, and it agreed—to avoid any possible disputes about the completeness of Apple's search. The first time Plaintiffs asserted *the search they designed*, and list of custodians to which they agreed, was "deficient" was on September 28, 2023, the day before this filing.

Siri (*e.g.*, through "revenues from targeted advertising" and "increased sales of Siri Devices"). Ex. A at 7. After completing a good-faith search, Apple served its signed response to RFP 12 on March 21, 2022, stating it "does not possess an internal analysis relating to the financial value of Siri to any product on which Siri is available." Ex. B at 15. Knowing this response, Plaintiffs proposed search terms for RFP 12 under the ESI Order that "govern[s] discovery of [ESI]," including the process to generate the "population of documents to be reviewed." ECF No. 98 at 1 & ¶ 1. Complying with the ESI Order, Apple agreed this additional search for RFP 12 and generated the further "population of documents to be reviewed." *Id.* ¶ 1. The search string Plaintiffs proposed (and Apple applied) for RFP 12 included words like "revenue," "profit," and "benefit." Apple reviewed documents identified by the foregoing search terms (amongst many others) and produced any nonprivileged documents responsive to RFP 12 as written by Plaintiffs. Apple separately produced information regarding the sales of devices with the optional Siri feature. *See* APL-LOPEZ_00033486.

To the extent Plaintiffs attempt to cast doubt on Apple's responses "from an economic perspective," the implication contradicts facts Plaintiffs themselves have elicited during discovery. For example, Plaintiffs spent significant effort trying to build support for their speculative, and ultimately false, allegation that Apple "targets advertisements" using Siri. But now, years into this case in which that allegation was crucial to defeat a motion to dismiss, they *concede they were wrong*. *Supra* n.2; *see Lopez v. Apple Inc.*, 558 F. Supp. 3d 821, 825 (N.D. Cal. 2021). Deposition testimony also confirms that Apple does not sell Siri technology to third parties and does not break out revenues or expenses based on specific services like Siri.[6] Where Plaintiffs refer to documents, such as Apple's 2022 10-K, they misrepresent the contents (including by using misleading ellipses) to imply that Apple "calculates" revenue and a "stand-alone selling price" for Siri.[7] It does not. Apple's searches already accounted for, and are consistent with, its SEC filings—indeed, Plaintiffs

---

[6] Per Your Honor's standing order, the transcripts are not attached but can be provided on request.

[7] Without Plaintiffs' misleading edits, the 10-K states: "[T]he Company allocates revenue to all distinct performance obligations based on their relative stand-alone selling prices ('SSPs')." One "performance obligation is the right to receive certain product-related *bundled* services, which include *iCloud, Siri, and Maps*." Note 1, page 34 (emphasis added).

cannot point to any "Siri" profit or loss line in the SEC filings. In any event, Apple suggested that Plaintiffs could use appropriate discovery mechanisms (*e.g.*, the Rule 30(b)(6) deposition) to further evaluate these statements, but Plaintiffs refused, making this dispute premature.

In sum, Apple made good-faith searches for documents responsive to RFP 12. Plaintiffs' mere "suspicion and conjecture . . . that documents might exist" is "not a sufficient basis to grant a motion to compel." *Voice Int'l Inc. v. Oppenheimer Cine Rental, LLC*, 2017 WL 11699755, at *3 (C.D. Cal. Aug. 28, 2017); *see also Thompson v. Ferrso*, 2022 WL 16958622, at *3 (C.D. Cal. Sept. 2, 2022) (rejecting "Plaintiff's suspicion" as a basis for compelling further search); *Cross v. Padi America's Inc.*, 2013 WL 12076474, at *2 (S.D. Cal. Dec. 9, 2013) (rejecting plaintiff's "speculation" where defendant stated it did not have responsive documents). Nor, for that matter, do the *Facebook*, *Google*, or *Amazon* cases Plaintiffs cite provide *any* support for their position, because, unlike Apple, those defendants *refused* to search for responsive documents. *Facebook*, 310 F.R.D. at 446–47 (defendant refused to respond to RFPs 53, 56, 58–60, which addressed the "monetary value" of certain data, money paid to Facebook for such data, and determinations related to revenue and profits based on that data); *Google*, ECF No. 211-5 at 2-3 (citing Google's admission it "accounts for Google Assistant revenue" and refusal to produce related documents); *Amazon*, 2022 WL 16744319, at *4 (defendant refused to respond to discovery regarding "monetary value" and "devices sold," both of which Apple has undertaken to provide here).

Separately, Plaintiffs seek to exploit the vagueness in their RFPs and equivocate regarding their request. Plaintiffs principally assert that RFP 12 is relevant to a claim for disgorgement of "profits made by [Apple] as a result of" its alleged misconduct. But, in their initial disclosure under Rule 26(a)(1)(A)(iii), Plaintiffs asserted that, "to calculate" such damages, they required "sales data from Apple and Apple authorized resellers." Apple denies Plaintiffs' liability and damages allegations and reserves all objections to any proffered damages model. However, for discovery purposes, Apple produced sales information and searched for separate "valuations" of Siri. Plaintiffs have not identified any other "sales data" called for by their initial disclosures that Apple failed to produce.

As an afterthought, Plaintiffs suggest that, because Apple does not maintain the records they seek, it should construct an *ex post* allocation of its corporate expenses to "investments made" in Siri. First, this is an entirely different request from and not at all responsive to RFP 12, which seeks information about the value Apple *derived from* Siri audio recordings, not Apple's *investment in* Siri. Second, a nebulous request for an "investment" into Siri is hopelessly vague and ambiguous. Third, even if such an exercise were possible, it is neither relevant nor proportional to the needs of the case to require the creation of new documents or records that do not exist in the ordinary course of business. Plaintiffs' claims do not place Siri itself at issue, but rather the alleged misconduct arises from the alleged "monetization" of Siri audio recordings occurring when Siri is "triggered by accident without" the user saying the "hot word." *See Lopez v. Apple Inc.*, 519 F. Supp. 3d 672, 679 (N.D. Cal. 2021). Fourth, apart from this foregoing mismatch, Plaintiffs fail to cite a single case where a defendant was ordered to disgorge its investments in a product to the purchasers of the product, nor would such a calculation make any sense because investments are expenditures, not "ill-gotten gains."[8] *U.S. v. Gartner*, 93 F.3d 633, 635 (9th Cir. 1996) (disgorgement measures "ill-gotten gains"). Tellingly, neither Plaintiffs' Complaint, initial disclosures, nor their written discovery responses ever suggest that Plaintiffs seek recovery based on the amount Apple invested in Siri. For all of the foregoing reasons, Plaintiffs have not carried their burden, on a motion to compel, to establish their "request satisfies the relevancy requirements of Rule 26(b)(1) of the Federal Rules of Civil Procedure." *Ellis v. J.P. Morgan Chase & Co.*, 2014 WL 1510884, at *3 (N.D. Cal. Apr. 1, 2014); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 339 (N.D. Cal. 1985) ("[D]iscovery into subjects having no meaningful connection to claims or defenses" is "overbroad" and improper.). The Court should deny Plaintiffs' request.

---

[8] Plaintiffs' cases are inapposite. In *Rearden* and *GoPro*, the issue focused narrowly on the specific costs a defendant avoided by misappropriating intellectual property, not the defendant's entire investment in the product. *Rearden*, 2022 WL 2064976, at *3; *GoPro*, 2018 WL 2197536, at *1. Assuming such discovery would be relevant here, Plaintiffs recently issued a request seeking information about what Apple has spent to acquire audio recordings to improve Siri rather than using the Siri audio recordings, and Apple's response is not yet due. In *HP Tuners* and *MedImpact*, the damages allegations related to recovery of *the plaintiffs'* investments in intellectual property that was misappropriated, not the defendant's investments. *HP Tuners*, 2023 WL 1071782, at *13; *MedImpact*, 2022 WL 5460971, at *5.

| | | |
|---|---|---|
| 1 | Dated: October 4, 2023 | Respectfully submitted: |
| 2 | By: | By: |
| 3 | */s/ Erin Green Comite* | /s/ *Isabelle Ord* |

Dated: October 4, 2023

By:
*/s/ Erin Green Comite*
Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

John T. Jasnoch (Bar No. 281605)
Hal D. Cunningham (Bar. No. 243048)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com
hcunningham@scott-scott.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

Mark N. Todzo (Bar No. 168389)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: (205) 612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*

Respectfully submitted:

By:
/s/ *Isabelle Ord*
ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (*pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (*pro hac vice*)
eric.roberts@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

*Attorneys for Defendant APPLE INC.*

**Civil Local Rule 5-1(h)(3) Attestation**

Pursuant to Civil L.R. 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories.

/s/ *Erin Green Comite*
Erin Green Comite

JOINT DISCOVERY LETTER
No.: 4:19-cv-04577-JSW

10