Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as Guardian of A.L., a Minor, LISHOMWA HENRY, JOSEPH HARMS, JOHN TROY PAPPAS, and DAVID YACUBIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiffs,<br><br>   v.<br><br>APPLE INC.,<br><br>                    Defendant. | Docket No.: 4:19-cv-04577- JSW (SK)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS RE: SPOLIATION OF EVIDENCE, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Magistrate Judge: Hon. Sallie Kim<br>Courtroom: C, 15th Floor<br>Date: April 15, 2024<br>Time: 9:30 a.m. |

**TABLE OF CONTENTS**

**I.**     INTRODUCTION.................................................................................................1

**II.**    STATEMENT OF FACTS .................................................................................3

    A.     Apple's New and Existing Retention Policies at the Commencement of
          Litigation ....................................................................................................3

    B.     Apple Negotiated Over the Scope of Data Production Apple Knew Did Not Exist
          ....................................................................................................................4

**III.**   LEGAL STANDARD .........................................................................................5

**IV.**    ARGUMENT......................................................................................................6

    A.     Apple Spoliated Relevant Evidence Warranting Imposition of Sanctions...........7

        1.     Apple Had a Duty to Preserve User Audio and Data It Destroyed...............7

        2.     Apple Failed to Take Reasonable Steps to Preserve the
             User Audio and Data ...................................................................................9

        3.     The User Audio and Data Cannot Be Restored or Replaced
             Through Additional Discovery...................................................................11

    B.     Plaintiffs Are Gravely Prejudiced Warranting Imposition of Sanctions...........12

    C.     Apple Acted with a Culpable State of Mind Warranting Sanctions in the
          Form of Irrebuttable Presumption and Adverse Jury Instruction.....................13

    D.     No Lesser Remedy Is Available And Adverse Inference Is Warranted............16

    E.     Apple Should Pay for the Cost of Bringing this Motion...................................17

**V.**     CONCLUSION.................................................................................................17

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4 *AliveCor, Inc. v. Apple, Inc.*,
5 No. 21-CV-03958-JSW, 2023 WL 4335293 (N.D. Cal. June 2, 2023) ..................... 10, 11, 15

6 *Apple Inc. v. Samsung Elecs. Co.*,
888 F. Supp. 2d 976 (N.D. Cal. 2012) ............................................................. 9, 11

7 *Apple Inc. v. Samsung Elecs. Co.*,
8 881 F. Supp. 2d 1132 (N.D. Cal. 2012) ...................................................... 9, 11, 13

9 *Aramark Mgmt., LLC v. Borgquist*,
No. 818CV01888JLSKESX, 2021 WL 864067 (C.D. Cal. Jan. 27, 2021) ....................... 7, 11

10 *Brown v. Google LLC*,
No. 4:20-CV-3664-YGR, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ................................ 8
11

*Colonies Partners, L.P., v. Cty. Of San Bernardino*,
12 Case No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ........... 15

13 *Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*,
640 F. Supp. 3d 915 (N.D. Cal. 2022) ............................................................. 14
14

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
15 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ...................................................... 9, 15

16 *Glaukos Corp. v. Ivantis, Inc.*,
No. SACV18620JVSJDEX, 2020 WL 10501850 (C.D. Cal. June 17, 2020) ..................... 15
17

*Hernandez v. Hillsides, Inc.*,
18 47 Cal. 4th 272, 97 Cal.Rptr.3d 274, 211 P.3d 1063 (2009) ..................................... 8

19 *Hynix Semiconductor v. Rambus, Inc.*,
897 F. Supp. 3d 939 (N.D. Cal. 2012) ............................................................... 6
20

*In re Google Assistant Priv. Litig.*,
21 457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................... 8

22 *In re Napster, Inc. Copyright Litig.*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ...................................................... 9, 10, 13
23

*Io Grp. Inc. v. GLBT Ltd.*,
24 No. C-10-1282 MMC DMR, 2011 WL 4974337 (N.D. Cal. Oct. 19, 2011) .......................... 6

25 *Jackson Fam. Wines, Inc. v. Diageo N Am., Inc.*,
2014 WL 595912 (N.D. Cal. Feb. 14, 2014) ........................................................ 14
26

*Leon v. IDX Sys. Corp.*,
27 464 F.3d 951 (9th Cir. 2006) ............................................................. 6, 11, 14

28

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
   605 F. Supp. 3d 1218 (N.D. Cal. 2022)...................................................................9

*Network Appliance, Inc. v. Bluearc Corp.*,
   No. C 03–5665 MHP, 2005 WL 1513099 (N.D. Cal. June 27, 2005) ....................6

*Perez v. United States Postal Serv.*,
   No. C12-00315 RSM, 2014 WL 10726125 (W.D. Wash. July 30, 2014)............16

*Porter v. City & County of San Francisco*,
   16-cv-3771, 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ..................................14

*Posner v. Hillstone Rest. Grp., Inc.*,
   No. 2:19-cv-00507-TLN-KJN, 2022 WL 705602 (E.D. Cal. Mar. 8, 2022)........10

*RG Abrams Ins. v. Law Offices of C.R. Abrams, et al.*,
   342 F.R.D 461 (C.D. Cal. 2022)...................................................................12, 14

*Scalia v. Cnty. of Kern*,
   658 F. Supp. 3d 809 (E.D. Cal. 2023) ................................................................13

*United Factory Furniture Corp. v. Alterwitz*,
   No. 2:12-CV-00059-KJD-VC, 2012 WL 1155741 (D. Nev. Apr. 6, 2012) ..........6

*United States v. Sumitomo Marine & Fire Ins. Co.*,
   617 F.2d 1365 (9th Cir. 1980) ...........................................................................16

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) .....................................................................6, 9

**Statutes**

18 U.S.C. § 2510 ................................................................................................................8

Cal. Penal Code § 631 .......................................................................................................8

Cal. Penal Code § 637 .....................................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 15, 2024,  or soon thereafter as this matter can be heard before the Honorable Magistrate Judge Sallie Kim, in Courtroom C, 15th Floor, United States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Plaintiffs Fumiko Lopez,  Fumiko Lopez as Guardian of A.L., a Minor, John Troy Pappas, and David Yacubian (collectively, "Plaintiffs"), by and through their undersigned counsel, shall and hereby do move the Court for an order imposing sanctions upon Defendant Apple Inc. ("Apple") for the spoliation and destruction of relevant evidence. This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Andrea Farah ("Farah Decl.") filed in support herewith and upon all pleadings, papers and documents on file herein as well as any oral argument that may be presented at the time of the hearing of this matter.

## RELIEF REQUESTED

Plaintiffs seek evidentiary sanctions under Rule 37(e)(1)-(2) that: (1) preclude Apple from introducing evidence about the data it destroyed; (2) preclude Apple from relying on the absence of the data it destroyed in challenging class certification, Plaintiffs' damages expert, or in moving for summary judgment, (3) permit Plaintiffs to introduce evidence that Apple destroyed class member data; and (4) instruct the jury they must presume the evidence Apple destroyed is unfavorable to Apple.

Dated: March 8, 2024

*s/ Andrea Farah*
Andrea Farah

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.   INTRODUCTION

On November 10, 2023, twelve days before fact discovery closed, Plaintiffs learned that Apple—since the inception of this lawsuit—had continuously deleted millions of Class Members' records. The deleted data contains audio recordings and transcripts of users' interactions with Siri, including those that resulted from Siri's False Accepts that are the center of this lawsuit, as well as data components that Apple collected about Siri users as part of Apple's provision of Siri services ("User Audio and Data"). This data meticulously documented Apple's interception of Plaintiffs' and Class Members' confidential communications as well as provided a comprehensive account of the number of violations for purposes of calculating class-wide damages. *See* Sec. IV.A.1.

Notwithstanding the centrality of the User Audio and Data to the claims and defenses in this case, Apple deliberately and intentionally failed to suspend its existing data deletion policies throughout the course of this four-and-half-year long litigation. *See* Sec. IV.A.2. Worse, Apple implemented ***new*** deletion protocols in August 2019—just ***after*** this lawsuit commenced—causing the majority of all incoming user audio to be irretrievably lost. *See* Sec. II.A. Apple preserved just a tiny fragment of the data it had collected—not just in terms of total volume (about 0.5%), but even more critically, in its scope. The little data Apple did preserve was stripped of several dozen data fields that would have provided vital context; cabined to just two user languages out of 41 total; and not fully representative of Apple's practices throughout the Class Period.

The timing of Apple's implementation of its new deletion policies, immediately after being served with a massive class action centering around exactly the data to be deleted, strongly suggests bad faith in and of itself. Apple then confirmed its ill intentions by spending the next four-and-half-years actively concealing the fact that the User Audio and Data no longer exists. From

---

[1] Plaintiffs have filed this brief in accordance with the Parties' agreed terms set forth in the Stipulation and Proposed Order dated March 7, 2024 (ECF No. 232), which at the time of filing had not yet been entered by the Court. Should the Court modify or decline to enter the Proposed Order, Plaintiffs will modify their filing accordingly.

purposeful delays in discovery, through attempts to avoid the Court's intervention, to months of purporting to negotiate over sampling of data that Apple knew did not exist, Apple demonstrated that its destruction of User Audio and Data was deliberately calculated to prevent Plaintiffs from using such data at class certification, summary judgment, and trial. Accordingly, Plaintiffs request that the Court impose sanctions on Apple to cure the prejudice it has caused Plaintiffs, by precluding Apple from using the absence of the deleted data to challenge Plaintiffs' expert reports or class certification motion or as grounds upon which to move for summary judgment. Plaintiffs also request an irrebuttable presumption pursuant to Rule 37(e)(2)(A) and an adverse, or alternatively, permissive, jury instruction pursuant to Rule 37(e)(2)(B), that the destroyed evidence was unfavorable to Apple.

## II.    STATEMENT OF FACTS

Plaintiffs filed their initial complaint on August 7, 2019, alleging violations of Plaintiffs' and Class Members' privacy resulting from Apple's systematic collection of users' confidential communications. ECF No. 1. The crux of Plaintiffs' allegations is that Apple collected troves of information about Siri users from "False Accepts" (i.e., instances when Apple's Siri voice assistant activates without the user intentionally summoning Siri), without users' knowledge or consent. *See* ECF No. 1 ¶¶3-4, 26, 32, 36, 56, 59, 64, 80, 85. Apple was thus on notice from the moment Plaintiffs filed their initial complaint that *all* recordings and data captured by False Accepts would be relevant to this lawsuit. Though Plaintiffs also asserted separate and additional harm arising out of Apple's subsequent use and disclosure to third parties of this unlawfully captured audio and data (*see* ECF No. 1 ¶74), the fundamental practice Plaintiffs challenge is the capturing of False Accepts in the first instance. This has remained equally clear in each of Plaintiffs' subsequent complaints. *See* ECF No. 48 ¶¶25, 35, 36, 41, 78, 79, 81, 105, 106, 125, 126, 148, 157, 189; ECF No. 70 ¶¶4, 19, 25, 34, 39, 45, 60, 70, 71, 80, 108, 109, 111, 127, 128, 132, 141.

### A.  Apple's Existing and New Retention Policies at the Commencement of Litigation

Prior to the commencement of this litigation, Apple' retention policy required it to retain all incoming audio of users' interaction with Siri and data associated with it ***by default***. Farah Decl., Ex. 8 at 1. This data was assigned a random identifier which remained attached to the bundle

of user audio and associated data for a period of six months. *Id.*, Ex. 9. After the expiration of the six-month period, Apple would create a separate copy of that data and store it for up to two years without the random identifier, such that Apple could continue to use the data for its internal purposes, including testing and training of its speech models. *Id.*, Ex. 10 at 521. Apple then selected a smaller portion of this data, about 0.5%, to be reviewed by human graders (the "Graded Data"). *Id.*, Ex. 8 at 1. Apple stored this Graded Data for up to five years. *Id.*, Ex. 10 at 521. Besides representing only a fragment of all incoming Siri requests, the Graded Data is limited to: (i) two languages, English and Spanish, to the exclusion of 39 other languages Apple made available for users to select; (ii) audio recordings by individuals who opted in to Apple's audio collection practice—an option that did not exist until *after* Plaintiffs filed this action; and (iii) a handful of basic data fields necessary for graders to evaluate the accuracy of Siri's response stripped of the majority of the several dozen data fields Apple collected. ECF No. 197-1 (Apple's Sampling Proposal). Apple never suspended this retention policy upon Plaintiffs' filing this litigation.

***Following*** the filing of Plaintiffs' complaint, on August 28, 2019, Apple implemented changes specifically designed to ***reduce*** the amount of Siri data Apple would retain. Farah Decl., Ex. 3 at 94:12-95:13. In accordance with the new policy, Apple began purging incoming audio recordings. *Id.*, Ex. 11. The purged data included audio recordings of millions of users' interactions with Siri, including those that resulted from unintentional triggering of Siri, i.e., False Accepts that are at the center of this case. *Id.*, Ex. 3 at 165:6-165:24. Pursuant to the new post-litigation deletion policy, Apple only retained audio of users who affirmatively volunteered their audio recordings to be used by Apple to improve Siri's functionality (the "Improve Siri Program"). *Id.*, Ex. 9. At the time the policy was implemented, Apple expected that only ▮ of its users would opt into the Improve Siri Program (*id.*, Ex. 12). *Id.*, Ex. 6. In other words, Apple expected that its new deletion policy would result in the destruction of ▮ of all incoming audio recordings. *Id.* Notably, Apple did not even bother to modify the policy to preserve audio Apple *knows* or strongly suspects resulted from a False Accept, as determined by Apple's own internal automated processes, such as the False-Trigger-Mitigator or Automatic Speech Recognition technologies. Farah Decl., ¶ 13. This new automatic deletion policy remains in place today.

**B.  Apple Negotiated Over the Scope of Data Production Apple Knew Did Not Exist**

Given the importance of the underlying data, Plaintiffs issued several discovery requests and interrogatories early in litigation, in February and September 2022. Farah Decl., ¶ 2. Specifically, the RFPs sought documents relating to number, percentages and frequency of False Accepts (RFP No. 2), documents to identify all audio recordings and/or transcripts resulting from False Accepts (RFP No. 7), documents which showed data collected from audio recordings and transcripts made by Siri (RFP No. 10) and data and other information provided with each audio recording and/or transcript transmitted to third parties (RFP No. 11). Farah Decl., ¶ 3. Likewise, the Interrogatories sought information relating to each False Accept (Rog No. 6), identification of all information shared with third parties along with audio recordings (Rog No. 9), all data collected from a False Accept (Rog No. 10), and the percentage of all user audio that were initiated by a False Accept (Rog No. 16). Farah Decl., ¶ 4. Instead of admitting that Apple had *already* deleted the data—and was continuously deleting it at the time of the Parties' meet and confers—or raising any data availability issues during the parties' initial meet-and-confers, Apple negotiated at length over the scope and nature of User Audio and Data Plaintiffs were seeking in discovery, alluding to the data's existence and implying its availability. Farah Decl., ¶ 5. Indeed, Apple should have raised the issues of preservation and suspension of ongoing document deletion programs even *before* Plaintiffs served these discovery requests, in the initial Rule 26(f) conference. *See* Rule 26(f) Meet and Confer Checklist regarding Electronically Stored Information for the United States District Court for the Northern District of California. Instead, Apple repeatedly covered up its conduct. For example, during a September 2022 meet and confer, Apple's counsel represented that it was "digging" into and conducting "due diligence" to determine what data responsive to RFP No. 7 existed. Farah Decl., ¶ 6. In March 2023, Apple's counsel informed Plaintiffs that retrieving data responsive to RFP No. 7 would be "disproportionate," and in July 2023, Apple's counsel claimed that a sample of 5 instances of False Accepts would be sufficient to satisfy RFP No. 7. Farah Decl., ¶ 8. Then, during another meet and confer in July 2023, Apple's counsel informed Plaintiffs responding to RFP No. 7 would "yield a lot of data which would take a lifetime to review" further implying its existence and availability (Farah Decl., ¶ 9) while not once mentioning

that the data had already been deleted.

To address Apple's purported burden in connection with responding to several data-related discovery requests aimed at User Audio and Data (RFP Nos. 2, 7, 10 & 11) and Interrogatories (Rog. Nos. 6, 9-10 & 16), Apple proposed that the Parties negotiate sampling of the User Audio and Data collected by Apple. Farah Decl., ¶11. It was not until late 2023 and in the context of negotiating a data sampling protocol that Plaintiffs first learned of Apple's spoliation. Farah Decl., ¶ 16. After months of negotiating over the specific parameters of sampling, which included at least five meet and confers of counsel, Apple admitted that the volume of data that could be sampled was substantially less than expected because Apple had completely and irretrievably destroyed four years' worth of Plaintiffs' and Class Members' data. *Id*. Apple informed Plaintiffs that Apple's inability to sample *any data* prior to 2018[2] was due to its failure to suspend the automatic deletion practices it put in place *after* Plaintiffs initiated this action. Farah Decl., ¶ 17. Not once during the months-long negotiations over the sampling protocol had Apple previously disclosed that such data no longer existed as a result of Apple's own unilateral destruction of evidence. Farah Decl., ¶ 10. Apple even allowed the issue of sampling to be fully briefed and submitted to the Court without once informing the Court that the data was already irretrievably lost. *See* ECF No. 138.

### C. Apple's Motion for Protective Order

When Plaintiffs learned of Apple's destruction of years' worth of evidence and indicated that it intended to seek sanctions for this spoliation, Apple moved for a protective order effectively asking the Court's permission to leave its standard deletion policies in place going forward. *See* ECF No. 176 While the Court granted Apple's motion, it specifically noted that "this motion merely addresses the future. Apple filed this motion for relief going forward, and this Order thus does not address any past conduct." ECF No. 231 at 4. Indeed, in a sense Apple's protective order motion is an example of what it should have done from the very outset of the case: affirmatively

---

[2]On January 31, 2024—after the Parties' Joint Discovery Briefing on the issue of sampling (ECF No. 184) was submitted to the Court and Plaintiffs threatened to move for sanctions—Apple discovered Graded Data dating back to December 2015.

raised its concerns with respect to preservation, provided detailed information documenting its claims of burden, and sought the Court's intervention. Instead, Apple took matters into its own hands, making its own independent determinations of relevance and burden and then irretrievably deleting the data without a word to anyone.

## III.   LEGAL STANDARD

Litigants owe an uncompromising duty to preserve evidence that they know or reasonably should know will be potentially relevant to a pending or reasonably foreseeable lawsuit. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). That duty requires suspending any "routine document retention/destruction policy and put[ing] in place a 'litigation hold.'" *Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003); *see also Io Grp. Inc. v. GLBT Ltd.,* No. C-10-1282 MMC DMR, 2011 WL 4974337, at *5 (N.D. Cal. Oct. 19, 2011) (N.D. Cal. Oct. 19, 2011) (failure to suspend automatic deletion function of email system violated duty to preserve). Counsel "must take affirmative steps to monitor compliance [with a litigation hold] and counsel's failure to do so constitutes gross negligence for sanctions purposes, because it is likely to result in destruction of relevant information." *United Factory Furniture Corp. v. Alterwitz*, No. 2:12-CV-00059-KJD-VC, 2012 WL 1155741, at *3 (D. Nev. Apr. 6, 2012). A party spoliates evidence when it "destroys or materially alters evidence or fails to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Hynix Semiconductor v. Rambus, Inc.* 897 F. Supp. 3d 939, 975 (N.D. Cal. 2012).

"Federal courts have the authority to sanction litigants for discovery abuses both under the Federal Rules of Civil Procedure and pursuant to the court's inherent power to prevent abuse of the judicial process." *Network Appliance, Inc. v. Bluearc Corp.*, 2005 WL 1513099, at *2 (N.D. Cal. June 27, 2005). Rule 37(e) authorizes the imposition of sanctions for spoliation of electronic evidence ("ESI"). It provides that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and [the information] cannot be restored or replaced through additional discovery," and the court finds prejudice to another party as a result of the information being lost, the court may "order measures no greater than necessary to cure the prejudice." Rule 37(e)(1).

Further, upon finding that "the party acted with the intent to deprive another party of the information's use in the litigation," the Court may impose sanctions in the form of (i) presuming that the lost information was unfavorable to the party (*see* Rule 37(e)(2)(A)); (ii) instructing the jury that it may or must presume the information was unfavorable to the party (*see* Rule 37(e)(2)(B)); or (iii) dismissing the action or entering a default judgment (*see* Rule 37(e)(2)(C)).

## IV.   ARGUMENT

Apple's spoliation of Siri user audio and associated data warrants sanctions under both the Federal Rules and the Court's inherent authority to sanction discovery abuses. The destruction of the audio and associated data meets each element set out in Rule 37(e), which applies because (1) Apple had a duty to preserve relevant evidence that it destroyed (*see* Sec. IV.A.1.); (2) Apple deliberately destroyed the relevant evidence and/or failed to take steps to preserve the evidence (*see* Sec. IV.A.2.); and (3) the evidence Apple destroyed cannot be restored or replaced through additional discovery (*see* Sec. IV.A.3.) Apple's spoliation resulted in grave prejudice to Plaintiffs. As a result, the Court should preclude Apple from using the absence of this deleted evidence against Plaintiffs at any subsequent stages of the case and permit an adverse inference that the destroyed evidence was unfavorable to Apple.

### A.   Apple Spoliated Relevant Evidence Warranting Imposition of Sanctions
#### 1.   Apple Had a Duty to Preserve User Audio and Data It Destroyed

Apple's duty to preserve audio recordings and associated data arose, at the latest, on August 7, 2019[3] when Plaintiffs filed their initial complaint, asserting four claims against Apple and detailing the alleged misconduct, including intercepting Plaintiffs' and Class Members'

---

[3] Apple's duty to preserve audio recordings likely arose even earlier, on July 26, 2019, after the publication of an expose by *The Guardian*, accusing Apple of unlawfully recording users' private and confidential conversations and sharing the information with third party vendors in violation of users' privacy expectations. Farah Decl., Ex. 14. Apple knew of these accusations. Its internal documents reflect Apple's concerns about the negative publicity and its action to immediately suspend access to certain audio and data internally. *Aramark Mgmt., LLC v. Borgquist*, No. 818CV01888JLSKESX, 2021 WL 864067, at *4 (C.D. Cal. Jan. 27, 2021), *report and recommendation adopted*, No. 818CV01888JLSKES, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021) ("Evidence that a defendant actually anticipated litigation might include emails or meeting minutes discussing potential litigation, actions taken to retain a lawyer, or a company budget that allocates funds for potential litigation.").

confidential communications (*i.e.*, audio) in violation of their privacy rights under state and federal law. ECF No. 1. The audio and associated data Apple destroyed is critical evidence in the case, bearing directly on several legal claims, on which Plaintiffs—not Apple—bear the burden of proof. Plaintiffs' wiretapping claims (the federal Wiretap Act and CIPA § 631) require a showing that Apple "intentionally" intercepted or disclosed the contents of confidential communication to third parties. 18 U.S. §§ 2511(1)(a), (c)-(d); Cal. Penal Code § 631. As the Court noted in a highly analogous case, "the degree of [false accepts] will likely be material to the determination of whether Defendants' conduct was intentional." *In re Google Assistant Priv. Litig.,* 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020). Further, Plaintiffs' privacy claims, including the invasion of privacy and intrusion upon seclusion under California common law, require a showing of "offensiveness" (*Brown v. Google LLC*, No. 4:20-CV-3664-YGR, 2023 WL 5029899, at *19 (N.D. Cal. Aug. 7, 2023) (claims of intrusion upon seclusion and invasion of privacy require a showing of offensiveness)), which hinges in large part on the "frequency with which false accepts occur and the amount of information that is subsequently recorded." *In re Google Assistant Priv. Litig.,* 457 F. Supp. 3d 797, 831 (N.D. Cal. 2020) (citing *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286, 97 Cal.Rptr.3d 274, 211 P.3d 1063 (2009)).). Finally, the deleted data is necessary for Plaintiffs' expert to calculate class-wide damages which are based on the number of violations (18 U.S.C. § 2510 *et seq*.) as well as the number of devices sold and number of individuals whose privacy was violated by Apple's collection and sharing of user data. SAC, ¶¶ 149, 163.

The deleted data is also key to Plaintiffs' ability to rebut Apple's defenses. In the context of Apple's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 71) ("Motion to Dismiss") Apple argued that no reasonable user would be "offended" by Apple's collection practices because of its use of a random identifier (ECF No. 71 at 3, 14). On reply in support of the Motion to Dismiss, Apple claimed that "Plaintiffs cannot proffer any factual support to show that Apple has the ability to identify users." (ECF No. 74). Apple even raised the use of random identifiers to challenge the certifiability of the class, stating that "certification under Rule 23 would be improper due to lack of ascertainability of the proposed class members resulting from de-association of user audio." *See* Apple's Statement in the Parties Joint Case Management Statement

(ECF No. 83). Apple has also claimed to provide testimony or evidence of the number of class members impacted by Apple's policy of surveillance and its disclosure of the audio and associated data to third parties. *See* Farah Decl., Ex. 3 at 150:15-150:20; Ex. 4 at 52:11-53:12; Ex. 7 at 44:25-46:3. Under these circumstances, Apple had a duty to preserve the deleted User Audio and Data that underlies both Plaintiffs' claims and the basis for several of Apple's affirmative defenses. *See* ECF No. 1. *See Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."). *See First Fin. Sec., Inc. v. Freedom Equity Grp., LLC,* 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) ("The duty to preserve evidence begins when litigation is pending or reasonably foreseeable.").

**2. Apple Failed to Take Reasonable Steps to Preserve the User Audio and Data**

A company with a document retention policy has a duty to suspend that policy to preserve relevant evidence *See Apple Inc. v. Samsung Elecs. Co*., 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) (granting spoliation motion where party failed to suspend its document retention policy); *In re Napster, Inc. Copyright Litig.,* 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006), (holding that even if the accused party had a "long standing polic[y]" of deleting emails, it was "required to cease deleting emails once the duty to preserve attached"); *Zubulake v, UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.");*Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1237 (N.D. Cal. 2022) (company's failure to suspend auto-deletion of log data warranted permissive adverse inference jury instruction). Apple is well aware of the obligation to suspend its auto deletion practices as evidenced by its own motion for sanctions against Samsung for precisely the same conduct that Apple engaged in here. *Apple*., 888 F. Supp. 2d at 991–92. When Apple was the one suffering "severe prejudice" from spoliation, Apple argued that Samsung's failure to suspend its biweekly automatic email destruction policy amounted to "egregious conduct" that warranted the "strongest possible adverse inference instructions." *Apple*., 888 F. Supp. 2d at 991–92.

Apple failed to suspend its auto-deletion protocol, allowing incoming audio and data to be disassociated from Siri Assistant ID after 6 months, and then permanently deleted after 2 years. *See* Sec. II. As a result of the auto-deletion protocol, Apple irretrievably destroyed years' worth of Class Members' data pertaining to millions of individuals, including 7 years of ▮▮▮▮▮▮ ▮ and 1 year of ▮▮▮▮▮▮▮▮ . But that is not the end of Apple's failures to take any reasonable steps to preserve the ESI. Apple actually instituted *new policies*—shortly *after* litigation commenced—that caused almost all incoming audio to be deleted, which differed from its previous, pre-litigation policy of capturing and retaining audio. *See* Sec. II. As a result, Apple deleted about ▮▮ of all audio immediately after the policy was instituted and continued to delete approximately ▮▮ by July 2022. Farah Decl., Ex. 13.

Apple concedes that it failed to take any steps, let alone reasonable steps to preserve the highly relevant User Audio and Data. *See* ECF No. 176-1 ¶¶ 4, 19-20. Apple made this choice based on its unilateral determination that the User Audio and Data is irrelevant to either Plaintiffs' claims or Apple's defenses. But "[r]elevancy is a broad standard, especially for discovery purposes," as Apple should know after Judge White rejected the exact same relevancy arguments Apple made in *AliveCor, Inc. v. Apple, Inc.*, No. 21-CV-03958-JSW, 2023 WL 4335293, at *3 (N.D. Cal. June 2, 2023, White, *J.*) where Apple failed to suspend its auto-deletion policy that would preserve relevant emails. *See also Posner v. Hillstone Rest. Grp., Inc.,* No. 2:19-cv-00507-TLN-KJN, 2022 WL 705602, at *6 (E.D. Cal. Mar. 8, 2022) (rejecting defendant's "unilateral determination that the overwritten video footage was not relevant is insufficient, as it requires the Court to take Defendant's word that such footage did not capture any evidence relevant to Plaintiff's claims").[4] Regardless of Apple's own assessment of relevance, Plaintiffs could not have

---

[4] Apple also asserts that it was not obligated to preserve the Audio Recordings and Data because doing so would be burdensome given the amount of Siri recordings and that Apple cannot segregate U.S. Siri requests and data from worldwide Siri requests and data. *See* ECF No. 176 at 2-3. This is irrelevant. A party has an uncompromising burden to preserve potentially relevant evidence as soon as litigation is reasonably foreseeable. *In re Napster, Inc. Copyright Litig.,* 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). If Apple could not preserve information due to burden or expense, Apple should have conferred with Plaintiffs about its burden and any disputes could have been brought to the Court's attention. Indeed, Apple did not provide any authority (because it cannot) for its position that its purported burden gave it *carte blanche* to destroy evidence.

done more to put Apple on notice that the User Audio and Data was relevant. Plaintiffs' Requests for Production and Interrogatories served in February and September contained 12 and 14 requests, respectively, seeking historical User Audio and Data. *See* Farah Decl., Ex. 1 (RFP Nos. 2, 7, 10, 11) and Ex. 2 (Rog Nos. 6, 9, 10, 16). Every single witness who provided testimony in the case, starting with Apple's Head of Privacy, Erik Neuenschwander on July 7, 2023, was asked about User Audio and Data, its existence, location, and utility to Apple. Farah Decl., Ex. 3 at 94:4-95: 25, 100:1-101:2; 376:3-376:14; Ex. 4 at 37:6-37:10, 232:3-232:9, 255:13-255:22; Ex. 5 at 114:8-115:5, 145:20-146:1; 2329:24-230:9; Ex. 7 at 168:9-168:16, 178:25-178:5, 189:16191:10, . User Audio and Data was the subject of the Parties' countless meet and confers, including months-long negotiations over sampling of that very data which ultimately ended before the Court. ECF Nos. 138, 185, 197. Thus, Apple, had ample notice that the User Audio and Data was relevant to this litigation, triggering its duty to preserve the evidence. *See Leon*, 464 F.3d at 959 ("A party's destruction of evidence qualifies as willful spoliation if the party has **some notice** that the documents were potentially relevant to the litigation before they were destroyed.") (emphasis added); *Apple*, 888 F. Supp. 2d at 999 (granting motion for sanctions, finding documents from inventors in patent suit relevant without knowing the contents).[5]

### 3. The User Audio and Data Cannot Be Restored or Replaced Through Additional Discovery

The User Audio and Data is permanently gone and cannot be restored or replaced through additional discovery. *See* Rule 37(e). The destroyed evidence contains Apple's internal record of its historical eavesdropping activity across Plaintiffs and other Class Members throughout the Class Period. *See* Sec. IV.A.1. This is, in many instances, the best evidence of the true extent of Apple's misconduct. Importantly, a comprehensive record of Apple's surreptitious surveillance of

---

[5] Despite these efforts, Apple blames Plaintiffs for Apple's own indiscretions, claiming that since Apple's retention policies were publicly disclosed, it was somehow Plaintiffs' responsibility to ensure that preservation of evidence took place at Apple. The Courts have previously rejected similar arguments, noting that "a future litigant is not required to make such a request," "and a failure to do so does not vitiate the independent obligation of an adverse party to preserve such information" if the adverse party knows or should know of impending litigation." *Aramark Mgmt., LLC v. Borgquist*, 2021 WL 864067, at *13 (C.D. Cal. Jan. 27, 2021) (citing *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012)).

Plaintiffs and Class Members is necessary for Plaintiffs to estimate the number of violations for purposes calculating class-wide damages, *see* Cal. Penal Code § 637, and necessary for class certification and summary judgment. Plaintiffs are unaware of any way to restore the deleted data, nor can the data be replaced through additional discovery and therefore, the jury will be left with no evidence to consider in lieu of the deleted data.).[6]

### B.  Plaintiffs Are Gravely Prejudiced, Warranting Imposition of Sanctions

Regardless of Apple's intent, if the Court finds that the destruction of the User Audio Data prejudiced Plaintiffs, it may order sanctions under Rule 37(e)(1) sufficient to cure that prejudice. Rule 37(e)(1). Prejudice exists where, as here, 'the [spoiling party's] actions impaired [the moving party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *R.G. Abrams v. Law Offices of C.R. Abrams, et al.*, 342 F.R.D 461, 507 (C.D. Cal. 2022).

The deleted User Audio and Data consist of recordings of Siri users as well as data associated with the audio, consisting of dozens of data fields by which users can be identified, including device name, user location, contact list, users' phone carriers, audio's pitch, the actual transcript, and users' calendar events and reminders, among many other fields. *See* Rog 10. This information would show *who* within the Class was subjected to Apple's surreptitious interception, *how frequently* such interception occurred, *what* user data Apple collected along with these recordings and in what setting, i.e., *where,* the interception occurred. The User Audio and Data would also have enabled Plaintiffs to assess whether and how Apple's practices changed over time.

The sample of the Graded Data this Court ordered Apple to produce is not an adequate substitute for the troves of evidence Apple destroyed over the course of four years. The sample only includes two days per each year of the Class Period and contains only: (i) the handful of data fields available to human graders to the exclusion of several dozen data fields Apple collected from its users during the Class Period; (ii) data from just two "locales" (i.e., languages that users

---

[6] Plaintiffs confirmed—and Apple concedes—that the evidence it destroyed cannot be obtained from third parties. Plaintiffs served 12 Rule 45 subpoenas on third-party vendors with whom Apple shared User Audio and Data. Farah Decl., ¶ 20. Each of them confirmed that Apple, at all times, retained control over User Audio and Data such that reproduction or copying by third parties did not take place, and therefore, could not replace the now-destroyed evidence. *Id.*, ¶ 21.

can select from): US Spanish and US English to the exclusion of 39 other locales that Apple

deleted; and (iii) written transcripts of the sample of Siri requests that had been graded by humans.

Apple's ██████████████ Sample covers an even shorter period of time, dating back to

just December 2021. Not only will such data be biased towards the changes that took place in

recent years, but it will also be limited to data from individuals who volunteered their audio to be

used by Apple for Siri improvement. It is accordingly critical that Apple be precluded from using

the limited nature of this data as a weapon against Plaintiffs—for example, to argue that Plaintiffs'

expert reports are deficient because the experts' conclusions are based on an incomplete sample;

that class certification is inappropriate because Plaintiffs cannot ascertain class members; or that

Plaintiffs cannot prove damages and Apple is therefore entitled to summary judgment. *See*

*Napster*, 462 F.Supp.2d at 1066 (as a sanction for spoliation, a court may exclude "witness

testimony proffered by the party responsible for destroying the evidence and based on the

destroyed evidence.").

Plaintiffs therefore request that the Court specifically preclude Apple from making such

arguments, and also request permission to instruct a jury about the destruction of the User Audio

and Data and an instruction that the jury may find that the User Audio and Data are unfavorable

to Apple. *Apple*, 881 F. Supp. 2d 1132 (granting spoliation inference instruction allowing the "jury

to draw inference that relevant emails destroyed by defendant in patent infringement suit would

have been unfavorable, where despite having notice of pending litigation defendant had continued

to use feature on internal email system which automatically deleted employee email messages after

14 days."); *Scalia v. Cnty. of Kern*, 658 F. Supp. 3d 809, 816 (E.D. Cal. 2023) (finding that an

adverse inference instruction was warranted because defendant consciously disregarded its

obligation to preserve relevant evidence despite having ample notice that the evidence was

potentially relevant to litigation).

### C. Apple Acted with a Culpable State of Mind Warranting Sanctions in the Form of Irrebuttable Presumption and Adverse Jury Instruction

"A party's destruction of evidence qualifies as willful spoliation if the party has *some*

notice that the documents were *potentially* relevant to the litigation before they were destroyed."

*Leon*, 464 F.3d at 959. Intentional spoliation gives rise to sanctions under Rule 37(e)(2) where 'the evidence shows or it is reasonable to infer, that ... a party purposefully destroyed evidence to avoid its litigation obligations.'" *Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 927 (N.D. Cal. 2022) (quoting *Porter v. City & County of San Francisco*, 16-cv-3771, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018). Because a court cannot precisely determine intent, it must look to circumstantial evidence. *Id.* Courts therefore infer intent where a party has notice that the documents are relevant but fails to take steps to preserve them or takes steps to keep them out of evidence. *RG Abrams Ins.,* 342 F.R.D. at 508 (citing cases).

This standard is satisfied here by the simple fact that Apple implemented the policy that it knew would result in the destruction of ███ of highly relevant evidence immediately *after* Plaintiffs initiated this action. Such conduct evidences not only intent, but willfulness and bad faith. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (finding willful spoliation and bad faith when party intentionally deleted relevant files after commencement of litigation). d

Apple's bad faith is further evidence by its effort to conceal the destruction of user audio and data. At no point during the countless hours the Parties spent meeting and conferring about the scope of appropriate sampling protocol,[7] did disclose that it already deleted the requested data and could not comply with Plaintiffs' proposal regardless of its scope. Farah Decl., ¶ 13. When Plaintiffs discovered Apple's spoliation in late 2023, Apple attempted to prevent the issue from being raised to the Court, including claiming during the Parties' December 21, 2023 meet and confer that the issue was "not ripe or mature" and that the Parties could "work something out" such that the issue did not need to be "rais[ed] at all." *See* Farah Decl., ¶ 18. Instead of being able to "work something out," Apple knew the data was permanently deleted and nevertheless submitted joint briefing to this Court without once informing the Court that Apple had *already* deleted the requested data and could not comply with Plaintiffs' proposal. *See* ECF Nos. 138 at 6 & 197 at 4-5. Apple's attempt to hide its spoliation from the Court and its opponent is strong evidence of intent. *See, e.g., Jackson Fam. Wines, Inc. v. Diageo N Am., Inc.*, 2014 WL 595912,

---

[7]

at *5-*6 11 (N.D. Cal. Feb. 14, 2014) ("Defendants' failure to promptly reveal the destruction, as well as their apparent efforts to cover it up" strongly indicated bad faith). Apple did that despite being recently admonished by *this* Court for engaging in the same less-than-honest conduct towards the Court, the Magistrate Judge, and the opposing counsel:

> There is a meaningful difference between vaguely alluding to the availability of documents and affirmatively stating that relevant documents were deleted and are unrecoverable. Apple and its counsel failed to do the latter until under oath in a deposition. Apple's disclosures to [opposing counsel] and Judge Kim about the possibility of difficulties in collecting Cha's documents did not relieve it of its discovery obligations or duties of candor. The Court is troubled by the lack of candor exhibited by Apple and its counsel….

*See AliveCor, Inc. v. Apple, Inc.,* No. 21-CV-03958-JSW, 2023 WL 4335293, at *6 (N.D. Cal. June 2, 2023) (White, *J.*).

### D.  No Lesser Remedy Is Available And An Adverse Inference Is Warranted

An adverse inference about the contents of the audio and associated data is warranted under Rule 37(e) because Defendants were "on notice that [the data] was potentially relevant," yet still "fail[led] to take measures to preserve" it. *Colonies Partners, L.P., v. Cty. Of San Bernardino,* 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted,* 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020). This failure, combined with the facts above, warrants inferring the destruction was intentional. *Id.* at *11. Courts have frequently found an adverse inference sanction appropriate in cases, like this one, where 'bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence." *First Financial,* 2016 WL 5870218, at *3,  *Colonies Partners,* WL 1496444, at *9 (inferring willful destruction and issuing adverse inference instruction when party failed to preserve evidence it knew was relevant); *Glaukos Corp. v. Ivantis, Inc.,* No. SACV18620JVSJDEX, 2020 WL 10501850, at *6 (C.D. Cal. June 17, 2020) (granting motion for adverse jury instruction and preclusion sanctions, inferring intent to deprive opposing party of relevant emails where "Ivantis did not suspend its automatic email deletion policy even when litigation was reasonably foreseeable").  Any lesser remedy would improperly allow Defendants to "profit from [their] own

failure to comply" with their discovery, disclosure, and preservation obligations. *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980); *Perez v. United States Postal Serv.*, No. C12-00315 RSM, 2014 WL 10726125, at *6 (W.D. Wash. July 30, 2014) (issuing adverse inference instruction as being "necessary to disgorge Defendant of the ill-gotten advantages of its spoliation and ameliorate prejudice to Plaintiff").

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court sanction Apple for its spoliation as described above, and require Apple to pay the fees and costs associated with this motion.

Dated: March 8, 2024

Respectfully submitted:

By:

*/s/ Andrea Farah*
Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

John T. Jasnoch (Bar No. 281605)
Hal D. Cunningham (Bar. No. 243048)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com
hcunningham@scott-scott.com

Mark N. Todzo (Bar No. 168389)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com

E.   Kirk   Wood   (*pro   hac   vice*
forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: 205-612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*