Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

*Attorneys for Plaintiffs*

ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415-836-2500
Facsimile:  415-836-2501

RAJ N. SHAH (*pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (*pro hac vice*)
eric.roberts@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: 312-368-4000
Facsimile:  312-236-7516

*Attorneys for Defendant APPLE INC.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as Guardian of A.L., a Minor, LISHOMWA HENRY, JOSEPH HARMS, JOHN TROY PAPPAS, and DAVID YACUBIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Docket No.: 4:19-cv-04577- JSW (SK)<br><br>**JOINT DISCOVERY LETTER (RFP 27)**<br><br>Hon. Sallie Kim<br><br><br>**PUBLIC REDACTED VERSION** |

Plaintiffs Fumiko Lopez (individually and as guardian of Plaintiff A.L.), John Troy Pappas, and David Yacubian ("Plaintiffs") and Apple Inc. ("Apple" or "Defendant") (collectively, the "Parties") jointly file this joint discovery letter relating to Plaintiffs' motion to compel the production of documents responsive to Plaintiffs' Requests for Production of Documents ("RFP") 27. All exhibits are attached to the Declaration of Erin Green Comite submitted concurrently herewith.

Lead trial counsel for the Parties hereby attest that they complied with Section 9 of the Northern District's Guidelines for Professional Conduct and this Court's Standing Order by meeting and conferring by telephone, including in the presence of the lead trial counsel for the Parties, and no resolution could be reached, necessitating the submission of this joint discovery letter.

Attested to this 1st day of March, 2024.

 /s/ Erin Green Comite
Erin Green Comite

***Lead Trial Counsel for Plaintiffs***

 /s/ Christian Levis
Christian Levis

***Lead Trial Counsel for Plaintiffs***

 /s/ Isabelle L. Ord
Isabelle L. Ord

***Lead Trial Counsel for Apple Inc.***

 /s/ Raj N. Shah
Raj N. Shah

***Lead Trial Counsel for Apple Inc.***

i

**PLAINTIFFS' MOTION TO COMPEL DOCUMENTS RESPONSIVE TO RFP 27**

**A.      Plaintiffs' Position**

By their RFP 27, Plaintiffs seek documents "sufficient to identify any purchases made by Apple of audio datasets for purposes of developing and/or testing and/or training Siri or any speech models that underlie Siri technology, including, without limitation, the date, price, quantity of data, and entity purchased from."  Plaintiffs' Second Set of Document Requests (Sept. 7, 2023), **Exhibit A** to the March 1, 2024 Declaration of Erin G. Comite ("Comite Decl."), at 7.  After months of delay and incomplete responses by Apple, Plaintiffs are now forced to bring this motion to compel a proper response to RFP 27.[1]

The information Plaintiffs seek is relevant to their theories of liability and their damages model.  Class members' intercepted audio recordings had value to Apple.  They could be used – and, Plaintiffs allege, were in fact used – to improve the functionality of Siri.  Second Amended Class Action Complaint (Mar. 17, 2021), ECF 70, ¶¶115, 117, 133, 145.  *Id.*  Had Apple not taken this data from Class members without their consent, Apple would have had to buy equivalent data on the market.  Apple's internal records show that Apple did buy or considered buying audio data on the open market.  By RFP 27, Plaintiffs sought to understand the types of audio data Apple bought or considered buying from vendors, its cost, and the use to which it was put or would have been.  They served the request on September 7, 2023.  Subject to boilerplate objections, Apple responded on October 10, 2023 that it would "produce a summary of its responsive purchases, if any, of audio datasets."[2]  Defendant Apple Inc.'s Objections and Responses to Plaintiffs' Second

---

[1]      Disputes relating to RFP 27 are expressly carved out of the Court's November 29, 2023 Stipulation and Order to Modify Case Management Schedule, which, "subject to the resolution of the Submitted and Anticipated Disputes," set the close of discovery in this case for December 1, 2023.    ECF 160 at 2-3; *see also* ECF 156-2, §B.4 (listing disputes regarding RFP 27 among Anticipated Potential Disputes).  As is discussed further herein, Apple served one production that was ostensibly responsive to RFP 27 on December 2, 2023, and a second on January 25, 2024.

[2]      Contrary to Apple's suggestion below, Plaintiffs never sought to "convert RFP 27 into untimely interrogatories."    Instead, Apple represented in its responses that it would serve a summary in lieu of documents.

Set of Document Requests, **Exhibit B** to Comite Decl. at 5-6. Plaintiffs took Apple at its word and waited for the promised summary to be served.

When Apple produced the promised summary on December 2, 2023, it did not contain the information Apple said it would provide.   Apple's summary of "responsive purchases" contained only seven legible columns, none of which identified with specificity the type of data Apple purchased or the units in which it was sold.   Of the 319 entries on the summary, only 72 even describe the subject matter of the purchase as "data" – and what those entries describe is either irrelevant (*e.g.*, "OPEX Photos Data Collection – FirstSource"), or cryptic (*e.g.*, "OPEX Medusa Data Collection – FirstSource").   A dollar figure is associated with each entry, but the summary gives Plaintiffs no way to know what these apparently significant expenditures (adding up to over ██████) represent.   Three columns, including their headings, are redacted altogether, and the entries on the summary only cover the first quarter of 2020 to the end of 2023, though Plaintiffs had defined the relevant period as August 7, 2015 to the present.

If Plaintiffs could at least be sure that the entries on the summary were all "responsive purchases . . . of audio datasets," they might begin to discern the value of such datasets to Apple, notwithstanding Apple's failure to describe the exact types of audio data purchased and its unit costs.   But Apple hedged, explaining in its cover email that,

> for completeness, we have included all available information about Siri-related purchase requests for audio data sets, however, the document may be overbroad in that it may contain information about purchase requests for data sets not used for Siri improvement, purchase requests that were not ultimately executed, and/or purchase requests for non-audio data sets. Accordingly, nothing herein shall be construed as an admission or agreement that any of this data is relevant to Plaintiffs' claims.

Email of Tia Nguyen, Esq., Dec. 2, 2023.  Thus, in lieu of the "summary of its responsive purchases . . . of audio data sets" it promised, Apple produced a list of numbers on a spreadsheet and explained in its cover letter that they were meaningless.

Plaintiffs wrote to Apple on December 22, 2023 that the summary produced on December 2 was meaningless on its face and was not accompanied by any documentation that might allow

Plaintiffs to make better sense of its cryptic entries.[3]  Plaintiffs also noted that the timeframe for the information on the list was arbitrarily truncated.

Apple responded with a supplemental production served on January 25, 2024.  This was composed of 269 documents purporting to elucidate the 319 entries on the earlier summary.  A handful of these documents are vendor proposals and contractual documents; the large majority are Apple's internal "purchase requests" which provide little if any more information than was on the summary Apple produced.  The purchase requests describe goods or services generically if at all and reference budget codes for which Apple in many cases has not supplied explanations.  With rare exceptions, the production contains no requests for proposals, proposals, contracts, statements of work, or internal communications that might describe the data sets Apple was purchasing (audio or otherwise) or the purposes for which they were purchased.

The documents Apple produced clearly indicate the existence of other responsive documents.  For instance, two of the proposals included among the January 25, 2024 production – relating to a potential data collection – reference a project codenamed "Gemini" and a "Conversation project description v5" that in one case is described as an RFP (request for proposal).  The purchase requests, when they include any substantive information at all, frequently reference fancifully codenamed projects (*e.g.*, "Medusa," "Poseidon," "Hobbit") that are not explained anywhere in Apple's productions.

By letter dated February 27, 2024, Plaintiffs explained that Apple's response to RFP 27 remained deficient.  Apple represented the same day that no further documents are forthcoming.[4]

Accordingly, Plaintiffs file this Motion to Compel.  At the outset, Apple's promise to respond to RFP 27 is enforceable.  *See, e.g., M2 Software, Inc. v. M2 Communications, L.L.C.*, 217 F.R.D. 499, 500 (C.D. Cal. 2003) (compelling discovery where counsel "reasonably relied to

---

[3]      Contrary to Apple's representation below that Plaintiffs did not raise the redacted columns prior to serving this Joint Letter, Plaintiffs did complain in their Dec. 22, 2023 letter that Apple's summary "fully redacts three columns, including their headings."
[4]      Contrary to Apple's representation below, Plaintiffs were not the ones to declare "impasse." On February 27, Apple informed Plaintiffs that they would need to move to compel in order to obtain any additional documents of information in response to RFP 27.

its detriment upon" representation by opposing party that it "would produce the documents at issue").  Apple appears to have recognized that the summary of purchase requests it produced on December 2, 2023 was inadequate, or Apple would have not have made its supplemental January 25, 2024 production.  But the 269 documents in this production did virtually nothing to explain the 319 projects listed in the summary.  Documents that would describe the universe of responsive audio data sets – such as, at the minimum, statements of work and associated requests for proposal—in the meantime are apparently being withheld despite their high relevance to Plaintiffs' damages model.  Apple's argument that it conducted a good-faith search for responsive information does not hold water.  If, as Apple states below, its Dec. 2, 2023 cover letter really "confirmed" that the spreadsheet it produced contained "all available information about Siri-related purchase requests for audio data sets," Apple would not have had to make a supplemental production of documents on January 25, 2024.  Nor is it plausible that Apple did not keep the requests for proposals, proposals, or contractual documents associated with its purchase requests. Apple's withholding of these important documents is not acceptable.  In *Campbell v. Facebook*, Facebook similarly conducted a limited search for documents bearing on damages and, after finding "no information it viewed as on point," argued that "it should not have to produce any other information."  310 F.R.D. 439, 447 (N.D. Cal. 2015).  The court disagreed, holding that the plaintiffs "should be permitted somewhat broader discovery" where "expert analysis of the information [they] seek . . . could assist in establishing a model or methodology for class-wide relief."  Id at 448, 447.

Here, given the high relevance of the information Plaintiffs seek to their damages model, Apple should be compelled to conduct a good faith search of the repositories where requests for proposals, proposals, statements of work and other contracts are stored and, at the very least, produce such documentation for the 319 projects identified on their December 2, 2023 summary.

## B.   Defendant's Position

Plaintiffs' motion is meritless because Apple searched for documents responsive to RFP No. 27, provided a full response, and is not withholding any responsive documents located

through a good-faith search. "[N]o more is required." *See Khan v. Boohoo.com USA, Inc.*, 2021 WL 3882970, at *1 (C.D. Cal. July 19, 2021). The Court previously warned Plaintiffs that it is "wasteful" and "expensive for both sides" to "go back again and again" when Apple already has completed a good-faith search for documents. *See* Tr. of Oct. 16, 2023 Hearing (denying motion to compel further responses to RFP No. 6 where Apple performed search using Plaintiffs' search terms). Plaintiffs did not heed this warning, and, as before, their current motion should be denied.

Plaintiffs needlessly expend judicial resources by manufacturing a dispute where none exists based on pure speculation that other responsive documents exist. There are not, and Plaintiffs fail to establish any support for such an accusation. Although they falsely claim Apple delayed, it is Plaintiffs who made this baseless accusation more than a month after Apple completed its production, and just days before their March 1 deadline to complete outstanding discovery. Through this motion, Plaintiffs attempt to convert RFP No. 27 into untimely interrogatories seeking explanations of the documents Apple produced and additional requests seeking information outside of RFP No. 27. When Apple rejected this latest attempt by Plaintiffs to recharacterize their discovery requests, they declared "impasse." Plaintiffs misleadingly suggest it was Apple who declared impasse and that "Apple informed Plaintiffs that they would need to move to compel in order to obtain any additional documents of information in response to RFP 27." Not so. Rather, on February 27, Plaintiffs informed Apple it would file this motion after Apple reiterated to Plaintiffs that *there are no additional documents for Apple to produce*.

**Background.** RFP No. 27 requests documents "sufficient to Identify" certain purchases of data, including the date, price, quantity, and seller.[5] Apple agreed to produce a "summary of its responsive purchases, if any."[6] Plaintiffs did not object to Apple's response and proposed scope

---

[5] In their brief, Plaintiffs misrepresent RFP No. 27 as seeking "the use to which" data "was put or would have been," "the purposes for which" data was "purchased," "explanations," "internal communications . . . describ[ing] the data sets." *Supra* 1, 3. There are no such requests in RFP No. 27, and the brief improperly seeks to convert RFP No. 27 into an untimely interrogatory.

[6] Data that Apple may have purchased from others (not Plaintiffs) is not an allegedly intentional interception of Plaintiffs' confidential communications through false triggers—the theory Plaintiffs assert in their Complaint. To the extent Plaintiffs suggest that Apple avoided the costs of "buy[ing] equivalent data" by recording Plaintiffs without their consent, Apple produced data regarding its purchases. In any event, the data is not a proxy for damages and Apple denies that

of production. Thereafter, Apple performed a good-faith search and, as promised, summarized all available information by producing a comprehensive spreadsheet on December 2, 2023, which identified the vendor, date purchased (by fiscal year quarter), associated data collection project, and purchase order amount. *See* APL-LOPEZ_03011591. Apple's accompanying cover letter confirmed that the spreadsheet provides "all available information about Siri-related purchase requests for audio data sets." While Apple redacted several columns from the spreadsheet, they were unrelated to the date, price, quantity, seller, or any other information relevant to Plaintiffs' claims. Plaintiffs have never requested that Apple unredact any portion of the spreadsheet.

Plaintiffs thereafter sent a letter alleging that Apple's production was "deficient." The parties promptly met and conferred. Although the comprehensive summary spreadsheet Apple produced adequately responded to RFP No. 27, Apple, as an agreed compromise, set out to search for and produce the purchase orders associated with the entries in the December 2 spreadsheet. Apple completed an additional good-faith search and produced the sought-after purchase orders thereafter. *See* APL-LOPEZ_03016633-APL-LOPEZ_03017031. These purchase orders further supplement the information Apple provided in its comprehensive summary spreadsheet. Depending on the purchase order, additional information could include the date of the request/order, the entity from whom Apple purchased the audio data sets, the volume/number of units purchased, associated costs, and the language/locale of the data sets. Plaintiffs did not raise any issues with this production in three subsequent meet-and-confers. However, a month later, on February 27, 2024, they sent a letter seeking further information about Apple's response, stylized as alleged "deficiencies." As set forth below, each of Plaintiffs' deficiency allegations is baseless.

**Legal Standard**. There is no expectation that an entity maintain information in the specific type and form desired by an opponent in litigation. "A court cannot order a party to produce documents that do not exist." *Hamilton v. Rhoads*, 2012 WL 4097748, at *2 (N.D. Cal. Sept. 17, 2012). Moreover, "Plaintiff[s'] suspicion that additional documents exist does not justify a motion

RFP No. 27 seeks relevant information. Apple reserves all objections to the relevance, admissibility, or use of such information.

to compel." *Id.* Plaintiffs have not demonstrated that Apple withheld documents, nor could they. "Generally, when a party avers that no responsive documents exist, absent any evidence to the contrary, courts presume the parties are answering honestly, lest courts become mired in disputes over search adequacy." *EVO Brands, LLC v. Al Khalifa Group LLC*, 2023 WL 5506883, at *5 (C.D. Cal. Aug. 17, 2023). "Every document production would be mired in disputes over search adequacy if it were sufficient that a propounding party merely believed without any factual or evidentiary showing that documents have been withheld." *Khan*, 2021 WL 3882970, at *1.

**Apple's Production Is Not Deficient**. First, Plaintiffs contend that Apple's production does not cover a sufficient period and speculate that documents are being "withheld." *See supra* 2, 4. Neither claim is true, and Plaintiffs do not cite any evidence for their allegation. Apple did not limit its search or production by time period. The summary spreadsheet Apple produced discloses the full list of Siri-related audio dataset purchases Apple made during the relevant period, and the additional documents produced contain the corresponding purchase orders/requests that Apple located. Accordingly, Plaintiffs' cited caselaw addressing situations where a responding party fails to produce *any* responsive documents is inapplicable. *See Campbell*, 310 F.R.D. at 447 (compelling production where party produced no responsive documents); *M2 Software*, 217 F.R.D. at 501 (compelling production where party agreed to produce documents, but did not do so). In contrast, here, Apple performed a good-faith and diligent search and produced all responsive documents, and therefore, the responses are complete. Plaintiffs' speculation that other documents exist does not satisfy the "evidentiary showing" required to sustain their motion. *See, e.g.*, *Khan*, 2021 WL 3882970, at *1 ("[P]ure speculation" fails to establish "*facts* that [responding party's] search was inadequate"); *Evo Brands*, 2023 WL 5506883, at *5 ("[R]egardless of whether [moving party's] contention that [responding party] [is] withholding production is correct, if [the responding party] continue[s] to maintain that their responses are complete, the Court will not continue to entertain recursive motions to compel.").

Second, Plaintiffs contend that information Apple produced does not give them a "way to know" what the expenditures "represent." *Supra* 2. However, these purchase orders were not

created for litigation; they were created during the ordinary course of business and were produced unmodified. This is all the discovery rules require. Fed. R. Civ. P. 34(b)(2)(E). Apple has no obligation to alter its documents to respond to Plaintiffs' RFPs, or to provide supplementary explanations to assist Plaintiffs in understanding the documents. *Id.*; *see also Carter v. Dawson*, 2010 WL 4483814, at *3 (E.D. Cal. Nov. 1, 2010) ("The Court will not compel Defendants to produce additional documents based on Plaintiff's speculation that it is 'beyond belief' that there are no other documents."). The gauge for Apple's compliance with discovery obligations is not Plaintiffs' understanding or their determination of how useful the information is.

Ultimately, Plaintiffs' arguments read like an improper attempt to circumvent the December 1, 2023 fact discovery deadline by tendering a set of new interrogatories and document requests in the guise of a "discovery letter" (*e.g.*, seeking to understand what Apple's project codenames refer to). When Apple did not indulge this improper discovery, Plaintiffs resorted to filing a motion to compel. This is not proper, nor is the information they now seek responsive to RFP No. 27 as posed. Apple is not required to answer untimely, new discovery requests after providing a complete response to RFP No. 27. Plaintiffs' motion to compel is an effort to mask Plaintiffs' failure to implement a thoughtful, organized approach to discovery during the more than two-year discovery period. Apple has satisfied its discovery obligations with respect to RFP No. 27: it produced responsive information on December 2, 2023, promptly met and conferred with Plaintiffs following their "deficiency" allegations, agreed to produce *additional* documents, and delivered the production of purchase orders on January 29, 2024. It is Plaintiffs who delayed by waiting until February 27, 2024 to allege (without merit) further deficiencies—three days before Plaintiffs were due to disclose expert reports, including damages opinions. But "the Court simply cannot compel different responses [to a request for production] just because [the moving party] does not like or believe the ones [the responding party] provide[s]." *Evo Brands*, 2023 WL 5506883, at *5. The Court should deny Plaintiffs' motion to compel.

Dated: March 1, 2024

By:

_/s/ Erin Green Comite_
Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile: 212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

John T. Jasnoch (Bar No. 281605)
Hal D. Cunningham (Bar. No. 243048)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
jjasnoch@scott-scott.com
hcunningham@scott-scott.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile: 914-997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

Mark N. Todzo (Bar No. 168389)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile: 415-759-4112
mtodzo@lexlawgroup.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: 205-612-0243
kirk@woodlawfirmllc.com

Respectfully submitted:

By:

_/s/ Isabelle Ord_
ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415-836-2500
Facsimile: 415-836-2501

RAJ N. SHAH (*pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (*pro hac vice*)
eric.roberts@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: 312-368-4000
Facsimile: 312-236-7516

*Attorneys for Defendant APPLE INC.*

*Attorneys for Plaintiffs*