1

2

3

4                              UNITED STATES DISTRICT COURT

5                           NORTHERN DISTRICT OF CALIFORNIA

6

7       FUMIKO LOPEZ, et al.,                    Case No. 19-cv-04577-JSW   (SK)

8                          Plaintiffs,
                                                 **REDACTED ORDER REGARDING**
9              v.                                **PLAINTIFFS MOTION FOR**
                                                 **SANCTIONS**
10      APPLE, INC.,

11                         Defendant.            Regarding Docket No. 244

12

13

14             Now before the Court is Plaintiffs' motion for sanctions due to the failure of Defendant

15      Apple, Inc. ("Apple") to retain relevant evidence.

16                                           **BACKGROUND**

17             In this putative class action, Plaintiffs allege that Apple violated their rights to privacy and

18      misused their data when Plaintiffs accidentally activated Apple's "Siri" product in a "false accept"

19      or "false trigger" that then led to a recording.  (Dkt. Nos. 1, 48, 70.)  Specifically, Apple had

20      represented to users of Apple's devices that contained Siri that the devices:

21                    would only listen to, record, and share their conversations with their
                      consent, which can be given only:  (i) by uttering an activation
22                    command, like "Hey, Siri" (the "hot word"); (ii) by manually
                      pressing a button on the device; and (iii) in case of the AppleWatch,
23                    by raising the AppleWatch to one's mouth and beginning to talk.

24      (Dkt. No. 70 (Second Amended Class Action Complaint), at ¶ 4.)  Plaintiffs allege that, despite

25      these promises, Apple, intercepted, recorded, and misused private conversations of thousands of

26      individuals without consent, where "Hey, Siri" was not uttered and no button on the device was

27      pressed.  (*Id*. at ¶¶ 4, 5.)  For example, instead of activating by the activation command, the

28

United States District Court
Northern District of California

"sound of a zip" accidentally woke up Siri to listen to and then record the following conversation. (Dkt. No. 70 at ¶ 70.)  In an attempt to improve its products, Apple then disclosed some of these recordings to third-party subcontractors, again without consent.  (*Id*. at ¶ 5; *see also* ¶ 75 ("Apple analyzes the recordings it obtains where no hot word has been uttered or button pushed to improve the functionality of Siri, and thereby market and sell more Siri Devices.").)

Plaintiffs assert claims for violation of the Wiretap Act (18 U.S.C. section 2510 et seq.), violation of California Penal Code § 632, violation of Article I, Section 1 of the California Constitution, breach of contract, and declaratory relief.  (Dkt. Nos. 70, 77 (Order dismissing some claims).)

Apple argues that Plaintiffs' claims are limited to false accepts or triggers made in a confidential setting.  (Dkt. No. 273.)  Plaintiffs dispute this limitation and argue that *any* recorded false trigger is a breach of contract and thus included in this suit.  (Dkt. No. 270.)  The Court need not resolve this dispute at this time.  Additionally, Apple argues that Plaintiffs' claims are limited to false accepts or false triggers that were provided to third-parties for grading.  However, notably, Apple does not cite to Plaintiffs' Complaint or to the District Court's limitation of Plaintiffs' claims for this proposition.  Instead, Apple cites to an order from the undersigned who, in turn, had relied upon Apple's characterization of Plaintiffs' claims.  Plaintiffs make clear that their claims for violation of privacy are not limited to false accepts or false triggers that were provided to third-party graders.  (Dkt. No. 270.)  Instead, the alleged violations of privacy occur at the time Apple intercepted and recorded the false accepts or false triggers.  (Dkt. No. 270; *see also* Dkt. No. 70 (Second Amended Class Action Complaint).)

Before this lawsuit was filed, Apple retained the following information with respect to the recordings and data for Siri requests: (1) Siri requests were associated with a random, device generated identifier, known as the Assistant ID, and the recordings were saved for six months; (2) after six months, the Assistant ID was disassociated from the Siri recordings, and the recordings were saved for an additional eighteen months; and (3) a much smaller subset was selected for grading by humans to determine whether Siri heard the request correctly, and that smaller subset was retained for five years.  (Dkt. No. 273 (Apple's Supplemental Response) at p. 2; Dkt. No.

273-1 (Declaration of Isabelle L. Ord ("Supplemental Ord Decl."), Ex. 1; *see also* Dkt. No. 271

(Declaration of Andrea Farah ("Supplemental Farah Decl")), Ex. 12.[1])

On July 26, 2019, an article in the *Guardian* reported that Apple had been recording their

customers' confidential and private conversations without their consent and had been storing and

sending those recordings to humans for review:

> [A] small portion of Siri recordings are passed on to contractors working for the company around the world [who] are tasked with grading the responses on a variety of factors, including whether the activation of the voice assistant was deliberate or accidental, whether the query was something Siri could be expected to help with and whether Siri's response was appropriate [.]

*See* Alex Hern, *Apple contractors 'regularly hear confidential detail' on Siri recordings*, THE

GUARDIAN (Jul. 26, 2019), https://www.theguardian.com/technology/2019/jul/26/apple-

contractors-regularly-hear-confidential-details-on-siri-recordings.  After this article was published,

Apple made the following statement:

> We are committed to delivering a great Siri experience while protecting user privacy . . . . While we conduct a thorough review, we are suspending Siri grading globally.  Additionally, as part of a future software update, users will have the ability to choose to participate in grading.

*See* https://techcrunch.com/2019/08/01/apple-suspends-siri-response-grading-in-response-to-

privacy-concerns/.  Apple engaged in an investigation to strengthen privacy protections for Siri

and took actions in response to this and other articles.  (Dkt. No. 121-8, Ex. 8 (Deposition of

Apple under Federal Rule of Civil Procedure 30(b)(6)) at 324:1-25, 325:12-16.)

On August 2, 2019, Apple announced that it would only store audio recordings of Siri's

interactions for users who opted in to contribute audio samples of their requests to improve Siri.

(Dkt. No. 273-1 (Declaration of Isabelle L. Ord ("Supplemental Ord Decl."), ¶ 2.)  At that time,

Apple expected that only ten percent of its users would affirmatively consent and opt in to the

"Improve Siri Program."  (Dkt. No 234 (Declaration of Andrea Farah ("Farah Decl."), Exs. 6,

12.[2])  The changes to the retention policy arose from the investigation initiated after the article.

United States District Court<br>Northern District of California

---

[1] The majority of the exhibits to the Supplemental Farah Declaration are filed under seal at Docket Number 272 and redacted versions are publicly filed at Docket Number 275.

[2] The majority of the exhibits to the Farah Declaration are filed under seal at Docket

1   (Dkt. No. 121-8, Ex. 8 at 327:17-328:20.)

2        On August 7, 2019, Plaintiffs filed their first complaint in this case.  (Dkt. No. 1.)  In that

3   complaint and in their two subsequent amended complaints, Plaintiffs' allegations and claims

4   centered around Siri recordings that were erroneously made without consent ("false accepts" or

5   "false triggers") in the United States.  (Dkt. No. 1 (Class Action Complaint) at ¶¶ 3, 4, 26, 32, 36,

6   56, 59, 64, 80, 85; Dkt. No. 48 (First Amended Class Action Complaint) at ¶¶ 1, 5, 25, 35, 36, 41,

7   78, 79, 81, 105, 106, 125, 126, 148, 157, 189; Dkt. No. 70 (Second Amended Class Action

8   Complaint) at ¶¶ 4, 5, 19, 25, 34, 39, 45, 60, 70, 71, 80, 108, 109, 111, 127, 128, 132, 141.)

9        On August 28, 2019, Apple provided further details regarding the new opt-in option for

10   improving Siri in a press release.  (Dkt. No. 273-1 (Supplemental Ord Decl.), p. 3, Ex. 3.)  The

11   press release stated that Apple was making the following changes: (1) it would no longer retain

12   audio recordings of Siri interactions; instead Apple would use computer-generated transcripts to

13   help improve Siri; (2) users could opt in to help Siri to improve by learning from the audio

14   samples of users' requests; and (3) only Apply employees would be allowed to listen to the audio

15   samples of the Siri interactions for users who opted in.  (*Id.*)

16        Apple implemented this change to its data retention policy in October 2019 in connection

17   with its release of iOS 13.2.  (Dkt. No. 271 (Supplemental Farah Decl.), Ex. 12; *see also* Dkt. No.

18   177-2[3] (Declaration of Isabel Schunemann in Support of Apple's Motion for a Protective Order

19   ("Schunemann Decl.")), ¶ 10 ("Since October 28, 2019, by default, Apple does not retain Siri

20   audio recordings.  Rather, users are allowed to opt in to help improve Siri by having their Siri

21   audio recordings stored and potentially graded.").)[4]

22        Plaintiffs served requests for production of documents and interrogatories on February 18,

23   2022, and September 15, 2022, respectively, seeking data relating to audio recordings and

24   transcripts from false accepts that Apple stored on its servers.  (Dkt. No. 234 (Declaration of

25   Andrea Farah), ¶¶ 2-10, Exs. 1, 2.)  Apple argued that Plaintiffs' discovery requests were over

26

27   Number 235 and redacted versions are publicly filed at Docket Number 242.
     [3] This document is filed under seal.  Although Apple only sought to seal portions of this
28   declaration, Apple did not publicly file a redacted version of this document.
         [4] The unredacted version is filed at Docket Number 177-2.

4

United States District Court
Northern District of California

1    burdensome and that responding to these requests for production of documents would be

2    disproportionate and would yield data that would take a lifetime to review.  (Dkt. No. 234 (Farah

3    Decl.), ¶¶ 7, 9.)  Plaintiffs represent that the parties met and conferred more than fifteen times to

4    negotiate over the scope of the data, audio and transcripts to be produced in response to Plaintiffs'

5    discovery requests.  (*Id*., ¶ 10.)  Apple repeatedly objected to Plaintiffs' request on the grounds

6    that responding to them was too burdensome in light of the volume of data Plaintiffs were

7    requesting.  (*Id*.)

8         The parties tried to craft a sampling proposal to satisfy Plaintiffs' needs but the parties

9    could not reach an agreement on what sampling was needed or feasible.  The parties first raised

10   this dispute before the Court on October 26, 2023.  (Dkt. No. 140-3 (Discovery Letter Brief).[5])  At

11   the hearing on this dispute, the parties represented that they were willing to continue their efforts

12   to reach an agreement.  Thus, the Court deferred ruling on the dispute and set a deadline for the

13   parties to provide their competing sampling proposals if they could not reach an agreement.  (Dkt.

14   No. 153 (Transcript of Hearing on November 6, 2023) at 13:6-20.)  Apple had not yet disclosed to

15   Plaintiffs that it had not retained the recordings.

16        At a further hearing on this discovery dispute on November 6, 2023, for the first time,

17   Apple alluded to the fact that it had not retained the Siri recordings previously made.

18        MS. ORD: . . . . Material is not retained forever, because these are
     communications that there's no need to retain over time.  So we can't
19   go back and produce every single audio recording that has ever
     existed in time, but we do have information that is available and
20   statistically valid, and it doesn't help them to listen to more and more
     and more recordings.  They're quite short, and the only purpose of the
21   recording is to determine whether SIRI was validly summoned.  Did
     someone say, "Hey, SIRI?"  And if so, then did the assistant correctly
22   respond to whatever that inquiry was.  They're not listening --

23        THE COURT:  Can I stop you for a minute?  You said that the
     recordings and the transcripts are not retained forever.  How long are
24   they retained?

25        MS. ORD:  It depends upon the timeframe, Your Honor.  But once
     there is a process in place for the retention, we don't keep private
26   information.  So we instead keep the transcripts of information. . . .

27

28        [5] A publicly filed redacted version of the joint letter brief is filed at Docket Number 165-2.

United States District Court
Northern District of California

1    (Dkt. No. 153 at 9:1-17.)

2        On January 12, 2024, Apple moved for leave to file a motion for a protective order.  (Dkt.

3    No. 176.)  In its motion for a protective order, Apple requested relief from the burden of retaining

4    *all* Siri recordings (and associated data) for all Siri recordings made worldwide.  (Dkt. No. 176-1.)

5        In support of its motion for a protective order, Apple filed a declaration by Isabel

6    Schunemann, who explained that, when a user makes a Siri request, a recording of the request may

7    be transmitted to the Siri server.  (Dkt. No. 177-2, ¶ 4.)  The audio recordings transmitted to the

8    Siri server are tied to an Assistant ID that are not linked to a customer's Apple ID, email address,

9    or other personal identifier that Apple may have from the customer's use of other Apple services.

10   (*Id*.)  Schunemann explained that Siri requests worldwide are stored together and are not

11   segregated into a "U.S.-specific" location and the storage systems do not have a concept of a

12   user's place of residence.  (*Id*., ¶ 5.)

13       In its motion for a protective order, Apple also made assurances that Plaintiffs would not

14   be prejudiced by Apple deleting data in accordance with its retention policy because Apple offered

15   to provide Plaintiffs with a sample of Siri requests, including over several hundred thousands of

16   Siri requests and over one hundred hours of Siri audio recordings.  (Dkt. No. 176-1 (citing Dkt.

17   Nos. 138, 158).)

18       On January 26, 2024, Plaintiffs informed the Court that Apple had destroyed millions of

19   class members' data by not suspending its auto-deletion practices when this litigation commenced

20   but noted that Apple's deletion of this data would be the subject of a later joint letter discovery

21   brief.  (Dkt. No. 184 at p. 1 and n. 3.)[6]  Plaintiffs were still urging the Court to adopt what they

22   considered at the time was an effective sampling proposal.  (*Id*. at p. 2; *see also* Dkt. No. 198

23   (Plaintiffs' brief in support of their sampling proposal).)

24       Apple responded to Plaintiffs' sampling proposal by arguing that Plaintiffs' proposal

25   would require the production of hundreds of millions or billions of Siri requests.  (Dkt. No. 197.)

26   _____

27       [6] In their brief in support of their sampling proposal filed on February 2, 2024, Plaintiffs
     made the same representation – that Apple had destroyed millions of class members' data but that
28   the dispute regarding the destruction of evidence would be the subject of a later discovery brief.
     (Dkt. No. 198.)

United States District Court
Northern District of California

1    Relying on Apple's representation of the burden of complying with Plaintiffs' proposal and the

2    sufficiency of Apple's proposal, the Court adopted Apple's sampling proposal.  (Dkt. No. 202.)

3              On February 27, 2024, the Court granted Apple's motion for a protective order.  (Dkt. No.

4    231.)  In granting the motion for a protective order, the Court was persuaded by the enormous cost

5    of retaining *all* Siri data worldwide without any ability to segregate out data from users in the

6    United States.  Apple's assurance that Plaintiffs would not be prejudiced due to the availability of

7    the sampling data was also critical to the Court determination.  In the Order, the Court noted

8    Plaintiffs' accusation that Apple spoliated evidence in the past by adhering to its retention policy

9    and made clear that the motion and Order *only* addressed Apple's conduct going *forward*.  (*Id.* at

10   p. 4 ("Apple filed this motion for relief going forward, and this Order thus does not address any

11   past conduct.").)

12             In their motion for sanctions, Plaintiffs explain that they first learned of Apple's failure to

13   retain the evidence related to the Siri requests on November 10, 2023, which was only three weeks

14   before the close of fact discovery and more than four years after this case was filed.  (Dkt. No. 234

15   (Farah Decl.), ¶ 16.)  However, at that point, the full scope of what Apple had deleted was not yet

16   clear.  The parties were arguing over and trying to reach an agreement over a sampling proposal.

17   Apple argued to Plaintiffs, and to the Court, that Plaintiffs' sampling requests would require

18   production of voluminous material – too voluminous to ever listen to in its entirety.  (Dkt. No.

19   197.)  However, in their motion for sanctions, Plaintiffs make clear that due to Apple's deletion of

20   the data, the sampling that the Court ordered will be woefully inadequate.  (Dkt. No. 234 (Farah

21   Decl.), ¶ 24-25.)  Apple only maintained a small subset of data from Siri users – the data that was

22   disclosed to reviewers in its grading process.  Only approximately ███████ of Siri audio

23   recordings are graded.  (Dkt. No. 234, Ex. 8.)  In addition, the graded data is limited to Siri

24   requests in two languages (and excludes requests made in one of the other 37 languages available

25   to Siri users), to audio recordings by individuals who opted into Apple's audio collection practice,

26   and to the basic data fields necessary for graders to evaluate the accuracy of Siri's response.  (Dkt.

27   No. 234, ¶ 24.)  Finally, the due to Apple's deletion of older ESI, the data will be biased towards

28   the changes Apple made in recent years and will only include data from individuals who opted in

to allow Apple to record their data.  (*Id.*, ¶ 25.)

Moreover, upon reviewing Plaintiffs' motion for sanctions and reexamining the supporting papers for the motion for a protective order, the Court observes that Schunemann explained that Apple utilizes an automated false trigger mitigation ("FTM").  If "Siri's false trigger mitigation process determines a Siri audio recording is likely the result of a false trigger, it generally is segregated, not listened to by a human or otherwise analyzed, and deleted within eight days of the audio recording's creation" pursuant to Apple's retention policy.  (Dkt. No. 177-2 (Schunemann Decl.), ¶ 6(a).)  Apple does not explain how many requests were tagged as likely resulting from a false trigger or how much it would have cost to retain such data for the duration of this litigation.

Apple also utilizes another program designed to detect false accepts by Siri – the automated speech recognition ("ASR").  Siri audio recordings transmitted to Siri servers pass through to the ASR system.  (Dkt. No. 273-1 (Supplemental Ord Decl.), Ex. 5.)  If the ASR system recognizes that the user cancels the request and/or if the ASR system does not detect any meaningful language (*i.e.*, there is silence or gibberish), the request is segregated and deleted because it is likely the result of a false trigger.  (*Id.*)  Siri audio recordings that are not flagged by the ASR as a potential false trigger are analyzed by the automated FTM.  (*Id.*)  The FTM is a system Apple developed to mitigate (*i.e.*, cancel) the Siri audio request if the FTM determines, using ▮▮▮▮▮▮▮, that the request is likely the result of a false trigger.  (*Id.*)  A small subset of Siri audio recordings that the FTM determines likely to be false triggers are sent in to be analyzed by graders.  (*Id.*)

When Siri is activated on a device, Apple collects a number of data fields, such as the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Dkt. No. 271 (Supplemental Farah Decl.), Ex. 10.)  Plaintiffs represent that Apple listed 35 data fields that it collects.  (Dkt. No. 270 (Plaintiffs' Supplemental Brief)[7] at p. 9 (citing Dkt. No. 271, Exs. 5, 10.)  When a user issues a Siri query or experiences a false trigger, Apple collects more data fields.  Plaintiffs represent that the number of data fields collected is 72.  (Dkt. No. 270 at pp. 9-10

---

[7] An unredacted version of Plaintiffs' Supplemental Brief is filed under seal at Docket Number 272-2.

1   (citing Dkt. No. 271, Exs. 10, 27.).)

2                                          **ANALYSIS**

3          This action concerns Apple's recording and sharing of false Siri triggers or accepts.  Apple

4   did not suspend its retention policy for purposes of this litigation.  Instead, Apple continued to

5   delete Siri recordings and the related data fields it collected, in accordance with its data retention

6   policy.  This issue is whether Apple's deletion of this electronically stored information ("ESI") is

7   sanctionable.

8          Federal Rule of Civil Procedure 37(e) addresses the failure to preserve ESI.  "Rule 37(e)

9   sets forth three criteria to determine whether spoliation of ESI has occurred: (1) the ESI 'should

10  have been preserved in the anticipation or conduct of litigation'; (2) the ESI 'is lost because a

11  party failed to take reasonable steps to preserve it'; and (3) '[the ESI] cannot be restored or

12  replaced through additional discovery."  *Porter v. City & Cnty. of S.F.*, 2018 WL 4215602, at *3

13  (N.D. Cal. Sep. 5, 2018) (quoting Fed. R. Civ. P. 37(e)).  If these criteria are satisfied and there is

14  "prejudice to another party from loss of the information," the court "may order measures no

15  greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).

16         However, if a court finds that the offending party "acted with the intent to deprive another

17  party of the information's use in litigation," the court may impose more severe sanctions.  Fed. R.

18  Civ. P. 37(e)(2).  Under Rule 37(e)(2), the court may issue the following sanctions: (1) a

19  presumption "that the lost information was unfavorable to the party"; (2) a jury instruction "that it

20  may or must presume the information was unfavorable to the party"; or (3) a dismissal or default

21  judgment.  *Id.*  "Unlike Rule 37(e)(1), there is no requirement that the court find prejudice to the

22  non-spoliating party under Rule 37(e)(2)."  *Porter*, 2018 WL 4215602, at *3.  Intent requires more

23  than "[n]egligent or even grossly negligent behavior."  *See* Fed. R. Civ. P. 37 advisory

24  committee's note (2015).  Rather, "courts have found that a party's conduct satisfies Rule

25  37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that a party

26  purposefully destroyed evidence to avoid its litigation obligations."  *Porter*, 2018 WL 4215602, at

27  *3.

28  **A.      Rule 37(e)(1).**

1    The Court easily finds that the requirements of Rule 37(e)(1) are met.

2    **1.  ESI Should Have Been Preserved in Anticipation or Conduct of Litigation.**

3    "[I]t is well-settled that '[a]s soon as a potential claim is identified, a litigant is under a

4    duty to preserve evidence which it knows or reasonably should know is relevant to the action.'"

5    *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *2 (N.D. Cal. Oct. 29, 2014)

6    (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.,* 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012); *see*

7    *also In re Napster, Inc.,* 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential

8    claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably

9    should know is relevant to the action.").

10    Moreover "it generally is recognized that when a company or organization has a document

11    retention policy, it is obligated to suspend that policy and implement a 'litigation hold' to ensure

12    the preservation of relevant documents after the preservation duty has been triggered." *Apple Inc.*,

13    881 F. Supp. 2d at 1137 (internal quotation marks omitted) (citing cases); *see also In re Napster,*

14    *Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) (quoting *Zubulake v. UBS*

15    *Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)) ("Once a party reasonably anticipates

16    litigation, it must suspend its routine document retention/destruction policy and put in place a

17    'litigation hold' to ensure the preservation of relevant documents."); *see also Doe LS 340 v. Uber*

18    *Techs., Inc.*, --- F. Supp. 3d ---, 2024 WL 107929, at *2 (N.D. Cal. Jan. 9, 2024).  As Apple is well

19    aware from previous litigation, once a party's duty to preserve takes effect, that party is "required

20    to suspend any existing policies related to deleting or destroying files and preserve all relevant

21    documents related to the litigation." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991

22    (N.D. Cal. 2012); *Apple Inc.*, 881 F. Supp. 2d at 1137; *AliveCor, Inc. v. Apple, Inc*., No. 21-CV-

23    03958-JSW, 2023 WL 4335293, at *3 (N.D. Cal. June 2, 2023).  The failure to do so is "at a

24    minimum, negligent." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1070 (quoting

25    *Zubulake*, 220 F.R.D. at 220).

26    Here, Apple's duty to preserve relevant evidence arose, at the latest, when it was served

27    with Plaintiffs' complaint in this action on August 16, 2019.  (Dkt. No. 23 (proof of service).)

28    **2.  ESI Is Lost Because a Party Failed to Take Reasonable Steps to Preserve It.**

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

It is undisputed that Apple did not suspend its retention policy after it was served and, thus, continued to delete ESI pursuant to its retention policy.  Instead, Apple argues that the documents deleted pursuant to its retention policy were not relevant.  The Court disagrees.

The duty to preserve pertains to evidence that is relevant to the claims or defenses of any party, or which is relevant to the subject matter involved in the action.  *Apple Inc.*, 881 F. Supp. 2d at 1137 (citing Federal Rule of Civil Procedure 34).  "A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant to the litigation before they were destroyed."  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (emphasis in original) (citation and quotation marks omitted).  In fact, as the presiding judge in this matter previously ruled in another case against Apple, "[r]elevancy is a broad standard, especially for discovery purposes.  *AliveCor, Inc. v. Apple, Inc.*, 2023 WL 4335293, at *3 (N.D. Cal. June 2, 2023) (citing Fed. R. Civ. P. 26(b)(1)) (finding that "Apple did not take reasonable steps to preserve electronically stored information that should have been preserved in the anticipation or conduct of litigation as required by Rule 37(e).").

Apple argues that argues that it did not have an obligation to preserve *all* Siri data and that the Court previously determined that the relevance of *all* Siri data was low.  However, as explained above, the Court's determination relied heavily on the representation by Apple that it had retained a viable sampling of the data that would provide Plaintiffs with the evidence they needed.  The Court did not find that the Siri data was not relevant.  Instead, the Court determined, based on Apple's representations, that there was no method for saving a smaller relevant subset of the data and that the burden of saving *all* of the Siri data outweighed its benefit.  Plaintiffs' claims and Apple's defenses center on the Siri false triggers.  The Siri data, particularly with respect to those false triggers, are indisputably relevant.

Instead, the issue really is burden and whether the burden to preserve the data outweighs its relevance.  Apple should have asked the Court in the beginning of this case, and Apple should not have made this determination on its own.  In fact, Apple is well aware from previous orders in cases in this District that it had an obligation to suspend its auto-deletion policy under its retention policy for relevant evidence, which is a *broad* standard.  *AliveCor, Inc. v. Apple, Inc.*, 2023 WL

1    4335293, at *3 (N.D. Cal. June 2, 2023) (citing Fed. R. Civ. P. 26(b)(1)). Instead, after it was

2    served with the Complaint in this matter, Apple implemented an even narrower retention policy

3    and failed to place that policy on hold during this litigation.

4            Moreover, it appears as though Apple has automated systems which are designed to locate

5    Siri's false recordings – ASR and FTM. At the very least, Apple could have segregated and

6    retained those recordings which were identified as likely false through its ASR and FTM.

7    Additionally, Apple knew from the Siri recordings that were evaluated by third-party graders, and

8    later by Apple employees, that certain recordings were falsely made. At a minimum, Apple

9    should have retained all of the data relevant to those recordings, including not disassociating and

10   deleting the Assistant ID after six months.

11           However, Apple continued to delete the ESI in accordance with its retention policy without

12   informing Plaintiffs or the Court. Simultaneously, Apple vigorously argued to Plaintiffs and the

13   Court that it did not have any ability to sort and retain a more limited subset of the Siri data and

14   that it had retained a viable sampling which would alleviate any prejudice from deleting the

15   remainder of the Siri data. Neither appear to be true. The Court, thus, finds that Apple failed to

16   take reasonable steps to preserve relevant ESI.

17       **3. The ESI Cannot be Restored or Replaced Through Additional Discovery.**

18           Apple does not dispute that the deleted data was destroyed and cannot be retrieved. Nor

19   does Apple suggest that the deleted data could be restored or replaced. There is no available

20   alternative method to restore or replace the deleted ESI.

21       **4. Prejudice.**

22           The Siri data, particularly the data on those recordings falsely made (the false accepts), are

23   critical to Plaintiffs' claims and Apple's defenses. Without access to the recordings falsely made,

24   Plaintiffs are precluded from proving that Apple wrongfully made these recordings, how many

25   class members were affected, how many times Siri recorded conversations when "Hey Siri" was

26   not spoken, and where the interceptions occurred. Although Apple argues that it has data on the

27   number of false recordings, Apple's deletion of the data precludes Plaintiffs from making those

28   calculations themselves and from challenging Apple's estimates. Moreover, while Apple argues

United States District Court
Northern District of California

1    that Plaintiffs would not have been able to identify customers who had their conversations

2    recorded, again, Apple has deprived Plaintiffs from validating this representation.  Plaintiffs

3    persuasively argue that Apple had collected sufficient information to identify the individual

4    customers who were subject to the false triggers.  However, in light of the amount of ESI that

5    Apple deleted, Plaintiffs are now precluded from that opportunity.  Thus, due to Apple's

6    destruction of the ESI, Plaintiffs now lack evidence to prove a variety of issues:  standing to bring

7    their claims[8], the amount of class wide damages, or Apple's intent based on the number of false

8    recordings, whether Apple's conduct was intentional.  This list is illustrative and not

9    comprehensive.

10        Apple argues that Plaintiffs were not prejudiced because the volume of Siri recordings and

11   data was so voluminous, Plaintiffs could not have possibly listened to it all.  However, by deleting

12   the overwhelming majority of the data, and by only saving limited fields with respect to the

13   recordings it did save, Apple has precluded Plaintiffs from any opportunity to sort through the data

14   on their own or to draw valuable conclusions from the data that was saved.  The Court finds that

15   Plaintiffs have been prejudiced by the spoilation of the ESI.  Therefore, Plaintiffs are entitled to

16   relief "no greater than necessary to cure the prejudice" under Rule 37(e)(1).  *See* Fed. R. Civ. P.

17   37(e)(1).

18   **B.    Rule 37(e)(2)**

19        Before the Court may impose more severe sanctions under Rule 37(e)(2), the Court must

20   find that Apple "acted with the intent to deprive another party of the information's use in

21   litigation."  *See* Fed. R. Civ. P. 37(e)(2).  As noted above, "[n]egligent or even grossly negligent

22   behavior" is insufficient to show "intent."  2015 Advisory Comm. Notes.  Rather, a finding of

23   "intent" requires that the evidence shows, or it is reasonable to infer, that a party purposefully

24   destroyed evidence to avoid its obligations in litigation.  *Dish Network LLC v. Jadoo TV, Inc.*,

25

26        [8] Apple argues that Plaintiffs must prove that they had an expectation of privacy in their
conversations that were falsely recorded in order to make a claim, and Apple argues that a
27   conversation held in a public setting would not meet that burden.  However, without the
recordings, no individual plaintiff can prove that Apple falsely recorded a conversation in a private
28   setting.

United States District Court
Northern District of California

1   2022 WL 11270394, at *3 (N.D. Cal. Oct. 19, 2022).  "Relevant factors [concerning intent] can

2   include, *inter alia*, the timing of the destruction, the method of deletion (*e.g.*, automatic deletion

3   vs. affirmative steps of erasure), selective preservation, the reason some evidence was preserved,

4   and, where relevant, the existence of institutional policies on preservation."  *Id*. (quoting *Laub v.

5   Horbaczewski*, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020)).  Plaintiffs bear the burden to

6   establish intent.  *Dish Network*, 2022 WL 11270394, at *4 (citing *Chinitz v. Intero Real Est.

7   Servs.*, 2020 WL 7389417, at *2 (N.D. Cal. May 13, 2020)).

8           The Advisory Committee Notes to Rule 37 contemplate that a court may allow the jury to

9   decide whether a party who spoliated evidence acted with the necessary intent under Rule

10  37(e)(2), explaining:

> Subdivision (e)(2) requires a finding that the party acted with the intent to deprive another party of the information's use in the litigation.  This finding may be made by the court when ruling on a pretrial motion, when presiding at a bench trial, or when deciding whether to give an adverse inference instruction at trial.
>
> [¶] If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation.  If the jury does not make this finding, it may not infer from the loss that the information was unfavorable to the party that lost it.

18  Fed. R. Civ. P. 37, Advisory Committee Note to 2015 Amendment.

19          Where intent is a close question, courts have sent this issue to the jury to determine.

20  *Aramark Mgmt., LLC v. Borgquist*, 2021 WL 864067, at *16 (C.D. Cal. Jan. 27, 2021) (finding it

21  appropriate for the jury to determine intent because reasonable minds could disagree on whether

22  the evidence was sufficient to establish intent); *see also Epicor Software Corp. v. Alternative

23  Tech. Sols., Inc.*, 2015 WL 12734011, at *2 (C.D. Cal. Dec. 17, 2015) (finding defendant's "intent

24  with regard to the destroyed evidence is an open question of fact that is suitable for resolution by

25  the jury").

26          Here, some of the factors weigh against a finding of intent to deprive Plaintiffs of the

27  information's use in this litigation:  (1) the destruction of the ESI occurred automatically pursuant

28  to Apple's retention policy and (2) Apple did not selectively preserve some ESI.  "[A] passive

United States District Court
Northern District of California

failure to halt an automatic deletion process, without more, often does not rise to a reasonable inference of intent." *Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 929 (N.D. Cal. 2022) (citing cases).  On the other hand, however, Apple changed its retention policy to substantially narrow the preservation of ESI and did not start implementing those changes until after Apple was served with Plaintiffs' complaint.  Moreover, Apple is a large, sophisticated company represented by experienced counsel, and Apple has been previously sanctioned for its failure to place its ESI under a litigation hold.  *AliveCor*, 2023 WL 4335293, at *3.  Lastly, the Court notes that Apple misled Plaintiffs and the Court regarding the volume of Siri data it had retained and the sufficiency of the sampling it had proposed.  The Court finds that reasonable minds could disagree on whether Apple intentionally failed to implement a litigation hold and delete the Siri data.  Therefore, the Court finds that the jury should decide this issue.

## C.      Remedy under Rule 37(e)(1)

Pursuant to Rule 37(e)(1), the Court "may order measures no greater than necessary to cure the prejudice" Plaintiffs suffered.  *See* Fed. R. Civ. P. 37(e)(1).  To alleviate the prejudice from Apple's spoliation of the Siri data, Apple should be precluded from affirmatively arguing or otherwise using Plaintiffs' failure to make certain showings that they could have made if they had access to the deleted Siri data.  For example, Apple cannot argue that named Plaintiffs lack standing to sue because they have no proof that they were subject to false triggers, cannot argue against class-wide damages based on the number of false recordings, and cannot argue against Apple's intent based on the number of, and instances of repeated, false recordings.  Apple shall not be allowed to introduce evidence about the data it destroyed or to rely on the absence of the data it destroyed in challenging class certification, Plaintiffs' damages expert, in moving for summary judgment, or at trial.  Moreover, as noted above, this list is not exhaustive.  The presiding judge may determine during litigation, including at trial, that Apple's failure to preserve ESI has prejudiced Plaintiffs in ways that cannot be anticipated now.

Additionally, because the issue of Apple's intent in the spoliation should be sent to the jury, the jury should be instructed that, if it finds that Apple acted with the intent to deprive Plaintiffs of the information's use in the litigation, the jury may infer from the loss of the

information that it was unfavorable to Apple.  However, the jury may make this finding if, and only if, it first makes a finding that Apple's deletion of the ESI was intentional.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for sanctions and imposes the sanctions described above.

Because this Order cites portions of documents filed under seal, the parties may request that a redacted version of this Order be filed on the public docket.  The parties must file such a request by June 7, 2024.  Failure to do so will result in the filing of the unredacted version of this Order on the public docket.

**IT IS SO ORDERED**.

Dated: May 31, 2024

_____

SALLIE KIM
United States Magistrate Judge