ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (*pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (*pro hac vice*)
eric.roberts@dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5296
Facsimile: 213.892.5454

KATIE VIGGIANI (*pro hac vice*)
kviggiani@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Tel.: 212.468.8000

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as guardian of A.L., a minor, LISHOMWA HENRY, JOSEPH HARMS, JOHN TROY PAPPAS, and DAVID YACUBIAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 4:19-CV-04577-JSW-SK<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE MAY 31, 2024 ORDER**<br>**[ECF NO. 280]**<br><br>Date: July 29, 2024<br>Time: 9:30 a.m.<br>Courtroom: C, 15th Floor<br>Magistrate Judge: Hon. Sallie Kim |

1

## NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

2 TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE THAT Defendant Apple Inc. shall and hereby does move the

4 Court, pursuant to Federal Rule of Civil Procedure 54(b) and Northern District of California Civil

5 Local Rule 7-9, for reconsideration of the Court's May 31, 2024 Order regarding Plaintiffs' Motion

6 for Sanctions (ECF No. 280 ("May 31 Order")).  The Court granted Apple leave to file this motion

7 on June 17, 2024.  (ECF No. 290.)  Per the Court's June 17 Order, Plaintiff's response is due on or

8 before July 3, 2024, Apple's reply is due July 10, 2024, and the hearing on the motion is set for

9 July 29, 2024 at 9:30 a.m.  (*Id.*)

10      As set forth in Apple's Motion for Reconsideration, Apple respectfully requests

11 reconsideration of the May 31 Order under Rule 54(b) and Local Rule 7-9(b) because:

12     1.  Additional facts exist regarding key issues that Apple did not have an opportunity
13        to address prior to the May 31 Order regarding spoliation;

14     2.  The May 31 Order imposes sanctions that potentially relieve Plaintiffs of their
       burden of proving their claims, without any finding that Apple intentionally
15        deprived Plaintiffs of the data; and

16     3.  The finding of prejudice was made without the benefit of the entire record, including
       evidence that continues to be developed.

17 Reconsideration is appropriate here, both to avoid manifest injustice per Rule 54(b), and because

18 new or additional facts, including those not yet developed and those not previously briefed to the

19 Court, materially impact the Court's findings.  Apple therefore respectfully requests that the Court

20 grant Apple's Motion for Reconsideration of the May 31, 2024 Order.

21      This Motion is based on this Notice of Motion and Motion, the accompanying

22 Memorandum of Points and Authorities, the supporting declarations of Sachin Kajarekar, Spencer

23 Lin, and Eric Roberts, and such other written or oral argument as may be presented before the time

24 this Motion is taken under submission by the Court.

25 ///

26 ///

27 ///

28 ///

1    Dated: June 18, 2024                    Respectfully submitted,

2

3                                            By: /s/ *Isabelle L. Ord*

4                                                ISABELLE L. ORD (Bar No. 198224)
                                                 isabelle.ord@dlapiper.com
5                                                DLA PIPER LLP (US)
                                                 555 Mission Street, Suite 2400
6                                                San Francisco, CA 94105-2933
                                                 Tel: 415.836.2500
7                                                Fax: 415.836.2501

8                                            Attorneys for Defendant
                                             APPLE INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## STATEMENT OF THE ISSUES TO BE DECIDED

2

The motion raises the following issues:

3
4

1.  **Spoliation**.  Whether reconsideration regarding the Court's spoliation ruling is warranted based on new and additional facts concerning false trigger mitigation technology that Apple did not have an opportunity to address prior to the May 31 Order.

5
6
7

2.  **Remedy Ordered**.  Whether reconsideration regarding the remedies imposed by the Court is warranted because the May 31 Order imposes sanctions that potentially relieve Plaintiffs of their burden of proving their claims, without any finding that Apple intentionally deprived Plaintiffs of the data at issue.

8
9
10

3.  **Prejudice**.  Whether reconsideration regarding the Court's prejudice ruling is warranted where the finding of prejudice was made without the benefit of a complete record, including evidence that continues to be developed, regarding the scope of Siri data available to Plaintiffs and the lack of bias in that data.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................ 2

III. LEGAL STANDARD ........................................................................................................ 4

IV. ARGUMENT ..................................................................................................................... 5

    A. The Court Should Reconsider Its Spoliation Finding Because Apple Has Not Previously Briefed Automatic Retention Mechanisms .................................................. 6

    B. The Court Should Reconsider the Assessed Sanctions Because They Function as an Adverse Inference Ruling Without a Requisite Finding of Intent ................................. 8

        1. Relieving Plaintiffs of their burden of proof is tantamount to an adverse inference ruling ........................................................................................ 9

        2. The circumstances do not support a finding of intent to deprive ........................ 11

    C. The Court's Prejudice Analysis Lacks Information and Is Premature ......................... 13

V. CONCLUSION ................................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abada v. Charles Schwab & Co.*,
  127 F. Supp. 2d 1101 (S.D. Cal. 2000) ................................................................................. 4

*Al Otro Lado, Inc. v. Nielsen*,
  328 F.R.D. 408 (S.D. Cal. 2018) .......................................................................................... 7

*Balla v. Idaho State Bd. of Corr.*,
  869 F.2d 461 (9th Cir. 1989) ................................................................................................ 5

*Baum v. J-B Weld Co.*,
  No. 19-CV-01718-EMC, 2020 WL 4923624 (N.D. Cal. Aug. 21, 2020) ............................. 4

*Burris v. JPMorgan Chase & Co.*,
  No. 21-16852, 2024 WL 1672263 (9th Cir. Apr. 18, 2024) ................................................ 12

*Crawford v. United States*,
  No. C 10-01240 CW, 2011 WL 570249 (N.D. Cal. Feb. 14, 2011) ..................................... 15

*Facebook, Inc. v. OnlineNIC Inc.*,
  No. 19-cv-07071-SI (SVK), 2022 WL 2289067 (N.D. Cal. Mar. 28, 2022)
  *report and recommendation adopted*, 2022 WL 17371092 (N.D. Cal. Oct. 17,
  2022) ................................................................................................................................... 12

*Lopez v. Apple Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021) ................................................................................... 2

*Margolis v. Dial Corp.*,
  No. 12-CV-0288-JLS (WVG), 2012 WL2588704 (S.D. Cal. July 3, 2012) ........................... 8

*Molski v. Mandarin Touch Rest.*,
  385 F. Supp. 2d 1042 (C.D. Cal. 2005) ............................................................................... 12

*Oracle Am., Inc. v. Google Inc.*,
  No. 10-cv-03561-WHA (DMR), 2016 WL 11810331
  (N.D. Cal. Mar. 21, 2016) ..................................................................................................... 7

*Reinsdorf v. Skechers U.S.A., Inc.*,
  296 F.R.D. 604 (C.D. Cal. 2013) ........................................................................................... 7

*Rodriguez v. Google LLC*,
  No. 20-cv-04688-RS (AGT), 2021 WL 8085492 (N.D. Cal. Dec. 1, 2021) .......................... 8

*Rush v. Islands Rests., LP*,
  No. 11cv1312-LAB (POR), 2012 WL 4849016 (S.D. Cal. Oct. 11, 2012) ........................... 13

**Statutes and Other Authorities**

Fed. R. Civ. P.

    26 ................................................................................................................. 6
    34(b)(2)(e) ..................................................................................................... 14
    37(e) ............................................................................................... 8, 9, 11, 13
    37(e)(2) ............................................................................................. 5, 11, 12
    54(b) ..................................................................................................... 1, 4, 5
    60(b) ........................................................................................................... 15
    72 .............................................................................................................. 6, 7

Fed. R. Evid. 407 ................................................................................... 12, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Apple respectfully requests reconsideration of the Court's May 31, 2024 Order granting Plaintiffs' motion for sanctions.  (ECF No. 280 ("May 31 Order").)  Reconsideration is appropriate here, both to avoid manifest injustice per Federal Rule of Civil Procedure 54(b), and because new or additional facts, including those not yet developed and those not previously briefed to the Court, materially impact the Court's findings.  In the May 31 Order, the Court found Plaintiffs were prejudiced due to their lack of access to all Siri data and imposed certain curative measures.  (*Id.* at 12-13.)  Plaintiffs, however, do not need all Siri data to prosecute their case, and the Court previously held that Apple is not required to preserve all such data on a going-forward basis.  (*See* ECF Nos. 202 and 231.)  While the Court expresses skepticism about Apple's prior representations regarding the scope of available data, the Order appears to rely on Plaintiffs' representations regarding the type and utility of the data that remains available.  Apple, however, did not have the opportunity to fully brief the issues raised in the Court's Order regarding sampling and the relevance, feasibility, or burden associated with retaining data associated with its Automated Speech Recognition (ASR) and Automated False Trigger Mitigation (FTM).[1]  Apple thus respectfully requests reconsideration of the May 31 Order to avoid "manifest injustice" and "clear error" for three reasons.  *See* Fed. R. Civ. P. 54(b).

First, the Order finds Apple failed to preserve recordings that were identified as potential false triggers by its ASR and FTM mechanisms, even though Plaintiffs' motion focused on an alleged obligation to preserve all Siri data.  Second, the Order imposes sanctions that potentially relieve Plaintiffs of their burden of proving their claims, without any finding that Apple intentionally deprived Plaintiffs of the data.  Third, the Court's finding of prejudice is based on an incomplete record.  For the reasons set forth herein, Apple respectfully requests that the Court reconsider its May 31, 2024 Order, and vacate the Order or, at a minimum, defer ruling until the data sample previously ordered is complete and the parties have an opportunity for fulsome briefing

---

[1] While the Court requested supplemental briefing in connection with Plaintiffs' motion for sanctions, it did not invite information regarding the alleged relevance or preservation of such data. (*See* ECF No. 259.)

on the issue of whether that sample dictates a different outcome on Plaintiffs' motion for sanctions.

## II.    BACKGROUND

Plaintiffs' motion accused Apple of spoliating "User Audio and Data," a term they used to describe "audio recordings and transcripts of users' interactions with Siri, including [false triggers], as well as data components that Apple collected about Siri users as part of Apple's provision of Siri services." (ECF No. 244 at 6, 15 n.4.)  Apple denied that it had a duty to preserve all of the User Audio and Data described in the motion based both on lack of relevance and proportionality. (ECF No. 249 at 12-15.)

In the May 31 Order, the Court acknowledged the parties' disagreement about what Siri recordings are at issue in this case, including Apple's understanding that "Plaintiffs' claims are limited to false accepts or triggers made in a *confidential* setting." (May 31 Order at 2 (emphasis added).)[2]  The Court found that it "need not resolve this dispute at this time" (*id.*), but later found that "[t]he Siri data, particularly with respect to those false triggers," are relevant to Plaintiffs' claims and Apple's defenses. (*Id.* at 11.)  The Order does not specify which claims or defenses are the subject of this finding.  In addition, the Court also relied on a supplemental brief by Plaintiffs in finding that "Apple collects a number of data fields" when a user activates Siri. (*Id.* at 8.)  Apple did not have an opportunity to respond to or correct these particular assertions by Plaintiffs, which are—in any event—the subject of a different discovery request that Apple is in the process of answering. (ECF No. 202 ¶ 3.)

The Court found the central issue to be whether the "burden to preserve the data outweighs its relevance." (May 31 Order at 11.)  In responding to Plaintiffs' motion, Apple had demonstrated

---

[2] The SAC clearly supports Apple's view. (*See, e.g.*, ECF No. 70 ("SAC") ¶ 1 (alleging that "[t]his **action** arises from" alleged "interception and recording of individuals' ***confidential*** communications") (emphasis added); SAC ¶ 3 (referring to "individuals' reasonable expectations of privacy in ***confidential*** communications") (emphasis added); SAC ¶ 62 (referring to "Plaintiffs' and Class Members' expectation of privacy in their ***confidential and private*** communications") (emphasis added); SAC ¶ 174 (alleging breach of contract claim based on allegations that Apple "record[ed] and disclos[ed] to third parties Plaintiffs' ***private*** conversations without their consent") (emphasis added).)  Apple respectfully submits that this view is also bolstered by Judge White's February 10, 2021 Order dismissing Plaintiffs' claims for lack of standing because they had not alleged facts "to suggest that their own ***private*** communications were intercepted" and "fail[ed] to allege that they [had] used "their iPhones in ***private*** settings."  *Lopez v. Apple Inc.*, 519 F. Supp. 3d 672, 681-82 (N.D. Cal. 2021) (emphasis added); *see id.* at 681 n.2 ("Plaintiffs identify no concrete injury for interception of wholly public communications.").

the cost to preserve "User Audio and Data" would have exceeded ████████, among other burdens. (ECF No. 249-3.) The Order, however, focused on Apple's "automated systems . . . designed to locate Siri's false recordings" and concluded that, "[a]t the very least, Apple could have segregate and retained" Siri recordings flagged by the ASR and FTM mechanisms as "likely false." (May 31 Order at 8, 12.) Additionally, "[a]t a minimum, Apple should have retained all of the data relevant to" recordings evaluated by graders as "falsely made," including by not disassociating and deleting the Assistant ID after six months. (*Id.* at 12.) The Order does not specify whether (or what) other data should have been preserved. There is, however, no dispute that Apple will be providing Plaintiffs access to at least some of "the recordings falsely made" through a sampling of the data it retains. (*Id.*; *see also* ECF No. 202.) Plaintiffs did not present any evidence that the ASR- and FTM-mitigated recordings would be different, in a relevant way, from the false trigger recordings they now have received through sampling, other than arguing that the ASR- and FTM-mitigated recordings were expected to be silent or gibberish. (ECF No. 249-2, Ex. 23 at 8:22–24.) Plaintiffs have not explained how recordings of silence or gibberish are relevant to their claims.

On February 5, 2024, the Court approved Apple's sampling proposal, which was prepared with the assistance of a Stanford doctorate statistician. (ECF No. 202.) Under the protocol, Plaintiffs receive:

1. Data from graded requests from relevant locales on two selected days each year, from 2015 to 2022, stored in Apple's former grading platform (up to approximately 320,000 requests);

2. Approximately 180 hours of audio recordings and associated data used to perform grading from the last two years (which has amounted to just over 140,000 requests); and

3. The ability to review requests on the current platform graders use to review Siri requests.

(ECF Nos. 197-1, 197-4.) Apple has already produced the 180 hours of audio recordings to Plaintiffs; production of the remainder is underway. (Lin Decl. ¶ 9; Roberts Decl. ¶ 2.)

Apple's sampling proposal submitted to Plaintiffs on December 1, 2023 stated:

Since August 28, 2019, Apple's policy is not to maintain or store Siri audio recordings unless the user affirmatively has opted in to help Siri improve by learning from the audio samples of their requests; any user who opts into this setting retains the option to opt out at any time. Ans. to Interrogatory No. 7. Automated

transcriptions for all users are retained with the Assistant ID for up to six months. Ans. to Interrogatory No. 10. . . .

Apple's proposal (and its ability to produce Siri requests generally) aligns with its public disclosures and the consent provided by its users, pursuant to which . . . (2) Siri requests retained for more than six months are dissociated from the Assistant ID after six months; (3) the Siri requests dissociated from the Assistant ID may be retained for an additional 18 months; and (4) the small percentage of Siri audio recordings that are graded may be kept for up to five years from the date of the request, without the Assistant ID.  In accordance with Apple's public disclosures and the consent provided by its users, five years is the maximum time for which users' Siri requests are retained, and Apple does not have such data for users' Siri requests prior to December 2018.[3]

(ECF No. 197-1.)  Similarly, Apple's brief to the Court on sampling stated:  "Plaintiffs also acknowledge that Apple has adhered to its publicly disclosed data retention practices for Siri throughout this litigation.  As a result, their proposal seeks Siri requests that Apple does not have." (ECF No. 197 at 4.)  Plaintiffs' arguments about the viability of the sample in their motion for sanctions were identical to the ones they raised in objecting to Apple's sampling proposal. (*Compare* ECF No. 234 ¶¶ 24-25 (Farah Decl.) *with* ECF Nos. 184, 198 (sampling submissions).)

## III.    LEGAL STANDARD

Under Local Rule 7-9(b), there are generally three grounds for reconsideration: (1) differences in, or additional, facts relative to what the court previously considered; (2) new facts or law; and (3) manifest failure to consider dispositive facts or legal arguments.  Civ. L.R. 7-9(b); *see also Baum v. J-B Weld Co.*, No. 19-CV-01718-EMC, 2020 WL 4923624, at *1-*3 (N.D. Cal. Aug. 21, 2020) (granting motion for reconsideration based on manifest failure to consider legal arguments).

The Court also "may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient," including to avoid "clear error or . . . manifest injustice" under Rule 54(b). *Abada v. Charles Schwab & Co.*, 127 F. Supp. 2d 1101, 1102-03 (S.D. Cal. 2000) (reconsidering prior order denying remand because it was "clearly erroneous" and "would work a manifest injustice" under Rule 54(b)); *see also* Fed. R. Civ. P. 54(b) (any order not certified under Rule 54(b)

---

[3] After preparing the sampling protocol, Apple discovered that the data in its grading platform included some requests going back to 2015, informed Plaintiffs and the Court, and offered to include this data in the sample.  (ECF No. 197 at 1 n.1.)

and that does not resolve all claims against all parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) ("Courts have inherent power to modify their interlocutory orders before entering a final judgment.").

## IV.   ARGUMENT

Reconsideration is appropriate here, both to avoid manifest injustice, and because new or additional facts, including those not yet developed and those not previously briefed to the Court, materially impact the Court's findings.  *See* Fed. R. Civ. P. 54(b); Civ. L.R. 7-9(b).  First, the Court found that Apple failed to preserve data, largely based on its conclusion that Apple should have preserved recordings flagged by Apple's false trigger mitigation technology—ASR and FTM. Plaintiffs' motion, however, argued that Apple should have preserved *all* Siri data, so Apple likewise focused its arguments on that issue.  Apple did not specifically address ASR and FTM data, other than to answer the Court's follow-up questions about those processes, which sought only factual responses and not any information regarding relevance the need for such data in light of the sample Apple was producing.  Therefore, Apple did not have the opportunity to brief this issue before the Court or address Plaintiffs' misstatements.

Second, the May 31 Order imposes measures that may relieve Plaintiffs of their burden of proof and allow for adverse inferences at every remaining stage of the litigation.  Such severe sanctions are not permitted absent of a finding of intent.  Fed. R. Civ. P. 37(e)(2).  Critically, the Court did not find that Apple intentionally deprived Plaintiffs of data for use in this litigation, deferring that question to the jury.  (May 31 Order at 15.)  Nor do the curative measures fit the alleged data loss here.  Instead, the Court's remedy is "greater than necessary to cure the prejudice" and amounts to "manifest injustice."

Finally, the Court's finding of prejudice is premature.  The sampling protocol is underway, and Apple is in the process of supplementing its response to Plaintiffs' Interrogatory No. 23 regarding the scope of Siri data collected and providing additional Rule 30(b)(6) testimony on topics related to Siri data and related retention policies and practices.  Only with these new developing facts in hand can prejudice resulting from the loss of any data be determined.

Reconsideration should be granted, vacating the Order or, at a minimum, deferring a ruling until these discovery items are complete and the parties have an opportunity to further brief the Court.

### A. The Court Should Reconsider Its Spoliation Finding Because Apple Has Not Previously Briefed Automatic Retention Mechanisms

Additional facts regarding the ASR and FTM processes support reconsideration of the Court's finding of spoliation under Civil Local Rule 7-9(b)(1).[4] The May 31 Order does not specify precisely what Apple should have preserved to avoid spoliation. And while the Court previously recognized the enormous burden of retaining *all* Siri data, here the Court found that "at the very least" Apple could have "segregated and retained" recordings identified as likely false trigger recordings through its ASR and FTM technology. (May 31 Order at 8, 11, 12; *see* ECF No. 217 at 3-4 ("forcing Apple to maintain all recordings made by Siri does not satisfy the objectives of Federal Rule of Civil Procedure 26").) In making this ruling, however, the Court lacked information that would have demonstrated that any loss of ASR and FTM data amounts to spoliation or results in prejudice. These additional facts are critical to the Court's consideration of these issues and warrant reconsideration. *See* Civil L.R. 7-9(b)(1).[5]

First, the Court's focus appears to be on the value of having a numerical count of FTM recordings to help assess number or rate of false triggers. If that is the case, a numerical count (not the recordings) should suffice, yet it is unclear whether the Order forecloses that possibility. It should not. The ASR system mitigates recordings if the system reports that there was no language in the audio, and the system segregates and deletes the request because it is likely the result of a false trigger. (ECF No. 249-2, Ex. 7 at 10.) The automated FTM system "mitigates" (*i.e.*, cancels) Siri requests if the system determines the request is likely the result of a false trigger. (*Id.*)[6] The

---

[4] The Court's finding of spoliation is also "manifestly unjust," and Apple reserves its right to object to this finding pursuant to Federal Rule of Civil Procedure 72.

[5] As discussed above, the subject of Plaintiffs' motion was "User Audio and Data." (*See supra* Section II; ECF No. 244 at 6, 15 n.4.) Given Plaintiffs' focus on "all Siri data" and the Court's limited questions on how ASR and FTM operate, Apple could not have known additional facts regarding the ASR and FTM recordings would be material to the Court's ruling on sanctions.

[6] From the beginning of this case, Plaintiffs' allegations and arguments suggested that FTM- and ASR-mitigated Siri audio recordings were not at issue because their claims arose from recordings that resulted from a *failure* to use automatic screening procedures. (*See* SAC ¶ 72 ("Apple does little to address and remedy the problem, including having no specific procedures in

resulting ASR- and FTM-mitigated recordings largely comprise silence or gibberish, a point Plaintiffs made and the Order acknowledged. (*See* ECF No. 249-2, Ex. 23 at 8:22-24; May 31 Order 8.)  Any such recordings do not amount to the type of "confidential" communications at issue in this case.[7]  Accordingly, ASR or FTM recordings would not be relevant to Plaintiffs' claims, and loss of "irrelevant evidence does not support" spoliation.  *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013).

Second, Apple has established that the cost of preserving large volumes of Siri recordings is high compared to the value of any particular recording.  (*See* ECF No. 249-3.)  Thus, Plaintiffs' ability to sample and use false triggers, which there is no dispute they can do through the ongoing sample, weighs against finding that Apple should have preserved large volumes of ASR- and FTM-mitigated recordings (again of silence and "gibberish").  The cost of preservation compared to the relevance of the information is pertinent to assessing a party's retention obligations.  *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416-17 (S.D. Cal. 2018) ("The scope of a party's duty to preserve is the same as the scope of discovery articulated in Rule 26(b)(1).").  In the May 31 Order, the Court acknowledged that it lacked information to assess proportionality, stating that "Apple does not explain how many requests were tagged as likely resulting from a false trigger or how much it would have cost to retain such data for the duration of this litigation."  (May 31 Order at 8.)  Apple should be given the opportunity to explore these questions which the Court raised for the first time in the May 31 Order.

Because additional facts are material to the Court's analysis of spoliation, reconsideration should be granted.[8]  *See, e.g.*, *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561-WHA (DMR),

---

place to deal with sensitive recordings"); Jan. 29, 2020 Opp. to MTD, ECF No. 55 at 8 (arguing that Apple's violations of law could be inferred because Apple "retained the[] recordings" "instead of screening for false accepts" and "immediately deleting them").)

[7] Apple reserves its objection to the relevance of *all* false triggers, as this case requires a highly individualized showing that the user had an expectation of privacy at the time of the recording—a point the Court emphasized in dismissing Plaintiffs' first amended complaint.  (*See supra* n.2 (citing *Lopez*, 519 F. Supp. 3d at 681-82).)

[8] To the extent reconsideration is denied, Apple requests that the Court clarify the May 31 Order as to what data Apple was required to preserve that gave rise to Plaintiffs' alleged prejudice.  This clarification would allow Apple to explore whether there are substitutes for the lost data and, if necessary, properly submit objections to the ruling under Rule 72.

1   2016 WL 11810331, at *4 (N.D. Cal. Mar. 21, 2016) (granting motion for reconsideration based

2   on differences in facts).  Indeed, requiring spending significant resources would mitigate against

3   preservation, as does any suggestion that Apple must design and build an entirely new system to

4   make preservation feasible.  *Rodriguez v. Google LLC*, No. 20-cv-04688-RS (AGT), 2021 WL

5   8085492, at *1-2 (N.D. Cal. Dec. 1, 2021) (storage fees of $6M over three years and building an

6   entirely new preservation system was "above and beyond" that required for preservation); *Margolis*

7   *v. Dial Corp.*, No. 12-CV-0288-JLS (WVG), 2012 WL2588704, at *3 (S.D. Cal. July 3, 2012)

8   (IBM not required to build new systems to preserve certain data).

9   **B.    The Court Should Reconsider the Assessed Sanctions Because They Function**
            **as an Adverse Inference Ruling Without a Requisite Finding of Intent**
10

11          Apple respectfully disagrees that any spoliation occurred in this case.  But even if there

12  were, "the remedy should fit the wrong."  Fed. R. Civ. P. 37(e), Advisory Comm. Notes, 2015

13  Amendment.  Courts may grant relief under Rule 37(e)(1) or (e)(2) upon a finding of spoliation.

14  Fed. R. Civ. P. 37(e).  Where spoliation caused prejudice to another party, subsection (e)(1) allows

15  courts to "order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).

16  More severe measures, such as adverse presumptions, adverse inference instructions, or terminating

17  sanctions, are available under subsection (e)(2), but only upon a showing that the spoliating party

18  "acted with the ***intent to deprive another party of the [lost] information's use in the litigation***."

19  *Id.* (e)(2) (emphasis added); *see also* Fed. R. Civ. P. 37(e), Advisory Comm. Notes, 2015

20  Amendment ("[c]ourts should exercise caution . . . in using the measures specified in (e)(2)").  The

21  Court's discretion to fashion appropriate curative measures under subsection (e)(1) is expressly

22  limited: subsection (e)(1) sanctions cannot "have the effect of measures that are permitted under

23  subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use

24  in the litigation."  Fed. R. Civ. P. 37(e), Advisory Comm. Notes, 2015 Amendment.

25          Here, the Court found prejudice[9] and crafted certain remedies under Rule 37(e)(1).  But the

26  measures, as drafted, amount to the type of severe sanction under subsection (e)(2) only permitted

27

28          [9] As discussed in Section IV.C, Apple is also seeking reconsideration on the ground that the
        Court's finding of prejudice is premature.

when a party acted with intent to deprive. No such finding has been made here. Rather, the Court specifically reserved the question of "intent" for the jury. (May 31 Order at 15.) Much will happen in this case before any potential trial: Plaintiffs will move for class certification (which Apple will oppose), and the parties will brief summary judgment motions. Yet even if the jury ultimately finds that Apple did not intend to deprive Plaintiffs of relevant evidence, the Court's imposed remedy risks subjecting Apple to sanctions that are not, and may never be, justified. This is not allowed under Rule 37(e). *See* Fed. R. Civ. P. 37(e), Advisory Comm. Notes, 2015 Amendment.

According to the Court's ruling, Apple cannot "argu[e] or otherwise us[e] Plaintiffs' failure to make certain showings that they could have made if they had access to the deleted Siri data." (May 31 Order at 15.) As drafted, this measure could suggest Plaintiffs have no burden to present any specific evidence whatsoever in support of their claims at any further stage of this case, even at trial. That cannot be what the Court intended, and thus clarification is needed to avoid manifest injustice and promote the orderly progress of this litigation.

### 1. Relieving Plaintiffs of their burden of proof is tantamount to an adverse inference ruling

The May 31 Order provides that Apple is precluded from (i) arguing that Plaintiffs failed to make "certain showings that they could have made if they had access to the deleted Siri data"; (ii) introducing evidence "about the data it destroyed"; and (iii) relying on the absence of "the data it destroyed" in challenging Plaintiffs' claims at any future stage of the case. (May 31 Order at 15.) Taken together, these measures function as mandatory adverse inferences at every step of the litigation, even though Apple did not act with intent to deprive Plaintiffs of information, and there has been no such finding otherwise. Such severe sanctions are only permitted "when a court finds that the information was lost with the intent to prevent its use in litigation." Fed. R. Civ. P. 37(e), Advisory Comm. Notes, 2015 Amendment.

Perhaps most concerning is the risk that the May 31 Order could be read to erroneously assume that no other Siri data, or evidence about Siri data, exists. That is not the case. Apple has already provided more than 3 million pages of documents, including the false trigger dashboards for the periods from 2020 to 2023, and more than 14 deponents for more than 100 hours of

deposition testimony.  (ECF No. 249-2 ¶¶ 9–10 & Ex. 17.)  Plaintiffs have also testified about their own purported use of Siri.  Yet, the Court's ruling calls into question whether any of this evidence can even be used, or if so, how.  (May 31 Order 15.)  The chart below demonstrates just some of the ways the sanctions are vague and could be read to excuse Plaintiffs from their burden of proof and render the trove of other available evidence in this case inconsequential, even though Apple has not been found to have acted with the intent to deprive Plaintiffs of data:

| May 31 Order | Potential Impact on Litigation |
|---|---|
| "Apple cannot argue that named Plaintiffs lack standing to sue because they have no proof that they were subject to false triggers." (May 31 Order at 15.) | Plaintiff Lopez alleged she received targeted advertisements for brands she discussed when subject to a false trigger.  (Compl. ¶ 17.)  This is the only basis supporting Lopez's "false trigger" claim.  As drafted, the Order would preclude Apple from arguing that Lopez has no evidence she was subject to a false trigger, even if Apple has evidence demonstrating that it does not share user data for targeting advertisements. |
| "[Apple] cannot argue against class-wide damages based on the number of false recordings."  (Id.) | This measure risks allowing Plaintiffs an irrebuttable presumption as to the number of false recordings of their choosing, even though other data or evidence exists that could rebut that number. |
| "[Apple] cannot argue against Apple's intent based on the number of, and instances of repeated, false recordings."  (Id.) | Even if Apple produces data about false trigger rates, calculated by Apple in the ordinary course of business at various times during the relevant time period, which Plaintiffs could analyze through experts, Apple may be precluded from using that data to argue against intent. |
| "Apple shall not be allowed to introduce evidence about the data it destroyed or to rely on the absence of the data it destroyed in challenging class certification, Plaintiffs' damages expert, in moving for summary judgment, or at trial."  (Id.) | Even though certain Siri data exists, Apple may be precluded from using that data at any future stage of the case.<br><br>Apple may be precluded from pointing to Plaintiffs' absence of data as defeating their claims.  Not only does this measure wrongly assume that Plaintiffs could find their own recordings within Siri data (despite Apple's de-identification of such data),[10] it also suggests Plaintiffs could prevail on their claims without presenting any evidence |

---

[10] In finding that Apple "deprived Plaintiffs from validating" Apple's argument that "Plaintiffs would not have been able to identify customers who had their conversations recorded," the Court relies on an assertion by Plaintiffs' counsel. (May 31 Order at 12-13.)  But this type of finding can only properly be made through evidence and expert opinions after Plaintiffs have received and completed analyzing the sampling data and other remaining discovery.  Plaintiffs continue to have the ability to validate Apple's argument on this issue.

|  | whatsoever that Apple intercepted their confidential communications. |

The May 31 Order will impact every remaining stage of the litigation, even though Apple has provided other Siri data, testimony, and documents, and is in the process of producing Siri sample data that will allow the parties to test evidence, cross examine witnesses, and elicit expert testimony about the data.[11]  Despite access to this data, which has not yet been analyzed or deemed inadequate by Plaintiffs or their expert, the May 31 Order may be misread to prohibit Apple from offering any evidence at all in support of its core defenses, including intent to record communications.  This, however, is not permitted absent a showing of intent to deprive Plaintiffs of the lost information's use in the litigation.  *See* Fed. R. Civ. P. 37(e), Advisory Notes ("An example of an inappropriate (e)(1) measure might be an order . . . precluding a party from offering any evidence in support of, the central or only claim or defense in the case.").  Nor are the type of remedies entered here permitted without such a showing.  *See* Fed. R. Civ. P. 37(e)(2).

### 2.      The circumstances do not support a finding of intent to deprive

At no time did Apple "act with the intent to deprive [Plaintiffs] of the [lost] information's use in the litigation." Fed. R. Civ. P. 37(e)(2).  Rather, the Order conflates two separate and distinct concepts.  The August 28, 2019 announcement that Siri users would begin to have the option to opt in to contribute their recordings to improve Siri does not involve a post-litigation decision to deviate from a *legal document* retention policy resulting in the destruction of existing documents that would not have otherwise been destroyed.  Nor does it involve a decision to shorten the retention period applicable to an existing category of documents relevant to the claims at issue such that the deletion of those documents is accelerated.  Rather, this case involves a change in business practices, specifically as it applies to when and how Apple collects new Siri data on a going-forward basis.

Following feedback from consumers, Apple publicly announced a new option, giving users the choice to contribute their Siri recordings to improve Siri going forward.  (ECF No. 249-2, Ex. 2.)  Among other things, Apple made clear that it would "no longer retain audio recordings of Siri

---

[11] Given the uncertainty about the curative measures imposed by the May 31 Order, Apple also seeks reconsideration of, and reserves its right to object to, the open-endedness of the ordered remedies.

interactions" by default, and users could "opt in to" provide "audio samples of their requests." (*Id.*) This new opt-in policy would, going forward, offer consumers the choice about whether and how their data is retained and used; it was not a "purge[]" as Plaintiffs argued to the Court. (*Compare* ECF No. 233 at 3 *with* ECF No. 249-2, Ex. 2.)

Put simply, by offering a new opt-in policy going forward, Apple did not "act[]with the intent to deprive [Plaintiffs] of the [lost] information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Even with this change, however, there are hundreds of millions of Siri recordings stored daily from which a sample has been drawn and produced to Plaintiffs pursuant to the sampling protocol. (*See infra* Section IV.C.)[12] The circumstances here are miles apart from a spoliation situation where a party in active litigation intentionally destroys relevant information. *See, e.g.*, *Burris v. JPMorgan Chase & Co*., No. 21-16852, 2024 WL 1672263, at *2 (9th Cir. Apr. 18, 2024) (finding an intent to deprive where plaintiff had engaged in "'systematic efforts' to destroy ESI 'from an array of phones, laptops, email accounts, and external storage devices,'" and on at least one device "the day before [Plaintiff] was required to produce it for forensic examination"); *Facebook, Inc. v. OnlineNIC Inc*., No. 19-cv-07071-SI (SVK), 2022 WL 2289067, at *8 (N.D. Cal. Mar. 28, 2022), *report and recommendation adopted*, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022) (finding an intent to deprive where "Defendants intentionally sought to avoid producing responsive documents and other ESI to Plaintiffs," and deliberately "withheld ESI, failed to disclose databases, and deleted backup files" in contravention of court order granting discovery Special Master access to the same).

Moreover, Apple's decision to offer a new option for Siri users regarding their Siri recordings is akin to a remedial measure that cannot in and of itself constitute spoliation of evidence.[13] *See, e.g.*, *Molski v. Mandarin Touch Rest*., 385 F. Supp. 2d 1042, 1047 (C.D. Cal. 2005) (noting "the rather obvious points that . . . remedial measures are by no means spoliation of

---

[12] Contrary to the Court's conclusions, the data will not be biased, as discussed below. (*See infra* Section IV.C.) Moreover, Plaintiffs will have the opportunity to argue that point through their expert, if they so choose.

[13] Apple denies any wrongdoing, but regardless, actions that are subsequent remedial measures cannot be used to show culpability. *See* Fed. R. Evid. 407.

1  evidence," where plaintiff threatened action for spoliation if defendant repaired the allegedly

2  inaccessible facilities); *Rush v. Islands Rests., LP*, No. 11cv1312-LAB (POR), 2012 WL 4849016,

3  at *3 (S.D. Cal. Oct. 11, 2012) (repair to remediate alleged ADA violation was not spoliation of

4  evidence, but instead a subsequent remedial measure, which is inadmissible under Federal Rule of

5  Evidence 407).  These circumstances do not support a finding that Apple acted with "an intent to

6  deprive" and thus, to the extent necessary, the remedy in the Order should be clarified to ensure

7  compliance with Rule 37(e)(1)-(2).[14]

8  ### C.    The Court's Prejudice Analysis Lacks Information and Is Premature

9      Upon a finding of prejudice, Rule 37(e) allows for "measures no greater than necessary to

10 cure the prejudice."  Fed. R. Civ. Pr. 37(e)(1).  The Order's prejudice analysis does not address the

11 actual sampling data that has been produced and will be produced in the near future; nor could it,

12 since that production remains underway and there has been no briefing on what that sampling

13 reveals.  In addition to the sampling protocol, Apple is in the process of supplementing its response

14 to Plaintiffs' Interrogatory No. 23 regarding the scope of Siri data collected and providing

15 additional Rule 30(b)(6) testimony regarding Siri data collected.  After the production has been

16 completed, if there are deficiencies, the next step under Rule 37 is to determine whether steps could

17 be taken to mitigate the prejudice, such as by modifying the sampling to increase the size or scope

18 of the sample.  Fed. R. Civ. P. 37(e), Advisory Comm. Notes, 2015 Amendment.  Any analysis of

19 whether Plaintiffs were prejudiced by lost data is inherently flawed without considering the actual

20 evidence that has been and will be produced.  Although the Court expresses skepticism as to the

21 integrity of the data available for sampling, there are critical points of clarification that address

22 those concerns.

23     **Ample Siri data is available**:  While Apple objects to the relevance and burden of

24 producing *all* Siri data, there are tens of billions of Siri recordings from which sampling can be

25 conducted in this case.  There are also ████████ rows of grading data for Siri requests that were

26 part of Apple's human review program between 2015 and 2022.  (Roberts Decl. ¶ 3, Ex. 1.)

---

27  [14] The new opt-in option also aligns with the very relief Plaintiffs seek in this case.  (*See* SAC
28 at 44 (Prayer for Relief) (requesting that the Court enter an order "[r]equiring Apple to delete all
    recordings of the members of the Class . . .").)

Moreover, the sampling proposal entered by the Court will provide Plaintiffs with: (1) graded data for requests from two days per year from 2015 to 2022, totaling hundreds of thousands of graded samples, in addition to 180 hours[15] of Siri audio recordings from the last two years, totaling just over 140,000 recordings.  Collectively, the sample will include up to 500,000 Siri requests.  (ECF No. 197-1.)

**There is no bias related to timing of a recording**:  Plaintiffs' "bias" argument, which the Court originally rejected in adopting Apple's sampling proposal,[16] wrongly focuses on the ***time*** when a Siri request was made (*e.g.*, five years vs. two years ago), rather than the technology that was used to make the request.  Plaintiffs present no evidence, for example, that the Siri voice triggers at issue in Plaintiffs' claims would act differently on the same iPhone ████████ ███████████████████████████████████ the request was made.  To the contrary, the operation of "Hey Siri"—including when it triggers and what happens when it does—is a product of ██ ████████████████████████████████.  (Kajarekar Decl. ¶¶ 4–7.)  Apple has data on Siri requests by virtually any relevant combination of software and hardware, and Plaintiffs will not be deprived of the chance to study—if they so choose—how the rate of false triggers changed over time through sampling.  In fact, Apple has at least thousands (and, in most cases, millions) of Siri audio recordings from which samples could be created for every major operating system that has offered the "Hey Siri" feature.  (*See* Lin Decl. ¶ 3, Ex. 1.)  The 180-hour sample of Siri audio recordings that Apple has produced to Plaintiffs also includes requests submitted by a robust mix of device types and operating systems, with devices going back to iPhone 6 (released in 2014).  (*Id.*

---

[15] Apple generated the 180-hour sample by replicating the process it uses to generate its own grading samples (Lin Decl. ¶ 8); accordingly, the sample does not include data that is not shown to graders.  Apple's use of existing processes for sampling is consistent with Rule 34(b)(2)(E), which specifies that a party is to "produce [ESI] in a form or forms in which it is ordinarily maintained."  Apple should not be required to re-engineer its systems for the purpose of litigation because Plaintiffs desire that the data be produced in a different form.  Regardless, Plaintiffs' request for discovery regarding the "scope of data" associated with Siri requests will be addressed elsewhere.  (*See* ECF No. 202 (ordering Apple to supplement its answer to "Interrogatory No. 23 relating to the scope of Apple's data collection").)

[16] Plaintiffs advanced the same "bias" argument when the parties submitted their sampling proposals.  (ECF No. 198, Ex. G ¶ 18.)  The Court's finding of prejudice should be reconsidered or vacated so that the Court can benefit from evidence as to whether such bias exists in the actual sampled data, and, if so, whether any such bias would be remedied by modifying the sampling protocol.

¶ 9.)

**Plaintiffs' "factual" assertions must be corrected**:  The Order appears to rely in several instances on Plaintiffs' assertions regarding the data available.  Some of those assertions require correction, including the suggestion that Apple has discarded non-U.S. English recordings (*see* May 31 Order at 7), or that Apple deleted or removed specific content from the data that has been preserved (*see id.* at 13).  On the contrary, Apple's grading platform includes more than █████ rows of graded recordings from all Siri locales/languages during the eight-year period (Roberts Decl. ¶ 3, Ex. 1), and when Apple samples a Siri request for grading, the Assistant ID is removed as a further privacy enhancement as standard business protocol.  Apple in no way altered the dataset, as the Assistant ID was never maintained therein.  (Lin Decl. ¶ 6.)

These are but a few examples of information missing in the consideration of any prejudice to Plaintiffs.  At bottom, there has been no briefing to the Court on what is actually provided in the sample to Plaintiffs (as opposed to Plaintiffs' speculation).  Given the gravity of the inquiry here, Apple respectfully requests that the Court vacate the May 31 Order or withhold a ruling on these issues until these facts are fully developed and briefed to the Court.[17]

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court reconsider the May 31 Order, vacating its finding of spoliation and sanctions.  At a minimum, Apple requests that the Court withhold its ruling until the parties complete the sampling protocol and additional discovery underway, and are permitted an opportunity to fully brief these issues.

///

///

///

---

[17] For these reasons, Apple respectfully requests, at a minimum, the Court withhold a ruling until it has a complete record, and, importantly, the parties complete the sampling protocol and additional discovery underway.  That additional evidence is being developed also supports vacating the May 31 Order under Rule 60(b).  *See, e.g.*, *Crawford v. United States*, No. C 10-01240 CW, 2011 WL 570249, at *1 (N.D. Cal. Feb. 14, 2011) (newly discovered evidence is a basis for obtaining relief from an order under Rule 60(b)).

1   Dated: June 18, 2024                          Respectfully submitted,

2

3                                                 By: /s/ *Isabelle L. Ord*

4                                                     ISABELLE L. ORD (Bar No. 198224)
                                                      isabelle.ord@dlapiper.com
5                                                     DLA PIPER LLP (US)
                                                      555 Mission Street, Suite 2400
6                                                     San Francisco, CA 94105-2933
                                                      Tel: 415.836.2500
7                                                     Fax: 415.836.2501

8                                                 Attorneys for Defendant
                                                  APPLE INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28