ISABELLE L. ORD (Bar No. 198224)
isabelle.ord@dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Tel: 415.836.2500
Fax: 415.836.2501

RAJ N. SHAH (*pro hac vice*)
raj.shah@dlapiper.com
ERIC M. ROBERTS (*pro hac vice*)
eric.roberts@dlapiper.com
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: 312.368.4000
Fax: 312.236.7516

ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ALEXIS A. AMEZCUA (BAR NO. 247507)
AAmezcua@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5296
Facsimile: 213.892.5454

KATIE VIGGIANI (*pro hac vice*)
kviggiani@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Tel.: 212.468.8000

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as guardian of A.L., a minor, LISHOMWA HENRY, JOSEPH HARMS, JOHN TROY PAPPAS, and DAVID YACUBIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 4:19-CV-04577-JSW-SK<br><br>**DEFENDANT APPLE INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE MAY 31, 2024 ORDER**<br>**[ECF NO. 280]**<br><br>Date: July 29, 2024<br>Time: 9:30 a.m.<br>Courtroom: C, 15th Floor<br>Magistrate Judge: Honorable Sallie Kim |

**REDACTED VERSION**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. LEGAL STANDARD .......................................................................................................... 3
III. FACTUAL BACKGROUND ............................................................................................... 3
    A. Apple has been transparent with Plaintiffs and the Court about Siri retention policies ............................................................................................... 3
    B. Apple has produced millions of Siri audio and transcripts, and will produce more ................................................................................................................ 4
IV. DISCUSSION ...................................................................................................................... 5
    A. The Court Is Missing Critical Information for Determining Spoliation and Any Sanctions ................................................................................................ 6
        1. Plaintiffs Have Not Shown Relevance of ASR Mitigation and FTM Data ............................................................................................................ 6
        2. The Burden of Pausing Deletion of ASR- and FTM-Mitigated Recordings Does Not Outweigh Any Relevance ........................................ 7
        3. Plaintiffs Do Not Credibly Contest That a Prejudice Finding Is Premature ......................................................................................................... 9
        4. Plaintiffs' Representations Regarding Sampled Data and Ongoing Discovery Are Simply Wrong ............................................................ 11
    B. The Issued Sanctions Should Be Reconsidered ........................................................ 13
V. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abada v. Charles Schwab & Co.*,
 127 F. Supp. 2d 1101 (S.D. Cal. 2000) .................................................................................. 3

*Balla v. Idaho State Bd. of Corr.*,
 869 F.2d 461 (9th Cir. 1989) ................................................................................................... 3

*Carroll v. Nakatani*,
 342 F.3d 934 (9th Cir. 2003) ................................................................................................... 9

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
 No. 20-cv-01891-CRB (LB), 2022 WL 11270394 (N.D. Cal. Oct. 19, 2022) ...................... 14

*Ehrlich v. Hartford Life & Accident Ins. Co.*,
 No. 20-cv-02284-JST, 2021 WL 4472844 (N.D. Cal. July 19, 2021) ..................................... 9

*Gonzalez v. Apttus Corp.*,
 No. 21-cv-01844-JCS, 2022 WL 3925292 (N.D. Cal. Aug. 30, 2022) .................................... 9

*Gray v. Golden Gate National Recreational Area*,
 866 F. Supp. 2d 1129 (N.D. Cal. 2011) .................................................................................. 9

*Leon v. IDX Systems Corp.*,
 464 F.3d 951 (9th Cir. 2006) ............................................................................................. 9, 10

*Linder v. Golden Gate Bridge, Highway & Transp. Dist.*,
 No. 4:14-cv-03861 SC, 2015 WL 4623710 (N.D. Cal. Aug. 3, 2015) .................................. 13

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*,
 306 F.3d 806 (9th Cir. 2002) ................................................................................................... 9

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
 605 F. Supp. 3d 1218 (N.D. Cal. 2022) ................................................................................ 14

*Phan v. Costco Wholesale Corp.*,
 No. 19-cv-05713-YGR, 2020 WL 5074349 (N.D. Cal. Aug. 24, 2020) ............................... 14

*Rodriguez v. Google LLC*,
 No. 20-cv-04688-RS (AGT), 2021 WL 8085492 (N.D. Cal. Dec. 1, 2021) ............................ 8

*Savetsky v. Pre-Paid Legal Servs., Inc.*,
 No. 14-03514 SC, 2015 WL 1519066 (N.D. Cal. Apr. 3, 2015) ............................................. 9

*State Farm Fire & Casualty Co. v. Broan Manufacturing Co.*,
 523 F. Supp. 2d 992 (D. Ariz. 2007) .................................................................................... 11

*Tsyn v. Wells Fargo Advisors, LLC*,
   No. 14-cv-02552-LB, 2016 WL 7635883 (N.D. Cal. June 27, 2016) ...................................... 3

*Verinata Health, Inc. v. Sequenom, Inc.*,
   No. C 12–00865 SI, 2014 WL 4076319 (N.D. Cal. Aug. 18, 2014) ....................................... 3

*Yela Fiduciary Servs., LLC v. Benton Cnty.*,
   No. 6:20-cv-01925-MK, 2022 WL 17666400 (D. Or. Dec. 14, 2022) ................................. 14

**Other Authorities**

Fed. R. Civ. P.
   30(b)(1) ................................................................................................................................ 11
   37 ..................................................................................................................................... 8, 9
   37(e)(1) .................................................................................................................................. 2
   37(e)(2) ................................................................................................................................ 13
   54(b) ...................................................................................................................................... 3

## I. INTRODUCTION

This sanctions issue needs a reset. Apple respects the Court's view that it would have been prudent to seek a Protective Order sooner. But the failure to do so does not entitle Plaintiffs to an evidentiary windfall. Had Apple approached the Court sooner, as this Court said at a hearing on the subject, it would not have required Apple to preserve *all* Siri recordings (which is what Plaintiffs continue to assert Apple should have done). (ECF No. 263 (Apr. 15, 2024 Hr'g Tr.) at 34:18-25.) Apple receives hundreds of millions of Siri inquiries per day—seeking directions, the temperature, to set an alarm, among other requests. The Court correctly recognized that those are irrelevant. (ECF No. 217 at 3 ("That Apple made millions of other recordings, some with and some without false prompts, is not relevant to this case").)

The Court also noted that, "[a]t the very least, Apple could have segregated and retained those recordings which were identified as likely false through its ASR and FTM" (ECF No. 280 ("Order") at 12), but the relevance and burden of preserving these systems has not previously been briefed, nor do these systems provide Plaintiffs what they say they will. ASR-mitigated recordings have no recognizable audio. (*See* Malecek Dec. ¶ 2 ("A Siri request flagged by the ASR system as a potential false trigger will, almost always, be silent.").) And there are lots of these inaudible mitigated recordings. (*Id.* ¶ 4 (███████ ASR-mitigated requests in the last year alone).) There is no prejudice for having failed to preserve inaudible recordings.

As for FTM-mitigated recordings, FTM will cancel a request if the system determines that it is likely the result of a false trigger. Apple concedes that there are ███████ of FTM-mitigated requests identified every year. (*See id.* (███████ FTM-mitigated requests in the past year).) Plaintiffs do not articulate any prejudice from not preserving FTM-mitigated recordings and have not requested to listen to or see any such recordings since the Court issued its Order. If Plaintiffs seek examples of FTM-mitigated requests to alleviate any alleged prejudice, ███████ of examples exist and a reasonable sample can be provided. This Court could not have known these facts about ASR and FTM mitigation when ruling on the sanctions motion, as the parties have not briefed the relevance or prejudice of preserving ASR- and FTM-mitigated requests.

And then there are the equities. Plaintiffs continue to falsely assert that Apple "sought to

APPLE'S REPLY BRIEF ISO MOTION FOR RECONSIDERATION OF MAY 31, 2024 ORDER
CASE NO. 4:19-CV-04577-JSW-SK
sf-6046124

1

1  conceal its brazen destruction of this key data." (Opp. at 1.) But this Court has recognized that
2  Apple publicly announced its new policy before this lawsuit was filed. (Order at 2-3.) Moreover,
3  Plaintiffs knew based on Apple's interrogatory responses *exactly* what Apple was doing. On
4  December 2, 2022, Apple told Plaintiffs in an interrogatory response that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Roberts Reply Decl.
8  Ex. 2 at 10 (emphasis added).) Apple also disclosed that, "since August 28, 2019, the company's
9  policy is *not to maintain or store the Siri audio recordings unless the user affirmatively has opted*
10 *in* to help Siri improve." (Roberts Reply Decl. ¶ 19 (emphasis added).) Although there were dozens
11 of telephone calls and emails with multiple of Plaintiffs' very experienced counsel, at no point prior
12 to November 2023 did any of them ask whether Apple was preserving the data that they now claim
13 is "key." (Roberts Reply Decl. ¶ 27.)
14        With this factual backdrop, Apple respectfully requests that the Court re-examine the
15 ordered sanctions, which should be "no greater than necessary to cure the prejudice." Fed. R. Civ.
16 P. 37(e)(1). Apple has provided Plaintiffs with substantial data since this Court issued its sanctions
17 order. For example, its recent sampling production included over ▮▮▮▮▮▮ rows of grading data
18 (Roberts Reply Decl. ¶ 12), and the parties have conferred about providing Plaintiffs with additional
19 data. (*Id.* ¶ 7.) As the Opposition illustrates, it is not clear what the prejudice is, what specific
20 information Apple should have preserved, or whether there is additional information that Apple
21 could provide to cure any alleged prejudice. This Court's Order levels severe sanctions, including
22 that Apple "cannot argue against Apple's intent based on the number of, and instances of repeated,
23 false recordings." (Order at 15.) There is evidence that there are billions of Siri recordings,
24 however, and the ongoing cost of preserving all recordings is clearly relevant to spoliation and any
25 sanctions. The fact that Apple did not preserve each of these recordings should not prevent Apple
26 from making this basic point, among others.
27        In sum, the Court's sanction was premature, in part because discovery is not yet complete.
28 The parties continue to meet and confer, and Apple continues to provide Plaintiffs with discovery,

including a deposition regarding Interrogatory No. 23, as contemplated in ECF No. 266. Apple respectfully requests that the Court vacate its May 31 Order, so that the parties may complete their discovery and meet-and-confer in good faith if Plaintiffs believe there is additional information that Apple can provide to alleviate alleged prejudice.[1]

## II.     LEGAL STANDARD

"Reconsideration [of a prior order] is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12–00865 SI, 2014 WL 4076319, at *2 (N.D. Cal. Aug. 18, 2014) (quoting *School Dist. No. 1J v. ACAndS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)); *see also Tsyn v. Wells Fargo Advisors, LLC*, No. 14-cv-02552-LB, 2016 WL 7635883, at *1 (N.D. Cal. June 27, 2016) (noting that, while Civil Local Rule 7-9 "sets demands that *litigants* must meet to seek reconsideration of interlocutory decisions," that rule "does not restrict the *court's* ability to revisit its previous orders"). The Court also "may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient," including to avoid "clear error or . . . manifest injustice" under Rule 54(b). *Abada v. Charles Schwab & Co.*, 127 F. Supp. 2d 1101, 1102-03 (S.D. Cal. 2000); *see also Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) ("Courts have inherent power to modify their interlocutory orders before entering a final judgment.").

## III.    FACTUAL BACKGROUND

Apple must first address Plaintiffs' continued mischaracterizations of the record in this case:

### A.     Apple has been transparent with Plaintiffs and the Court about Siri retention policies.

In its December 2022 interrogatory responses, Apple told Plaintiffs that, " ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Roberts Reply Decl. Ex. 2 at 10.) Numerous documents produced in December 2022 also provided

---

[1] Apple has informed Plaintiffs that it will not object to a reasonable extension of the deadline for Plaintiffs to move for class certification and to disclose its class experts.

Plaintiffs with these written retention policies. (*Id.*) Apple witnesses similarly testified to these policies, and Plaintiffs' counsel asked questions about them. (*See* Roberts Reply Decl. Ex. 3, Niu Tr. at 166:22-24 ("Q. So if it's successfully suppressed by FTM, it is deleted within eight days; correct?"); *id.* at 167:5-10 ("Q. And then 'False trigger data sampled for grading,' it has retention period of six months?"); Roberts Reply Decl. Ex. 5, Neuenschwander Tr. at 219:7-227:12 ("Q And will [the data] be retained up to two years to help Apple develop and improve Siri?"); Roberts Reply Decl. Ex. 6, Freudiger Tr. at 195:18-20 ("Q So there is a small subset of data that's used for grading that stays on a Siri server after five years, then; is that correct?"); *id.* at 111:10-13; 195:9-24; Roberts Reply Decl. Ex. 4, Davis Tr. 119:12-25.) In the sampling proposal filed with the Court and in related meet-and-confers, Apple again stated what was preserved and what was deleted. (*See* ECF Nos. 197, 197-1.) Despite many dozens of meet-and-confer communications, at no time prior to two weeks before the close of fact discovery did Plaintiffs raise an issue with Apple's preservation practices.

### B. Apple has produced millions of Siri audio and transcripts, and will produce more.

The data that Apple agreed to produce as a sample to Plaintiffs is not the only Siri data in Apple's possession. Apple's argument to the Court, with which the Court agreed, is that Plaintiffs are not entitled to all Siri data, and thus a sample is sufficient. Second, Apple has produced that sample and provided even more data. Consistent with the Court's order on sampling ("Sampling Order"), Apple has produced:

- 180 hours of or just over 145,000 ungraded Siri requests for the last nine quarters, consisting of audio, transcripts, and any available associated data that would be used in the daily grading process ("Sampled Audio Request Dataset"). (Roberts Reply Decl. ¶ 3.) This set may contain false triggers. (*Id.* ¶ 4.)

- Up to 10 hours of access on the platform Apple uses today for grading, where Plaintiffs' counsel reviewed nearly 2,000 audio files from the Sampled Audio Request Dataset. (*Id.* ¶ 5.)

- Graded en_US requests for two days each year from 2015 through November 2022 ("Grading Platform Dataset"). (*Id.* ¶ 8.)

Though not required by the Sampling Order:

- Apple has offered to provide Plaintiffs the opportunity to review an additional 30,000 Siri requests, with audio recordings, on the aforementioned grading platform. (*Id.* ¶ 7.)

    In total, Plaintiffs will have approximately 175,000 ungraded Siri requests, with audio, for their use from the Sampled Audio Request Dataset. (*Id.*)

- Over and above the Grading Platform Dataset, Apple has provided Plaintiffs with an additional ▬▬▬ rows of graded data for years 2015, 2016, and 2017, when the initial dataset resulted in less data for these years than expected. (*Id.* ¶ 11.) In total, Plaintiffs now have approximately ▬▬▬ rows[2] of graded data from 2015 to 2022. (*Id.* ¶ 12.)

- In addition to the Grading Platform Dataset, Apple provided over ▬▬▬ rows of data from other languages and locales (not just en_US). (*See id.* Appx. A.)

Separate from the samples of Siri requests, Apple provided a verified response to Interrogatory No. 23, identifying and producing ▬ documents that show the fields of data associated with Siri recordings collected by Apple. (*Id.* ¶ 15.) The parties are in the process of scheduling a deposition on the response to Interrogatory No. 23. (*Id.* ¶ 16.)

Apple disagrees that Plaintiffs need more data than all of the above. However, Apple is able to produce even more data in its possession if the Court so orders.

## IV. DISCUSSION

Plaintiffs' opposition demonstrates why reconsideration of the Court's May 31 Order is warranted. For one, Plaintiffs continue to focus on *all* Siri data (audio, transcripts, and all associated metadata), despite the Order's specific reference to recordings automatically mitigated by the ASR and FTM systems. Whether the Court's view is that Apple should have preserved all Siri data or only that resulting from automatic mitigations directly impacts the parties' arguments on relevance, prejudice, and, ultimately, sanctions. Even if narrowed to only automatically mitigated recordings, the May 31 Order did not have the benefit of information that is critical to its findings, and the Opposition only further obfuscates the facts—namely, what the ASR and FTM systems are, what data they retain, and whether they would provide Plaintiffs what they say they will; the burden of preserving data through those systems; and whether Plaintiffs are in fact lacking in data. Apple has produced millions of audio and/or transcripts related to Siri recordings since the May 31 Order, and can produce more if the Court so orders. At a minimum, the parties should have the opportunity to review that material in detail and then brief for the Court whether prejudice

---

[2] Each row is not the equivalent of a single recording, since a single recording may have been graded more than once. (Roberts Reply Decl. ¶ 12.)

is shown and any consequences as a result.

### A. The Court Is Missing Critical Information for Determining Spoliation and Any Sanctions

#### 1. Plaintiffs Have Not Shown Relevance of ASR Mitigation and FTM Data

Plaintiffs make the unsupported assertion that Apple has already provided the Court with its arguments about the relevance of false trigger audio. (Opp. at 3.) In fact, Apple has not had the opportunity to provide any briefing to the Court specifically concerning ASR- and FTM-mitigated recordings. Plaintiffs refer to supplemental filings in which Apple responded directly to the Court's specific questions, two of which related to ASR and FTM, but those responses did not address the relevance, breadth, or burden of preserving ASR- and FTM-mitigated recordings or what it would actually provide Plaintiffs. (*See* ECF Nos. 259, 273.)

Most importantly: ASR- and FTM-mitigated recordings will not provide Plaintiffs what they say it will, despite Plaintiffs' speculation. ███████████████████████████████████████████████████████████████████████████████. (Roberts Reply Decl. Ex. 2 (Resp. to Interrogatory No. 4).) The recordings mitigated as potential "false triggers" by the ASR system are almost always silence. (Malecek Decl. ¶ 2.) In addition, the FTM system attempts to automatically remove false triggers before they get to human graders—requests caught by the FTM system often contain speech without a cognizable command for Siri. (*Id.* ¶ 3.) If the FTM system detects false triggers from users who have opted in to grading, those potential false trigger recordings are retained for 8 days. (Roberts Reply Decl. at Ex. 2 (Resp. to Interrogatory No. 4).) In a recent 8-day period, Apple retained audio recordings for approximately ███ Siri requests with a "US" country code that were automatically mitigated by the ASR or FTM systems. (Malecek Decl. ¶ 5.) Apple can provide a sampling of that data should the Court so order it.

Plaintiffs' arguments about the relevance of this data fall short. They claim that Apple's use of the ASR and FTM systems is relevant to their claims because "Apple engineers utilize the false trigger recordings notwithstanding that Apple knows such audio is likely the result of a false trigger." (Opp. at 4.) Plaintiffs also say they want ASR- and FTM-mitigated recordings to

determine the rate or number of false triggers. (Opp. at 13.) However, ASR-mitigated requests are not used in any way, they are simply deleted; engineers are not "utiliz[ing] the recordings" as Plaintiffs claim without support. (*See* Roberts Reply Decl. Ex. 2 at 10 ("▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬").) Moreover, the number of ASR mitigations and FTM-mitigated recordings does not tell Plaintiffs the rate or percentage of false triggers among the many billions of other Siri recordings, which the Court has agreed need not be preserved.

With ASR- and FTM-mitigated recordings for the en_US and es_US locales numbered at ▬▬▬▬▬ alone in the last year (Malecek Decl. ¶ 4),[3] these would have to be exceedingly relevant and necessary to prove Plaintiffs' claims—not meant to go to facts that neither party disputes—for their preservation to be required.[4] That said, if the Court wishes, Apple can produce a reasonable volume of FTM-mitigated recordings for a period of 8 days prior.

**2.    The Burden of Pausing Deletion of ASR- and FTM-Mitigated Recordings Does Not Outweigh Any Relevance**

Apple has never briefed for the Court the cost of preserving ASR- and FTM-mitigated recordings, as Plaintiffs' arguments have previously focused on preserving *all* Siri data. Indeed, the Court itself said in the May 31 Order that Apple has not previously explained how many requests were tagged as likely resulting from a false trigger or how much it would have cost to retain such data. (Order at 8.) Having investigated the volume of ASR- and FTM-mitigated requests and the related cost of retaining such information, Apple estimates that it received approximately ▬▬▬▬ Siri requests that were automatically mitigated by either ASR or FTM over the last year with the country code "US" (Malecek Decl. ¶ 4), and the cost to preserve such

---

[3] The "en_US" and "es_US" locales correspond to the users' selection of the Siri & Search language setting. (Roberts Reply Decl. ¶ 8.)

[4] Plaintiffs claim to identify two transcriptions from the data provided to date as evidence that false trigger recordings are relevant to their claims. (Opp. at 4, n.5.) These two transcriptions, from the Sampled Audio Dataset that Apple produced to Plaintiffs, were not mitigated requests from the ASR and FTM systems. Plaintiffs' claim that the transcriptions contain discernible language in no way speaks to whether ASR- and FTM-mitigated recordings are primarily gibberish or silence, or whether they are relevant. Further, Plaintiffs' reference to the Sampled Audio Dataset transcriptions proves that they are able to analyze and use that data for their purposes.

data since 2019 would have totaled over ▮▮▮▮ (Schuenemann Decl. ¶ 4). Such cost is not reasonable or proportionate to the needs of the case. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS (AGT), 2021 WL 8085492, at *1-2 (N.D. Cal. Dec. 1, 2021) (Rule 37 "'does not call for perfection' in preserving ESI; it calls for 'reasonableness'").

In misstating the record, Plaintiffs claim that Apple "falsely argued that it was not . . . possible to segregate false trigger audio for preservation from the rest of Siri Data." (Opp. at 5-6.) Apple has never said that it cannot segregate FTM-mitigated recordings; indeed, Apple has repeatedly confirmed that its policy is to preserve such recordings for 8 days. (Roberts Reply Decl. at Ex. 2 (Resp. to Interrogatory No. 10).) Plaintiffs' citations to the record instead relate to Apple's inability to separate U.S. Siri data from worldwide Siri data, or isolate false triggers to a confidential setting. It remains true that, as with other Siri data, Apple does not have a means of segregating U.S. ASR- or FTM-mitigated recordings from worldwide data (Schuenemann Decl. ¶ 2), nor can it separate false triggers that occurred in a confidential setting or any user's specific alleged false trigger.

The feasibility of building processes and systems to sequester U.S. ASR- and FTM-mitigated recordings would first need to be investigated by Apple engineers. If deemed possible, segregating U.S.-specific ASR- or FTM-mitigated recordings would require Apple to build additional processes and systems that do not exist, which would require significant time and resources, including months of engineering work, on top of the cost for preservation discussed above. (*Id.* ¶ 3.) Even setting aside the sheer cost and burden of having altered the retention policies for the ASR- and FTM-mitigated recordings, Plaintiffs could not possibly review or use all such data. *See Rodriguez*, 2021 WL 8085492, at *1-2 (retention not required where plaintiffs had not suggested they intended to, or had the means to, sift through the amount of data they sought to be retained). Indeed, it is difficult to understand how Plaintiffs could even review and analyze ▮▮▮▮ of requests were they to have access to all of these recordings for the last 10 years, and they make no attempt to argue that they could.[5]

---

[5] The Court said that Plaintiffs should have the "opportunity to sort through the data on their own or to draw valuable conclusions for the data that was saved." (Order at 13.) They have had that opportunity, and, tellingly, of the ▮▮▮▮ of rows of graded data and nearly two hundred

Plaintiffs cite a string of cases in claiming that the facts Apple presents on reconsideration are not new facts and that Apple previously "refused to provide" such information.[6] (Opp. at 6.) But prior briefing addressed the relevance of (and burden of preserving) *all* Siri data or false triggers and was not specific to Apple's automatic mitigation systems. Before the Court's May 31 Order, Apple did not have reason to develop or present specific information regarding ASR- or FTM-mitigated recordings, because Plaintiffs sought (and, based on their Opposition, still seek) all Siri data. Since the May 31 Order, in which the Court stated that "Apple could have segregated and retained those recordings which were identified as likely false through its ASR and FTM" (Order at 12), Apple has worked diligently to develop such facts and present them to the Court so that the Court has information necessary to inform its decision.[7]

### 3. Plaintiffs Do Not Credibly Contest That a Prejudice Finding Is Premature

Plaintiffs suggest that prejudice is measured solely by loss, but in reality prejudice is also measured by whether there is a substitute.[8] *See, e.g.*, *Med. Lab'y Mgmt. Consultants v. Am. Broad.*

---

thousand audio recordings, Plaintiffs only point the Court to two transcriptions. (Opp. at 4 n.5.) Apple attaches a small sample of the graded data set, so that the Court can see what has been provided to Plaintiffs. Plaintiffs deposed two Apple witnesses on the content of this data set. (Roberts Decl. ¶ 7, 13, Exhibit 1.)

[6] The cases cited by Plaintiffs are distinguishable. *See, e.g.*, *Ehrlich v. Hartford Life & Accident Ins. Co.*, No. 20-cv-02284-JST, 2021 WL 4472844, at *1 (N.D. Cal. July 19, 2021) (plaintiff did not identify any new facts in support of reconsideration but requested leave "to complete discovery *to determine if* a 'material difference in fact . . . exist[ed] from that which was presented to the Court'"); *Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-03514 SC, 2015 WL 1519066, at *4 (N.D. Cal. Apr. 3, 2015) (rejecting argument that the court had overlooked certain contractual language that was raised in a prior motion, and finding that defendant had not provided *any* detail about the defendant's reasonable diligence); *Gonzalez v. Apttus Corp.*, No. 21-cv-01844-JCS, 2022 WL 3925292, at *1 (N.D. Cal. Aug. 30, 2022) (pro se plaintiff "misunderstood her obligation to include all facts and claims in an amended complaint"); *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (reconsideration properly denied where plaintiff claimed the court should have joined the U.S. as a party, but "no new evidence ha[d] been introduced, and no intervening change in the law ha[d] occurred").

[7] Plaintiffs cite *Gray v. Golden Gate National Recreational Area* for the proposition that "reconsideration [is not] to be used to ask the Court to rethink what it has already thought." (*See* Opp. at 5 (citing 866 F. Supp. 2d 1129, 1132 (N.D. Cal. 2011) (granting in part motion for reconsideration)).) Apple is not asking the Court to merely "rethink what it has already thought"; rather, Apple is asking the Court to consider evidence that has not previously been briefed. Under such circumstances, "[r]econsideration is appropriate." *Gray*, 866 F. Supp. 2d at 1132.

[8] The cases Plaintiffs cite are also distinguishable. The sanctions ordered in *Leon v. IDX Systems Corp.* were not evaluated under Rule 37 but the Court's inherent authority to respond to abusive litigation practices—there, plaintiff admitted to destroying files and installing a program

*Cos.*, 306 F.3d 806, 825 (9th Cir. 2002) (explaining that availability of other sources of evidence compensating for the spoliated evidence lessens any risk of prejudice at trial and does not entitle the moving party to summary judgment on its claim). Rather than demonstrating any way that Plaintiffs have been prejudiced, such as proposing how *all* Siri data or even all mitigated data is relevant and proportional to the needs of this litigation, Plaintiffs rehash their arguments about the sampling order already rejected by the Court.[9]

Plaintiffs lament as if they are left with no data at all. On the contrary, as discussed above, they have millions of graded and ungraded Siri requests, in the form of audio and/or transcripts, and associated data for many of those requests.[10] (*See supra* Section III.B; Roberts Reply Decl. ¶¶ 3-12.) It strains credulity to think Plaintiffs could meaningfully use any more data. Yet, if they want even more recordings, Apple is willing to meet and confer with them about a reasonable amount more.

Moreover, Plaintiffs' diligence—or lack thereof—in seeking the data they now claim is critical is also material to a prejudice finding and, if so, the amount of prejudice. For example, as early as 2019, Plaintiffs cited the very retention policies at issue in their Complaint. (*See* ECF No. 70 ¶ 73.) Apple reiterated the same, detailing the same retention policies in its interrogatory responses. (Roberts Reply Decl. ¶ 18.) Counsel questioned Apple witnesses beginning in Summer 2023 regarding these policies. (*See id.* ¶¶ 21-26.) Yet, despite innumerable meet-and-confer communications, over the many years of this litigation, not until two weeks before the close of fact discovery did Plaintiffs ever raise that Apple should stop these policies. Indeed, their Complaint suggests otherwise. (*See, e.g.*, ECF No. 70 at 44 (Prayer for Relief) (requesting that the Court enter an order "[r]equiring Apple to delete all recordings of the members of the Class . . .").)

These are all considerations relevant to prejudice, and which should be explored once

---

to write over and permanently "wipe" deleted documents from his employer-issued laptop in an employment discrimination case after the lawsuit was filed. 464 F.3d 951, 959 (9th Cir. 2006).

[9] Plaintiffs repeatedly assert a "Class Period," but no class has been certified and Apple objects that the class period begins in 2011. (*Contra* Opp. at 13.)

[10] Whether the Graded Dataset contains audio is irrelevant—Plaintiffs have transcripts, and the data fields available to graders. In any event, Plaintiffs cite transcripts in their Opposition, so they are clearly of use to them.

production of the sampled data and corresponding depositions are complete.[11]

### 4. Plaintiffs' Representations Regarding Sampled Data and Ongoing Discovery Are Simply Wrong

Plaintiffs' real complaint is that they want all Siri Data, when this Court has already determined sampling will suffice. (*See* ECF No. 202.) Plaintiffs attempt to argue about the inadequacies of the sample produced to date, but they misrepresent the data, for one, and, even more, say nothing of Apple's offers to explore a reasonable additional data production. At most, Plaintiffs' arguments about what the data does and does not include are another reason why the parties should complete the sample production as ordered by the Court, discuss potential supplemental sampling in good faith, and conclude ongoing discovery on these issues before the issues are fully briefed for the Court.

**The Sampled Data Set Is Sufficient.** Plaintiffs continue to argue that they do not have a representative sample of the putative class period because they do not have every year represented, even while admitting that the timing of a request is not dispositive. (Opp at 13-14 (acknowledging that ▌▌▌▌▌ affect the rate of false triggers).)[12] In fact, changes in false trigger rates over time are ▌▌▌▌▌ (*See* ECF No. 293-4 (Declaration of Sachin Kajarekar in Support of Apple's Motion for Reconsideration) ¶ 8.) Plaintiffs also misstate what data is available for sampling. The available data includes Siri requests and audio recordings made

---

[11] Plaintiffs' citation to *State Farm Fire & Casualty Co. v. Broan Manufacturing Co.*, 523 F. Supp. 2d 992 (D. Ariz. 2007), is not persuasive. (*Contra* Opp. at 13.) *State Farm* was an insurance subrogation case where plaintiff alleged that defendant's fan caused a fire, but before defendant could inspect the fire scene, and without notifying defendant, plaintiffs began repairs of the only site at issue. 523 F. Supp. 2d at 995-97. Here, by contrast, Plaintiffs can conduct an independent investigation with representative data and negotiate in good faith about the scope of a proper data set if more is needed.

[12] Plaintiffs' attack on Mr. Kajarekar's declaration is misguided. (*Contra* Opp. at 13 n.11.) Kajarekar was not designated to testify on FTM technology; rather, he sat as a Rule 30(b)(1) fact witness who had personal knowledge of the personalized "Hey Siri" voice trigger (i.e., when Siri activates)—a completely different function than FTM (a technology that mitigates likely false triggers). (*See* ECF No. 293-4 ¶ 1.) Similarly, Plaintiffs' citation to Mr. Neuenschwander's deposition does not support their point that "the rate of false triggers depends on the quality of the hardware . . . and other factors." (Opp. at 14.) Mr. Neuenschwander was discussing what data Siri used, not false triggers or the rate of false triggers, or hardware at all. (*See* ECF No. 298-11.)

1  using virtually every combination of software and hardware, including going back to the iPhone 6
2  data. (*See* ECF No. 293-5 (Declaration of Spencer Lin in Support of Apple's Motion for
3  Reconsideration) ¶ 5.)  Apple pulled a random sample of such requests for Plaintiffs; if their
4  concern is that iPhone 6 audio data was not included in that sample, Apple could produce iPhone 6
5  audio data if so ordered.  However, the Court's Sampling Order permitted Plaintiffs the ability to
6  select the parameters of the sample, and they did not choose to require requests pulled from an
7  "equal distribution" across device and software combinations, as Plaintiffs suggest. (*Contra* Opp.
8  at 14 n.12.)

**"Associated Data" Is Not Relevant, But Apple Has Produced This Information.**
Plaintiffs similarly complain that they do not have "associated data" for every Siri recording, but fail to provide any explanation as to how "associated data" is relevant to their claims. (*Contra* Opp. at 14.)  They assert that "associated data" is related to identifying users, and specifically reference "Assistant ID" and "location." (*Id.*)  However, there are no allegations about whether Apple can locate or identify users.  Moreover, as Plaintiffs know, Assistant ID actually *de-identifies* users. (Roberts Reply Decl. Ex. 2 at 10.)  In any event, Apple has produced to Plaintiffs recordings that include the associated data provided to graders and, in response to Interrogatory No. 23, the fields which it collected over the putative class period with Siri recordings. (*Id.* ¶¶ 4, 15.)

**Plaintiffs' Complaints regarding Interrogatory 23 Are Inconsistent and Misleading.**
On the one hand, Plaintiffs say they are entitled to "several dozen fields" associated with Siri recordings. (Opp. at 12.)  Apple's response to Interrogatory No. 23 identifies those fields. (Roberts Reply Decl. ¶ 15.)  And yet, on the other hand, Plaintiffs argue that the response to Interrogatory No. 23 "has nothing to do with—and has no impact on" prejudice. (Opp. at 15.)  Apple disputes that the fields produced as part of Interrogatory No. 23 are relevant to Plaintiff's claims, but still has provided information about what those fields are, both in response to Interrogatory No. 23 and by providing associated data available to graders with many recordings produced to Plaintiffs.  That Apple has produced this material is relevant to Plaintiffs' representations that they have been prejudiced because they have received nothing at all.  On the contrary, they have ample data, including now identification of these fields they have sought, and an upcoming deposition on the

topic.

**B.   The Issued Sanctions Should Be Reconsidered**

Plaintiffs misstate both Apple's argument regarding sanctions and the law regarding permissive and mandatory inference instructions. The May 31 Order issues sanctions that preclude Apple from (i) arguing that Plaintiffs failed to make "certain showings that they could have made if they had access to the deleted Siri data"; (ii) introducing evidence "about the data it destroyed"; and (iii) relying on the absence of "the data it destroyed" in challenging Plaintiffs' claims at any future stage of the case. (Order at 15.) While Apple contests that any sanctions should be ordered, Apple does not argue that sanctions are only permitted upon a finding of intent. Apple's argument is that the sanctions as ordered by the Court are essentially an adverse inference – and an adverse inference *does* require a finding of intent. Fed. R. Civ. P. 37(e)(2).

The Court has not made a finding of intent, nor do Plaintiffs point to any evidence that would suggest intent to deprive Plaintiffs of discovery in this litigation. With respect to the opt-in feature that was initiated in August 2019 for Siri audio recordings, the Court acknowledged that it was initiated before the lawsuit was filed (Order at 3-4), and Plaintiffs concede that the opt-in policy does not constitute proof of intent to deprive them of discovery.[13] They argue very plainly that the reason for Apple's launch of the opt-in policy in August 2019 was a result of the alleged whistleblower reports – not anything to do with this litigation. (Opp. at 11.) Apple has explained the reasons for introducing an opt-in policy, including its pro-privacy ethos and commitment to protecting users' personal data, but in any event, the parties agree that there is no intent to deprive Plaintiffs of discovery for this litigation.[14]

The cases Plaintiffs cite do not support their argument that the type of sanctions issued here

---

[13] This option for users did not result in any "purge" of user audio data as claimed by Plaintiffs; it applied only to users' requests from the launch of software updates in Fall 2019 going forward, not to any Siri requests a user may have made prior to the opt-in feature update. (*See* "Ask Siri, Dictation & Privacy" (https://www.apple.com/legal/privacy/data/en/ask-siri-dictation).)

[14] Plaintiffs do not address Apple's argument that the opt-in policy for Siri recordings is akin to a remedial measure and cannot constitute spoliation of evidence. (*See* Mot. at 12-13.) Therefore, Plaintiffs concede this point. *Linder v. Golden Gate Bridge, Highway & Transp. Dist.*, No. 4:14-cv-03861 SC, 2015 WL 4623710, at *4 (N.D. Cal. Aug. 3, 2015) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment" (quotation omitted)).

are appropriate absent a finding of intent. Plaintiffs note that the court in *Dish Network L.L.C. v. Jadoo TV, Inc.* awarded a permissive jury instruction where defendants failed to preserve certain emails. No. 20-cv-01891-CRB (LB), 2022 WL 11270394, at *4 (N.D. Cal. Oct. 19, 2022). However, Plaintiffs fail to note that the court there declined to issue an additional sanction which would have prohibited the defendants from offering evidence from (1) the person whose emails were deleted or (2) another defendant concerning the person whose emails were deleted. *Id.* at *2, *5. Instead, the court found that the appropriate sanction was to give the jury a *permissive* instruction "to determine whether the destruction was intentional and whether the emails were unfavorable to the defendant." *Id.* at *4.

Similarly, in *Phan v. Costco Wholesale Corp.*, the court found that video evidence of a slip-and-fall incident should have been preserved by the defendant but was not, and that the plaintiff was prejudiced as a result. No. 19-cv-05713-YGR, 2020 WL 5074349 (N.D. Cal. Aug. 24, 2020). However, the court declined to issue a sanction that would have "barr[ed] defendant from furthering the theory that plaintiff slipped and fell on gasoline," instead ordering a permissive inference instruction that would allow the jury to consider whether the defendant "intentionally concealed or destroyed evidence" before deciding whether "the evidence would have been unfavorable to that party." *Id.* at *2, *4; *see also Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1240 (N.D. Cal. 2022) (declining mandatory adverse inference presumption because "whatever inferences might be drawn from th[e] facts is best left to the jury").[15]

Apple disputes that any sanctions are warranted. However, if upon reconsideration the Court still finds that sanctions should be issued, Apple requests that the Court clarify the scope of its May 31 Order. While the May 31 Order references recordings mitigated by the ASR and FTM systems specifically (stating, "[a]t the very least, Apple could have segregated and retained those

---

[15] Plaintiffs cite one case in which the court prohibited the defendant from describing the contents of the spoliated evidence, but the facts were egregious, and the sanction more limited. *See Yela Fiduciary Servs., LLC v. Benton Cnty.*, No. 6:20-cv-01925-MK, 2022 WL 17666400, at *9 (D. Or. Dec. 14, 2022). In *Yela*, an inmate died while in custody, and four days later plaintiffs sent defendants a letter requesting that they preserve evidence, including personal text messages and emails. *Id.* at *1-2. The defendants' text messages were deleted and the court prohibited the defendants "from describing the putative contents of those text messages." *Id.* at *9. However, unlike the sanctions issued here, the effect of the *Yela* order did not prevent defendants from putting forth any particular theories or arguments, nor did it relieve plaintiffs of their burden of proof.

recordings which were identified as likely false through its ASR and FTM"), it is also broad in some respects, finding that Apple cannot "argu[e] or otherwise us[e] Plaintiffs' failure to make certain showings that they could have made if they had access to the deleted Siri data." (Order at 12, 15.) As discussed in Apple's Motion for Reconsideration, the inability to argue that Plaintiffs failed to meet their burden on standing, classwide damages, and intent, among other issues, amounts to an adverse inference and relieves Plaintiffs of their burden. (Mot. at 10-11.) Moreover, Plaintiffs do not define "Siri Audio and Data," but state in their Opposition that the Court "correctly sanctioned Apple for deleting the Siri Audio and Data." (Opp. at 4-5.) If that is the scope of data (and, thus, the sanctions) at issue, then that even further ties Apple's hands. Plaintiffs state that Apple can use evidence—apart from the spoliated data—prepared in the ordinary course of business, but they are likely to argue that such evidence cannot be rebutted without the data. These discrepancies illustrate why, at a minimum, the parties need clarification of the scope of the Court's finding on spoliation and sanctions.

## V. CONCLUSION

For the reasons described herein and in Apple's Motion for Reconsideration, the Court should vacate the May 31 Order.

Dated: July 10, 2024

Respectfully submitted,

MORRISON & FOERSTER LLP

By: /s/ Arturo J. Gonzalez
    ARTURO J. GONZÁLEZ

Attorneys for Defendant
APPLE INC.