Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

*Additional Counsel for Plaintiffs
on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as Guardian of A.L., a Minor, JOHN TROY PAPPAS, and DAVID YACUBIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Docket No.: 4:19-cv-04577- JSW (SK)<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5, 2nd Floor<br>Date: February 14, 2025<br>Time: 9:00 a.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 14, 2025, at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 5 of the United States District Court for the Northern District of California, the Honorable Jeffrey S. White presiding, Plaintiffs Fumiko Lopez, Fumiko Lopez as guardian of A.L., a minor, John Troy Pappas, and David Yacubian ("Plaintiffs"), through their undersigned counsel and on behalf of the proposed Settlement Class, will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for entry of an Order: (i) preliminarily certifying the proposed Settlement Class, designating Plaintiffs as Class Representative, and appointing Christian Levis of Lowey Dannenberg, P.C. and Erin Green Comite of Scott+Scott Attorneys At Law LLP as Class Counsel; (ii) preliminarily approving the Settlement with Apple Inc. ("Apple"); (iii) preliminarily approving the proposed plan of allocation; (iv) approving the proposed form and manner of issuing notice to the Settlement Class; (v) approving the proposed selection of the Settlement Administrator; and (vi) scheduling a Final Approval Hearing before the Court.

The Motion is based upon this Notice of Motion and Motion, the Memorandum of Law set forth below, the accompanying Joint Declaration of Christian Levis and Erin Green Comite and the exhibits attached thereto including the Settlement Agreement, the notice plan and the corresponding Declaration of Steven Weisbrot, the pleadings and records on file in this Lawsuit, the [Proposed] Preliminary Approval Order submitted herewith, and, should the Court deem a hearing necessary for preliminary approval, other such matters and argument as the Court may consider at the hearing of this Motion.

On these grounds, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter the proposed Preliminary Approval Order.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed Settlement is within the range of fairness, reasonableness, and adequacy so as to warrant: (a) the Court's preliminary approval; (b) preliminary certification of the Settlement Class for settlement purposes; (c) dissemination of notice of its terms to Settlement Class Members; and (d) setting a hearing date to consider final approval of the Settlement as well as Plaintiffs' forthcoming application for attorneys' fees and expenses and service awards;

2.      Whether the proposed plan for allocation of Settlement proceeds should be preliminarily approved.

3.      Whether the proposed notice plan and forms of notice adequately apprise Settlement Class Members of the terms of the Settlement and their rights with respect to it; and

4.      Whether the selection of Angeion Group as Settlement Administrator should be approved.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................... iv

MEMORANDUM OF LAW ..................................................................................................... 1

I.      INTRODUCTION.............................................................................................................. 1

II.     THE PROPOSED SETTLEMENT ................................................................................... 1

   A.     PG 1(a): Class Definition ........................................................................................ 2

   B.     PG 1(b): The Claims to be Released ....................................................................... 2

   C.     PG 1(c), 1(e), 1(g), 6, 7, 8: Settlement Relief and Allocations from the Settlement Fund ...... 3

       1.     The Settlement Fund and Relief................................................................. 3

       2.     Service Awards .......................................................................................... 3

       3.     Attorneys' Fees and Expense Award......................................................... 4

   D.     PG 1(f) & PG 2: Settlement Administration............................................................ 4

III.    ARGUMENT.................................................................................................................... 5

   A.     Conditional Certification of the Settlement Class is Appropriate ........................... 5

       i.     The Class Is Sufficiently Numerous.......................................................... 5

       ii.    Common Questions of Law and Fact Exist................................................ 6

       iii.   Plaintiffs' Claims Are Typical................................................................... 6

       iv.   Plaintiffs and Their Counsel Have Adequately Represented the Class.......... 6

       v.    Common Questions Predominate............................................................... 7

       vi.   Superiority Requirement Is Satisfied......................................................... 7

       vii.  Lowey and Scott+Scott Should Be Appointed as Class Counsel.............. 8

   B.     The Proposed Settlement Is Fair, Reasonable and Adequate ................................. 8

       i.     The Ninth Circuit's Factors Support Approval of the Settlement.............. 9

          1.     *Hanlon* Factors.......................................................................... 9

       ii.    The Rule 23(e)(2) Factors Have Been Satisfied ....................................... 11

   C.     The Proposed Notice Program Should Be Approved .......................................... 14

IV.    CONCLUSION............................................................................................................... 15

1

## **TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

2015 WL 13653878 (Feb. 25, 2015) ................................................................................ 10

5

*Alvarez v. Sirius XM Radio Inc.,*

6

    No. CV 18-8605 JVS (SSX), 2020 WL 7314793 (C.D. Cal. July 15, 2020)............................ 13, 14

7

*Campbell v. Facebook, Inc.,*

    951 F.3d 1106 (9th Cir. 2020)......................................................................................... 9

8

*Carlotti v. ASUS Computer Int'l,*

9

    No. 18-cv-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019)........................................ 9

10

*Dexter's LLC v. Gruma Corp.,*

11

    No. 23-CV-212-MMA-AHG, 2023 WL 8790268 (S.D. Cal. Dec. 19, 2023).................................. 10

12

*Elder v. Hilton Worldwide Holdings, Inc.,*

    No. 16-cv-00278-JST, 2020 WL 11762284 (N.D. Cal. Apr. 29, 2020) ...................................... 9

13

14

*Evans v. Linden Rsch., Inc.,*

    No. C-11-01078 DMR, 2013 WL 5781284 (N.D. Cal. Oct. 25, 2013)...................................... 15

15

*Foster v. Adams & Assocs., Inc.,*

16

    No. 18-cv-02723-JSC, 2019 WL 4305538 (N.D. Cal. Sept. 11, 2019)...................................... 6

17

*Granados, v. Hyatt Corp.,*

    No. 23-CV-01001-H-VET, 2024 WL 3941828 (S.D. Cal. Aug. 26, 2024)................................... 15

18

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.,*

19

    No. CV 16-03157 PSG (JEMX), 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024).......................... 14

20

*Hanlon v. Chrysler Corp.,*

21

    150 F.3d 1011 (9th Cir. 1998)...................................................................................... 6, 9

22

*In re Classmates.com Consol. Litig.,*

    No. C09-45RAJ, 2010 WL 11684544 (W.D. Wash. Apr. 19, 2010) ....................................... 16

23

24

*In re Extreme Networks, Inc. Sec. Litig.,*

    No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)..................................... 15

25

*In re Hyundai & Kia Fuel Economy Litig.,*

26

    926 F.3d 539 (9th Cir. 2019) ........................................................................................ 8

27

*In re Lidoderm Antitrust Litig.,*

    No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)...................................... 14

28

*In re MacBook Keyboard Litig.*,
  No. 18 Civ. 2813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023)................................ 9

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .......................................................................................... 12

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008)........................................................................................... 9

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007)............................................................................ 9

*In re TikTok, Inc., Consumer Priv*. Litig.,
  617 F. Supp. 3d 904 (N.D. Ill. 202*2), appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv.
  Li*tig., No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) .................................. 14

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017)........................................................................................... 7

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008)................................................................................... 6, 7

*Katz-Lacabe v. Oracle Am., Inc.*,
  No. 3:22-CV-04792-RS, 2024 WL 4804974 (N.D. Cal. Nov. 15, 2024)......................... 15

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017)............................................................................ 11

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020)...................................................................................... 6

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)........................... 10

*Mandalevy v. BofI Holding, Inc.*,
  No. 3:17-CV-667-GPC-MSB, 2022 WL 4474263 (S.D. Cal. Sept. 26, 2022) ................. 13

*Miramontes v. U.S. Healthworks, Inc.*,
  No. CV15-05689-SJO-AFMx, 2017 WL 11633665 (C.D. Cal. Sept. 5, 2017) ................ 12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 11

*Opperman v. Kong Techs., Inc.*,
  No. 13-CV-00453-JST, 2017 WL 11676126 (N.D. Cal. July 6, 2017)............................ 16

*Perks v. Activehours, Inc.*,
  No. 5:19-CV-05543-BLF, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021)................... 12, 14

*Pipich v. O'Reilly Auto Enterprises, LLC*,
  No. 3:21-CV-01120-AHG, 2024 WL 2885342 (S.D. Cal. June 7, 2024)........................... 9

*Ramirez v. TransUnion LLC,*
   951 F.3d 1008 (9th Cir. 2020) .................................................................................... 7

*Rodriguez,*
   563 F.3d ...................................................................................................................... 10

*Roes, 1-2 v. SFBSC Mgmt., LLC,*
   944 F.3d 1035 (9th Cir. 2019) .................................................................................. 12

*Ruiz Torres v. Mercer Canyons Inc.,*
   835 F.3d 1125 (9th Cir. 2016) .................................................................................... 7

*Scholl v. Mnuchin,*
   489 F. Supp. 3d 1008 (N.D. Cal. 2020) ...................................................................... 7

*Shahar v. Hotwire, Inc.,*
   No. 12-CV-06027-JSW, 2014 WL 12647737 (N.D. Cal. July 25, 2014) ...................... 16

*Smith v. Apple, Inc.,*
   No. 21-CV-09527-HSG, 2024 WL 4584576 (N.D. Cal. Oct. 25, 2024) ...................... 13

*Stewart v. Apple Inc.,*
   No. 19-CV-04700-LB, 2022 WL 3013122 (N.D. Cal. Feb. 17, 2022) ........................ 16

*Torres v. Pet Extreme,*
   No. 1:13-CV-01778-LJO, 2015 WL 224752 (E.D. Cal. Jan. 15, 2015) ...................... 10

*Tyson Foods, Inc. v. Bouaphakeo,*
   577 U.S. 442 (2016) .................................................................................................... 7

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) .................................................................................. 14

*Waldbuesser v. Northrop Grumman Corp.,*
   No. CV 06-6213-AB (JCX), 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ................ 14

*Wolin v. Jaguar Land Rover N. Am. LLC,*
   617 F.3d 1168 (9th Cir. 2010) .................................................................................... 8

Statutes

18 U.S.C. § 2510 ................................................................................................................ 2

Cal. Penal Code § 632 ........................................................................................................ 2

Rules

Fed. R. Civ. P. 23 (a)(2) ...................................................................................................... 6

Fed. R. Civ. P. 23 (a)(3) ...................................................................................................... 6

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 6

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 7

Fed. R. Civ. P. 23(e)(2)(A) and (B) ......................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C) ....................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C)(iv) ................................................................................. 13

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................... 14

Fed. R. Civ. P. 23(g)(1) .............................................................................................. 8

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ............................................................................. 8

Fed. R. Civ. P. 23(g)(4) .............................................................................................. 8

Federal Rule of Civil Procedure 23 .................................................................. 1, 6, 7, 8

Federal Rule of Civil Procedure 23(c)(2)(B) ........................................................... 15

Rule 23(b)(3) ......................................................................................................... 7, 8

Rule 23(e)(2) ............................................................................................................ i, 14

Rule 23(e)(3) ............................................................................................................ 13

### MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiffs Fumiko Lopez, Fumiko Lopez as guardian of A.L., a minor, John Troy Pappas, and David Yacubian ("Plaintiffs") seek preliminary approval of a class settlement with Defendant Apple Inc. ("Apple") in the above-captioned action ("Lawsuit") consisting of **$95,000,000** all-cash, non-reversionary common fund and additional non-monetary relief targeted at addressing the alleged privacy violations in this Lawsuit.[1] The Settlement, if approved, will resolve Plaintiffs' allegations that Siri Device purchasers' confidential or private communications were obtained by Apple and/or were shared with third parties without their consent as a result of an unintended Siri activation.

This Settlement is the product of more than five years of litigation and months of negotiations supervised by Mr. Fouad Kurdi of Resolutions, LLC, a skilled mediator with extensive experience resolving disputes in high stakes, complex litigation. The highly contentious nature of the litigation, use of a mediator, and substantive terms of the Settlement demonstrate that the resolution of the Lawsuit is the result of arms-length negotiation between parties who were well informed of the strengths and weaknesses of their respective positions.

Accordingly, Plaintiffs respectfully request that the Court: (i) preliminarily certify the Settlement Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Christian Levis of Lowey Dannenberg, P.C. ("Lowey") and Erin Green Comite of Scott+Scott Attorneys At Law LLP ("Scott+Scott") as Class Counsel; (ii) preliminarily approve the proposed Settlement Agreement; (iii) preliminarily approve the proposed plan of allocation; (iv) approve the form and manner of providing Notice to members of the Settlement Class; (v) approve the proposed selection of the Settlement Administrator; and (vi) set a date, time, and place for a Final Approval Hearing.

## II.    THE PROPOSED SETTLEMENT

The key terms of the Settlement are summarized below, in accordance with the Northern District

---

[1] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Settlement Agreement and Release ("Settlement Agreement" or "Agreement"), attached as Exhibit 1, to the Joint Declaration of Christian Levis and Erin Green Comite (the "Joint Decl.") in support of this Motion. Unless otherwise noted, ECF cites are to the docket in this Lawsuit, and all internal citations and quotations are omitted.

of California's Procedural Guidance for Class Action Settlements ("Procedural Guidance" or "PG").[2]

### A.  PG 1(a): Class Definition

The proposed Settlement Class consists of "all individual current or former owners or purchasers of a Siri Device, who reside in the United States and its territories, whose confidential or private communications were obtained by Apple and/or were shared with third parties as a result of an unintended Siri activation between September 17, 2014 to the Settlement Date."[3] Settlement Agreement § 28. The definition excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; all judicial officers assigned to this case and their staff and immediate families. *Id*. The Settlement Class definition is modified from that in the SAC[4] to make it consistent with evidence to date. Specifically, the Settlement Class Period begins in 2014, as opposed to 2011, because that is when Siri first incorporated the voice triggered "Hey, Siri" feature that makes the unauthorized recording alleged in this case possible.  The definition was also modified to include "owners" of Siri Devices, as opposed to just "purchasers," and dropped "household members" to reduce the potential for duplicative claims.

### B.  PG 1(b): The Claims to be Released

The Settlement releases the Apple Released Parties from damages and claims "arising out of or related to the allegations in . . . or the facts underlying the Complaint, including claims that, without the user's consent, Apple recorded, disclosed to third parties, or failed to delete, conversations recorded as the result of a Siri activation." Settlement Agreement § H.1. The release includes each of the claims alleged in the SAC, including claims for violation of the Wiretap Act, 18 U.S.C. § 2510, *et seq.* ("Wiretap Act") and the California Invasion of Privacy Act, Cal. Penal Code § 632 ("CIPA"). Apple will also release the Plaintiffs and Class Counsel from claims arising out of or related to the institution, prosecution, or settlement of the Lawsuit, except for claims relating to the enforcement of the Settlement or this

---

[2] In accordance with PG 1(d), there are no other cases that will be affected by this Settlement.

[3]  The Settlement Date is December 31, 2024, when the Parties finalized and executed the Settlement Agreement.

[4] ECF No. 70 ¶ 83 ("All individual purchasers of a Siri Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Apple and/or were shared with third parties without their consent from at least as early as October 12, 2011 to the present (the Class Period)").

Agreement, and for the submission of false or fraudulent claims for Settlement benefits. Settlement Agreement § H.2.

### C. PG 1(c), 1(e), 1(g), 6, 7, 8: Settlement Relief and Allocations from the Settlement Fund

#### 1.   The Settlement Fund and Relief

Apple will pay $95,000,000 to create a non-reversionary common fund that will pay all approved settlement claims, notice and settlement administration costs (including any taxes owed by the Settlement Fund), any Court-approved Service Awards, and any Court-approved Attorneys' Fees and Expenses Payment. Settlement Agreement § 14.  The Gross Settlement Amount reverts to Apple only if the Settlement Agreement is voided, cancelled, or terminated. Settlement Agreement § C.5.

The Net Settlement Amount will be distributed on a *pro rata* basis according to the number of Siri Devices that experienced an unintended Siri activation.  Settlement Agreement § B.4-6. In the event the Settlement Class Members do not claim their payments more than 120 days after issuance of the Class Payment, these funds will be used to pay any unanticipated additional costs of settlement administration and then distributed to one or more *cy pres* recipients agreed upon by the Parties and approved by the Court. Settlement Agreement § B.12.

The Settlement also provides important non-monetary relief targeted at addressing the alleged violations by requiring Apple to (a) by six months after the Effective Date, confirm that Apple has permanently deleted individual Siri audio recordings collected by Apple prior to October 2019 and (b) publish a webpage further explaining the process by which users may opt in to the "Improve Siri" option on Siri Devices and the information Apple stores from users who choose to opt in to Improve Siri. Settlement Agreement § B.14.

#### 2.   Service Awards

Subject to Court approval, Plaintiffs will apply for service awards not to exceed $10,000 per Plaintiff as compensation for their time and effort serving as Class Representatives. As reflected in their respective declarations, Plaintiffs have spent substantial time on this action, assisted with the investigation and the drafting of the Complaint, sat for depositions, responded to Apple's discovery requests, communicated frequently with counsel, and stayed informed of the status of the Lawsuit. Joint Decl. ¶ 48. Apple reserves the right to object to or oppose Plaintiffs' Counsel's request for service awards. Settlement

1  Agreement § G.1.

2         **3.       Attorneys' Fees and Expense Award**

3         Plaintiffs' Counsel will petition the Court for an award of attorneys' fees not to exceed 30% of the

4  Settlement Fund ($28,500,000) plus reasonable litigation expenses not to exceed $1,100,000. Joint Decl.

5  ¶ 47. The unaudited lodestar invested in this case by Plaintiffs' Counsel as of December 2024 is

6  approximately $17,716,232.[5] *Id*. Based on this lodestar (which is provisional and subject to change), the

7  proposed attorneys' fee would reflect a multiplier of 1.6. *Id*. The lodestar and expenses do not reflect the

8  additional hours and costs Plaintiffs' counsel will incur to obtain final approval and administer the

9  Settlement. *Id*. Apple reserves the right to object to or oppose Plaintiffs' Counsel's request for attorneys'

10  fees and litigation costs and expenses. Settlement Agreement § G.2.

11         **D.  PG 1(f) & PG 2: Settlement Administration**

12         The proposed Settlement Administrator, who Apple has consented to, is Angeion Group

13  ("Angeion"). Joint Decl. ¶¶ 49-50. Class Counsel selected the Settlement Administrator after soliciting

14  competing bids from three potential claims administrators, all of whom submitted responses that included

15  email, U.S. mail, and digital notice plans, building a settlement website with an online claim filing portal,

16  and proposed disbursement of Claim Payments via direct deposit, physical checks, and electronic payment

17  methods. *Id*. ¶ 49.

18         Angeion has substantial experience administering class action settlements and has successfully

19  administered more than 2,000 class action settlements. *Id.*; Declaration of Steven Weisbrot ("Weisbrot

20  Decl.") ¶ 9. Based on the initial estimates of the class size, Angeion has estimated notice and

21  administration costs of approximately $5,975,000, which is 6.3% of the Gross Settlement Amount. Joint

22  Decl. ¶ 52; Weisbrot Decl. ¶ 52. Angeion has provided notice and administration services in more than

23  two dozen class actions in the Northern District of California. *Id.*; Exhibit A to the Wiesbrot Decl. (listing

24  cases). Angeion's full capabilities are further discussed in the accompanying declaration. *Id*. ¶¶ 9-12. Over

25  the past two years, Lowey has utilized Angeion as a settlement administrator for two new engagements.

26  Joint Decl. ¶ 51. Scott+Scott has not engaged Angeion during that same period. *Id*.

27

28  _____

[5] Plaintiffs' Counsel will provide final figures for the total amount of litigation expenses and lodestar with their forthcoming motion for approval of attorneys' fees and expenses.

Angeion employs numerous control systems and procedures that meet or exceed relevant industry standards for securely handling class member data, including technical controls, administrative policies, and physical access controls for handling class data. *See* Weisbrot Decl. ¶¶ 44-46. Angeion accepts responsibility for the security of Class Member's information and data and has affirmed that it will not use, disseminate, or disclose such information to any other person or for any other purpose except effecting notice and claims administration. *Id.* ¶ 44. Angeion maintains a comprehensive insurance program in case of errors, including sufficient Errors & Omissions coverage. *Id.* ¶ 47.

Angeion estimates a claim rate range of 3-5% based on its experience administrating consumer data breach and data privacy settlements. *Id.* ¶¶ 48-49. This is consistent with claims rates in comparable data privacy settlements, which range between 0.4% and 13% (*see* Joint Decl., Ex. 2) as well as those in the FTC's 2019 study of consumer class actions.[6]

## III.    ARGUMENT[7]

### A.  Conditional Certification of the Settlement Class is Appropriate

As described below, the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3), and provisional certification should be granted.

#### i.   The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Numerosity can be presumed when there are forty or more members. *Foster v. Adams & Assocs., Inc.*, No. 18-cv-02723-JSC, 2019 WL 4305538, at *3 (N.D. Cal. Sept. 11, 2019) ("[A]s a general matter, a class greater than forty often satisfies the [numerosity] requirement"); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) ("Courts generally find numerosity satisfied if the class includes forty or more members"). Here, the proposed Settlement Class includes, at least, tens-of-million of purchasers and owners of Siri Devices and easily meets this threshold. Joint Decl. ¶ 30.

---

[6] *See* Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019), available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

[7] The factual background of this Lawsuit is summarized in the Joint Declaration.

### ii.    Common Questions of Law and Fact Exist

Commonality requires at least one question of law or fact common to the class. Fed. R. Civ. P. 23 (a)(2); *Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the [commonality requirement]"); *Foster*, 2019 WL 4305538, at *4 ("[T]he commonality requirement can be satisfied by even a single [common] question."). Courts in this Circuit find "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to meet the commonality requirement], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Here, there are common questions of law and fact pertaining to Apple's alleged interception and recording of individuals' private communications by Siri Devices without their consent as the result of an unintended Siri activation. These common questions include, among others: (a) whether Siri Devices intercept or record individuals' conversations absent uttering a "trigger word"; (b) whether this practice violated state and federal privacy laws; and (c) whether Plaintiffs and Class Members sustained damages as a result of Apple's conduct, and, if so, what is the appropriate measure of damages or restitution. This is more than sufficient to establish commonality for the proposed Settlement Class.

### iii.    Plaintiffs' Claims Are Typical

Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. *See* Fed. R. Civ. P. 23 (a)(3). Typicality is met when "other members have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and . . . other class members have been injured by the same course of conduct." *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008); *see Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) (Plaintiffs need only demonstrate that they "endured a course of conduct directed against the class"). Here, Plaintiffs' claims arise "from the same event or practice or course of conduct that gave rise to the claims of other class members," *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020), that is, Apple's alleged recording of individuals' confidential or private communications without their consent as the result of an unintended Siri activation. Accordingly, Plaintiffs' claims are typical of the Settlement Class.

### iv.    Plaintiffs and Their Counsel Have Adequately Represented the Class

The adequacy prong of Rule 23 asks whether Named Plaintiffs will "fairly and adequately protect

1  the interests of the class." Fed. R. Civ. P. 23(a)(4). This determination turns on two questions: "whether

2  any conflicts of interest exist between the named plaintiffs and the class members" and "whether the

3  named [p]laintiffs' counsel will adequately protect the interests of the class." *Kanawi*, 254 F.R.D. at 110.

4  Both components of "adequacy" are met here. Having experienced the same alleged misconduct, Plaintiffs

5  have actively pursued this litigation on behalf of the Settlement Class Members with a shared interest in

6  establishing Apple's liability and obtaining relief. Plaintiffs' conduct confirms that they have no conflicts

7  or positions antagonistic to the Class. Joint Decl. ¶ 36. Further, Plaintiffs' Counsel and specifically

8  proposed Class Counsel are more than adequate, as reflected by the work performed in this case, and their

9  extensive experience in other complex class actions. *See* Joint Decl. ¶¶ 37-42, Exs. 3-6; *see also Scholl v.*

10 *Mnuchin*, 489 F. Supp. 3d 1008, 1045 (N.D. Cal. 2020) ("a court may consider the proposed counsel's

11 professional qualifications, skill, and experience, as well as such counsel's performance in the action

12 itself").

### v.  Common Questions Predominate

13

14      A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to class

15 members predominate over any questions affecting only individual members. . ." Fed. R. Civ. P. 23(b)(3).

16 Predominance is met if the proposed classes are "sufficiently cohesive to warrant adjudication by

17 representation." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). So long as

18 "one or more of the central issues in the action are common to the class and can be said to predominate,

19 the action may be considered proper under Rule 23(b)(3) even though other important matters will have

20 to be tried separately." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016). In the settlement

21 context, "[t]he focus is on whether a proposed class has sufficient unity so that absent members can fairly

22 be bound by decisions of class representatives." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539,

23 558 (9th Cir. 2019). The Settlement Class is cohesive: all members of the Settlement Class purchased or

24 owned Siri-enabled devices, and their claims turn on the extent, usage, and impact of Apple's alleged

25 unauthorized recording as a result of an unintended Siri activation. Thus, common questions predominate

26 for settlement purposes.

### vi.  Superiority Requirement Is Satisfied

27

28      "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient

and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). All of the superiority factors considered under Fed. R. Civ. P. 23(b)(3) weigh in favor of certifying the Settlement Class. Managing these disputes in a single class action before a single judge is preferable and more manageable than millions of users bringing individual actions. The filing fees in such individual actions alone would likely exceed the value of any potential recovery, leaving no incentive for an individual to seek relief and, consequently, no adequate remedy achievable by Settlement Class Members.

### vii.  Lowey and Scott+Scott Should Be Appointed as Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel" (Fed. R. Civ. P. 23(g)(1)) who "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). In making this determination, the Court considers proposed counsel's: (1) work in identifying or investigating the potential claims, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Lowey and Scott+Scott have extensive experience in prosecuting consumer privacy cases and consumer class actions. *See* Joint Decl. ¶¶ 39-40. Their zealous efforts, along with those of other Plaintiffs' Counsel, has resulted in substantial monetary recovery for Settlement Class Members. This strongly supports appointing Lowey and Scott+Scott as Class Counsel.

### B.  The Proposed Settlement Is Fair, Reasonable and Adequate

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1121 (9th Cir. 2020) (same). The purpose of preliminary approval is for the Court to ascertain whether to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D.

Cal. 2007). Preliminary approval should be granted and notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.*; *see also Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2020 WL 11762284, at *3 (N.D. Cal. Apr. 29, 2020) ("The proposed settlement need not be ideal, but it must be fair, free of collusion, and consistent with counsel's fiduciary obligations to the class."). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019). District courts are instructed to balance several factors in making this determination: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings"; and (6) "the experience and views of counsel."[8] *Hanlon*, 150 F.3d at 1026; *see also In re MacBook Keyboard Litig.*, No. 18 Civ. 2813-EJD, 2023 WL 3688452, at *5 (N.D. Cal. May 25, 2023) (same). Each supports approval here.

### i.    The Ninth Circuit's Factors Support Approval of the Settlement

#### 1.    *Hanlon* Factors

Plaintiffs have always believed in the strength of their case and that Apple would be held liable on the merits if the case proceeded to trial. If Plaintiffs were to succeed at trial on behalf of a nationwide class, Apple's potential liability could have been significant given the potential for statutory damages under the Wiretap Act and CIPA. Joint Decl. ¶ 44.

There is also significant risk that Plaintiffs would be unsuccessful and not recover anything for the Class, including the risk of obtaining class certification and maintaining that class action status through trial. Data privacy law is developing area of law posing inherent risks that a new decision could shift the

---

[8] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at that time. *See Pipich v. O'Reilly Auto Enterprises, LLC*, No. 3:21-CV-01120-AHG, 2024 WL 2885342, at *10 (S.D. Cal. June 7, 2024) (explaining a full assessment of the fairness factors is not necessary at the preliminary approval stage and is "reserved" for final approval).

legal landscape as to the certifiability of a class, liability, and damages. *See Dexter's LLC v. Gruma Corp.*, No. 23-CV-212-MMA-AHG, 2023 WL 8790268, at *5 (S.D. Cal. Dec. 19, 2023) (finding risk of continued litigation favors approval of settlement given "the evolving legal landscape" of the law at issue in the case); *Torres v. Pet Extreme*, No. 1:13-CV-01778-LJO, 2015 WL 224752, at *6 (E.D. Cal. Jan. 15, 2015) (finding that the "risk that an opinion could issue changing the legal landscape in this relatively new area of [law]" favors approval of settlement), *adopted* 2015 WL 13653878 (Feb. 25, 2015). Apple's incentive to litigate this case aggressively, and intent to oppose any motion for class certification, compounds the risk to Plaintiffs and Settlement Class Members, weighing in favor of settlement here. *See Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (citing *Rodriguez*, 563 F.3d at 966) ("settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal.").

The estimated Settlement Class size is expected to be substantial; notice will be sent to all purchasers and owners of Siri Devices. The percentage of those who experienced an unintended Siri activation is not known. Although it is difficult to estimate what a jury would award, and what claims or class(es) would proceed to trial, the Settlement reflects approximately 10-15% of Plaintiffs expected recoverable damages. Joint Decl. ¶ 44.[9]

The amount provided by the Settlement also supports approval. The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a particular formula." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017). In assessing the consideration available to Settlement Class Members in a proposed Settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). "[I]t is

---

[9] While Plaintiffs believe they would be able to succeed if the case proceeded to trial, Apple disputes any liability or that there are any recoverable damages and would vigorously defend itself at class certification and trial, Plaintiffs' risk-adjusted estimate of recoverable damages is 10% of the maximum damages available under the Wiretap Act, or in excess of $1.5 billion. Joint Decl. ¶ 44. This downward adjustment reflects, among other things, potential challenges to determining the number of those who experienced an unintended Siri activation during a confidential or private communication. Although CIPA provides a higher potential damages award, this would likely be available to a small fraction of class members and subsumed within the prior calculation, Plaintiffs estimate of recoverable damages also reflects the continued risk of litigation, including the risk of a lesser recovery or none at all.

1    well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction
2    of the potential recovery that might be available to the class members at trial." *Id.*

3    Based on an estimated claims rate of approximately 3-5%, the Settlement will resolve Plaintiffs'
4    and Settlement Class Members' claims in a range comparable to other actions involving similar data
5    privacy claims. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 3:18-md-02843-VC (N.D.
6    Cal.) (resolving data privacy class action involving statutory claims and over 250 million class members
7    for $725 million); *Rivera v. Google LLC*, No. 2019-CH-00990 (Ill. Cir. Ct.) (resolving data privacy
8    litigation involving statutory claims for $100 million); *Katz-Lacabe et al v. Oracle America, Inc.*, No.
9    3:22-cv-04792, ECF No. 132, at 6, 15 (N.D. Cal.) (resolving data privacy class action involving statutory
10   claims and over 220 million class members for $115 million); *In re TikTok, Inc. Consumer Privacy Litig.*,
11   No. 1:20-cv-04699, ECF No. 122, at 23 (N.D. Ill.) (resolving data privacy class action involving statutory
12   claims and over 80 million class members for $92 million); *In re Facebook Internet Tracking Litig.*, No.
13   5:12-md-02314, ECF No. 232, at 4, 8 (N.D. Cal.) (resolving data privacy class action involving statutory
14   claims and over 100 million class members for $90 million).

15   In approving a settlement, courts also consider whether class counsel had sufficient information to
16   make an "informed decision" about the merits of the case and counsel's views on the settlement. *See In*
17   *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Miramontes v. U.S. Healthworks, Inc.*,
18   No. CV15-05689-SJO-AFMx, 2017 WL 11633665, at *7 (C.D. Cal. Sept. 5, 2017). Discovery in this
19   Lawsuit has been extensive, involving significant document production, depositions and motion practice.
20   *See* Joint Decl. ¶¶ 15-20. Accordingly, Plaintiffs and Plaintiffs' Counsel were fully informed about the
21   relevant facts and circumstances when negotiating and entering the proposed Settlement, supporting
22   Plaintiffs' Counsel's view that the Settlement is fair, reasonable, and adequate.[10]

23   **ii.   The Rule 23(e)(2) Factors Have Been Satisfied**

24   The Settlement is procedurally fair under Fed. R. Civ. P. 23(e)(2)(A) and (B). As discussed above,

25

---

26   [10] Separately, there are no "subtle signs" of collusion that would weigh against preliminary approval, as
     there is no clear sailing arrangement or reversion of funds, and the requested fee is not disproportionate
27   to the total settlement. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (finding
     the district court erred in approving a settlement with a "clear sailing agreement," "disproportionate cash
28   distribution of attorneys' fees," and "reversionary clauses that would return unclaimed funds to the
     defendants"). This too supports approval of the settlement.

Plaintiffs' interests here are aligned with other Settlement Class Members' interests, they have vigorously prosecuted this case, and they are represented by counsel with extensive experience who have more than adequately met the obligations and responsibilities of Class Counsel. *See* III.A.iv *supra*. Further, the Settlement is the result of extensive negotiations, assisted by a skilled mediator. The Parties engaged in mediation beginning in October 2024 after more than five years of hard-fought litigation. Joint Decl. ¶ 22. The mediation included one in-person session in October and multiple follow-up discussions over the following months, through which the Parties ultimately reached an agreement to settle. *Id*. The fact that the Settlement is based on extensive negotiation with the assistance of an experienced mediator, who analyzed the strengths and weaknesses of the Parties' positions, strongly supports Plaintiffs' Counsel's judgment that the Proposed Settlement is fair, reasonable, and adequate. *See Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (approving settlement achieved following "arm's-length negotiations . . . supervised by [an experienced neutral]" and involving experienced class counsel that had performed sufficient investigation "to make an informed decision about the Settlement and about the legal and factual risks of the case").

The relief itself is also substantively adequate under Fed. R. Civ. P. 23(e)(2)(C). Several of the factors considered under Rule 23(e)(2)(C) overlap with the *Hanlon* factors discussed above (*e.g.*, "the risk, expense, complexity, and likely duration of further litigation," "the risk of maintaining class action status throughout the trial," and "the amount offered in settlement."). *See* III.B.i.1, *supra.* As to "any agreement required to be identified by Rule 23(e)(3)," (Fed. R. Civ. P. 23(e)(2)(C)(iv)) the Parties have agreed that Apple has a right to terminate the agreement if a certain percentage of the Settlement Class opts out of the Settlement. This kind of agreement is common in class settlements, and does not affect the fairness, reasonableness, or adequacy of the proposed Settlement. *See Mandalevy v. BofI Holding, Inc.*, No. 3:17-CV-667-GPC-MSB, 2022 WL 4474263, at *9 (S.D. Cal. Sept. 26, 2022) (recognizing such "blow-up" provisions are "common and guard against the possibility that a sufficient number of class members opt out . . . such that [d]efendant's potential future liability is not reduced in a way that renders the settlement worthwhile"). Plaintiffs will provide this agreement to the Court for *in camera* review. *Smith v. Apple, Inc.,* No. 21-CV-09527-HSG, 2024 WL 4584576, at *5 (N.D. Cal. Oct. 25, 2024) (conducting *in camera* review of similar opt-out agreement and finding it "reasonable").

Regarding "the effectiveness of any proposed method of distributing relief to the class," "[a] claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605 JVS (SSX), 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020). Under the terms of plan of allocation in the proposed Settlement, Settlement Class Members who make valid claims will receive a *pro rata* payment based on the number of Siri Devices claimed, with a cap of $20 per device. Settlement Agreement § B.7. The claims process requires minimal effort, *i.e.*, "logging on to the Settlement Website and submitting a [c]laim there, or a Settlement Class Member may print the Claim [F]orm from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer." *Alvarez*, 2020 WL 7314793, at *6; Weisbrot Decl. ¶ 26. The Court should thus find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective." *Alvarez*, 2020 WL 7314793, at *6.

As noted in III.C.3 *supra*, Plaintiffs' Counsel intend to seek an award of attorneys' fees not to exceed 30% of the Settlement Fund. Joint Decl. ¶ 47. Class Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the Objection and Exclusion Deadline. Based on the lodestar figures above, if the Court awarded the full 30% this would result in 1.6 multiplier, well within the range commonly awarded in class actions cases. *See generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers commonly range from 1.0 to 4.0). The requested fee is also fair in light of this extraordinary recovery and the significant time Plaintiffs' Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all, absent successful resolution. It is also consistent with market rates, as reflected by awards made in similar cases in this District. *See*, *e.g.*, *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $104.75 million settlement); *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, No. CV 16-03157 PSG (JEMX), 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) (awarding 33% of the $70 million settlement as attorney fees); *see also Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818, at *3 (C.D. Cal. Oct. 24, 2017) (explaining "[s]everal courts have awarded attorney fees of one-third of a common fund" when counsel has "expended significant effort . . . in prosecuting the action."); *see also In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 942

(N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) (awarding 33% of the $92 million settlement fund as attorneys' fees noting "[t]he need to provide financial incentives for zealous and effective representation of consumers in legally and technologically complex data privacy cases such as this—especially in the age of pervasive social media—weighs in favor of granting the request").

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). There is no preferential treatment here because any Settlement Class Member may make a claim and be paid a *pro rata* portion of the Settlement up to a certain amount. *See* Settlement Agreement § B.7. Courts in this District have found that allocating settlement benefits among class members in this manner is equitable. *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable).[11] Finally, any undistributed funds will go as a *cy pres* distribution. Thus, this factor weighs in favor of granting approval.

### C. The Proposed Notice Program Should Be Approved

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice program must provide "the best notice that is practicable under the circumstances[.]" *Evans v. Linden Rsch., Inc.*, No. C-11-01078 DMR, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013). Utilizing contact information in Apple's possession, the Settlement Administrator will disseminate Email Notice directly to Settlement Class Members. *See* Settlement Agreement § F.3; F.5.c. The Email Notice will include text describing the key terms of the Settlement in addition to providing a link the Settlement Website, which will host additional documents and information, such as the Full Class Notice, Settlement Agreement, and any updates relating to the final fairness hearing or deadlines in the case. *See id.* The Settlement Website will be published prior to or contemporaneously with Class Notice. The Parties and the Settlement Administrator will also develop a Publication Notice, consisting of a print and digital media campaign, which shall inform

---

[11] The service awards requested for Plaintiffs are reasonable and therefore do not constitute inequitable treatment of class members. *See Katz-Lacabe v. Oracle Am., Inc.*, No. 3:22-CV-04792-RS, 2024 WL 4804974, at *6 (N.D. Cal. Nov. 15, 2024) (finding the requested service awards of $10,000 each to class representatives is reasonable); *Granados, v. Hyatt Corp.*, No. 23-CV-01001-H-VET, 2024 WL 3941828, at *10 (S.D. Cal. Aug. 26, 2024) (same).

Settlement Class Members of the fact of the Settlement and that Settlement information is available on the Settlement Website. Settlement Agreement § F.4. Following dissemination of the Email and Publication Notice, the Parties will confer with the Settlement Administrator to determine whether additional email, direct postcard, or publication notice to some or all of the Settlement Class is warranted and cost-effective. *See* Weisbrot Decl. ¶ 15. The Settlement Administrator will also establish a toll-free telephone number where Settlement Class Members can receive instructions for accessing the Settlement information. Settlement Agreement § 5.b.

Several courts have approved similar notice plans, recognizing that email is the most reliable means of notification for Settlement Class Members where, as here, many (if not all) Settlement Class Members would have provided an email address when registering to use a Siri Device. *See In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2010 WL 11684544, at *3 (W.D. Wash. Apr. 19, 2010) (granting preliminary approval and finding email notice "an excellent option here" where "every class member provided an e-mail address to [the defendant] in the process of registering as a user"); *Opperman v. Kong Techs., Inc.*, No. 13-CV-00453-JST, 2017 WL 11676126, at *5 (N.D. Cal. July 6, 2017) (approving the notice plan which will provide "email notice to every user who downloaded and registered for the app during the relevant time period"); *Shahar v. Hotwire, Inc.*, No. 12-CV-06027-JSW, 2014 WL 12647737, at *2 (N.D. Cal. July 25, 2014) (recognizing the "direct e-mail notice" plan was "the best notice practicable under the circumstances"); *Stewart v. Apple Inc.*, No. 19-CV-04700-LB, 2022 WL 3013122, at *5 (N.D. Cal. Feb. 17, 2022) (same).

## IV.    CONCLUSION

Plaintiffs respectfully submit that the Court should grant Plaintiffs' Motion and enter the proposed Order provisionally certifying the proposed Settlement Class, appointing Plaintiffs as Class Representatives, appointing Lowey and Scott+Scott as Class Counsel, preliminarily approving the Settlement with Defendants, preliminarily approving the proposed plan of allocation, approving the proposed form and manner of notice to the Settlement Class, approving the proposed selection of the Settlement Administrator, and setting a date for the Final Approval Hearing.

1    Dated: December 31, 2024                    Respectfully submitted:

2

3                                                */s/ Christian Levis*
                                                 Vincent Briganti (*pro hac vice*)
4                                                Christian Levis (*pro hac vice*)
                                                 Margaret MacLean (*pro hac vice*)
5                                                Andrea Farah (*pro hac vice*)
6                                                **LOWEY DANNENBERG, P.C.**
                                                 44 South Broadway, Suite 1100
7                                                White Plains, NY 10601
                                                 Telephone: 914-997-0500
8                                                Facsimile:  914-997-0035
                                                 vbriganti@lowey.com
9                                                clevis@lowey.com
10                                               mmaclean@lowey.com
                                                 afarah@lowey.com
11

12                                               Erin Green Comite (*pro hac vice*)
                                                 Joseph P. Guglielmo (*pro hac vice*)
13                                               **SCOTT+SCOTT**
                                                 **ATTORNEYS AT LAW LLP**
14                                               The Helmsley Building
                                                 230 Park Avenue, 24th Floor
15                                               New York, NY 10169-1820
                                                 Telephone: 212-223-6444
16                                               Facsimile:  212-223-6334
                                                 ecomite@scott-scott.com
17                                               jguglielmo@scott-scott.com

18

19                                               Mark N. Todzo (Bar No. 168389)
                                                 Patrick Carey (Bar No. 308623)
20                                               **LEXINGTON LAW GROUP**
                                                 503 Divisadero Street
21                                               San Francisco, CA 94117
                                                 Telephone: 415-913-7800
22                                               Facsimile:  415-759-4112
                                                 mtodzo@lexlawgroup.com
23

24                                               E. Kirk Wood (*pro hac vice* forthcoming)
                                                 **WOOD LAW FIRM**
25                                               P. O. Box 382434
                                                 Birmingham, AL 35238
26                                               Telephone: 205-612-0243
                                                 kirk@woodlawfirmllc.com
27

28                                               *Attorneys for Plaintiffs*

                                                 16

1

**CERTIFICATE OF SERVICE**

2      I, Christian levis, certify that on December 31, 2024 the foregoing document entitled Joint

3   Declaration In Support Of Plaintiffs' Unopposed Motion For Preliminary Approval Of Class Action

4   Settlement was filed electronically in the Court's ECF; thereby upon completion the ECF system

5   automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail

6   addresses of parties of record in this case.

7                                   /s/ *Christian Levis*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28