| | |
|---|---|
| Vincent Briganti (*pro hac vice*) | Erin Green Comite (*pro hac vice*) |
| Christian Levis (*pro hac vice*) | Joseph P. Guglielmo (*pro hac vice*) |
| Margaret MacLean (*pro hac vice*) | **SCOTT+SCOTT** |
| Andrea Farah (*pro hac vice*) | **ATTORNEYS AT LAW LLP** |
| **LOWEY DANNENBERG, P.C.** | The Helmsley Building |
| 44 South Broadway, Suite 1100 | 230 Park Avenue, 17th Floor |
| White Plains, NY 10601 | New York, NY 10169-1820 |
| Telephone: 914-997-0500 | Telephone: 212-223-6444 |
| Facsimile:  914-997-0035 | Facsimile:  212-223-6334 |
| vbriganti@lowey.com | ecomite@scott-scott.com |
| clevis@lowey.com | jguglielmo@scott-scott.com |
| mmaclean@lowey.com | |
| afarah@lowey.com | |
| | |
| Mark N. Todzo (Bar No. 168389) | E. Kirk Wood (*pro hac vice* forthcoming) |
| Patrick Carey (Bar No. 308623) | **WOOD LAW FIRM** |
| **LEXINGTON LAW GROUP** | P. O. Box 382434 |
| 503 Divisadero Street | Birmingham, AL 35238 |
| San Francisco, CA 94117 | Telephone: 205-612-0243 |
| Telephone: 415-913-7800 | kirk@woodlawfirmllc.com |
| Facsimile:  415-759-4112 | |
| mtodzo@lexlawgroup.com | |

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as Guardian of A.L., a Minor, JOHN TROY PAPPAS, and DAVID YACUBIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Docket No.: 4:19-cv-04577- JSW (SK)<br><br>**JOINT DECLARATION IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5, 2nd Floor<br>Date: February 14, 2025<br>Time: 9:00 a.m. |

1

JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-CV-04577

We, Christian Levis and Erin Green Comite, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I, Christian Levis, am a partner at the law firm of Lowey Dannenberg, P.C. ("Lowey"). I am admitted *pro hac vice* to this Court to represent Plaintiffs in the above captioned matter (the "Lawsuit").

2. I, Erin Green Comite, am a partner at the law firm of Scott+Scott Attorneys at Law LLP ("Scott+Scott"). I am admitted *pro hac vice* to this Court to represent Plaintiffs in the Lawsuit.

3. We respectfully submit this Joint Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). We have been actively involved in this case since before the Lawsuit was originally filed on August 7, 2019, and are familiar with the proceedings, and have personal knowledge of the matters stated herein.

4. Attached as **Exhibit 1** is a true and correct copy of the Settlement Agreement and Release ("Settlement Agreement" or "Agreement") entered into by the Parties to this Lawsuit. Attached to the Settlement Agreement are the proposed Full Class Notice (Exhibit A), Email Notice (Exhibit B), Postcard Notice (Exhibit C), and the proposed Preliminary Approval Order (Exhibit D), which has also been separately filed with the Court in connection with this Motion. Unless otherwise noted, all capitalized terms shall have the same meaning as set forth in the Settlement Agreement, and all ECF citations are to the docket in this Lawsuit.

5. Attached as **Exhibit 2** is a chart detailing the settlements in comparable cases pursuant to Northern District of California's Procedural Guidance for Class Action Settlements, Procedural Guideline 11.

6. Attached as **Exhibit 3** is Lowey's firm resumé.

7. Attached as **Exhibit 4** is Scott+Scott's firm resumé.

8. Attached as **Exhibit 5** is the firm resumé of Lexington Law Group, LLP ("LLG").

9. Attached as **Exhibit 6** is the firm resumé of Wood Law Firm.

A. <u>Factual Background</u>

10. Siri is a virtual voice assistant that allows users to ask questions and give instructions for everyday tasks such as setting an alarm, driving directions, or playing music, with their voice. Apple first

1

released Siri October 4, 2011. Over time, Apple pre-installed Siri on most devices it manufactured, including iPhones, iPads, Apple Watches, MacBooks, iMacs, HomePods, iPod touches, and Apple TVs, which then users had the ability to enable if they chose.

11. Plaintiffs allege that on September 17, 2014, Apple released an iOS update that allowed users to activate the assistant using their voice by saying "Hey, Siri." Siri was not supposed to activate, and Apple was not supposed to receive audio recordings from users' devices, unless they said "Hey, Siri."

12. On July 26, 2019, an article published in *The Guardian* alleged that Siri activated and recorded audio from millions of private conversations where Siri users did not say "Hey, Siri" ("False Accepts"). ¶¶ 5, 69-72.[1] As reported by *The Guardian*, Apple allegedly disclosed these recordings to third party human reviewers who listened to and transcribed the audio as part of an effort improve Siri and Apple's dictation service.[2]

13. Plaintiffs filed their initial complaint on August 7, 2019, alleging violations of Plaintiffs' and Class Members' privacy rights resulting from Apple's alleged systematic collection of users' confidential communications through Apple's proprietary devices equipped with the voice assistant Siri, without users' knowledge or consent. Class Action Complaint, ECF No. 1 ¶¶ 3-4, 26, 32, 36, 56, 59, 64, 80, 85. Apple moved to dismiss, and after full briefing, the Court, on February 10, 2021, granted Apple's motion with leave to amend. ECF No. 65.

14. On March 17, 2021, Plaintiffs filed the SAC, which added new allegations in response to the Court's February 10, 2021 order, including descriptions of specific instances where Apple allegedly recorded Plaintiffs' confidential communications without consent. ¶¶ 19-51, 98-192. On September 2, 2021, the Court granted in part and denied in part Apple's motion to dismiss the SAC, sustaining Plaintiffs' claims for violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.* ("Wiretap Act"), California Invasion of Privacy Act, § 632 ("CIPA"), intrusion upon seclusion, invasion of privacy under Article I, Section 1 of the California Constitution, breach of contract, and for declaratory and other equitable relief

---

[1] Unless otherwise indicated, all "¶" citations refer to the Second Amended Class Action Complaint ("SAC" or "Complaint"). ECF No. 70.
[2] Alex Hern, *Apple contractors 'regularly hear confidential detail' on Siri recordings*, *The Guardian* (Jul. 26, 2019), https://www.theguardian.com/technology/2019/jul/26/applecontractors-regularly-hear-confidential-details-on-siri-recordings.

2

JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-CV-04577

under the Declaratory Judgment Act, 28 U.S.C. § 2201. ECF No. 77.

15. Thereafter, the Parties engaged in extensive discovery. Specifically, Plaintiffs served two sets of Requests for Production of Documents, Interrogatories, as well as answered discovery requests from Apple. In response to Plaintiffs' discovery requests, Apple produced, and Plaintiffs' Counsel reviewed, over 102,467 documents. Plaintiffs' Counsel also served twelve Rule 45 subpoenas on third parties, who in turn produced hundreds of additional documents.

16. Obtaining this discovery was not easy. The Parties held over 100 meet and confers during the discovery period and briefed multiple discovery disputes. For example, the Parties heavily litigated issues relating to:

- Apple's production of certain data relating to False Accepts (ECF No. 141);
- sampling protocol (ECF Nos. 148, 184, 197, 198);
- review of human grading software and associated data (ECF No. 138);
- motions to compel production of documents and supplemental responses (ECF Nos. 141, 171-3).

17. The Parties spent considerable time taking and/or defending depositions. For instance, the Rule 30(b)(6) deposition alone involved eleven Apple employees. Plaintiffs' Counsel ultimately took depositions of eleven Apple witnesses, two former Apple employees, one third party witness, and defended the depositions of each of the four Plaintiffs.

18. Plaintiffs' Counsel also worked extensively with the evidence and their experts to develop Plaintiffs' anticipated motion for class certification. This was extremely time consuming as it involved grappling with complex technological issues, as well as developing valuation models for each of the theories of damage asserted in the Lawsuit. Plaintiffs also worked with experts to extrapolate False Accept rates and other metrics from millions of data points Apple produced as a result of the data sampling ordered by the Court.

19. Plaintiffs also moved for sanctions pursuant to Rule 37(e)(1)-(2) to address the issue of spoliation of certain data that Plaintiffs alleged should have been preserved. *See* ECF No. 244. The Court granted Plaintiffs' motion for sanctions, ECF Nos. 280, 291, 311 (collectively "Sanctions Order"), finding that Apple had a "duty to preserve relevant evidence." ECF No. 311 at 10. Apple filed a motion for reconsideration of the Sanctions Order, which Magistrate Judge Sallie Kim denied. ECF No. 318.

3

20. Apple thereafter filed a motion for relief from non-dispositive pretrial order of magistrate judge (ECF No. 327), and the Court set a briefing schedule for this motion on August 12, 2024. ECF No. 328.

B. **Settlement Negotiations**

21. While the discovery disputes referenced above were ongoing, the Parties agreed to commence settlement discussions in the hopes of obtaining a resolution of the Lawsuit. The parties retained Mr. Fouad Kurdi ("Mr. Kurdi") of Resolutions, LLC, an experienced mediator to oversee the Parties' discussions. Prior to the engaging in mediation, the Parties exchanged detailed mediation statements and engaged in numerous communications with Mr. Kurdi. To that end, on August 15, 2024, the Parties filed a stipulation to modify the case management schedule and extend all deadlines pending mediation, which the Court granted. ECF No. 329; ECF No. 330.

22. The Parties mediated before Mr. Kurdi on October 1, 2024. During the mediation, the Parties participated in substantive discussions regarding the strengths and weaknesses of their cases, the available evidence, and the factual and legal claims and issues, and also explored the realities of continued litigation, including the likelihood of successfully prosecuting or defending the Lawsuit. At the conclusion of the in-person session, the Parties did not reach a settlement; however, they agreed to continuing mediation.

23. The Parties proposed holding another mediation session in January 2025 with Mr. Kurdi. To that end, the Parties once again sought an extension of the case schedule pending the second mediation, which the Court granted. ECF No. 333; ECF No. 334.

24. Following the first mediation, the Parties continued their settlement discussions and with Mr. Kurdi's assistance, reached agreement on December 18, 2024 to settle the Lawsuit for $95 million.

25. In following days, the Parties negotiated the material terms of the Settlement. On December 31, 2024, the Parties finalized and executed the Settlement Agreement, attached as Exhibit 1 hereto.

C. **Key Settlement Terms and Plan of Allocation**

26. The Settlement Agreement provides an all-cash, non-reversionary common fund recovery of $95,000,000. Settlement Agreement § 14. The common fund will be used to pay all approved claims by Settlement Class Members, Notice and Settlement administration costs (including any taxes owed by

4

the Settlement fund), any Court-approved Service Awards to Plaintiffs, and any Court-approved Attorneys' Fees and Expenses Payment. *Id*.

27. In addition, the Settlement provides non-monetary relief that requires Apple to (a) confirm permanent deletion of individual Siri audio recordings collected by Apple prior to October 2019, and (b) publish a webpage further explaining the process by which users may opt in to the "Improve Siri" option on Siri Devices, and the information Apple stores from users who choose to opt in to Improve Siri, within six months following the Effective Date of the Settlement. Settlement Agreement § B.14.

28. In exchange, Named Plaintiffs and Settlement Class Members ("Releasing Parties") will release the Apple Released Parties from claims arising out of or related to the allegations in the Complaint or the facts underlying the Complaint (the "Named Plaintiffs and Settlement Class Members' Released Matters"), including claims that, without the user's consent, Apple recorded, disclosed to third parties, or failed to delete, conversations recorded as the result of a Siri activation. Settlement Agreement § H.1. Apple will also release the Plaintiffs and Class Counsel from claims relating to the institution, prosecution, or settlement of the Lawsuit, except for claims relating to the enforcement of the Settlement or this Agreement, and for the submission of false or fraudulent claims for Settlement benefits. § H.2.

29. Settlement Class Members may submit claims for up to five Siri Devices on which they claim to have experienced an unintended Siri activation during a conversation intended to be confidential or private. Settlement Class Members who submit valid claims shall receive a *pro rata* portion of the Net Settlement Amount for a Class Payment up to a cap of $20 per Siri Device. The amount available to Settlement Class Members will increase or decrease *pro rata* depending on the total number of valid claims submitted, and Siri Devices claimed. Depending on the total number of valid claims, this Plan of Allocation is subject to modification by agreement of the Parties without further notice to members of the Settlement Class, provided any such modification is approved by the Court. Settlement Class Members will be given the option of providing information to the Settlement Administrator to receive payment by physical check, electronic check, or Automated Clearing House ("ACH," a/k/a direct deposit). Settlement Agreement § B.7.

30. Apple will provide information to be used to contact the Settlement Class, via secure means. Settlement Agreement § F.3. Based on the information available to Plaintiffs' Counsel, the

5

Settlement Class may include up to tens-of-millions of purchasers and owners of Siri Devices. Purchasers and owners of Siri Devices will be provided a unique claimant code and will be asked to complete the Claim Form with that code. Settlement Agreement, Ex. A. The Claim Form will allow each Settlement Class Member to select the method by which he or she will receive the Class Payment, either via ACH, physical check, or an electronic check.

31. Based on the information provided by the proposed Settlement Administrator, Angeion Group ("Angeion"), Plaintiffs' Counsel expect that the claims rate for a settlement of this size to be between 3-5%. *See* Declaration of Steven Weisbrot (the "Weisbrot Declaration" or "Weisbrot Decl.") ¶ 49. To the extent there are unclaimed payments, those funds will be distributed to one or more *cy pres* recipients, to be agreed upon by the Parties and submitted to the Court for approval, whose work is closely related to the issues raised by this Lawsuit and/or furthers the objectives of this Settlement Agreement. Settlement Agreement § B.13.

32. To the best of our knowledge, there are no other cases pending that would be impacted by this Settlement.

33. This Settlement is consistent with other settlements that have been approved involving analogous claims. *See* Exhibit 2 (providing examples of several recent class action settlements by the claims being released, total settlement fund, total number of class members, total number of class members to whom notice was sent, method(s) of notice, number and percentage of claim forms submitted, average recovery per class member, amount of *cy pres* distributions, administrative costs, attorneys' fees and costs, total exposure if the plaintiffs had prevailed on every claim, and injunctive and non-monetary relief).

D. **Plaintiffs' Counsel's Support of the Proposed Settlement**

34. The Settlement Agreement represents the culmination of years of litigation and intense arm's-length negotiations between the Parties. The assistance by Mr. Kurdi, a well-respected mediator with extensive experience in mediating settlements for a range of high stakes, complex litigation, including data privacy disputes, was essential in helping Plaintiffs achieve a fair, reasonable and adequate Settlement that provided significant benefit to the Settlement Class. Mr. Kurdi's presence also confirms that there was no collusion in connection with the Settlement reached in this case or any related negotiations.

35. While Plaintiffs believe that their claims have substantial merit, they also recognize the risks involved in continued litigation of this Lawsuit. Plaintiffs and Plaintiffs' Counsel have taken into account the risks involved with continued litigation and believe that this Settlement is a fair and reasonable resolution that will provide guaranteed relief to the Class. Plaintiffs therefore now submit the Settlement for preliminary approval.

36. Plaintiffs have actively participated in the Lawsuit from the time their claims were filed. Plaintiffs assisted Plaintiffs' Counsel in drafting the pleadings and other papers filed in the Lawsuit, consulted with Plaintiffs' Counsel as needed, answered discovery requests and provided additional information, sat for their depositions, participated in strategy and Settlement discussions with Plaintiffs' Counsel, and otherwise assisted in representing the interests of the Settlement Class. Plaintiffs understand the nature of their claims, as well as their duties and responsibilities as Class Representatives. They have no interests antagonistic to the members of the Settlement Class.

37. Plaintiffs' Counsel's thorough investigation, coupled with the document discovery and depositions conducted, has afforded Plaintiffs' Counsel a significant understanding of the merits of the claims asserted, the strength of Apple's defenses, and the values of theoretical outcomes of the Lawsuit.

38. In addition, Plaintiffs' Counsel are experienced in class action litigation, including consumer-related actions, and have recovered billions of dollars on behalf of their clients in class actions nationwide.

39. Lowey has substantial experience in class action litigation, having been at the forefront of consumer fraud class actions for over fifty years. *See* Exhibit 3 (Lowey's resumé). This includes data privacy matters, where Lowey both leads the prosecution of several large ongoing class actions and has obtained significant recoveries for class members. *See, e.g. id*. at 2 (identifying *In re Wawa Data Security Litig*., 19-CV-6019 (E.D. Pa.), where Lowey is co-lead counsel as the third largest data breach settlement of 2023).

40. Scott+Scott is a nationally recognized class action law firm with over one hundred attorneys dedicated to complex and class action litigation, representing individuals, businesses, and public and private pension funds in consumer, antitrust and securities class actions who have recovered billions of dollars for their clients and the classes they have represented. *See* Exhibit 4 (Scott+Scott's resumé).

41. LLG is a public interest law firm specializing in class action and environmental litigation. LLG's tireless efforts over the last three decades representing consumers and non-profits have helped to recover millions of dollars for consumers, removed toxic chemicals from everyday consumer products, and achieved wide ranging changes to harmful industry practices via injunctive relief. *See* Exhibit 5 (LLG's resumé).

42. The Wood Law Firm has over 30 years of mass tort and class action litigation experience. Mr. Wood has served in leadership positions in various successful multidistrict and state court joint complex matters. Significant favorable client results have been obtained in Hawai'i bad faith insurance matters, California wildfires and antitrust litigation. *See* Exhibit 6 (Wood Law Firm's resumé).

43. Based on their collective experience in similar matters, Plaintiffs' Counsel believes the proposed Settlement is fair, reasonable, and adequate, is likely to be approved by the Court after the Final Approval Hearing, and notice should be issued to the Settlement Class concerning the Settlement.

44. Based upon the claims sustained in the case, Plaintiffs estimate the total damages to the Class in excess of $1.5 billion. While this figure is defensible, Plaintiffs recognize that they face risks at class certification and that obtaining the total damages at trial would be a challenge, given Apple's denial of liability and intent to defend against class certification and at trial. Indeed, Apple would likely challenge the loss calculation methodology as well as causation and other elements of Plaintiffs' claims. Accordingly, the Settlement provides certain monetary relief of approximately 10% of the total losses of the Settlement Class after some adjustments accounting for potential challenges.

45. Plaintiffs' Counsel have fully investigated and developed this Lawsuit, reviewed thousands of documents that Apple and third parties produced and taken and defended fact witness depositions in order to meaningfully assess the strength of Plaintiffs' claims. Plaintiffs' Counsel have also worked with experts, engaged in significant motion practice, and will continue to vigorously represent the interests of the Settlement Class.

46. Plaintiffs' Counsel prosecuted the Lawsuit on a contingent basis and advanced all associated out-of-pocket costs, as well as all associated attorney and staff time, with no expectation of recovery of costs or payment of fees in the event the Lawsuit did not result in recovery for the Settlement Class.

### E. Attorneys' Fees and Expenses Awards

47. Plaintiffs' Counsel have undertaken this litigation on a wholly contingent basis. In connection with the final approval of this Settlement, Plaintiffs will ask the Court for an attorneys' fee award of no more than 30% of the Gross Settlement Amount ($28,500,000) plus litigation expenses not to exceed $1.1 million. The unaudited lodestar invested in this case by Plaintiffs' Counsel as of December 2024 is approximately $17,716,232. The lodestar and expenses do not reflect the additional hours and costs Plaintiffs' Counsel expect to incur to obtain final approval and administer the Settlement. If this lodestar remains unchanged, which is unlikely, the lodestar multiplier would approximately 1.6 if the Court awarded the requested 30% fee.

### F. Service Awards

48. Plaintiffs will apply for Service Awards not to exceed $10,000 per Plaintiff, as appropriate compensations for their time and effort serving as Plaintiffs and putative Class Representatives. Plaintiffs have spent substantial time on this Lawsuit, including assisting with the investigation, providing critical information for the Complaint, cooperating with the production of documents, and in the case of Fumiko Lopez, David Yacubian, and John Troy Pappas, sitting for depositions. Plaintiffs have been in contact with Plaintiffs' Counsel frequently and have stayed informed of the status of the Lawsuit.

### G. Proposed Notice Plan and Settlement Administrator

49. Plaintiffs have selected Angeion as the proposed Settlement Administrator following a competitive selection process that involved the solicitation of proposals from three leading notice and settlement administrators. Angeion has substantial experience administering class action settlements and has successfully administered over 2,000 class action settlements. All firms responding to the solicitation provided bids that included issuing direct notice by email. The proposals also included the ability to send postcard notice by U.S. Mail if, following dissemination of Email Notice and Publication Notice, the Parties and the Settlement Administrator determine that direct Postcard Notice to some or all of the Settlement Class is warranted and cost-effective. The bids also included various modes of claim payment, including direct deposit, physical check and electronic payment methods. In addition, a digital and print media notice option was provided by each, by which to publish a Publication Notice substantially in the form of Email Notice and Full Class Notice as described in the Settlement Agreement. Finally, all

9

Joint Declaration of Christian Levis and Erin Green Comite in Support of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement
Case No. 4:19-cv-04577

respondents proposed building a settlement website that would host all important settlement documents and notices and provide an online claim filing portal and hosting a toll-free number where members of the Settlement Class can receive instructions for accessing Settlement information.

50. Apple has consented to the selection of Angeion as the Settlement Administrator.

51. Angeion has been selected by Lowey to serve as the notice and/or settlement administrator for two engagements during the past two years. Scott+Scott has not utilized Angeion in any new engagements during the past two years.

52. The Notice plan for this Settlement involves sending direct Notice via email to all reasonably identifiable members of the Settlement Class using information based on Apple's records, in substantially the same form as the Email Notice, along with the development of a state-of-the-art media notice campaign, and establishment of a dedicated Settlement Website and toll-free telephone line where members of the Settlement Class can obtain more information about their rights and options under the terms of the Settlement. *See* Weisbrot Decl. ¶¶ 14-23; *see also* Settlement Agreement § F.3; F.5.c. The Email Notice will include text describing the key terms of the Settlement in addition to providing a link the Settlement Website, which will host additional documents and information, such as the Full Class Notice, the Settlement Agreement, the Preliminary Approval Order and any updates relating to the final fairness hearing or deadlines in the case. *See* Settlement Agreement, Exhibit B; Weisbrot Decl. ¶ 26. The Email Notice will also provide basic background information about the Lawsuit and the Settlement. The Parties and the Settlement Administrator will also develop a Publication Notice, which shall inform members of the Settlement Class of the fact of the Settlement and that Settlement information is available on the Settlement Website. Settlement Agreement § F.4; Weisbrot Decl. ¶ 24. Following the completion of the initial Notice, the Parties will confer with the Settlement Administrator to determine whether additional email, direct postcard, or publication Notice to some or all of the Settlement Class is warranted and cost-effective. *See* Weisbrot Decl. ¶ 15. The Notice plan also includes establishment of a toll-free number by the Settlement Administrator where members of the Settlement Class will be provided with responses to frequently asked questions and essential information regarding the Settlement. *Id*. ¶ 29. Settlement Agreement § F.5.b. Based on the initial estimates of the class size, Angeion has estimated Notice and administration costs of approximately $5,975,000, which is 6.3% of the Gross Settlement

10

JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-CV-04577

Amount. *See* Weisbrot Decl. ¶ 50.

53. The Weisbrot Declaration is also being filed concurrently. The Weisbrot Declaration further describes Angeion's proposed Notice plan, its capabilities, the procedures for securely handling Settlement Class member data, its maintenance of insurance in case of errors or omissions, and the anticipated administrative costs. All Notice and Settlement administration costs will be paid from the Gross Settlement Amount. Settlement Agreement § 14.

54. Pursuant to the Settlement Agreement, Apple is responsible for complying with its obligations under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). With Angeion's assistance, Apple will provide the notice of the Settlement to the appropriate state and federal officials. Apple is also solely responsible for the cost of the CAFA notice. Settlement Agreement § C.3.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed on December 31, 2024, in White Plains, New York.

_____
Christian Levis

I declare, under penalty of perjury, that the foregoing is true and correct. Executed on December 31, 2024, in New York, New York.

_____
Erin Green Comite

11

# CERTIFICATE OF SERVICE

I, Christian Levis, certify that on December 31, 2024 the foregoing document entitled Joint Declaration In Support Of Plaintiffs' Unopposed Motion For Preliminary Approval Of Class Action Settlement was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

/s/ *Christian Levis*

12

JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-CV-04577