Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Mark N. Todzo (Bar No. 168389)
Patrick Carey (Bar No. 308623)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
pcarey@lexlawgroup.com

Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

E. Kirk Wood (*pro hac vice*)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238f
Telephone: 205-612-0243
kirk@woodlawfirmllc.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as Guardian of A.L., a Minor, JOHN TROY PAPPAS, and DAVID YACUBIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Docket No.: 4:19-cv-04577- JSW (SK)<br><br>**PLAINTIFFS' COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS**<br><br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5, 2nd Floor<br>Date: August 1, 2025<br>Time: 9:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 1, 2025, at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 5 of the United States District Court for the Northern District of California, via videoconference only (*see* ECF No. 341), the Honorable Jeffrey S. White presiding, Plaintiffs Fumiko Rodriguez (formerly known as Fumiko Lopez) ("Rodriguez"), individually and as guardian of A.L., John Troy Pappas ("Pappas"), and David Yacubian ("Yacubian") (collectively, "Plaintiffs"), through their undersigned counsel and on behalf of the proposed Settlement Class, will and hereby do move this Court for an order granting Plaintiffs' Counsel attorneys' fees and costs, and granting service awards to Plaintiffs.

The Motion is based upon this Notice of Motion and Motion, the Memorandum of Law set forth below, the declarations of Christian Levis, Daryl F. Scott, Mark Todzo, Edward K. Wood and Plaintiffs Rodriguez, Pappas and Yacubian, filed herewith, the forthcoming papers to be filed in support of the Motion for Final Approval, the pleadings and records on file in this Lawsuit, the [Proposed] Order Granting Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards, submitted herewith, and other such matters and argument as the Court may consider at the hearing of this Motion.

On these grounds, Plaintiffs respectfully request that the Court grant the Motion and enter the proposed Order Granting Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court should award Plaintiffs' Counsel attorneys' fees totaling 30% of the Gross Settlement Amount in light of the significant efforts they undertook to prosecute the Lawsuit.

2.    Whether the Court should award a payment of $916,125.83 as reimbursement for the costs and expenses incurred by Plaintiffs' Counsel in prosecuting the Lawsuit.

3.    Whether the Court should grant service awards to Plaintiffs Rodriguez, Pappas, and Yacubian of up to $10,000 each for their efforts in prosecuting the case and representing the interests of the Settlement Class.

2

PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS
Case No. 4:19-CV-04577

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT ................................................................................................2

    A.    Plaintiffs' Counsel Fee Request is Fair and Reasonable ...............................2

        i.    The Percentage-of-the-Recovery Method Supports the Requested Fees.................2

            a.    Plaintiffs' Counsel Achieved an Excellent Result for the Class........................3

            b.    The Risks Faced by Plaintiffs' Counsel and Contingent Nature of the Litigation Support the Requested Fee..................................................................4

            c.    Plaintiffs' Counsel Demonstrated Exceptional Skill and Experience and Produced High Quality Work .........................................................7

            d.    The Requested Fee Request is Supported by Fee Awards in Similar Cases ...11

        ii.   Plaintiffs' Counsel's Lodestar and Multiplier Confirms that the Requested Fee is Reasonable ........................................................................11

    B.    The Requested Expenses are Reasonable and Should be Reimbursed ......................14

    C.    The Requested Service Awards are Reasonable and Warranted ................................14

III.   CONCLUSION................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Andrews v. Plains All Am. Pipeline L.P.*,
No. CV 15-4113 PSG (JEMx) 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) .......................... 9

4

*Barrett v. Apple Inc.*,
No. 5:20-CV-04812-EJD, 2025 WL 1002786 (N.D. Cal. Apr. 3, 2025).................................. 15

5

6

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015).................................................................................... 5, 13

7

8

*Bower v. Cycle Gear, Inc.*,
No. 14 Civ. 02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ................................ 6

9

*Destefano v. Zynga, Inc.*,
No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................... 6, 9

10

*Fleming v. Impax Lab'ys Inc.*,
No. 16-CV-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) .................................. 3

11

12

*Gaston v. FabFitFun, Inc.*,
No. 2:20-CV-09534-RGK-E, 2021 WL 3362028 (C.D. Cal. Apr. 2, 2021) ............................ 15

13

14

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*,
No. CV 16-03157 PSG (JEMx), 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) .................... 11

15

16

*Harbour v. California Health & Wellness Plan*,
No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ................................ 13

17

18

*Hubert v. Equinox Holdings, Inc.*,
No. CV 21-00086 PSG (JEMx), 2024 WL 4327402 (C.D. Cal. July 22, 2024) ...................... 3

19

20

*In re American Apparel, Inc. S'holder Litig.*,
No. 10 Civ. 6352, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................................ 9

21

22

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) .......................................................................................... 2

23

*In re Apple Inc. Device Performance Litig.*,
No. 18-md-02827-EJD, 2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) .................................. 6

24

25

*In re Apple iPhone 4 Prod. Liab. Litig.*,
No. 5:10-md-2188 RMW, 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012)................................ 3

26

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ......................................................................................... 2

27

28

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,

ii

PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR
SERVICE AWARDS
Case No. 4:19-CV-04577

No. 3:18-MD-02843-VC 2023 WL 8445812 (N.D. Cal. Oct. 10, 2023) ............................... 12

*In re Glumetza Antitrust Litig.*,
No. C 19-05822 WHA, 2022 WL 327707 (N.D. Cal. Feb. 3, 2022) ......................................... 13

*In re Google Location Hist. Litg.*,
No. 5:18-cv-05062-EJD, 2024 WL 1975462 (N.D. Cal. May. 3, 2024) ............................... 13

*In re Google Referrer Header Priv. Litig.*,
No. 5:10-CV-04809-EJD, 2023 WL 6812545 (N.D. Cal. Oct. 16, 2023) ............................... 13

*In re Haier Freezer Consumer Litig.*,
No. 5:11-CV-02911-EJD, 2013 WL 2237890 (N.D. Cal. 2013).............................................. 6

*In re JUUL Labs*, *Inc., Mktg., Sales Prac. & Prod. Liab. Litig.*,
No. 19-md-02913-WHO, 2023 WL 11820531 (N.D. Cal. Dec. 18, 2023) ............................ 12

*In re LendingClub Sec. Litig.*,
No. 16 Civ. 02627, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) ........................................ 14

*In re Lidoderm Antitrust Litig.,* No. 14-md-02521-WHO,
2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................................................. 5, 11, 14

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................................... 4

*In re MacBook Keyboard Litig.*,
No. 5:18-CV-02813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023) ......................... 3, 13

*In re Online DVD-Rental Antitrust Litigation*,
779 F.3d 934 (9th Cir. 2015) ............................................................................................... 15

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ................................................................................. 5, 11

*In re Vizio, Inc., Consumer Priv. Litig.*,
No. 16-ML-02693-JLS-KES, 2019 WL 12966638 (C.D. Cal. July 31, 2019).......................... 4

*In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prods. Liab. Litig.*,
No. 2672 CRB (JSC) 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)..................................... 12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................................................. 5

*In re Wells Fargo & Co. S'holder Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. Apr. 7, 2020)....................................................................... 13

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 3:22-CV-04792-RS, 2024 WL 4804974 (N.D. Cal. Nov. 15, 2024)................................ 15

*Kumandan v. Google LLC,*
    No. 19-CV-04286-BLF, 2023 WL 8587625 (N.D. Cal. Dec. 11, 2023) .................................. 6

*Lofton v. Verizon Wireless,*
    No. C 13-05665 YGR, 2016 WL 7985253 (N.D. Cal. May 27, 2016) ...................................... 9

*Lowery v. Rhapsody Int'l,*
    75 F.4th 985 (9th Cir. 2023) ...................................................................................................... 3

*Ozga v. U.S. Remodelers, Inc.,*
    No. C 09-05112 JSW, 2010 WL 3186971 (N.D. Cal. Aug. 9, 2010) .................................... 15

*Radcliffe v. Experian Info. Sols., Inc.,*
    715 F.3d 1157 (9th Cir. 2013) ................................................................................................ 14

*Ramirez v. TransUnion,*
    No. 12-cv-00632-JSC, 2022 WL 17722395 (N.D. Cal. Dec. 15, 2022) .................................. 13

*Rodman v. Safeway Inc.,*
    No. 11-cv-03003, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ........................................... 13

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) .................................................................................................. 14

*Schmitt v. Kaiser Found. Health Plan of Wash.,*
    No. 2:17-cv-1611-RSL, 2024 WL 1676754 (W.D. Wash. Apr. 18, 2024) ............................ 11

*Schneider v. Chipotle Mexican Grill, Inc.,*
    336 F.R.D. 588 (N.D. Cal. 2020) ........................................................................................... 14

*Stetson v. Grissom,*
    821 F.3d 1157 (9th Cir. 2016) ................................................................................................ 11

*Stovall-Gusman v. W.W. Granger, Inc.,*
    No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) .................................. 3

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ....................................................................................... 2, 3, 5, 11

*Williams v. SuperShuttle Int'l, Inc.,*
    No. 12-CV-06493-WHO, 2015 WL 685994 (N.D. Cal. Feb. 12, 2015) ................................ 14

*Wren v. RGIS Inventory Specialists,*
    No. 06-cv-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .................................... 15

*Wren v. RGIS Inventory Specialists,*
    No. 06-cv05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) .................................... 15

iv

PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR
SERVICE AWARDS
Case No. 4:19-CV-04577

Plaintiffs' Counsel respectfully submits this memorandum of law in support of their Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards ("Fee and Expense Application") for: (1) an award of attorneys' fees of 30% of the $95,000,000 common fund created by Plaintiffs' settlement ("Settlement") with Defendant Apple Inc. ("Apple"); (2) reimbursement of necessary and reasonable litigation costs and expenses of $916,125.83; and (3) Service Awards of $10,000 to Plaintiffs Rodriguez Pappas and Yacubian.

## I.    INTRODUCTION

After almost six years of complex, challenging and hard-fought litigation against one of the biggest technology companies of the world, Plaintiffs have successfully negotiated an excellent result for the Class—a Settlement where Apple has agreed to pay $95,000,000. In addition to the substantial monetary relief, the Settlement requires the permanent deletion of individual Siri audio recordings Apple collected prior to October 2019 and improved disclosures to Siri users regarding opting out of the "Improve Siri" functionality. This additional, non-monetary relief is designed to address the conduct at issue in this litigation and protect the Settlement Class's privacy interests.

These results were not easily achieved. Prosecuting this Lawsuit involved millions of highly technical documents, more than twelve depositions, multiple subpoenas, over a dozen motions to compel discovery, and a sanctions motion against Apple. The discovery hurdles made this complicated and expensive litigation even more difficult and costly. Notwithstanding, using their considerable knowledge of the facts and law, Plaintiffs' Counsel implemented an effective litigation strategy that provided substantial benefits for the Settlement Class.

In addition, the risks involved in litigating an action of this complexity and magnitude, combined with the time and labor invested in the prosecution of the case and the quality of that prosecution, support a fee award above the Ninth Circuit's "presumptively reasonable" benchmark of 25%. Plaintiffs' Counsel spent 22,240 hours over the course of nearly six years prosecuting the Lawsuit and have a lodestar of $17,562,928.50. While this case was contentious, particularly given Apple's resistance to producing relevant discovery, the Lawsuit was efficiently prosecuted, and the hourly rates and hours committed are objectively reasonable.

1

PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS
Case No. 4:19-CV-04577

This is confirmed by a lodestar check; a 30% fee award reflects a 1.62 multiplier, well within the range of reasonableness, particularly when compared to awards in comparable cases. The contingent nature of this case independently warrants a multiplier; Plaintiffs' Counsel incurred significant attorney time and costs without any guarantee of recovery. A $95 million fund to compensate the Settlement Class Members as well as injunctive relief that protects the Settlement Class from future harm is undoubtedly a great result. By any metric, the Settlement is a win for Settlement Class Members whose data Plaintiffs contend was illegally collected, stored, and used.

Plaintiffs' Counsel also seeks an expenses reimbursement of $916,125.83. Most of these expenses are related to expert work, necessary given the complexity of this highly technical case. The remainder of the costs are those typical in complex litigations. Lastly, Service Awards of $10,000 for Plaintiffs Rodriguez, Pappas, and Yacubian are reasonable due their contributions to the litigation and the discovery burdens they undertook on behalf of the Settlement Class.

Accordingly, Plaintiffs respectfully request that the Court award: (1) attorneys' fees of 30% of the $95,000,000 Gross Settlement Amount; (2) reimbursement of $916,125.83 for litigation expenses; (3) Service Awards of $10,000 each to Plaintiffs Rodriguez, Pappas, and Yacubian.

## II.    ARGUMENT

### A.  Plaintiffs' Counsel Fee Request is Fair and Reasonable

The Ninth Circuit recognizes two ways of assessing requests for attorneys' fees in common fund cases: the percentage-of-the-recovery method and the lodestar method. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). District courts have discretion concerning which method to apply in a particular case. *Apple Device*, 50 F.4th at 784. As the benefit of the Settlement to the Settlement Class is easily quantifiable, the percentage-of-recovery method is appropriate here. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

#### i.    The Percentage-of-the-Recovery Method Supports the Requested Fees

The Ninth Circuit recognizes that a fee award of 25% is presumptively reasonable. *Vizcaino,* 290 F. 3d at 1047; *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2023 WL

3688452, at *13 (N.D. Cal. May 25, 2023) ("in common fund cases, awards generally range from 20-30% . . . of the recovery"). Courts consider five factors when determining whether to award more than this 25% benchmark: (1) the result achieved; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) the skill required and quality of work by counsel; and (5) awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50. As explained below, each of these factors weigh in favor of a 30% fee award.

> a.  **Plaintiffs' Counsel Achieved an Excellent Result for the Class**

"The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class." *Lowery v. Rhapsody Int'l*, 75 F.4th 985, 988 (9th Cir. 2023). After almost six years of litigation, Plaintiffs' Counsel negotiated a Settlement that will greatly benefit the Settlement Class. The monetary as well as non-monetary benefits will provide immediate and ongoing relief to the Settlement Class. As a result of Plaintiffs' Counsel's efforts and dedication, Settlement Class Members could receive between $20 and $100, depending on the number of Siri Devices claimed and the number of participating Settlement Class Members. The Gross Settlement Amount represents approximately 10% of the potential recoverable damages. *See* ECF No. 336 at 10; *In re MacBook*, 2023 WL 3688452, at *9 (approving motion for final approval and attorneys' fee where the settlement fund represented between approximately 9% to 28% of the total estimated trial damages);  *Hubert v. Equinox Holdings, Inc*., No. CV 21-00086 PSG (JEMx), 2024 WL 4327402, at *5 (C.D. Cal. July 22, 2024) (finding 13% recovery of estimated damages reasonable); *Stovall-Gusman v. W.W. Granger, Inc*., No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (concluding that a settlement providing 10% of the potential recovery was within the range of reasonableness); *Fleming v. Impax Lab'ys Inc*., No. 16-CV-06557-HSG, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) (finally approving settlement and granting attorneys' fee motion where settlement fund represented 12.5% of estimated damages recoverable).

This outcome is comparable to other consumer class actions, including cases against Apple. *See, e.g., In re Apple iPhone 4 Prod. Liab. Litig*., No. 5:10-md-2188 RMW, 2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) (providing class members cash payments of $15); *Grace v. Apple,*

*Inc*., No. 5:17-cv-00551-LHK (N.D. Cal. 2021), Dkt. No. 456 at 6 (initial payments of $3); *In re Magsafe Apple Power Adapter Litig*., 5:09-CV-01911-EJD (N.D. Cal.), Dkt. Nos. 238, 247 (paying $35 to $79 to class members who received replacement power adapters); *iPod Nano Cases*, Case No. BC342056 (Los Angeles Super. Ct.) (paying between $15 to $25 for Apple iPod Nano owners); *see also Horvath v. LG Electronics MobileComm U.S.A., Inc*., No. 3:11-cv-01576, Dkt. No. 101 (S.D. Cal. Jan. 14, 2014) (approving settlement of $19 per claimant in class action alleging smartphone defect); *In re LinkedIn User Priv. Litig*., 309 F.R.D. 573, 588 (N.D. Cal. 2015) (approving settlement of $14.81 per claimant).

Plaintiffs also secured important injunctive relief. Apple agreed to delete the Siri audio recordings obtained prior to October 2019—including those obtained without the consent of Settlement Class. This provides valuable relief for the Settlement Class, who automatically benefit from the deletion of data without needing to opt-in. Apple also agreed to clearer disclosures in the form of additional webpages that will inform users of the process of opting into the "Improve Siri" feature and the information collected from users who opt in. Courts agree that "[i]njunctive relief is especially valuable in privacy cases . . . where the harm of having one's personal information surreptitiously collected is . . . difficult to monetarily quantify." *In re Vizio, Inc., Consumer Priv. Litig.,* No. 16-ML-02693-JLS-KES, 2019 WL 12966638, at *6–7 (C.D. Cal. July 31, 2019), *judgment entered sub nom. In re VIZIO, Inc., Consumer Priv. Litig.,* No. 16-ml-02693-JLS (KESx), 2019 WL 3818854 (C.D. Cal. Aug. 14, 2019) (concluding "that the combined monetary and injunctive results weigh in favor of an upward departure from the 25% benchmark.").

In total, the resulting benefits of the Settlement support the enhanced 30% fee award.

### b. The Risks Faced by Plaintiffs' Counsel and Contingent Nature of the Litigation Support the Requested Fee

Over the course of the last six years, Plaintiffs' Counsel conducted the entire litigation on a fully contingency basis, devoting significant money, resources, including a team of 24 attorneys and time, and bore the risk of non-recovery. *See* Declaration of Christian Levis dated May 28, 2025, filed herewith ("Levis Decl."), ¶¶ 6, 14, 15. "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of nonpayment . . . justifies a significant fee award."

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015); *see In re Lidoderm Antitrust Litig.,* No. 14-md-02521-WHO, 2018 WL 4620695, at *3 (N.D. Cal. Sept. 20, 2018) ("the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk" of non-payment).

Plaintiffs' Counsel litigated this case with no assurances of compensation. The subject matter of the Lawsuit was highly technical; the case hinged on Apple's proprietary technology, and very little was known about it in the public domain. Levis Decl., ¶ 12. There was immense risk in bringing an action based on such novel technology and in an area of law which is constantly evolving. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) ("[d]ata privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel."). In addition to placing time, money, and effort at risk, Plaintiffs' Counsel, and in particular Class Counsel, spent hundreds of thousands of dollars on experts and other litigation expenses without any guarantee of reimbursement. Levis Decl., ¶¶ 19, 36, 37; s*ee infra* at Part II.C; *see also Vizcaino*, 290 F.3d at 1050 (finding that the litigation entailed "hundreds of thousands of dollars of expense" was a relevant consideration supporting an upward adjustment). The potential that Plaintiffs' Counsel would receive nothing sufficiently supports approval of their requested fee. *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

Other risks were present in the litigation. Although Plaintiffs believe their case is strong, from the time of filing there has been a great deal of uncertainty as to whether the Court would grant certification, deny a motion for summary judgment, and accept Plaintiffs' damages models. Apple raised various defenses to Plaintiffs' claims; some of these arguments were successful as the Court dismissed Plaintiffs' Unfair Competition Law claims. *See* ECF No. 77 at 5. Plaintiffs faced further risks during a highly contentions discovery process. Levis Decl., ¶ 49. As is evident from the docket, Class Counsel had to repeatedly seek Court intervention to require Apple to produce several categories of fight just to get documents, Siri audio, speech logs and transcripts

5

1   that Apple maintained as part of providing the Siri functionality, and other relevant discovery.

2   Levis Decl., ¶¶ 21-25. Class Counsel also sought to compel production of information detailing

3   the financial benefit Apple derives from Siri. Levis Decl., ¶ 24. Each of these categories of

4   documents was extremely important for Plaintiffs but there was no certainty that Class Counsel

5   would obtain this discovery.

6          Plaintiffs also would continue to face risks and challenges getting a class certified as well

7   as establishing liability. Indeed, one court denied certification of similar claims in a comparable

8   case involving unauthorized recording of users through a voice assistant. *See Kumandan v. Google*

9   *LLC*, No. 19-CV-04286-BLF, 2023 WL 8587625 (N.D. Cal. Dec. 11, 2023). Class certification

10  would have required Plaintiffs to demonstrate that Defendant violated Plaintiffs' and class

11  members' privacy rights by recording them without consent on a class-wide basis. Apple was

12  certain to vigorously oppose certification, drawing on its superior knowledge of its own

13  technology. Proving liability in such a technical case also presented challenges, as complex topics

14  relating to the operation of speech recognition technology are not subjects most jurors understand.

15         Ninth Circuit courts have concluded there are considerable risks related to obtaining class

16  certification, surviving summary judgment, prevailing at trial, and withstanding a potential appeal.

17  *See In re Apple Inc. Device Performance Litig.,* No. 18-md-02827-EJD, 2023 WL 2090981, at *14

18  (N.D. Cal. Feb. 17, 2023), *appeal dismissed,* No. 23-15416, 2023 WL 10447843 (9th Cir. Aug. 8,

19  2023) (substantial risks found where plaintiffs "faced risks attendant to prosecuting a case with

20  relatively unique subject matter involving application of statutory computer intrusion and common

21  law trespass to chattels to iPhone devices"); *Bower v. Cycle Gear, Inc.*, No. 14 Civ. 02712-HSG,

22  2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-

23  JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (noting the "substantial" risk associated

24  with "obtaining [and maintaining] class certification"). Given the inherent risks that existed from

25  the outset and the likelihood of protracted litigation, the Settlement is a clear win for consumers.

26  Settlement Class Members have the opportunity now to share in the fund and obtain "a significant,

27  easy-to obtain benefit"—cash recoveries—through automatic payment. *See In re Haier Freezer*

28  *Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *4 (N.D. Cal. 2013).  The risk

6

PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR
SERVICE AWARDS
Case No. 4:19-CV-04577

of little or no recovery, together with the complexity of the case and likelihood of significant additional expense and delay, weigh in favor of granting the requested fee.

### c. Plaintiffs' Counsel Demonstrated Exceptional Skill and Experience and Produced High Quality Work

Due in large part to the risks inherent in this litigation and the caliber and extensive experience of the firms representing Apple, prosecuting this case required enormous skill and dedication on the part of Plaintiffs' Counsel, and in particular Class Counsel. The full history of the litigation is set forth in the Levis Declaration; however, several salient categories of work performed are summarized next as justification for the requested fee and expense award:

### Discovery Efforts

This case required extensive discovery, which was particularly contentious, laborious and time intensive. Class Counsel served 33 document requests and 28 interrogatories, and also answered discovery requests from Apple on behalf of five plaintiffs. Levis Decl., ¶¶ 16-18. Apple, in turn, produced over 3,000,000 pages of documents, most of which were highly technical in nature. Levis Decl., ¶ 18. The review of these documents alone required months of time and close coordination with experts and a team of 13 attorneys tasked with document review to analyze the technical documents, identify responsive and relevant documents, and participate in weekly calls to discuss discovery-related issues. Levis Decl., ¶¶ 18-19. Class Counsel's analysis of these documents, in turn, informed expert analysis, follow-up discovery, and settlement discussions. Levis Decl., ¶ 19. Class Counsel also issued twelve Rule 45 subpoenas, including to Apple's auditor. Levis Decl., ¶ 18. These third parties collectively produced more than 1,500 pages of documents in response to the subpoenas. *Id.*

The Parties held over 100 meet and confers to attempt to resolve various discovery issues. Levis Decl., ¶ 21. These included topics ranging from custodians, to search terms, the Protective Order and ESI Protocol, documents relevant to False Accepts, the operation of Apple's Siri technology, and financial documents concerning the costs and revenue arising out of Siri, among other things. *Id.* The Parties also briefed ten significant discovery disputes and prepared for at least seven oral arguments before Magistrate Judge Sallie Kim. *Id.* For example, discovery related to

7

1   Apple's production of certain data relating to False Accepts was highly contested and required two

2   joint letters and numerous Court proceedings. *See* ECF Nos. 141, 148, 184, 197, 198; Levis Decl.,

3   ¶¶ 22-23. On February 5, 2024, the Court compelled Apple to produce Siri audio and transcripts

4   according to a negotiated sampling protocol. *See* ECF No. 202. The sampling protocol afforded

5   Plaintiffs an opportunity to review Apple's proprietary human grading software in person. *See id*.

6   at 2. Apple was also compelled to provide a Rule 30(b)(6) deposition regarding the financial

7   documents. *See* ECF No. 202 at 3; Levis Decl., ¶¶ 24-25.

8        The document discovery work and successful resolution of the discovery disputes were

9   integral to Class Counsel's preparation to conduct eleven Rule 30(b)(6) and Rule 30(b)(1)

10  depositions as well as one third-party deposition. Levis Decl., ¶ 26. The depositions were

11  adversarial, with counsel from both sides vigorously advocating for their respective clients. *Id*.

12  Apart from deposing Apple's corporate and fact witnesses and one third-party witness, Plaintiffs'

13  Counsel also spent hours preparing and defending Plaintiffs at their depositions. *Id.*

14       **<u>Spoliation and Sanctions Motion</u>**

15       While negotiating the sampling protocol, Class Counsel learned that certain relevant data

16  for the Class Period had been deleted and/or not preserved. Levis Decl., ¶ 27. This deleted data

17  contained audio recordings and transcripts of users' interactions with Siri, including those that

18  resulted from a False Accept. *Id.* Given the importance of this data to Plaintiffs' claims, Class

19  Counsel conducted extensive legal research on the controlling law regarding sanctions and the

20  various remedies available to Plaintiffs and moved for sanctions on March 8, 2024, under Rule

21  37(e)(1)-(2). Levis Decl., ¶ 28. The sanctions motion alone required three rounds of briefing. Levis

22  Decl., ¶¶ 28-29, 32. The Court initially heard arguments in an hour-long proceeding and sought

23  supplemental briefing from the Parties on certain questions. *Id*; ECF No. 259. Class Counsel, on

24  their own and with their experts, prepared a comprehensive response to the questions posed by

25  Magistrate Judge Kim. *See* ECF No. 270; Levis Decl., ¶ 29.

26       Ultimately, on May 31, 2024, the Court granted Plaintiffs' sanctions motion, finding that

27  Apple had a "duty to preserve relevant evidence." ECF No. 311 at 10; Levis Decl., ¶ 30. The

28  sanctions order precluded Apple from "affirmatively arguing or otherwise using Plaintiffs' failure

8

PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR
SERVICE AWARDS
Case No. 4:19-CV-04577

1    to make certain showings that they could have made if they had access to the deleted Siri data"

2    and prevented Apple from "introduc[ing] evidence about the data it destroyed or [relying] on the

3    absence of the data it destroyed in challenging class certification, Plaintiffs' damages expert, in

4    moving for summary judgment, or at trial." ECF No. 311 at 15. Class Counsel thereafter spent

5    many additional hours, conducting additional research and opposing Apple's motion for

6    reconsideration of the sanctions order. ECF No. 318. Consequently, Apple's failure to preserve

7    evidence vastly increased the number of hours needed to litigate this case. Levis Decl., ¶ 31.

8        The case history leaves no doubt that Class Counsel prosecuted this case with skill and

9    expertise and obtained an excellent recovery for the Class. Moreover, Class Counsel achieved this

10   result despite the vigorous opposition of Apple's defense team, comprised of attorneys from DLA

11   Piper and Morrison & Foerster, some of the largest law firms in the world. *Destefano*, 2016 WL

12   537946, at *17 ("The quality of opposing counsel is also relevant to the quality and skill that class

13   counsel provided."); *Lofton v. Verizon Wireless*, No. C 13-05665 YGR, 2016 WL 7985253, at *1

14   (N.D. Cal. May 27, 2016) (the "risks of class litigation against an able defendant well able to

15   defend itself vigorously" support an upward adjustment). Class Counsel achieved this excellent

16   result against attorneys who, unlike Class Counsel, were not operating on a contingency fee basis

17   and benefited from the significant financial resources of their client. *See Andrews v. Plains All Am.

18   Pipeline L.P.*, No. CV 15-4113 PSG (JEMx) 2022 WL 4453864, at *3 (C.D. Cal. Sept. 20, 2022)

19   ("[E]specially when considering that Defendants were represented by a prominent litigation firm,

20   Class Counsel's ability to get the case this far along evinces their high quality of work."); *In re

21   American Apparel, Inc. S'holder Litig.*, No. 10 Civ. 6352, 2014 WL 10212865, at *22 (C.D. Cal.

22   July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should

23   also consider the quality of opposing counsel as a measure of the skill required to litigate the case

24   successfully.").

25   **Class Certification Preparation**

26       Class Counsel started preparing for their class certification motion in the months prior to

27   the settlement talks. Levis Decl., ¶ 34. Class Counsel spent time extensively researching the

28   viability of certifying Wiretap Act, privacy, and breach of contract classes that would withstand

9

scrutiny under controlling law. Levis Decl., ¶ 35. These discussions required a thorough review of testimony and key documents from Apple and third-party productions in support of their class certification motion. *Id.* The class certification preparation also required frequent consultation with several privacy, statistical, and damages experts to interpret and synthesize technical documents and data received in discovery. Levis Decl., ¶ 36. Plaintiffs' experts spent hundreds of hours developing a damages model accounting for these complexities. Levis Decl., ¶ 37. Overall, Plaintiffs' Counsel had devoted significant time and resources to bring a legally and factually sound class certification motion. *Id.*

**Settlement Negotiations with Apple**

33.     In August 2024, Apple moved to set aside Magistrate Judge Kim's sanctions order. ECF No. 327. The Parties started their settlement negotiations around the same time. Levis Decl., ¶¶ 33, 38. Settlement negotiations with Apple took place over several months, continuing until the Settlement Agreement was executed on December 31, 2024.  Levis Decl., ¶ 38. Following initial communications with Apple's counsel in August 2024, the Parties retained Mr. Fouad Kurdi of Resolutions, LLC, an experienced mediator to oversee the Parties' negotiations. *Id.* The Parties met for an in-person mediation session in the San Francisco offices of Morrison & Foerster on October 1, 2024, with each side presenting their views on the strengths and weaknesses of the case, as well as exchanging detailed mediation statements. *Id.* During the negotiations, Apple denied any liability and maintained that it had meritorious defenses to the claims brought against it. *Id.* The Parties had extensive discussion over the material terms of any settlement, including the settlement amount, injunctive relief to be provided by Apple, the release, and the circumstances under which the Parties may terminate the settlement.  *Id.* While the Parties did not reach a settlement on that day, they nevertheless kept the communications channels open and engaged in discussions with each other over a potential settlement. Levis Decl., ¶ 39. The Parties reached an agreement in principle to settle the lawsuit on December 18, 2024 and executed the Settlement Agreement on December 31, 2024. *Id.* At the same time Class Counsel prepared and filed the motion for preliminary approval of the Settlement. Levis Decl., ¶¶ 38-39.

### d.   The Requested Fee Request is Supported by Fee Awards in Similar Cases

Courts in this Circuit grant fee requests exceeding the 25% benchmark where, as here, the circumstances warrant it.  *See, e.g., In re TikTok*, 617 F. Supp. 3d at 942 (awarding 33% of $92 million settlement after three years of litigation, recognizing that "[t]he need to provide financial incentives for zealous and effective representation of consumers in legally and technologically complex data privacy cases such as this…"); *In re Lidoderm*, 2018 WL 4620695, at *1 (awarding one-third of $104.75 million settlement); *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, No. CV 16-03157 PSG (JEMx), 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) (awarding 33% of the $70 million settlement as attorney fees noting that the litigation had extensive discovery and counsel faced significant risks litigating unprecedented issues); *Schmitt v. Kaiser Found. Health Plan of Wash.*, NO. 2:17-cv-1611-RSL, 2024 WL 1676754, at *4-5 (W.D. Wash. Apr. 18, 2024) (awarding one-third of settlement fund where "counsel undertook a significant risk in bringing this class action lawsuit on a contingent basis" since it was complex and "heavily litigated" for years).

### ii.   Plaintiffs' Counsel's Lodestar and Multiplier Confirms that the Requested Fee is Reasonable

The Ninth Circuit has explained that courts may consider class counsel's lodestar to "provide[] a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "There is a strong presumption that the lodestar is a reasonable fee." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). The lodestar is calculated by multiplying the hours reasonably spent by reasonable hourly rates. *Bluetooth*, 654 F.3d at 941.

Plaintiffs' Counsel's combined lodestar in this Lawsuit through May 21, 2025 is $17,562,928.50 and is based on the firms' current rates and a reasonable number of hours spent prosecuting the case, in light of the complexities and challenges. Levis Decl., ¶¶ 43, 48. As reflected in the accompanying declarations, a significant portion of time in this litigation was spent involved in complex discovery and discovery disputes, depositions, analysis and strategy, dispositive motions and settlement negotiations. Levis Decl., ¶¶ 16-33, 35. This Lawsuit was actively litigated for over six years and, as a result, thousands of hours were reasonably and necessarily billed toward researching and drafting the legal claims, propounding and responding

1   to numerous sets of discovery, reviewing documents, briefing arguments, preparing for and taking

2   depositions, working with experts, and arguing before this Court. Levis Decl., 11-13, 16-33. The

3   meet-and-confer process during discovery alone account for hundreds of attorney hours. Levis

4   Decl., ¶ 21; *see In re Facebook, Inc. Consumer Privacy User Profile Litig.*, NO. 3:18-MD-02843-

5   VC 2023 WL 8445812, at *1-2 (N.D. Cal. Oct. 10, 2023) (awarding $181.25 million in fees

6   following a settlement during fact discovery after 4.5 years of litigation, and characterizing

7   counsel's substantially higher 149,928 hours as "reasonable, especially because this litigation has

8   been unusually prolonged and contentious").

9       That said, applying their billing judgment, Plaintiffs' Counsel made adjustments to the

10  hours report and the lodestar. This lodestar amount does not include time spent by (a) Class

11  Counsel's attorneys and paralegals who worked fewer than 20 hours on the case and (b) remaining

12  Plaintiffs' Counsel's attorneys and paralegals who worked fewer than 10 hours on the case.  Levis

13  Decl., ¶ 45.  In addition, the billing rate for first level document review has been conservatively

14  capped at $425. *Id.* Further, the time set forth in the Levis Declaration, as well as the Scott, Todzo,

15  and Wood Declarations, does not include the hundreds of hours Plaintiffs' Counsel will spend after

16  May 21, 2025 briefing final approval of the Settlement, communicating with Settlement Class,

17  preparing for and attending the Final Approval hearing on August 1, 2025, and administering the

18  Settlement, assuming it is approved by the Court. Levis Decl., ¶ 46.

19      Plaintiffs' Counsel's billing rates are reasonable when compared with the prevailing market

20  rates. Plaintiffs' Counsel hourly rates range from $430 to $1,650 for attorneys, and from $250 to

21  $395 for litigation staff. Levis Decl., ¶ 45, Ex. A; Scott Decl., ¶¶ 4, 8, Ex. A; Todzo Decl., ¶¶ 4,

22  10, Ex. A; Wood Decl., ¶ 4, Ex. A. These rates are consistent with rates approved in complex class

23  actions throughout this District. *See In re Volkswagen "Clean Diesel" Mktg., Sales Prac., &*

24  *Prods. Liab. Litig.*, No. 2672 CRB (JSC) 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017)

25  (approving rates of $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for

26  paralegals); *See Barrett v. Apple Inc*., No. 5:20-CV-04812-EJD, 2025 WL 1002786 (N.D. Cal.

27  Apr. 3, 2025) (granting motion for attorneys' fees where hourly rates charged by attorneys range

28  from $500 to $1,545); *In re JUUL Labs*, *Inc., Mktg., Sales Prac. & Prod. Liab. Litig.,* No. 19-md-

02913-WHO, 2023 WL 11820531, at *2 (N.D. Cal. Dec. 18, 2023) (approving rates ranging from $300 to $1,050 for attorneys); *In re MacBook*, 2023 WL 3688452, at *15 (approving partner rates up to $1,195, associate rates up to $850, $425 for contract attorneys, and $325 for paralegals); *Ramirez v. TransUnion*, No. 12-cv-00632-JSC, 2022 WL 17722395, at *9 (N.D. Cal. Dec. 15, 2022) (finding hourly rates ranging from $1,325 to $455 to be "generally in line with rates prevailing in this community for similar services by lawyers of reasonably comparable skill, experience and reputation"); *In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2022 WL 327707, at *8 (N.D. Cal. Feb. 3, 2022) (approving attorney rates between $300 and $1,105); *In re Google Location Hist. Litg.*, No. 5:18-cv-05062-EJD, 2024 WL 1975462, at *15 (N.D. Cal. May. 3, 2024) (approving hourly rates from $550 to $1,300 for partners, $420 to $710 for associates, and $535 for paralegals); *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *8 (N.D. Cal. Jan. 16, 2024) (finding rates ranging from $425 to $1,200 to be reasonable in a data breach case).

The requested fee award would represent a lodestar multiplier of 1.62. Levis Decl., ¶ 42. This multiplier is reasonable given (1) the complex, technical subject matter at issue; (2) the qualified representation Plaintiffs' Counsel provided throughout the litigation; (3) the exceptional results obtained, resulting in a settlement that will provide significant monetary relief to those consumers actually impacted by Apple's alleged privacy violations; and (4) the substantial risks Plaintiffs' Counsel took on in representing Plaintiffs on a contingency fee basis, thereby risking potential nonpayment. These risks were particularly magnified given Apple's strong defense team and the highly technical nature of the case. Further, the multiplier falls at or below the typical range of reasonableness, and multipliers in this range have been previously been found to be appropriate. *See, e.g., In re Wells Fargo & Co. S'holder Litig.*, 445 F. Supp. 3d 508, 532 (N.D. Cal. Apr. 7, 2020) (finding a 2.7 multiplier reasonable); *Rodman v. Safeway Inc.*, No. 11-cv-03003, 2018 WL 4030558, at *6 (N.D. Cal. Aug. 23, 2018) (finding a 1.7472 multiplier reasonable); *Bellinghausen*, 306 F.R.D. at 265 (finding a 1.49 multiplier reasonable); *In re Google Referrer Header Priv. Litig.*, No. 5:10-CV-04809-EJD, 2023 WL 6812545, at *10 (N.D. Cal. Oct. 16, 2023) (approving multiplier of 1.85 in an internet privacy case). Thus, a lodestar check also confirms that the

13

1  requested fees is reasonable and appropriate in light of the time and effort expended and the results

2  obtained.

### B.  The Requested Expenses are Reasonable and Should be Reimbursed

4      Class Counsel also requests reimbursement of $916,125.83 in litigation expenses. Levis

5  Decl., ¶ 40, Ex. C; Scott Decl., ¶¶ 13-14, Exs. C, D; Todzo Decl., ¶ 13, Ex. C; Wood Decl., ¶ 13,

6  Ex. C. In common fund cases "[c]lass counsel is entitled to reimbursement of reasonable

7  expenses." *In re Lidoderm*, 2018 WL 4620695, at *4 (quotation omitted); *see also Schneider v.*

8  *Chipotle Mexican Grill, Inc.,* 336 F.R.D. 588 (N.D. Cal. 2020) ("Class Counsel is entitled to

9  recover those out-of-pocket expenses that would normally be charged to a fee-paying client").

10  "The prevailing view is that expenses are awarded in addition to the fee percentage." *Williams v.*

11  *SuperShuttle Int'l, Inc*., No. 12-CV-06493-WHO, 2015 WL 685994, at *2 (N.D. Cal. Feb. 12,

12  2015).

13      The requested reimbursement includes the costs to retain statistical, economic, and privacy

14  experts, and the mediator ($615,811.55), accounting for 67% of the total expenses. Levis Decl., ¶

15  57. Other expenses include: transcript, court reporter and deposition fees ($121,697.54); travel

16  ($52,156.88); in-house copying charges ($13,941.71); and document production and hosting costs

17  ($69,960.63). *Id*.; *see also In re LendingClub Sec. Litig*., No. 16 Civ. 02627, 2018 WL 4586669,

18  at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel

19  and lodging costs, legal research fees, and copying expenses were reasonable and recoverable).

20  Because expenses were reasonably incurred in the prosecution of this Lawsuit, Plaintiffs' Counsel

21  respectfully requests that the Court fully reimburse these reasonably incurred expenses.

### C.  The Requested Service Awards are Reasonable and Warranted

23      Service awards are "fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp*., 563

24  F.3d 948, 958 (9th Cir. 2009). They "are intended to compensate class representatives for work

25  done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

26  action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id*. at

27  958-59. Put simply, they function as "payments to class representatives for their service to the

28  class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols., Inc*., 715 F.3d 1157, 1163 (9th Cir.

14

2013). "It is well-established in [the Ninth Circuit] that named plaintiffs in a class action are eligible for reasonable incentive payments." *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Here, Plaintiffs Rodriguez, Pappas, and Yacubian request a Service Award of $10,000 each. These Service Awards are fair, reasonable, and adequate. Each Plaintiff played a pivotal role in litigating this case, as they reviewed pleadings and other filings, remained informed during all stages of the litigation, responded to discovery, searched for and produced documents, sat for depositions, and played an active role in approving the Settlement terms. *See* Declarations of Fumiko Rodriguez, David Yacubian and John Troy Pappas. Throughout this Lawsuit, each ensured the interests of Settlement Class Members were protected and, when considering the Settlement, ensured that Settlement Class obtained meaningful relief. *Id*. The requested Service Awards are also consistent with the Ninth Circuit practice. *See Barrett*, 2025 WL 1002786, at *4 (awarding $10,000 to each of the four class representatives, over Apple's objections); *Katz-Lacabe v. Oracle Am., Inc*., No. 3:22-CV-04792-RS, 2024 WL 4804974, at *6 (N.D. Cal. Nov. 15, 2024) (finding the requested service awards of $10,000 each to class representatives is reasonable); *Gaston v. FabFitFun, Inc*., No. 2:20-CV-09534-RGK-E, 2021 WL 3362028, at *9 (C.D. Cal. Apr. 2, 2021) (same)*; Ozga v. U.S. Remodelers, Inc*., No. C 09-05112 JSW, 2010 WL 3186971, at *3 (N.D. Cal. Aug. 9, 2010) (J. White) (same). If the Court approves them, the total Service Awards will be $30,000 which is 0.03% of the Gross Settlement Amount, a ratio that falls well below the range of what has been deemed to be reasonable. *See, e.g., In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 948 (9th Cir. 2015) (finding incentive awards which made up "a mere .17% of the total settlement fund of $27,250,000" reasonable).

## III.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court (1) approve Plaintiffs' Counsel's request for attorneys' fees in the amount of $28,500,000 (30% of $95,000,000) and expenses of $916,125.83; and (2) approve Service Awards to Plaintiffs Rodriguez, Pappas, and Yacubian in the amount of $10,000 each, totaling $30,000.

Dated: May 28, 2025

Respectfully submitted,

/s/ Christian Levis
Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

Mark N. Todzo (Bar No. 168389)
Patrick Carey (Bar No. 308623)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com

E. Kirk Wood (*pro hac vice*   forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: 205-612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2    I, Christian Levis, certify that on May 28, 2025 the foregoing document entitled

3  PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND

4  PLAINTIFFS' APPLICATION FOR SERVICE AWARDS was filed electronically in the Court's

5  ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic

6  Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

7                          _/s/ Christian Levis_____
                          Christian Levis
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28