Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Mark N. Todzo (Bar No. 168389)
Patrick Carey (Bar No. 308623)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
pcarey@lexlawgroup.com

Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

E. Kirk Wood (*pro hac vice*)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: 205-612-0243
kirk@woodlawfirmllc.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as Guardian of A.L., a Minor, JOHN TROY PAPPAS, and DAVID YACUBIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>     Defendant. | Docket No.: 4:19-cv-04577-JSW (SK)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5, 2nd Floor<br>Date: August 1, 2025<br>Time: 9:00 a.m. |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 1, 2025, at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 5 of the United States District Court for the Northern District of California via Zoom videoconference, the Honorable Jeffrey S. White presiding, Plaintiffs Fumiko Rodriguez (formerly known as Fumiko Lopez), individually and as guardian of A.L., John Troy Pappas, and David Yacubian ("Plaintiffs"), through their undersigned counsel and on behalf of the proposed Settlement Class, will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for entry of an Order: (i) granting final certification of the proposed Settlement Class; (ii) granting final approval of the proposed Settlement with Apple Inc. ("Apple") and the proposed plan of allocation; (iii) finding that the Court-approved notice plan was implemented and satisfies due process; and (iv) dismissing with prejudice Plaintiffs' and Settlement Class Members' claims against Apple.

The Motion is based upon this Notice of Motion and Motion, the Memorandum of Law set forth below, the Joint Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") (ECF No. 336-1), including the Settlement Agreement and Release ("Settlement" or "Settlement Agreement" or "SA") (ECF No. 336-2) and other exhibits attached thereto (ECF Nos. 336-3 to 336-9), the Declaration of Christian Levis in Support of Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards ("Levis Decl.") (ECF No. 354-1), the Declaration of Steven Weisbrot Re: Notice and Administration ("Weisbrot Decl.") and the exhibits attached thereto, the Declaration of Erin Green Comite ("Comite Decl."), the pleadings and records on file in this Lawsuit, the proposed Final Approval Order and Judgment submitted herewith, and, other such matters and argument as the Court may consider at the hearing of this Motion.

On these grounds, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter the proposed Final Approval Order and Judgment.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should grant final certification of the Settlement Class under Federal Rules of Civil Procedure 23(a) and 23(b)(3);

2.      Whether the Court should grant final approval of the Settlement and plan of allocation under Federal Rule of Civil Procedure 23(e)(2);

3.      Whether the Court-approved notice plan was implemented and satisfies due process; and

4.      Whether the Court should enter judgment of dismissal of Plaintiffs' and Settlement Class Members' claims against Apple.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................................................... i

STATEMENT OF ISSUES TO BE DECIDED ............................................................................. ii

TABLE OF CONTENTS .................................................................................................................. iii

TABLE OF AUTHORITIES ................................................ **Error! Bookmark not defined.**

MEMORANDUM OF LAW ............................................................................................................. 1

I.      INTRODUCTION .................................................................................................................. 1

II.     THE NOTICE PLAN HAS BEEN SUCCESSFULLY IMPLEMENTED ................................ 2

III.    ARGUMENT ....................................................................................................................... 4

       A.      Legal Standard for Final Approval ..............................................................................4

       B.      The Court Should Certify the Settlement Class ..........................................................4

       C.      The Court Should Grant Final Approval of the Settlement ........................................6

             1.       The *Rodriguez* Factors Support Final Approval of the Settlement ........................ 6

             2.       The Rule 23(e)(2) Factors Have Been Satisfied .................................................... 10

             3.       With No Signs of Collusion, the Settlement Satisfies the Pre-Certification

                   Heightened Scrutiny Requirement ...................................................................... 13

       D.      The Court-Approved Notice Plan Satisfies Due Process

            and the Rule 23 Requirements ...................................................................................14

       E.      The Parties Will Identify Appropriate *Cy Pres* Recipients ...................................15

IV.    CONCLUSION .................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adoma v. Univ. of Phx. Inc.*,
  913 F. Supp. 2d 964 (E.D. Cal. 2012) ...................................................4

*Alvarez v. Sirius XM Radio Inc.*,
  2020 WL 7314793 (C.D. Cal. July 15, 2020).............................11, 12

*Barrett v. Apple Inc.*,
  2024 WL 5339480 (N.D. Cal. Dec. 19, 2024)....................................4, 5

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...........................................................14

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ..............................................................9

*Dexter's LLC v. Gruma Corp.*,
  2023 WL 8790268 (S.D. Cal. Dec. 19, 2023) .....................................7

*Dixon v. Cushman & Wakefield W., Inc.*,
  2022 WL 1189883 (N.D. Cal. Apr. 21, 2022)................................8, 10

*Granados, v. Hyatt Corp.*,
  2024 WL 3941828 (S.D. Cal. Aug. 26, 2024)....................................13

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*,
  2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) ...................................12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................6

*In re Apple In-App Purchase Litig.*,
  2013 WL 1856713 (N.D. Cal. May 2, 2013).......................................5

*In re Apple Inc. Device Performance Litig.*,
  2023 WL 2090981 (N.D. Cal. Feb. 17, 2023)...................................5, 7

*In re Carrier IQ, Inc., Consumer Priv. Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ..................................10

*In re Classmates.com Consol. Litig.*,
    2010 WL 11684544 (W.D. Wash. Apr. 19, 2010) ...............................................14

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) .................................................13

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ..........................................................13

*In re Facebook, Inc. Internet Tracking Litig.*,
    2024 WL 700985 (9th Cir. Feb. 21, 2024) ......................................................8

*In re Facebook Internet Tracking Litig.*,
    2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) ...............................................10

*In re Google Assistant Priv. Litig.*,
    No. 19-CV-04286-BLF (N.D. Cal.)................................................................7, 8

*In re Google Location Hist. Litig.*,
    2024 WL 1975462 (N.D. Cal. May 3, 2024)...................................................15

*In re Lidoderm Antitrust Litig.*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)................................................12

*In re LivingSocial Mktg. & Sales Prac. Litig.*,
    298 F.R.D. 1 (D.D.C. 2013)..........................................................................15

*In re MacBook Keyboard Litig.*,
    2023 WL 3688452 (N.D. Cal. May 25, 2023)..................................................7

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .........................................................................7

*In re TikTok, Inc., Consumer Priv. Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022).................................................9, 10, 12

*In re TikTok, Inc. Consumer Privacy Litig.*,
    No. 1:20-cv-04699 (N.D. Ill.) .......................................................................10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020) ................................................10

*Katz-Lacabe v. Oracle Am., Inc.*,
    2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ...............................................13

*Katz-Lacabe v. Oracle Am., Inc.*,
   No. 3:22-cv-04792 (N.D. Cal.) ............................................................................9

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ...............................................................8

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ......................................................................14, 15

*Larsen v. Trader Joe's Co.*,
   2014 WL 3404531 (N.D. Cal. July 11, 2014) .....................................................7

*Mandalevy v. BofI Holding, Inc.*,
   2022 WL 4474263 (S.D. Cal. Sept. 26, 2022)...................................................12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)....................................................................8, 9

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ...............................................................................6

*Opperman v. Kong Techs., Inc.*,
   2017 WL 11676126 (N.D. Cal. July 6, 2017) ...................................................15

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ...........................................11, 13

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...........................................................6, 7, 8, 14

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ......................................................................4, 13

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) .............................................................................5

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal. 2020)......................................................................10

*Shahar v. Hotwire, Inc.*,
   2014 WL 12647737 (N.D. Cal. July 25, 2014) .................................................15

*Smith v. Apple, Inc.*,
   2024 WL 4584576 (N.D. Cal. Oct. 25, 2024) ...................................................13

*Smith v. Keurig Green Mountain, Inc.*,
 2023 WL 2250264 (N.D. Cal. Feb. 27, 2023) ....................................................15

*Stewart v. Apple Inc.*,
 2022 WL 3013122 (N.D. Cal. Feb. 17, 2022) ....................................................15

*Torres v. Pet Extreme*,
 2015 WL 224752 (E.D. Cal. Jan. 15, 2015) ........................................................7

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ..........................................................................12

*Waldbuesser v. Northrop Grumman Corp.*,
 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ...................................................12

**Statutes, Rules, and Regulations**

Fed R. Civ. P.
 Rule 23 .....................................................................................................*passim*

Cal. Penal Code
 §632 .......................................................................................................................7

18 U.S.C.
 §2510......................................................................................................................7
 §2702......................................................................................................................7

**Other Authorities**

Federal Trade Commission, Consumers and Class Actions: A
 Retrospective and Analysis of Settlement Campaigns (Sept. 2019),
 https://www.ftc.gov/system/files/documents/reports/consumers-class-
 actions-retrospective-analysis-settlement-
 campaigns/class_action_fairness_report_0.pdf ...................................................3

Albert Mosby, *62 Voice Search Statistics 2025 (Number of Users & Trends)*,
 Yaguara.co: How Many People Use Siri? (May 21,2025),
 https://www.yaguara.co/voice-search-
 statistics/#:~:text=4.,a%20voice%20assistant%20every%20week .....................4

# MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiffs seek final approval of this class settlement with Apple consisting of a $95,000,000 non-reversionary common fund and additional non-monetary relief targeted at addressing the alleged privacy violations in this Lawsuit.[1]  The Settlement, if finally approved, will resolve Plaintiffs' and the Settlement Class's allegations that Siri Device purchasers' and owners' confidential or private communications were obtained by Apple and/or were shared with third parties without their consent as a result of an unintended Siri activation.  On February 10, 2025, the Court preliminarily certified the proposed Settlement Class, granted preliminary approval to the proposed Settlement and proposed plan of allocation, and, among other things, ordered Notice to be effectuated.  ECF No. 341.

The Settlement was reached after extensive, arm's-length negotiations between experienced counsel, including an all-day, in-person private mediation session and numerous telephonic follow-up settlement negotiation discussions.  This litigation was highly contentious and hard-fought, with the Parties briefing Apple's motions to dismiss and multiple discovery disputes, among other issues.  Joint Decl. ¶¶13–14, 16, 19.  Plaintiffs and Class Counsel also had a thorough understanding of the strengths and weaknesses of the claims at the time the Settlement was negotiated based on their extensive factual investigation, the comprehensive discovery taken, including numerous depositions and review of hundreds of thousands of pages of documents produced by Apple and third parties, and the analysis of experts and consultants to assist with Plaintiffs' anticipated motion for class certification.  *Id*. ¶¶15, 17–18.

As demonstrated below, this Settlement is an excellent recovery for the Settlement Class considering the substantial risks at class certification and trial.  Based on an informed evaluation of the facts and governing legal principles, and their recognition of the substantial risk and expense of continued litigation, Plaintiffs and Plaintiffs' Counsel respectfully submit that the proposed Settlement and plan of allocation are fair, reasonable, and adequate under Rule 23(e).  *Id*. ¶35.  Furthermore, the Court-approved notice plan was implemented by the Court-appointed Settlement Administrator and satisfies due process and the Rule 23 requirements by adequately providing notice to the Settlement Class.  Accordingly,

---

[1]    Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Settlement Agreement.  ECF No. 336-2.

Plaintiffs respectfully request that the Court enter an Order: (i) granting final certification of the proposed Settlement Class; (ii) granting final approval of the proposed Settlement with Apple and the proposed plan of allocation; (iii) finding that the Court-approved notice plan was implemented by the Court-appointed Settlement Administrator and satisfies due process by adequately providing notice to the Settlement Class; and (iv) dismissing with prejudice Plaintiffs' and Settlement Class Members' claims against Apple.

## II.     THE NOTICE PLAN HAS BEEN SUCCESSFULLY IMPLEMENTED[2]

The Court-approved Settlement Administrator is Angeion Group ("Angeion").  ECF No. 341 ¶6. Since the entry of the Preliminary Approval Order, Angeion successfully implemented the notice plan. First, Angeion received from Apple a data file containing contact information for current or former owners or purchasers of a Siri Device, which, after de-duplication, included approximately 161 million unique records.  Weisbrot Decl. ¶¶7–8.  Thereafter, Angeion: (i) caused Email Notice to be emailed to more than 143.3 million valid email addresses; (ii) caused Email Reminder Notice to be emailed to more than 61.7 million individuals who did not open their Email Notice and had not yet submitted a Claim Form; (iii) orchestrated a state-of-the-art media notice campaign; (iv) created and managed the Settlement Website; (v) created and managed an email inbox; and (vi) obtained and managed the toll-free number.  Thereafter, Angeion: (i) caused Email Notice to be sent to more than 143.3 million valid email addresses; (ii) caused Email Reminder Notice to be emailed to more than 61.7 million individuals who did not open their Email Notice and had not submitted a Claim Form; (iii) orchestrated a state-of-the-art media notice campaign; (iv) created and managed the Settlement Website; (v) created and managed an email inbox; and (vi) obtained and managed the toll-free number.  *Id.* ¶¶9-19 & Exs. B–F. The media campaign exceeded expectations, delivering over 14 million digital impressions. *Id.* ¶14.  Further, the Settlement has received over 1,350 pieces of online coverage, which in turn resulted in an estimated 157,000 social media engagements, such that an estimated 77.4 million people reviewed coverage about the Settlement. *Id.* ¶16. The Settlement Website provides information to potential members of the Settlement Class about the Lawsuit and Settlement, contains links to important settlement documents, and allows Settlement Class Members to file claims electronically.  *Id.* ¶¶17–18.  The Settlement Website has received 7,541,554

---

[2]     The Joint Declaration (ECF No. 336-1) and Levis Declaration (ECF No. 354-1) summarize the Lawsuit's factual background and the key terms of the Settlement.  Plaintiffs also incorporate by reference the arguments they made in support of their motion for preliminary approval.  ECF No. 336.

website visits by 5,060,212 unique users, totaling 13,251,505 pageviews. *Id.* ¶18.

Angeion and Class Counsel have undertaken extensive efforts to ensure all individuals who wish to file a claim prior to the deadline are able to do so. To date, Angeion has received and responded to more than 92,000 emails. *Id.* ¶18. The toll-free line, available 24 hours a day, 7 days a week, is dedicated to answering questions from the Settlement Class and has received more than 23,000 calls. *Id.* ¶19. Class Counsel also have answered hundreds of questions by email and phone and worked with Angeion to effectively resolve any issues encountered by Settlement Class Members. Comite Decl. ¶4. Through May 31, 2025, Angeion has incurred approximately $875,732.18 in costs to provide notice and administration services for this Settlement, which is 0.92% of the Gross Settlement Amount. Weisbrot Decl. ¶24. Angeion estimates there will be approximately $2,525,000.00 in future administrative costs through the conclusion of this Settlement. *Id.*

The Class has responded positively to the Settlement. To date, Angeion has received 339 requests to opt out of the Settlement and only two Settlement Class Members have objected to the Settlement.[3] *Id.* ¶¶22–23; ECF Nos. 350–53.[4] Moreover, as of June 26, 2025, Angeion has received more than 2,191,000 Claim Forms, representing a 1.53% claims submission rate, calculated based on the number of individuals sent an Email Notice. Weisbrot Decl. ¶20. This is consistent with claims rates in comparable data privacy settlements, which range between 0.4% and 13% (Joint Decl., Ex. 2) as well as those in the FTC's 2019 study of consumer class actions.[5] *See also* Weisbrot Decl. ¶20. The deadline to file claims is July 2, 2025.

Notably, the number of people who were sent Email Notice is materially greater than the number of Settlement Class Members; consequently, the actual claims rate is higher. Those sent Email Notice includes people who did not enable the Siri function or experience an unintended Siri activation, or if they did experience an unintended Siri activation, it did not occur during a conversation intended to be confidential or private, and thus, are not eligible to participate in the Settlement. Comite Decl. ¶3. Public

---

[3] The deadline for objecting to the Settlement is July 2, 2025. Thus, Plaintiffs will respond to these objections in their response brief due July 25, 2025.

[4] Three of the filed objections were submitted by the same person. ECF Nos. 351–53.

[5] *See* FEDERAL TRADE COMMISSION, CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS (Sept. 2019), https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

1   reports indicate that 85.2 million people in the United States use Siri.[6]  *Id*.  Thus, using this as a

2   conservative estimate for the Settlement Class size, the actual claims rate is approximately 2.57%.  *Id*.

3   **III.     ARGUMENT**

4   **A.     Legal Standard for Final Approval**

5   Final approval is a multi-step inquiry: first, the Court must certify the proposed settlement class;

6   second, it must determine that the settlement proposal is "fair, reasonable, and adequate;" and third, it

7   must assess whether notice has been provided in a manner consistent with Rule 23 and due process.  *See*

8   Fed. R. Civ. P. 23(e)(2); *Adoma v. Univ. of Phx. Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  Further,

9   "class settlements reached prior to formal class certification require a 'heightened fairness inquiry.'"

10  *Barrett v. Apple Inc.*, 2024 WL 5339480, at *3 (N.D. Cal. Dec. 19, 2024) (quoting *Roes, 1-2 v. SFBSC*

11  *Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019)).  "When reviewing such a pre-certification settlement,

12  the district court must . . . look for and scrutinize any subtle signs that class counsel have allowed pursuit

13  of their own self-interests . . . to infect the negotiations."  *Id*. (citation modified).  These procedures

14  safeguard class members' due process rights and enable the Court to fulfill its role as the guardian of class

15  interests.  The Settlement satisfies each of these requirements.

16  **B.     The Court Should Certify the Settlement Class**

17  On February 10, 2025, the Court preliminarily certified the Settlement Class for the purpose of

18  Settlement only pursuant to Rules 23(a) and (b)(3).  ECF No. 341 ¶3.  Nothing has occurred that would

19  change the Court's preliminary determination.  First, pursuant to Rule 23(a)(1), there can be no doubt that

20  numerosity is satisfied as there are millions of Settlement Class Members.  *See* §II, *supra*.  Pursuant to

21  Rule 23(a)(2), there are common questions, including, *inter alia*: (a) whether Apple made uniform

22  representations, promising that Siri will only record users when they intentionally use Siri, and breached

23  those promises; (b) whether Siri Devices intercept or record individuals' private conversations absent

24  uttering a "trigger word"; (c) whether this practice violated state and federal privacy laws; and (d) whether

25  Plaintiffs and Settlement Class Members sustained damages as a result of Apple's conduct, and if so, what

26  is the appropriate measure of damages or restitution.  ECF No. 70 (Second Amended Class Action

27

28  ---
    [6]      Albert Mosby, *62 Voice Search Statistics 2025 (Number of Users & Trends)*, YAGUARA.CO:
    HOW MANY PEOPLE USE SIRI? (May 21,2025), https://www.yaguara.co/voice-search-
    statistics/#:~:text=4.,a%20voice%20assistant%20every%20week.

Complaint ("SAC")) ¶87. Plaintiffs' claims also are typical of the claims of the Settlement Class under Rule 23(a)(3) as they "all arise from the same nucleus of facts," *Barrett*, 2024 WL 5339480, at *3—that is, Apple's alleged recording of individuals' private communications without their consent as the result of an unintended Siri activation, where Plaintiffs, like Settlement Class Members, agreed to Apple's uniform terms of service and privacy policies. SAC ¶88. Under Rule 23(a)(4), neither Plaintiffs nor Class Counsel have any conflicts of interest with any Settlement Class Members, and both have demonstrated their commitment to prosecute the action vigorously on behalf of the Class. *See* Declaration of Fumiko Rodriguez, ECF No. 354-5 ¶4; Declaration of John Troy Pappas, ECF No. 354-6 ¶4; Declaration of David Yacubian, ECF No. 354-7 ¶4; Joint Decl. ¶¶12–25, 34–36; Levis Decl. ¶¶8–39. *See, e.g.*, *Barrett*, 2024 WL 5339480, at *3 (finding Rule 23(a) factors satisfied and stating "in the absence of any facts to the contrary, there is also no indication that Plaintiffs' interests would conflict with that of the Settlement Class such that representation would be inadequate").

The predominance and superiority requirements under Rule 23(b)(3) are also satisfied. Predominance is met if the proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (citation modified). The Settlement Class is cohesive: all members of the Settlement Class purchased or owned Siri-enabled devices, and their claims turn on the same set of facts, i.e., Apple's alleged unauthorized recording during unintended Siri activation. SAC ¶¶69–73. Thus, common questions of law and fact predominate across the Settlement Class. Furthermore, the superiority factors considered under Rule 23(b)(3) weigh in favor of certifying the Settlement Class. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). Managing these disputes in a single class action before a single judge is preferable and more manageable than millions of users bringing individual actions. The filing fees and litigation costs of such individual actions alone would likely exceed the value of any potential recovery, leaving no incentive for an individual to seek relief and, consequently, no adequate remedy achievable by an individual Settlement Class Member. Thus, the Settlement Class satisfies the requirements of Rules 23(a) and (b)(3), and final certification should be granted. *See, e.g.*, *Barrett*, 2024 WL 5339480, at *3 (certifying a Rule 23(b)(3) settlement class); *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *6 (N.D. Cal. Feb. 17, 2023) (same); *In re Apple In-App Purchase Litig.*, 2013 WL 1856713, at *4 (N.D. Cal. May 2, 2013) (same).

## C.    The Court Should Grant Final Approval of the Settlement

Rule 23(e) permits a court to approve a settlement that will bind a class "only on finding that it is fair, reasonable, and adequate after considering" a number of factors.  Fed. R. Civ. P. 23(e)(2); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The court "may consider some or all" of the following factors:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009);[7] *see also Hanlon*, 150 F.3d at 1026.  "The relative degree of importance to be attached to any particular factor" is case specific.  *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  Further, courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

This Court previously made a preliminary determination that the Settlement is "approved as fair, reasonable, and adequate."  ECF No. 341 ¶2.  There is no reason for the Court to depart from its preliminary conclusion.

### 1.    The *Rodriguez* Factors Support Final Approval of the Settlement

#### a.    The Strength of Plaintiffs' Case and Risks Support Final Approval (*Rodriguez* Factors 1–3)

The claims asserted in this case were extremely risky.  Plaintiffs have always believed in the strength of their case and that Apple would be held liable on the merits if the case proceeded to trial.  However, there were significant risks in prosecuting this case, including the risk of obtaining class certification and maintaining that class action status through trial, that ultimately could have led to no

---

[7]    For convenience, these factors are referred to herein as the "*Rodriguez* Factors."

recovery for the Class.  Joint Decl. ¶¶35–45; Levis Decl. ¶¶11–15.  For instance, in an analogous case in this District based on Google's voice assistant technology, the court denied class certification of statutory privacy claims and wiretapping claims, which carry statutory damages.  *See In re Google Assistant Priv. Litig.*, No. 19-CV-04286-BLF, ECF No. 414 (N.D. Cal.) (public redacted order denying certification to claims under the Wiretap Act, 18 U.S.C. §2510 *et seq.*, Stored Communications Act ("SCA"), 18 U.S.C. §2702 *et seq.*, and California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §632, as well as to claims for intrusion upon seclusion and invasion of privacy under the California Constitution).  This is consistent with the inherent risk associated with data privacy law, which is continually developing to account for new technologies, facts, and circumstances.  *See Dexter's LLC v. Gruma Corp.*, 2023 WL 8790268, at *5 (S.D. Cal. Dec. 19, 2023) (finding risk of continued litigation favors approval of settlement given "the evolving legal landscape" of the law at issue in the case); *Torres v. Pet Extreme*, 2015 WL 224752, at *6 (E.D. Cal. Jan. 15, 2015) (finding that the "risk that an opinion could issue changing the legal landscape in this relatively new area of [law]" favors approval of settlement), *adopted* 2015 WL 13653878 (Feb. 24, 2015).  Apple's incentive to litigate this case aggressively, in light of defendants' success at class certification in cases with similar claims, compounds the risk to Plaintiffs and Class Members, weighing in favor of settlement.  *See Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014).

> **b.** **Extensive Discovery, the Stage of Proceedings, and the Class Counsel's Views Support Final Approval (*Rodriguez* Factors 5–6)**

Courts also consider whether class counsel had sufficient information to make an "informed decision" about the merits of the case and counsel's views on the settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Discovery has been extensive, involving significant document production, depositions, and motion practice. Joint Decl. ¶¶15–20; Levis Decl. ¶¶16–26.  Thus, Plaintiffs and Plaintiffs' Counsel were fully informed about the relevant facts when negotiating and entering into the proposed Settlement, supporting their view that the Settlement is fair, reasonable, and adequate. Joint Decl. ¶¶36–43.  *See, e.g.*, *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023) (four years of extensive discovery and litigation supported final approval); *Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *7 (extensive discovery, including party and non-party depositions and multi-million page document production, supported final approval).  Class Counsel also

had the added experience of litigating the *Google Assistant* case through class certification, and were well informed of the legal risks and current case law on these exact types of claims in this District. *Google Assistant*, No. 19-CV-04286-BLF, ECF No. 414 (N.D. Cal.).

### c. The Amount Offered in the Settlement Supports Final Approval (*Rodriguez* Factor 4)

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a particular formula." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (citation modified). In assessing the consideration available to Settlement Class Members in a proposed Settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citation modified). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.*

While Plaintiffs believe they would succeed at class certification and trial, Apple disputes any liability or that there are any recoverable damages, and would vigorously defend itself at class certification and trial. If Plaintiffs were successful at class certification and trial, it would be unreasonable to assume a complete success on all claims, and thus a recovery of the maximum amount of statutory damages available under Plaintiffs' wiretapping claims would be highly unlikely, given that other similar cases have failed in that regard. *See Google Assistant*, No. 19-CV-04286-BLF, ECF No. 414 (N.D. Cal.). Accordingly, Class Counsel estimated the risk adjusted value of the Settlement to reflect approximately 10% of recoverable damages. Joint Decl. ¶44. In addition, Apple has agreed to non-monetary relief that benefits the entire class. SA §B.14. Courts find similar recoveries to be within the range of reasonableness and support final approval. *See In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985, at *1 (9th Cir. Feb. 21, 2024) (district court did not abuse its discretion in determining that $90 million settlement, plus classwide injunctive relief, in data privacy case on behalf of approximately 100 million individuals was fair and reasonable where class counsel estimated maximum recoverable damages were $900 million); *Rodriguez*, 563 F.3d at 965 (concluding that ten percent of the class's estimated damages was a fair and reasonable settlement award); *Dixon v. Cushman & Wakefield W., Inc.*, 2022 WL 1189883, at *7 (N.D. Cal. Apr. 21, 2022) (finding settlement fund that was an estimated 8% of the total maximum

recovery fair in relation to the risks of continued litigation); *see also Katz-Lacabe v. Oracle Am., Inc.*, No. 3:22-cv-04792, ECF No. 132 at 6, 15 (N.D. Cal.) (resolving data privacy class action involving statutory claims and over 220 million class members for $115 million) and *id.*, ECF No. 180 (granting final approval); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 937-38 (N.D. Ill. 2022) (granting final approval to data privacy class action involving statutory claims and over 80 million class members for $92 million); ECF No. 336-3, Joint Decl., Ex. 2 (chart detailing additional settlements in comparable cases).

### d. Class Members' Positive Reaction, the Small Number of Opt-Outs and Objections, and Lack of a Governmental Objector Favor Final Approval (*Rodriquez* Factors 7–8)

The Court also should consider the reaction of class members to the proposed settlement when determining the Settlement's fairness. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed [class action settlement] are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529 (collecting cases). In addition to the intentionally overbroad notice program reaching a large number of members of the Settlement Class, the Settlement received over 1,350 pieces of online coverage, which in turn resulted in an estimated 157,000 social media engagements and an estimated 77.4 viewers of that coverage. Weisbrot Decl. ¶16 & Ex. F. Yet, *only 2* unique objections to the Settlement have been filed thus far and *only 339* requests for exclusion have been received by Angeion. *Id.* ¶¶22–23; ECF Nos. 350–53. While Plaintiffs will respond to any objections separately, the overall low number of objections relative to the overall size of the Settlement Class reflects a positive reaction overall.

Email Notice was sent to approximately 143.3 million individuals who are current or former purchasers or owners of Siri Devices. Weisbrot Decl. ¶¶7, 9–10. As of June 26, 2025, Angeion has received more than 2,191,000 Claim Forms. *Id.* ¶20. Based on the total number of individuals who were sent Email Notice, this represents a 1.53% claims submission rate. *Id.* However, as noted above, the notice population is overinclusive (*see* §II, *supra*), and accordingly, the actual claims rate is higher. Class Counsel believe a conservative estimate of the true class size is closer to 85.2 million, resulting in a 2.57% claims submission rate. Comite Decl. ¶3. Even this estimated class size is overinclusive, as it would

include Siri Device owners and purchasers who did not experience an unintended Siri activation during a conversation intended to be confidential or private, as is required to submit a claim under the Settlement. *Id.* This places the claims rate in this case in line with other large class actions where "the average claims rate for class sizes over 2.7 million is about 1.4%." *TikTok*, 617 F. Supp. 3d at 929; *see also In re Facebook Internet Tracking Litig.*, 2022 WL 16902426, at *8 (N.D. Cal. Nov. 10, 2022), *aff'd sub nom. Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985 (claims rate "approaching 2%" "is a satisfactory claims rate for class sizes in the millions" (citation modified)). *See also* Weisbrot Decl. ¶20.

Courts view similar responses by settlement classes as support for approving settlements, even where the claims rate is lower than the 1.53%–2.57% range evidenced in this Settlement. *See, e.g.*, *TikTok*, 617 F. Supp. 3d at 937–38 (approving settlement with 1.2 million claims (reflecting a 1.4% claims rate), four objections, and approximately 4,000 opt outs);[8] *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (approving settlement with 0.83% claims rate where only one class member sought to be excluded and the only objection was solely concerned with attorney's fees); *In re Carrier IQ, Inc., Consumer Priv. Litig.*, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (approving settlement with 0.14% claims rate where the "number of objections and opt-outs is small"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *20 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) (0.6% claims rate).

Finally, the fact that no governmental entity has objected to the Settlement further supports final approval. *See, e.g.*, *Dixon*, 2022 WL 1189883, at *8.

### 2. The Rule 23(e)(2) Factors Have Been Satisfied

#### a. Rules 23(e)(2)(A)–(B)

The Settlement is procedurally fair under Rule 23(e)(2)(A) and (B). As discussed above, Plaintiffs' interests here are aligned with other Settlement Class Members' interests, they have vigorously prosecuted this case, and they are represented by counsel with extensive experience who have more than adequately met the obligations and responsibilities of Class Counsel. *See* §III.C.1.b, *supra*. Further, the Settlement is the result of extensive negotiations, assisted by a skilled mediator. Joint Decl. ¶¶21–24;

---

[8] *See In re TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-cv-04699, ECF No. 195 at 22 (N.D. Ill.) (stating 1.4% claims rate).

Levis Decl. ¶5. The Parties engaged in mediation beginning in October 2024, after more than five years of hard-fought litigation. Joint Decl. ¶¶22–24; Levis Decl. ¶¶5, 38–39. The mediation included one in-person session in October 2024 and multiple follow-up discussions over several months, through which the Parties reached an agreement to settle. *Id.* The fact that the Settlement is based on extensive negotiation overseen by an experienced mediator, who analyzed the strengths and weaknesses of the Parties' positions, strongly supports Plaintiffs' Counsel's judgment that the proposed Settlement is fair, reasonable, and adequate. *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (approving settlement achieved following "arm's-length negotiations . . . supervised by [an experienced neutral]" and involving experienced class counsel that had performed sufficient investigation "to make an informed decision about the Settlement and about the legal and factual risks of the case").

### b.      Rule 23(e)(2)(C)

The relief is also substantively adequate under Rule 23(e)(2)(C). The factor considered under Rule 23(e)(2)(C)(i) overlaps with Rodriguez Factors 2–4 discussed above (e.g., "the risk, expense, complexity, and likely duration of further litigation," "the risk of maintaining class action status throughout the trial," and "the amount offered in settlement."). *See* §III.C.1.a, c, *supra.*

Regarding "the effectiveness of any proposed method of distributing relief to the class," Fed. R. Civ. P. 23(C)(ii), "[a] claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020). Under the terms of the plan of allocation in the proposed Settlement, Settlement Class Members who make valid claims will receive a *pro rata* payment based on the number of Siri Devices claimed, up to $20 per device with a cap of 5 devices. SA §B.7. The claims process requires minimal effort, i.e., "logging on to the Settlement Website and submitting a [c]laim there, or a Settlement Class Member may print the Claim [F]orm from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer." *Alvarez*, 2020 WL 7314793, at *6; *see also* Weisbrot Decl. ¶18. Individuals who received Email Notice need only to complete the claim form and provide the claimant identification number and the confirmation code provided to them by Angeion to validate their claims; other claimants who did not receive Email Notice need to provide the model number and serial number of their Siri Devices, or documentation supporting their proof of purchase or

ownership. *See* ECF No. 336 SA Ex. A–B. The Court should thus find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective." *Alvarez*, 2020 WL 7314793, at *6.

Regarding the "terms of any proposed award of attorney's fees, including timing of payment," Fed. R. Civ. P. 23(c)(iii), Plaintiffs' Counsel seek an award of attorneys' fees of 30% of the Settlement Fund. ECF No. 354. Plaintiffs' Counsel have provided detailed information in support of their application in their motion for attorneys' fees and expenses (ECF No. 354) and attorney declarations. ECF Nos. 354-1 to 354-4. Based on the lodestar figures provided, if the Court awarded the 30% fee request, the fee award would reflect a lodestar multiplier of 1.62 (Levis Decl. ¶42), well within the range commonly awarded in class action cases. *See generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050–52 & n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers commonly range from 1.0 to 4.0). The requested fee is also fair in light of this extraordinary recovery and the significant time Plaintiffs' Counsel have devoted to this case on a contingency-fee basis, with the threat of no recovery at all, absent successful resolution. Further, it is consistent with market rates, as reflected by awards made in similar cases in this District and others. *See*, *e.g.*, *TikTok*, 617 F. Supp. 3d at 942 (awarding 33% of $92 million settlement after three years of litigation, recognizing that "[t]he need to provide financial incentives for zealous and effective representation of consumers in legally and technologically complex data privacy cases such as this[]"); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $104.75 million settlement); *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, 2024 WL 4267431, at *3 (C.D. Cal. Sept. 17, 2024) (awarding 33% of the $70 million settlement as attorney fees); *Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818, at *3 (C.D. Cal. Oct. 24, 2017) (explaining "[s]everal courts have awarded attorney fees of one-third of a common fund" when counsel has "expended significant effort . . . in prosecuting the action").

As to "any agreement required to be identified by Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), the Parties agreed that Apple has a right to terminate the agreement if the number of opt outs from the Settlement reaches a certain threshold. SA §E.5. Such a termination provision is common in class settlements and does not affect the fairness, reasonableness, or adequacy of the Settlement. *See Mandalevy v. BofI Holding, Inc.*, 2022 WL 4474263, at *9 (S.D. Cal. Sept. 26, 2022) (recognizing "blow-up"

provisions are "common and guard against the possibility that a sufficient number of class members opt out . . . such that the [d]efendant's potential future liability is not reduced in a way that renders the settlement worthwhile"). Plaintiffs provided this agreement to the Court for *in camera* review. *See Smith v. Apple, Inc.*, 2024 WL 4584576, at *5 (N.D. Cal. Oct. 25, 2024) (conducting *in camera* review of similar opt-out agreement and finding it "reasonable").

### c.      Rule 23(e)(2)(D)

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). There is no preferential treatment here because any Settlement Class Member may make a claim for up to $20 per device, with a cap of 5 devices, subject to a *pro rata* decrease based on the number of devices claimed. SA §B.7. Courts in this District have found that allocating settlement benefits among class members in this manner is equitable. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 629 (N.D. Cal. 2021), *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) (granting final approval and finding that *pro rata* distribution does not "treat any class member differently from any other" and this factor weighs in favor of final approval).[9] Finally, any undistributed funds will be used to pay any unanticipated additional costs of settlement administration and then distributed to one or more *cy pres* recipients agreed upon by the Parties and approved by the Court. SA §B.12. Thus, this factor weighs in favor of granting approval.

### 3.      With No Signs of Collusion, the Settlement Satisfies the Pre-Certification Heightened Scrutiny Requirement

Separately, there are no "subtle signs" of collusion that would weigh against final approval, as there is no clear sailing arrangement or reversion of funds, and the requested fee is not disproportionate to the total settlement. *See Roes, 1-2*, 944 F.3d at 1049 (finding the district court erred in approving a settlement with a "clear sailing agreement," "disproportionate cash distribution of attorneys' fees," and "reversionary clauses that would return unclaimed funds to the defendants"). This too supports approval of the Settlement.

---

[9]      The service awards requested for Plaintiffs are reasonable and therefore do not constitute inequitable treatment of class members. *See Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *6 (N.D. Cal. Nov. 15, 2024) (finding the requested service awards of $10,000 each to class representatives is reasonable); *Granados, v. Hyatt Corp.*, 2024 WL 3941828, at *10 (S.D. Cal. Aug. 26, 2024) (same).

### D. The Court-Approved Notice Plan Satisfies Due Process and the Rule 23 Requirements

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It does not require actual notice to each and every class member. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member"). The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. *Id.*; *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard"). The notice plan must also comply with due process requirements. *Rodriguez*, 563 F.3d at 963.

The Class Notice makes all the information required under Rule 23 and due process available to the Settlement Class, as previously found by the Court at preliminary approval. ECF No. 341 ¶8. The notice plan provided for direct notice via email that was successfully delivered to over 138.5 million individuals on the Notice List. Weisbrot Decl. ¶¶8–12, 25. The notice plan also featured state-of-the-art digital and social media notice that delivered over 14 million digital impressions, and the implementation of a dedicated Settlement Website and toll-free telephone support. *Id.* ¶¶14–19, 25. Given the extensive nature of the Notice Plan, its reach—consistent with other effective court-approved notice programs—meets the 70%–95% reach standard set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, and the notice plan comports with the guidance for effective notice articulated in the *Manual for Complex Litigation, Fourth* and the FJC Checklist, which consider 70% reach among class members to be a "high percentage" and reasonable. See also Weisbrot Decl. ¶25.

Several courts have approved similar notice plans, recognizing that email is a reliable means of notification for class members, where, as here, many (if not all) Settlement Class Members would have provided an email address when registering to use a Siri Device. *See In re Classmates.com Consol. Litig.*, 2010 WL 11684544, at *3 (W.D. Wash. Apr. 19, 2010) (finding email notice "an excellent option here"

where "every class member provided an e-mail address to [the defendant] in the process of registering as a user"); *Opperman v. Kong Techs., Inc.*, 2017 WL 11676126, at *5 (N.D. Cal. July 6, 2017) (approving notice plan which will provide "email notice to every user who downloaded and registered for the app during the relevant time period"); *Shahar v. Hotwire, Inc.*, 2014 WL 12647737, at *2 (N.D. Cal. July 25, 2014) (recognizing "direct e-mail notice" plan was "the best notice practicable under the circumstances"); *Stewart v. Apple Inc.*, 2022 WL 3013122, at *5 (N.D. Cal. Feb. 17, 2022) (same).

### E.    The Parties Will Identify Appropriate *Cy Pres* Recipients

After completion of the claims administration process, the Parties will determine the amount of unclaimed funds, if any, meet and confer on the appropriate *cy pres* recipient(s), and submit a motion to the Court for approval of the recipient(s) consistent with the standard set forth by the Ninth Circuit in *Lane*, 696 F.3d at 821–22 and applied in *In re Google Location Hist. Litig.*, 2024 WL 1975462, at *7 (N.D. Cal. May 3, 2024). Based on the current number of claims, Class Counsel anticipate there will not be any *cy pres* as the number of claimants indicates the Net Settlement Amount is likely to be fully distributed. Comite Decl. ¶5. Courts have approved settlement terms and allocation plans even if a significant portion of the parties' settlement could go to *cy pres* recipients, which is unlikely to be the case here. *See Smith v. Keurig Green Mountain, Inc.*, 2023 WL 2250264, at *2 (N.D. Cal. Feb. 27, 2023) (approving $10 million non-reversionary class action settlement awarding funds unclaimed by class members to *cy pres* recipients where only $3.5 million would be distributed to class members); *In re LivingSocial Mktg. & Sales Prac. Litig.*, 298 F.R.D. 1, 14 (D.D.C. 2013) (approving settlement distributing $2.5 million to *cy pres* recipients and $1.9 million to class members).

### IV.    CONCLUSION

Plaintiffs respectfully submit that the Court should grant Plaintiffs' Motion and enter the proposed Order: (i) granting final certification of the proposed Settlement Class; (ii) granting final approval of the proposed Settlement with Apple and the proposed plan of allocation; (iii) finding that the Court-approved notice plan has been implemented and satisfies due process; and (iv) dismissing with prejudice Plaintiffs' and Settlement Class Members' claims against Apple.

Dated: June 27, 2025                                         Respectfully submitted,

                                                             */s/ Erin Green Comite*
                                                             Erin Green Comite (*pro hac vice*)

Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile: 212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile: 914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

*Class Counsel*

Mark N. Todzo (Bar No. 168389)
Patrick Carey (Bar No. 308623)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile: 415-759-4112
mtodzo@lexlawgroup.com
pcarey@lexlawgroup.com

E. Kirk Wood (*pro hac vice*)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: 205-612-0243
kirk@woodlawfirmllc.com

*Additional Plaintiffs' Counsel*

16

## CERTIFICATE OF SERVICE

I, Erin Green Comite, certify that on June 27, 2025, the foregoing document entitled Plaintiffs' Motion for Final Approval of Class Action Settlement was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

*/s/ Erin Green Comite*
Erin Green Comite (*pro hac vice*)