Neville S. Hedley (SBN 241022)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 312-342-6008
Email: ned.hedley@hlli.org

*Attorneys for Objector Reilly Stephens*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as Guardian of A.L., a Minor, JOHN TROY PAPPAS, and DAVID YACUBIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>          Defendant.<br>―――――――――――――――<br>REILLY STEPHENS,<br><br>          Objector. | Case No. 4:19-cv-04577-JSW (SK)<br><br>**OBJECTION OF REILLY STEPHENS**<br><br>Judge:      Hon. Jeffrey S. White<br>Courtroom:  5, 2nd Floor<br>Date:       August 22, 2025<br>Time:       9:00 A.M. |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................ii

INTRODUCTION ........................................................................................................................1

I.      Reilly Stephens is a member of the proposed settlement class and has standing to object. ..................1

II.     The district court has a fiduciary duty to the absent class members. ......................................2

III.    The Court should award fees of at most $19 million, which would return more than $10 million to the class. ......................................................................3

        A.      Based on the size of the settlement fund, 20% or $19 million is a far more reasonable fee award than the windfall Counsel seek. ..............................................3

        B.      The lodestar crosscheck does not support the requested fee. ..................................10

                1.      The lodestar is overstated by at least nearly $2 million because Class Counsel charged exorbitant rates for document review suited to less expensive staff attorneys. ..............................................10

IV.     Before approving the settlement or any fee award, this Court should require the settlement administrator to disclose that it has no improper side agreements with the bank holding the qualified settlement fund. ................................................13

CONCLUSION .............................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, 2018 U.S. Dist. LEXIS 202526 (S.D.N.Y. Nov. 29, 2018) ........................................................................................................4

*Alexander v. FedEx Ground Package Sys.*, 2016 WL 3351017, 2016 U.S. Dist. LEXIS 78087 (N.D. Cal. June 15, 2016) ..................................................................................................4, 6, 7, 10

*Arkansas Teacher Ret. Sys. v. State Street Bank & Trust Co.*, 25 F.4th 55 (1st Cir. 2022) ...........3

*Arkansas Teacher Ret. Sys. v. State Street Bank & Trust Co.*, 512 F. Supp. 3d 196 (D. Mass. 2020) ........................5

*Banas v. Volcano Corp.*, 47 F. Supp. 3d 957 (N.D. Cal. 2014) ...................................................... 11

*Becerra-South v. Howroyd-Wright Empl. Agency, Inc.*, 2021 U.S. Dist. LEXIS 14633 (C.D. Cal. Jan. 25, 2020) ...............................................................................................................................9

*Beltran v. Olam Spices & Vegetables, Inc.*, 2023 WL 5817577, 2023 U.S. Dist. LEXIS 159245 (E.D. Cal. Sept. 8, 2023) ...........................................................................................................8

*Burnell v. Swift Transp. Co. of Ariz., LLC*, 2022 WL 1479506, 2022 U.S. Dist. LEXIS 78763 (C.D. Cal. Apr. 28, 2022) .........................................................................................................9

*Brown v. Stackler*, 612 F.2d 1057 (7th Cir. 1980) ...........................................................................9

*Clayborne v. Newtron, LLC,* 2023 U.S. Dist. LEXIS 157647, 2023 WL 5748773 (N.D. Cal. Sept. 6, 2023) .............................................................................................................................. 12

*Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46 (1st Cir. 1985) .......................................9

*Cooley v. Indian River Transport Co.*, 2019 WL 316634, 2019 U.S. Dist. LEXIS 11694 (E.D. Cal. Jan. 24, 2019) ............................................................................................................................ 12

*Corona v. PNC Bank, N.A.*, 2022 U.S. Dist. LEXIS 30185 (C.D. Cal. Feb. 18, 2022) ...................8

*Dial Corp. v. News Corp.*, 317 F.R.D. 426 (S.D.N.Y. 2016) ..........................................................5

*Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3616638, 2017 U.S. Dist. LEXIS 145214 (N.D. Cal. Jun. 26, 2017) ....................................................................................... 1, 2, 4, 6, 7, 8, 9

*Esomonu v. Omnicare, Inc.*, 2019 WL 499750, 2019 U.S. Dist. LEXIS 21119 (N.D. Cal. Feb. 8, 2019) ..........................................................................................................................................8

*Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. Appx. 628 (9th Cir. 2020) .................................... 10

*Fisher v. Osmose Utils. Servs.*, 2021 WL 1259731, 2021 U.S. Dist. LEXIS 66775 (E.D. Cal. Apr. 5, 2021) ......................................................................................................................................8

*Fishman v. Tiger Nat. Gas Inc.*, 2019 WL 2548665, 2019 U.S. Dist. LEXIS 103608 (N.D. Cal. Jun. 20, 2019) ............................................................................................................................9

*Good v. W. Virginia-American Water Co.*, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) .........5

*Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401 (S.D.N.Y. 2019) ............................................5

*Gutierrez v. Wells Fargo, NA*, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ...........................5, 7

*Hardy v. Embark Tech., Inc.*, 2024 WL 1354416, 2024 U.S. Dist. LEXIS 58266 (N.D. Cal. Mar. 29, 2024) ...................................................................................................................................9

*Hawthorne v. Umpqua Bank*, 2015 U.S. Dist. LEXIS 56370 (N.D. Cal. Apr. 28, 2015) ...............8

*Hernandez v. Grullense*, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ......................................12

*IL Fornaio (America) Corp. v. Lazzari Fuel Co., LLC*, 2015 WL 2406966 (N.D. Cal. May 20, 2015)...............................................................................................................................12

*In re Advocate Aurora Health Pixel Litig.*, 704 F. Supp. 3d  736 (E.D. Wis. 2024) ......................6

*In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, 2018 U.S. Dist. 140137 LEXIS  (N.D. Cal. Aug. 17, 2018)................................................................................................10, 11, 12

*In re Beacon Assocs. Litig.*, 2013 WL 2450960 (S.D.N.Y. May 9, 2013) ...............................10, 11

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ..........3, 4, 7, 10

*In re Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)................7

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456 (E.D. La. 2020) ................5

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992)....................................................3

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013)........................................................2

*In re Facebook Biometric Info. Privacy Litig.* 522 F. Supp. 3d 617 (N.D. Cal. 2021)  ...............6, 7

*In re Glumetza Antitrust Litig.*, 2022 WL 327707, 2022 U.S. Dist. LEXIS 20157 (N.D. Cal. Feb. 3, 2022) ..................................................................................................................4, 5

*In re High-Tech Employee Antitrust Litigation*, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ...............5, 6

*In re HP Secs. Litig*, 2015 U.S. Dist. LEXIS 193707 (N.D. Cal. Nov. 13, 2015)...........................5

*In re Indymac Mortgage-Backed Secs. Litig.*, 94 F. Supp. 3d 517 (S.D.N.Y. 2015)......................5

*In re LendingClub Secs. Litig.*, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018)............................5

*In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010) .............................2, 3

*In re NCAA Athletic Grant-in-aid Cap Antitrust Litig.*, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)..............................................................................................................................7

*In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922 (9th Cir. 2020)....................2, 5, 7

*In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp 3d 985 (N.D. Ohio 2016) ....................11

*In re Stericycle Secs. Litig.*, 35 F.4th 555 (7th Cir. 2022) .............................................................4

*In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291 (9th Cir. 1994)........................................2, 10

*In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d 508 (N.D. Cal. 2020) ............................6, 10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, 2020 U.S. Dist. LEXIS 129939 (N.D. Cal. Jul. 22, 2020).............................................................................................1, 4, 5, 6

*Karl v. Zimmer Biomet Holdings, Inc.*, 2022 WL 658970, 2022 U.S. Dist. LEXIS 39166 (N.D. Cal. Mar. 4, 2022) ........................................................................................................................9

*Keirsey v. eBay, Inc.*, 2014 WL 644738, 2014 U.S. Dist. LEXIS 21371 (N.D. Cal. Feb. 14, 2014)...........................8

*Kryzhanovskiy v. Amazon.Com Servs., Inc.*, 2024 WL 1241721, 2024 U.S. Dist. LEXIS 51949 (E.D. Cal. Mar. 22, 2024) ..............................................................................................................8

*Laffitte v. Robert Half Int'l*, 376 P.3d 672 (Cal. 2016) .................................................................................5

*Martinez v. Semi-Tropic Coop. Gin*, 2023 U.S. Dist. LEXIS 88551, 2023 WL 3569906 (E.D. Cal. May 19, 2023) ......................................................................................................................8

*Nevarez v. Forty Niners Football Co.*, 474 F. Supp. 3d 1041 (N.D. Cal. 2020) ......................................11

*New York State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226 (E.D. Mich. 2016) .................................5

*Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161 (N.D. Cal. June 5, 2017)................................6, 7

*Noroma v. Home Point Fin. Corp.*, 2019 WL 5788658, 2019 U.S. Dist. LEXIS 193159 (N.D. Cal. Nov. 6, 2019) ....................................................................................................................8

*Ornelas v. Tapestry, Inc.*, 2022 WL 1289047, 2022 U.S. Dist. LEXIS 78339 (N.D. Cal. Apr. 29, 2022) .....................................................................................................................8

*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) ........................................................................3

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2022 WL 816473, 2022 U.S. Dist. LEXIS 47749 (N.D. Cal. Mar.17, 2022) ..............................................................................................5

*Raquedan v. Centerplate of Del. Inc.*, 2019 WL 13131420, 2019 U.S. Dist. LEXIS 217438 (N.D. Cal. Dec. 16, 2019) ..................................................................................................................8

*Rodman v. Safeway Inc.*, 2018 WL 4030558 (N.D. Cal. Aug. 22, 2018).......................................................3

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833 (N.D. Cal. 2017) .........................................................................................................................8

*Sanft v. Sims Grp. United States Corp.*, 2023 WL 6851992, 2023 U.S. Dist. LEXIS 185412 (N.D. Cal. Oct. 16, 2023) ...............................................................................................................8

*Seb Inv. Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, 2022 U.S. Dist. LEXIS 24241 (N.D. Cal. Feb. 11, 2022) ...............................................................................................................5

*Shay v. Apple Inc.*, 2024 WL 1184693, 2024 U.S. Dist. LEXIS 48702 (S.D. Cal. Mar. 19, 2024) .......................8

*Stetson v. Grissom*, 821 F.3d 1157 (9th Cir. 2016)..............................................................................1

*Stewart v. Apple Inc.*, 2022, WL 3109565, 2022 U.S. Dist. LEXIS 139222 (N.D. Cal. Aug. 4, 2022) ...............................................................................................................................................8

*Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, 2021 U.S. Dist. LEXIS 80660 (N.D. Cal. Apr. 27, 2021) .........................................................................................................8

*Taafua v. Quantum Global Techs., LLC*, 2020 WL 95639, 2020 U.S. Dist. LEXIS 3806 (N.D. Cal. Jan. 8, 2020) .............................................................................................................................8

*United States ex rel. Palmer v. C&D Techs., Inc.*, 2017 WL 1477123 (E.D. Penn. Apr. 25, 2017).........................11

*Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983). .................................................................................12

*Van Vranken v. Atl. Richfield Co.* 901 F. Supp. 294 (N.D. Cal. 1995)...........................................................6

*Vigil v. Hyatt Corp.*, 2024 WL 2137640, 2024 U.S. Dist. LEXIS 86110 (N.D. Cal. May 13, 2024) ...............................................................................................................................................8

*Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115 (9th Cir. 2002)..............................................................................10

**Rules**

Fed. R. Civ. Pro. 23(e) ..................................................................................................................................13

Fed. R. Civ. Pro. 23(h) ...........................................................................................................................1, 3, 4

**Other Authorities**

ABA Formal Opinion 08-451 ...................................................................................................................11-12

Advisory Committee Notes on 2003 Amendments to Rule 23.........................................................................3

Bob Graff & Michelle Fivel, *Where Have All the Big Law Associates Gone?*, BLOOMBERG LAW (Mar. 21, 2017).............................................................................................................................11

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811 (2010) ......................................................................................................6

Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47 (2018) ...................................................................................................................................................2

N.D. Cal. Procedural Guidance for Class Action Settlements..........................................................................13

Nicole Bradick, *Freelance Law: Providing Solutions to Modern Day Practice Dilemmas*, 27 MAINE BAR J. 23 (2012) ...............................................................................................................................11

*Staff Attorney Salary*, Zippa: The Career Expert (Jan. 8, 2025) .....................................................................11

Stephen J. Choi et al., *The Business of Securities Class Action Lawyering*, 99 IND. L. J. 775 (2024) ..........................4

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. EMPIRICAL LEGAL STUD. 248 (2010) ...................................................................... 4, 6

Theodore Eisenberg, Geoffrey P. Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937 (2017)..........................................................................................................6

Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About Reasonable Fees in Common Fund Cases*, 18 GEO J. LEGAL ETHICS 1453 (2005) ........................................................................................................................................... 10

## INTRODUCTION

Plaintiffs' Counsel propose to pay themselves $29.4 million in attorneys' fees and costs, a total Rule 23(h) request of about 31% of the gross settlement, exceeding the 25% benchmark in this Circuit, and—more importantly—well above the 20-25% percent typical of a settlement of this size. *See Edwards v. Nat'l Milk Producers Fed'n,* 2017 WL 3616638, 2017 U.S. Dist. LEXIS 145214, *34-*35 (N.D. Cal. Jun. 26, 2017) (White, J.) (declining to award a requested 33% fee and instead awarding 25% in a case involving a large, but not mega, settlement fund). This Court should look to empirical evidence, rather than the cherry-picked anecdotes of abnormally large fee awards Class Counsel rely on. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, 2020 U.S. Dist. LEXIS 129939, at *151 (N.D. Cal. Jul. 22, 2020) (Koh, J.) (finding fee expert's "two published law review articles, which have no connection to the instant case, to be more reliable guides as to the average percentages of recovery awarded in similar cases" than counsel's cherry-picked sample); *see* Section III.A below.

Such an award would provide a windfall for counsel—62% *above* Class Counsel's proclaimed lodestar and likely more than double their actual lodestar—in a case where counsel has submitted sprawling billing (more than 22,000 hours) from 57 timekeepers, at a blended rate of nearly $800 per hour, including a nearly 700% markup on the market cost of counsel's document review time. Objector Stephens recommends a generous attorney award of 20% or $19 million, still a premium on Class Counsel's substantial billing, but resulting in a savings of more than $10 million for class members. It is those class members who should benefit from the economies of scale inherent in aggregating tens of millions of class members' claims in one proceeding.

## I.    Reilly Stephens is a member of the proposed settlement class and has standing to object.

Reilly Walsh Stephens is a Maryland resident who owned Apple devices during the class period who noticed on several occasions that Siri inadvertently activated while he was communicating with others. *See* Stephens Decl. ¶¶2-3. He does not fit within any of the exclusions to the proposed class. *See* Stephens Decl. ¶4. On June 30, 2025, Stephens submitted a claim through the settlement website. *See* Stephens Decl. ¶6. Thus, Stephens has standing to object to Class Counsel's fee request. *See* Fed. R. Civ. P. 23(h)(2); *Stetson v. Grissom*, 821 F.3d 1157, 1164 (9th Cir. 2016).

Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF") represents Stephens *pro bono*, and CCAF attorney Neville Hedley intends to appear at the fairness hearing on his behalf. *See* Stephens Decl. ¶7. CCAF represents class members *pro bono* where class counsel employ unfair procedures to benefit themselves at the expense of the class. Since it was founded in 2009, CCAF has "develop[ed] the expertise to spot problematic settlement provisions and attorneys' fees." Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 55-57 & n.37 (2018). Over that time CCAF has recouped more than $200 million for class members by driving the settling parties to reach an improved bargain or by reducing outsized fee awards. Frank Decl. ¶10 (citing examples). Stephens brings this objection through CCAF in good faith to protect the interests of the class. *See* Stephens Decl. ¶8. His objection applies to the whole class; he adopts any objections not inconsistent with this one.

## II.    The district court has a fiduciary duty to the absent class members.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). Unlike ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations." *Id.* "[T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.* To guard against this danger, a district court must act as a "fiduciary for the class . . . with 'a jealous regard'" for the rights and interests of absent class members. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting *In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994) ("*WPPSS*")).

At the fee-setting stage, the fiduciary role of this Court assumes added significance—it "requires close scrutiny" to prevent unreasonable and excessive depletion of the settlement fund. *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020); *see e.g.*, *Edwards*, 2017 WL 3616638, 2017 U.S. Dist. LEXIS 145214 at *31 (N.D. Cal. 2017) (White, J.) (scrutinizing fee request to avoid "providing counsel with a windfall at the expense of class members"). When petitioning for fees, the relationship between class counsel and the class turns directly and unmistakably adversarial because counsel's "interest in getting paid the most for its work representing the class [is] at odds with the class's interest in securing the largest possible recovery for its

members." *Mercury Interactive*, 618 F.3d at 994. Given this natural tension, there can be no deference to Class Counsel's recommendation.

Moreover, "in most common-fund cases, defendants have little interest in challenging class counsel's timesheets." *Gutierrez v. Wells Fargo*, 2015 WL 2438274, at \*6 (N.D. Cal. May 21, 2015). "The defendant, having bought peace, ha[s] no dog in the hunt for fees." *Ark. Teacher Ret. Sys. v. State Street Bank & Trust Co.*, 25 F.4th 55, 65 (1st Cir. 2022). No individual class member has the financial incentive to object to an exorbitant fee request either; "[h]is gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992). Accordingly, the district court (and good-faith, public-minded objectors) are the last line of defense against overreaching fee requests.

"Public confidence in the fairness of attorney compensation in class actions is vital to the proper enforcement of substantive law." *Laffitte v. Robert Half Int'l*, 376 P.3d 672, 688-92 (Cal. 2016) (Liu, J., concurring). Exorbitant fees erode public confidence in the class action device. To prevent that erosion, "it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so." *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir. 1985); *see also WPPSS*, 19 F.3d at 1298 (differentiating "reasonable" from "windfall" fees in megafund cases). In short, "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." Advisory Committee Notes on 2003 Amendments to Rule 23.

## III. The Court should award fees of at most $19 million, which would return more than $10 million to the class.

### A. Based on the size of the settlement fund, 20% or $19 million is a far more reasonable fee award than the windfall Counsel seek.

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011). The benchmark for a reasonable award in the Ninth Circuit in a case alleging economic injury is 25% of the class benefit. *Id.* at 942. However, "to avoid routine windfalls where the recovered fund runs into the multi-millions, courts typically decrease the percentage of the fee as the size of the fund increases." *Rodman v. Safeway Inc.*, 2018 WL 4030558, at \*4 (N.D.

Cal. Aug. 22, 2018) (simplified); *see also Bluetooth*, 654 F.3d at 942 (suggesting downward departure from the benchmark to prevent "windfall profits" in "mega-fund" settlements).

In megafund cases, "the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *Alexander v. FedEx Ground Package Sys.*, 2016 WL 3351017, 2016 U.S. Dist. LEXIS 78087, at *2-*4 (N.D. Cal. June 15, 2016) (awarding fees totaling 16.4% of $226 million common fund). Stated differently, "due to economies of scale, it isn't ten times harder to try a $100 million case as it is a $10 million case." *In re Glumetza Antitrust Litig.*, 2022 WL 327707, 2022 U.S. Dist. LEXIS 20157, at *40 (N.D. Cal. Feb. 3, 2022); *Edwards*, 2017 WL 3616638, 2017 U.S. Dist. LEXIS 145214, at *32 (eschewing reliance on smaller fund fee awards). "[R]ote application of the 25% benchmark would indeed produce a windfall for Class Counsel because the recovery in the instant case is largely a function of the size of the Settlement Class." *Yahoo*, 2020 WL 4212811, 2020 U.S. Dist. LEXIS 129939, at *97. The Ninth Circuit thus instructs "courts [to] adjust the bench-mark percentage or employ the lodestar method instead" for megafund cases. *Bluetooth*, 654 F. 3d at 942. Indeed, "[t]he existence of [such a] scaling effect … is central to justifying aggregate litigation," and "should be a hallmark of a well-functioning class action system." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 263 (2010). Requesting fees from a megafund settlement as if just an ordinary application of the benchmark is "not consistent with a class representative's fiduciary duty to class members." *In re Stericycle Secs. Litig.*, 35 F.4th 555, 561 (7th Cir. 2022).

Ignoring this basic principle, Plaintiffs cite a handful of outlier cases where courts have approved disproportionately large fee requests in megafund or near megafund settlements. *See* Fee Motion (Dkt. 354) at 11. Of course, "[l]aw firms can cite the fee percentages awarded in other cases as precedent, but they cherry pick cases with high fee percentages." Stephen J. Choi et al., *The Business of Securities Class Action Lawyering*, 99 IND. L. J. 775, 788 (2024). But "isolated string cites" are "not particularly meaningful." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, 2018 U.S. Dist. LEXIS 202526, at *14 (S.D.N.Y. Nov. 29, 2018). With thousands of Rule 23(h) fee decisions, individual cites to cases with little reasoning are just anecdotes that prove little—it is just as easy to cite an equally lengthy list of cases going in the other direction and counseling

a much lower award. *See, e.g., In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922 (9th Cir. 2020) (reversing 25% award of $124.5 million megafund).[1]

The better approach for assessing awards in similar cases, therefore, is not cherry-picking but looking at "empirical studies … which together survey hundreds of cases," for these "paint a far more comprehensive picture of the average percentage awarded to counsel in common fund settlements, thereby minimizing any potential sampling biases." *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 407 (S.D.N.Y. 2019); *see also Yahoo*, 2020 WL 4212811, 2020 U.S. Dist. LEXIS 129939, at *151 (finding fee expert's "two published law review articles, which have no connection to the instant case, to be more reliable guides as to the average percentages of recovery awarded in similar cases" than the selected sample); *In re High-Tech Employee Antitrust Litigation*, 2015 WL 5158730, at *13 (N.D. Cal. Sept. 2, 2015) (rejecting 19.5% fee request and instead awarding 9.8% of $415 million settlement because empirical research showed 10.2% median for megafund cases over $175 million).

Plaintiffs cite no empirical studies in support of their fee request. Wholesale omission may be preferable to falsely claiming that a fee request is "right in line" with empirical surveys. *See Ark. Teacher Ret. Sys v. State St. Bank & Trust Co.*, 512 F. Supp. 3d 196, 250-51 (D. Mass. Feb. 27, 2020), *aff'd* 25 F.4th 55, 65-66 (1st Cir. 2022) (castigating class counsel for misleading the court by claiming that a 25% fee of a $300 million fund was "right in line" with Fitzpatrick's empirical survey). Still, it's not good; common fund fees proceedings are usually

---

[1] *Glumetza*, 2022 WL 327707, 2022 U.S. Dist. LEXIS 20157, at *48 (rejecting $112m request from $453m settlement, awarding 11%); *Yahoo*, 2020 WL 4212811, 2020 U.S. Dist. LEXIS 129939, at *149 (refusing to award 25.5% of $117.5 million; instead awarding 19.4% of fund); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 499-500 (E.D. La. 2020) (declining to award 30% of $248 million; awarding 19%); *In re LendingClub Secs. Litig.*, , 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) (awarding 13.1% of $125 million); *New York State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226 (E.D. Mich. 2016) (awarding 7% of $300 million); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 437 (S.D.N.Y. 2016) (refusing to award 30% of $244 million; instead awarding 20% of fund); *Seb Inv. Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, 2022 U.S. Dist. LEXIS 24241, *13 (N.D. Cal. Feb. 11, 2022) (awarding 19% of $70m settlement); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2022 WL 816473, 2022 U.S. Dist. LEXIS 47749, *18 (N.D. Cal. Mar.17, 2022) (16.33% of the $129m settlement); *In re HP Secs. Litig*, 2015 U.S. Dist. LEXIS 193707 (N.D. Cal. Nov. 13, 2015) (awarding 11% of $100 million settlement); *In re Indymac Mortgage-Backed Secs. Litig.*, 94 F. Supp. 3d 517, 523-25 (S.D.N.Y. 2015) (cataloging authorities and reducing 13% fee request to 8.2% of $346 million); *Good v. W. Virginia-American Water Co.*, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) (criticizing a megafund fee request of 30% and denying preliminary approval).

functionally "ex parte" and leave the court "vulnerable to being misled, whether by affirmative misrepresentation or by half-truths that deceive[] through their incompleteness." *Ark Teachers*, 25 F.4th at 65.

So what does the empirical evidence show? It shows that "fee percentages tended to drift lower at a fairly slow pace until a settlement size of $100 million was reached, at which point the fee percentages plunged well below 20 percent." Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 838 (2010). For instance, in class actions in which the settlement fund equaled $72.5-$100 million, the median fee award was 24.3% and the mean was 23.7%. *Id.* at 839. Other surveys support this analysis. *See, e.g.*, Eisenberg & Miller, 7 J. EMPIRICAL LEGAL STUD. at 265 tbl.7 (mean percentage fee in 69 class action settlements with recovery between $69.6 million and $175.5 million was 19.4% and median award was 19.9%).[2]

Class counsel may respond that the $95 million fund here falls short of a true "megafund." *But see Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (categorizing funds over $75 as megafunds). But there's no need to resolve the Sorities paradox of when a fund becomes a megafund; the above empirical surveys show that the scaling effect of fee awards kick in as funds reach eight-digits. Indeed, this Court has concluded that "the same reasoning applies" whenever class counsel has the benefit of a large class with sizable recoveries. *Edwards*, 2017 WL 3616638, 2017 U.S. Dist. LEXIS 145214, at *35; *see also In re Advocate Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 757 (E.D. Wis. 2024) (citing cases applying a diminishing sliding scale approach with funds of $29, $45, $76, and $88 million).

Judges of this district rely on these empirical surveys, especially Eisenberg & Miller's survey, as a matter of course. *See, e.g., Yahoo*, 2020 WL 4212811, 2020 U.S. Dist. LEXIS 129939, at *147; *High-Tech*, 2015 WL 5158730, at *49-50; *Alexander*, 2016 WL 3351017, at *2; *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 632 (N.D. Cal. 2021) (finding that the data suggested that a 15% award rather than the 16.9% requested was more reasonable for a fund of $650 million); *In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d 508, 526 (N.D. Cal. 2020) (declining to award 28% of $240 million recovery; awarding 22%); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *12 (N.D. Cal. June 5, 2017) (citing literature). The fact

---

[2] *See also* Theodore Eisenberg, Geoffrey P. Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 947-48 (2017) (mean of 22.3% for cases over $67.5 million; noting a "significantly smaller number of very large cases in [the] data set").

1  that *High-Tech* and *Nitsch* were antitrust cases only underscores why the requested 30% percentage here is so

2  excessive. An antitrust case is "arguably the most complex action to prosecute." *In re NCAA Athletic Grant-in-*

3  *aid Cap Antitrust Litig.*, 2017 WL 6040065, at *3 (N.D. Cal. Dec. 6, 2017) (simplified).

4      Class Counsel does not grapple with the Ninth Circuit's direction that courts "must refer" to "fund

5  size" "in determining the fee award." *Optical Disk Drive*, 959 F.3d at 933 (internal quotation omitted). They

6  mistakenly treat the Circuit's benchmark as a "baseline from which the Court can only depart upwards."

7  *Edwards*, 2017 WL 3616638, 2017 U.S. Dist. LEXIS 145214, at *32 (rejecting that notion). But they cannot

8  escape economic reality, which generates a presumption in favor of downward departure as lodestar multipliers

9  and class sizes rise. *See Facebook Biometric*, 522 F. Supp. 3d at 631 ("[a] 25% presumption is too big to be applied

10  to common funds as large as this one"); *Alexander*, 2016 WL 3351017, at *2-3 (awarding fees 16.4% of $226

11  million common fund); *Nitsch*, 2017 WL 2423161, at *12  (awarding 11% of $150 million settlement in order

12  to avoid "windfall profits" to class counsel owing to "achieved economies of scale"); *Gutierrez, v. Wells Fargo*

13  *Bank, N.A.*, 2015 WL 2438274, at *5 (rejecting 25% of $203 million, awarding only 9%); *In re Charles Schwab*

14  *Corp. Secs. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011) (awarding attorneys' fees of 9.25% where

15  fund equaled $235 million). At base, "the starting point of the analysis should not be the equivalent of a Willy

16  Wonka golden ticket." *Facebook Biometric*, 522 F. Supp. 3d at 631.

17      Class Counsel focus on other factors supposedly counseling in favor of an upward departure. They

18  assert that the $95 million recovery is an "excellent result," "approximately 10% of the potential recoverable

19  damages." Fee Motion 3. Peeling back the curtain reveals this 10% figure to be arbitrary; it doesn't even follow

20  from Class Counsel's inputs. *See* Joint Decl. (Dkt. 336-1) at ¶44 ("total damages to the Class *in excess of* $1.5

21  billion"). 10% of $1.5 billion would be $150 million, not $95 million. Yet Class Counsel made "some

22  adjustments accounting for potential challenges" even though the entire point of the inquiry is to look at the

23  actual maximum. *Id.* This is not a firm footing from which to award supra-benchmark fees. Indeed, the

24  statutory exposure is up to $10,000 per device, with a total potential exposure of more than $300 million (35

25  million devices). The $95 million settlement leaves quite a bit of meat on the bone and hardly represents an

26  exceptional result.

27      Whether or not the settlement recovery qualifies as an excellent result, it's not the type of result that is

28  a "special circumstance" justifying an upward deviation. *Bluetooth*, 654 F.3d at 942. Nor is all Class Counsel's

hard work in the face of uncertain outcome. Fee Motion 4-10. That's "the nature of the beast." *See Keirsey v. eBay, Inc.,* 2014 U.S. Dist. LEXIS 21371, 2014 WL 644738, at *3 (N.D. Cal. Feb. 18, 2014) (refusing to deviate from 25% to the requested 31% even though it would provide only a .23 multiplier on class counsel's lodestar); *Hawthorne v. Umpqua Bank*, 2015 U.S. Dist. LEXIS 56370 (N.D. Cal. Apr. 28, 2015) (refusing to deviate upward to 33% even where the fee request was less than lodestar, and class recovery was 38% of potential recovery). And such factors related to the length and scope of the litigation are properly subsumed in the lodestar crosscheck. *Edwards*, 2017 WL 3616638, 2017 U.S. Dist. LEXIS 145214, *33. Here, an upward deviation is not even necessary to provide counsel with its full lodestar. *See* Section IV, *infra*.

"25%, and not 33.33% is the benchmark in the Ninth Circuit." *Fisher v. Osmose Utils. Servs.*, 2021 WL 1259731, 2021 U.S. Dist. LEXIS 66775, *25 (E.D. Cal. Apr. 5, 2021). Courts in this Circuit, particularly in this District, routinely defend class members from above-benchmark fee requests, even where the funds were far smaller $95 million. *See, e.g., Vigil v. Hyatt Corp.*, 2024 WL 2137640, 2024 U.S. Dist. LEXIS 86110, *20 (N.D. Cal. May 13, 2024) (no deviation to 33%); *Kryzhanovskiy v. Amazon.Com Servs., Inc.*, 2024 WL 1241721, 2024 U.S. Dist. LEXIS 51949 (E.D. Cal. Mar. 22, 2024) (no deviation to 33%); *Shay v. Apple Inc.*, 2024 WL 1184693, 2024 U.S. Dist. LEXIS 48702, *33 (S.D. Cal. Mar. 19, 2024) (no deviation to 33%); *Sanft v. Sims Grp. United States Corp.*, 2023 WL 6851992, 2023 U.S. Dist. LEXIS 185412, *23 (N.D. Cal. Oct. 16, 2023) (no deviation to 38%); *Martinez v. Semi-Tropic Coop. Gin*, 2023 U.S. Dist. LEXIS 88551, 2023 WL 3569906 (E.D. Cal. May 19, 2023) (no deviation to 33.3%); *Beltran v. Olam Spices & Vegetables, Inc.*, 2023 WL 5817577, 2023 U.S. Dist. LEXIS 159245, *31 (E.D. Cal. Sept. 8, 2023) (no deviation to 35%); *Stewart v. Apple Inc.,* 2022, WL 3109565, 2022 U.S. Dist. LEXIS 139222, *21 (N.D. Cal. Aug. 4, 2022) (no deviation to 33%); *Ornelas v. Tapestry, Inc.*, 2022 WL 1289047, 2022 U.S. Dist. LEXIS 78339, *15 (N.D. Cal. Apr. 29, 2022) (no deviation to 35%); *Corona v. PNC Bank, N.A.*, 2022 U.S. Dist. LEXIS 30185, *14 (C.D. Cal. Feb. 18, 2022) (no deviation to 30%); *Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, 2021 U.S. Dist. LEXIS 80660, *17 (N.D. Cal. Apr. 27, 2021) (no deviation to 33%); *Taafua v. Quantum Global Techs., LLC*, 2020 WL 95639, 2020 U.S. Dist. LEXIS 3806, at *37-*38 (N.D. Cal. Jan. 8, 2020) (no deviation to 33.33%); *Raquedan v. Centerplate of Del. Inc.*, 2019 WL 13131420, 2019 U.S. Dist. LEXIS 217438, at *14 (N.D. Cal. Dec. 16, 2019) (no deviation to 33%); *Noroma v. Home Point Fin. Corp.*, 2019 WL 5788658, 2019 U.S. Dist. LEXIS 193159 (N.D. Cal. Nov. 6, 2019) (no deviation to 33%); *Esomonu v. Omnicare, Inc.*, 2019 WL 499750, 2019 U.S. Dist. LEXIS 21119 (N.D. Cal.

Feb. 8, 2019) (no deviation to 33%) *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833 (N.D. Cal. 2017) (no deviation to 33%).

Courts safeguard class members' funds against above-benchmark overreaching even where, unlike here, class counsel submit a lodestar exceeding their requested fee. *See, e.g., Hardy v. Embark Tech., Inc.*, 2024 WL 1354416, 2024 U.S. Dist. LEXIS 58266, *24 (N.D. Cal. Mar. 29, 2024) (no upward deviation where lodestar was nearly twice the 33% request); *Karl v. Zimmer Biomet Holdings, Inc.*, 2022 WL 658970, 2022 U.S. Dist. LEXIS 39166, *16 (N.D. Cal. Mar. 4, 2022) (no upward deviation where lodestar was substantially more than the 28% request); *Becerra-South v. Howroyd-Wright Empl. Agency, Inc.*, 2021 U.S. Dist. LEXIS 14633 (C.D. Cal. Jan. 25, 2020) (no upward deviation where lodestar exceeded the 30% request); *Fishman v. Tiger Nat. Gas Inc.*, 2019 WL 2548665, 2019 U.S. Dist. LEXIS 103608 (N.D. Cal. Jun. 20, 2019) (no upward deviation where lodestar was more than twice the 27% request). "[T]he fact that the lodestar significantly outpaces an award based on the 25% benchmark" without more "is not a compelling reason to depart from the Ninth Circuit's benchmark, particularly absent evidence of exceptional risk or difficulty." *Burnell v. Swift Transp. Co. of Ariz., LLC*, 2022 WL 1479506, 2022 U.S. Dist. LEXIS 78763, *30-31 (C.D. Cal. Apr. 28, 2022) (internal quotation omitted).

Perhaps Class Counsel seek the anchoring effect of a 30% request: they are more likely to get a benchmark award if they set their bar higher. In truth, that is a reason to award less than the Court might have. For if the only "unfavorable consequence" of overreaching is "reduction of their fee to what they should have asked for in the first place" future class counsel will be "encouraged to make unreasonable demands." *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980). "To discourage such greed a severer reaction is needful." *Id.* An "outside-chance opportunity for a megabucks prize must cost to play." *Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985)

A reasonable award for Class Counsel in this case is 20%, or $19 million. Not only would this generously award Class Counsel, this figure is supported by the empirical evidence and circuit practice discussed above. Moreover, this award would be a percentage of the gross—rather than the net—settlement fund. As the Court knows, it has the authority to award fees on a gross or net basis provided the ultimate result is reasonable. *Edwards*, 2017 WL 3616638, 2017 U.S. Dist. LEXIS 145214, at *35-*37. Still, the fact remains that a 20% gross award equates to a net award of a few percentage points more.

In short, Class Counsel's fee should not exceed $19 million (20% of the $95 million recovery), which would increase relief to class members by more than $10 million.

## B.     The lodestar crosscheck does not support the requested fee.

The benchmark approach of this Circuit places primacy on the percentage method, but divorced from the relevant case context, that can become "like picking a number out of the air." *WPPSS*, 19 F.3d at 1297. Enter the lodestar cross-check. The lodestar cross-check will "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate," *Bluetooth*, 654 F.3d at 945, and "in megafund cases [it] assumes particular importance." *Alexander*, 2016 WL 3351017, at *2; *see also WPPSS*, 19 F.3d at 1298 (describing how percentage-based awards become particularly arbitrary in a megafund context). The crosscheck helps uncover the "disparity between the percentage-based award and the fees the lodestar method would support." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1124 n.8 (9th Cir. 2002). Unsurprisingly, then, "courts making common fund fee awards are ethically bound to perform a lodestar crosscheck." Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About Reasonable Fees in Common Fund Cases*, 18 GEO J. LEGAL ETHICS 1453, 1454 (2005). "Though circuit law does not necessarily require a cross check, it probably should"; "skipping this step breaches the district court's fiduciary duty to the class." *Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. Appx. 628, 636 (9th Cir. 2020) (Kleinfeld, J., dissenting).

Here, the lodestar crosscheck confirms the excessiveness of Plaintiffs' fee request. A brief review reveals that the lodestar is overstated by millions of dollars because extensive document review was charged at exorbitant rates. When appropriate rates are assigned, the lodestar plummets by almost $2 million.

### 1.     The lodestar is overstated by at least nearly $2 million because Class Counsel charged exorbitant rates for document review suited to less expensive staff attorneys.

Summary as they are, Class Counsel's records nonetheless demonstrate exorbitant billing rates for document review, of which they recorded 5248.4 hours, more than any other category of work. *See* Dkt. 354-1 at 21-22; Dkt. 354-2 at 11. The corresponding lodestar is $2,230,570 or 12.7% of the total lodestar figure. Class Counsel seek a blanket rate of $425/hour for a task typically delegated to "extremely low-cost, low-overhead temporary employees." *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *18 (S.D.N.Y. May 9, 2013). This is patently unreasonable and warrants substantial reduction. *See, e.g.*, *Wells Fargo*, 445 F. Supp. 3d at 531

(incorporating contract attorney time into the lodestar at the average of $42.50 that they were paid rather than the markup rates of $295-$415); *In re Anthem Data Breach Litig.*, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *136 (N.D. Cal Aug. 17, 2018) (applying hourly rate of $250 for staff and contract attorneys, rejecting requested rates as high as $447); *Nevarez v. Forty Niners Football Co.*, 474 F. Supp. 3d 1041, 1050 (N.D. Cal. 2020) (declining to allow $30/hr staff attorneys to be marked up to $625/hr); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp 3d 985, 1013 (N.D. Ohio 2016) (reducing the hourly rate for contract attorneys from $389 to $150, and the total lodestar by 20%).

"There is little excuse in this day and age" for such exorbitant billing. *Beacon*, 2013 WL 2450960, at *18. After all, "much of the due diligence and discovery work that was previously handled by first and second year associates is now being handled by staff attorneys at much lower rates ($50/hour)." *See* Bob Graff & Michelle Fivel, *Where Have All the Big Law Associates Gone?*, BLOOMBERG LAW (Mar. 21, 2017). Reasonable fees accord to what reasonable, cost-conscious clients would pay. *See Wells Fargo*, 445 F. Supp. 3d at 529. And in today's legal market, clients refuse to tolerate law firms treating gigantic document review projects as profit centers. *See United States ex rel. Palmer v. C&D Techs.*, 2017 WL 1477123, at *6 (E.D. Pa. Apr. 25, 2017). Firms have proved receptive: Data from the career site Zippa reveals that staff and contract attorneys—those typically responsible for document review—are paid at much lower rates than associates and partners.[3] *See Staff Attorney Salary*, Zippa: The Career Expert (Updated Jan. 8, 2025), https://www.zippia.com/staff-attorney-jobs/salary/ (finding mean national hourly rate of $52.90 and mean California rate of $63.77). In *Wells Fargo*, the rates ranged from $35-$50/hr. 445 F. Supp. 3d at 531. And in *Anthem,* they ranged from $25-$65/hr. 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *125. Yet Class Counsel billed *all* of their first level document review hours (whether from associates or paralegals) at $425/hr. That constitutes a markup of the California hourly rate for staff attorneys of 666%!

The best practice is to bill document review hours at cost. *Wells Fargo*, 445 F.Supp. 3d at 531 (following the practice in the absence of proof of higher rate charged to paying clients); *Anthem*, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *128 (commending the practice); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 980

---

[3] This holds true even when staff and contract "lawyers are experienced, highly-qualified attorneys." Nicole Bradick, *Freelance Law: Providing Solutions to Modern Day Practice Dilemmas*, 27 MAINE BAR J. 23, 24 (2012).

(N.D. Cal. 2014) (awarding contract attorney time as "costs" at billing rate of $47 to $59 per hour). Indeed, it is likely unethical to charge more than cost. *See* ABA Formal Opinion 08-451 ("In the absence of an agreement with the client authorizing a greater charge, **the lawyer may bill the client only its actual cost plus a reasonable allocation of associated overhead**, such as the amount the lawyer spent on any office space, support staff, equipment, and supplies for the individuals under contract." (emphasis added)). If the 5,248.4 hours in document review were billed at cost, using California's generous average hourly rate for staff attorneys, Class Counsel would have expended $334,690.47 on document review, $1,895,879.53 less than the claimed lodestar. Again, the $2.23m Class Counsel records is a markup of 666%. Even accepting that "counsel may be entitled to a reasonable markup to cover costs such as supervision and overhead," the markup in this case is "striking." *Cf. Anthem*, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *130 (approximately 729% markup). While Class Counsel might justify their exorbitant rate by claiming that associates were involved in document review, "courts should also account for the 'wasteful use of highly skilled and highly priced talent for matters easily delegable to nonprofessionals or less experienced associates.'" *Hernandez v. Grullense*, 2014 WL 1724356, at *5 (N.D. Cal. Apr. 30, 2014) (quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983)). Because "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn," *id.*, many courts refuse to permit full lodestar rates to be charged under these circumstances. *See, e.g.*, *IL Fornaio (America) Corp. v. Lazzari Fuel Co., LLC*, 2015 WL 2406966, at *5 (N.D. Cal. May 20, 2015) ("It would be unjustified to charge the class senior-associate or partner-level rates for routine tasks like document review….").

In sum, consistent with the reasonable rates for document review work, a brief glance shows that the lodestar is overstated by at least $1.89 million. As a result, the actual multiplier that Class Counsel seek approaches 2, even with this single reduction itself. An award of $19 million would amount to a healthy premium on Class Counsel's supportable lodestar. Class Counsel's lodestar thus does not "corroborate[]" their requested upward departure from the benchmark. *Cooley v. Indian River Transport Co.*, 2019 WL 316634, at *9 (E.D. Cal. Jan. 24, 2019); *contrast Clayborne v. Newtron, LLC,* 2023 WL 5748773, 2023 U.S. Dist. LEXIS 157647, *15 (N.D. Cal. Sept. 6, 2023) (White, J.) (awarding 35% of a small fund as attorneys' fees amounting to a fractional lodestar multiplier of 0.39).

**IV.    Before approving the settlement or any fee award, this Court should require the settlement administrator to disclose that it has no improper side agreements with the bank holding the qualified settlement fund.**

Under the settlement, the settlement administrator, Angeion Group LLC, is tasked with, *inter alia*, "manag[ing] distribution of the Settlement fund" once it receives the $95 million from Apple. Settlement ¶ B.2. A recent class action complaint filed in this Court by a prominent and respected member of the Plaintiffs' bar, *Whalen v. Epiq*, No. 25-cv-4522 (N.D. Cal.), *available at* https://storage.courtlistener.com/recap/gov.uscourts.cand.450225/gov.uscourts.cand.450225.1.0.pdf, alleges that Angeion LLC has previously breached its fiduciary duty with respect to class members in other cases. That complaint alleges that in three class settlement cases, Angeion reported interest earned on qualified settlement funds of less than 0.5% (when the market rate at the time was 4-6%), in exchange for kickbacks from the bank holding the funds. *Whalen* Complaint ¶80.

Rule 23(e)(3) demands the disclosure of any such agreements that Angeion may have with a bank related to the funds in this case. *Cf. also* N.D. Cal. Procedural Guidance for Class Action Settlements, a*vailable at* http://cand.uscourts.gov/ClassActionSettlementGuidance (requiring explanation of the "reasonableness of [the settlement administrator's] costs in relation to the value of the settlement, and who will pay the costs"). If such agreements or arrangements exist here, Rule 23 would bar the certification of the class and approval of the settlement.

## CONCLUSION

Objector Stephens recommends a reasonable fee would be no more than $19 million, or 20% of the gross settlement fund, and the Court may consider awarding less because of the lodestar overbilling and the overreaching above-benchmark request. In addition, the Court should deny final approval until the Settlement Administrator discloses the terms on which class settlement funds will be held, and attests that they will be held in accounts bearing market interest rates.

Dated: July 2, 2025                Respectfully submitted,

                                   /s/ Neville S. Hedley
                                   Neville S. Hedley  (SBN 241022)
                                   HAMILTON LINCOLN LAW INSTITUTE
                                   CENTER FOR CLASS ACTION FAIRNESS
                                   1629 K Street NW, Suite 300
                                   Washington, DC 20006
                                   Voice: 312-342-6008
                                   Email: ned.hedley@hlli.org

                                   *Attorneys for Objector Reilly Stephens*

<u>PROOF OF SERVICE</u>

I hereby certify that on this day I electronically filed the foregoing Objection using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 2nd day of July, 2025.

*/s/ Neville S. Hedley*
Neville S. Hedley

I, Reilly Walsh Stephens, am the objector. As required by ¶ 14.g. of Court's Preliminary Approval Order, I sign and date this written objection drafted by my attorneys from Hamilton Lincoln Law Institute, whom I retained to represent me in this matter.

_____     July 2, 2025

Reilly W. Stephens                                          Date