Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Mark N. Todzo (Bar No. 168389)
Patrick Carey (Bar No. 308623)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
pcarey@lexlawgroup.com

Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

E. Kirk Wood (*pro hac vice*)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238f
Telephone: 205-612-0243
kirk@woodlawfirmllc.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as Guardian of A.L., a Minor, JOHN TROY PAPPAS, and DAVID YACUBIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Docket No.: 4:19-cv-04577- JSW (SK)<br><br>**PLAINTIFFS' COUNSEL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS AND RESPONSE TO OBJECTIONS**<br><br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5, 2nd Floor<br>Date: August 22, 2025<br>Time: 9:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ....................................................................................................... 1

II.     ARGUMENT ................................................................................................................ 4

        A.      Legal Standard ................................................................................................. 4

        B.      The Brown Objection Should Be Overruled ................................................... 5

        C.      The Stephens Objection Also Should Be Overruled ....................................... 6

                1.      The lodestar attributed to document review is amply supported by the hourly rate charged and the volume of work accomplished ........................................................... 6

                2.      The size of the fund fully supports the requested fee award, and precedent demonstrates Stephens is wrong to suggest the fund's size is the sole determinant factor in setting the award ..................................................................... 8

                3.      The courts in this District do not solely or even heavily rely on empirical surveys to set fee awards and have no such practice of punitively reducing a fee award for submitting a well-supported fee application ......................................................... 11

        D.      Stephens's Suggestion That the Court Should Compel the Settlement Administrator to Disclose Any Agreements with the Bank Holding the Settlement Amount Has No Basis under Rule 23(e)(3), and Moreover, Would Not Indicate Any Deficiency with the Settlement ...................................................................................... 14

III.    CONCLUSION ............................................................................................................ 15

**TABLE OF AUTHORITIES**

**Cases**

*Alexander v. FedEx Ground Package Sys., Inc.*,
    No. 05-CV-00038-EMC, 2016 WL 3351017 (N.D. Cal. June 15, 2016)................................. 12

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015)........................................................................................... 5

*Brown v. Stackler*,
    612 F.2d 1057 (7th Cir. 1980) ........................................................................................ 13, 14

*Commonwealth Electric Co. v. Woods Hole*,
    754 F.2d 46 (1st Cir. 1985)................................................................................................. 13

*Dial Corp. v. News Corp.*,
    317 F.R.D. 426 (S.D.N.Y. 2016) ........................................................................................ 10

*Edwards v. Nat'l Milk Producers Fed'n*,
    No. 11-cv-04766-JSW, 2017 WL 3616638 (N.D. Cal. Jun. 26, 2017) ............................ 1, 4, 8

*Fischel v. Equitable Life Assurance Soc'y*,
    307 F.3d 997 (9th Cir. 2002) ............................................................................................... 9

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992) .............................................................................................. 4

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*,
    No. CV 16-03157 PSG (JEMx), 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024).................... 10

*Hendricks v. Starkist Co.*,
    No. 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016)................................. 4

*In re Capacitors Antitrust Litig.*,
    No. 3:17-md-02801-JD, 2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ..................................... 2

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 3:07-cv-5944 JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ..................................... 12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. C-07-5944 JST, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016)......................................... 12

*In re Glumetza Antitrust Litig.*,
    2022 WL 327707 (N.D. Cal. Feb. 3, 2022) ...................................................................... 7, 10

*In re Google Location Hist. Litig.*,
    No. 5:18-cv-05062-EJD, 2024 WL 1975462 (N.D Cal. May 3, 2024) ............................... 2, 11

*In re Google Referrer Header Priv. Litig.*,
    No. 5:10-CV-04809-EJD, 2023 WL 6812545 (N.D. Cal. Oct. 16, 2023) ............................... 10

*In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK,
    2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ....................................................................... 12

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    No. 19-md-02913-WHO, 2023 WL 11820531 (N.D. Cal. Dec. 18, 2023) ........................... 7, 8

ii

PLAINTIFFS' COUNSEL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS AND RESPONSE TO OBJECTIONS
Case No. 4:19-CV-04577

*In re LendingClub Sec. Litig.*,
   Nos. C 16-02627 WHA, C 16-02670 WHA, C 16-03072 WHA, 2018 WL 4586669 (N.D. Cal.
   Sept. 24, 2018) ................................................................................................................ 10

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ........................... 1, 10

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................... 4, 6

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-md-02420-YGR, 2018 WL 3064391 (N.D. Cal. May 16, 2018) ............................... 2

*In re MacBook Keyboard Litig.*,
   No. 5:18-cv-02813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023) ............................... 7

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................ 5

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   959 F.3d 922 (9th Cir. 2020) ..................................................................................... 8, 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. MDL 3:07-md-1827 SI., 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ........................ 10

*In re TikTok, Inc., Consumer Priv. Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022) ....................................................................... 2, 10, 13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   No. 8:10ML 02151 JVS (FMOx), 2013 WL 12327929 (C.D. Cal. July 24, 2013) .................. 9

*In re U.S. Foodservice, Inc. Pricing Litig.*,
   No. 3:07-md-1894 (AWT), 2014 WL 12862264 (D. Conn. Dec. 9, 2014) ............................. 2

*In re Volkswagen "Clean Diesel" Mktg.*,
   No. 15-md-02671-CRB, 2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) ............................... 2

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .......................................................................................... 9

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) ...................................................................... 5, 6, 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-md-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ............................... 10

*Ko v. Natura Pet Prod., Inc.*,
   No. C 09-02619 SBA, 2012 WL 3945541 (N.D. Cal. Sept. 10, 2012) ................................. 4

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ........................................................................................ 7

*Morgan v. Rohr, Inc.*,
   No. 3:20-CV-00574-GPC-AHG, 2025 WL 1285830 (S.D. Cal. May 1, 2025) ..................... 14

*New York State Teachers' Ret. Sys. v. GM Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ................................................................................. 10

*Pike v. Cnty. of San Bernardino*,
    No. EDCV 17-1680 JGB (KKx), 2020 WL 1049912 (C.D. Cal. Jan. 27, 2020) ..................... 8

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
    No. C 19-04744 WHA, 2022 WL 816473 (N.D. Cal. Mar. 17, 2022) .................................... 10

*Rodman v. Safeway Inc.*,
    No. 11-cv-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) ............................ 11, 12

*Seb Inv. Mgmt. AB v. Symantec Corp.*,
    No. C 18-02902 WHA, 2022 WL 409702 (N.D. Cal. Feb. 10, 2022).................................... 10

*Sobel v. Hertz Corp.*,
    53 F. Supp. 3d 1319 (D. Nev. 2014)..................................................................................... 4

*Stonebrae, L.P. v. Toll Bros.*,
    No. C-08-0221 EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ........................................ 7

*Uriarte-Limon v. Smith*,
    No. CV160713FMO(PLAx), 2018 WL 6265098 (C.D. Cal. Jan. 3, 2018)............................... 6

*Uziel v. Super. Ct.*,
    No. CV 19-1458-DSF (JEM), 2021 WL 5830040 (C.D. Cal. Oct. 19, 2021) ........................... 7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................................... 1, 9, 10

**Other Authorities**

Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J.
    EMPIRICAL LEGAL STUD. 811 (2010) ................................................................................. 13

Christopher Muhawe & Masooda Bashir, *Privacy as Pretense: Empirically Mapping the Gap
    between Legislative & Judicial Protections of Privacy*, 2023 U. ILL. J.L. TECH. & POL'Y 257
    (Fall 2023)............................................................................................................................ 13

Ian C. Ballon, E-COMMERCE AND INTERNET LAW: LEGAL TREATISE WITH FORMS (2d ed. 2019) 13

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action
    Settlements: 1993–2008*, 7 J. EMPIRICAL LEGAL STUD. 248 (2010) ......................................... 13

**Rules**

Fed. R. Civ. P. 23(e)(5).................................................................................................................. 4

## I.    INTRODUCTION

Over 2.4 million claims have been filed by potential Settlement Class Members; *only* two individuals have objected to Class Counsel's requested attorneys' fees, and no one has objected to Class Counsel's request for expenses or Plaintiffs' request for service awards. The Settlement Administrator will report on the number of opt-outs in a forthcoming declaration, but that number is expected to be less than .015% of the Settlement Class. The overwhelmingly positive response from the Settlement Class demonstrates that the Settlement Class approves of both the Settlement and the requested attorneys' fees, expense reimbursement, and service awards.  For the reasons below and in the Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards (ECF No. 354) (the "Fee and Expense Application"), Plaintiffs and Class Counsel ask that the Court approve the requested awards.

Plaintiffs' Counsel meet the criteria to receive a 30% fee award, an upward adjustment from the Ninth Circuit's benchmark.  In accordance with the Ninth Circuit's guidance, it is in the Court's discretion to set an appropriate fee award based on multiple factors relating to the Settlement: (1) the result achieved; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) the skill required and quality of work by counsel; and (5) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *accord Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 3616638, at *8 (N.D. Cal. Jun. 26, 2017). In this case, each factor supports an increased fee award. As set forth in the Fee and Expense Application, the Settlement delivers an outstanding result for the Settlement Class.  The risk throughout the litigation was great, including because data privacy law is constantly advancing. Class Counsel aggressively and thoroughly prosecuted the case to obtain critical discovery and discovery rulings needed to get the case ready for class certification, summary judgment, and trial; this work also proved valuable to facilitate a meaningful mediation process that led to this Settlement.  Moreover, the contingent nature of the fee along with the specific expertise required to litigate this case warrant an upward departure for the fee award.  Class Counsel's fee request is in line with and supported by case law from this District and elsewhere. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (awarding

1

PLAINTIFFS' COUNSEL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS AND RESPONSE TO OBJECTIONS
Case No. 4:19-CV-04577

33.3% of $105 million settlement); *In re Capacitors Antitrust Litig.,* No. 3:17-md-02801-JD, 2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) (awarding 31.01% of $66 million settlement); *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-md-02671-CRB, 2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) (awarding 30.5% of $80 million settlement); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, 2018 WL 3064391 (N.D. Cal. May 16, 2018) (awarding 30% of $113.4 settlement); *In re Google Location Hist. Litig.*, No. 5:18-cv-05062-EJD, 2024 WL 1975462 (N.D Cal. May 3, 2024) (awarding 30% of $62 million settlement); *see also In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) (awarding 33% of $92 million settlement after three years of litigation); *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 3:07-md-1894 (AWT), 2014 WL 12862264 (D. Conn. Dec. 9, 2014) (awarding 33.3% of $297 million settlement)*.*

Class Counsel respectfully request a 30% fee award, reflecting a reasonable lodestar multiplier of 1.62, which accounts for the risks and uncertainty faced in prosecuting this case. This request does not represent a windfall. It properly compensates counsel that pursued this risky case on a fully contingent basis over the past six years, investing significant time and resources to achieve this excellent outcome.

Below, Class Counsel address the objections of Reilly Stephens ("Stephens") and Howard W. Brown, Jr. ("Brown") to the attorneys' fees request.  Brown claims Class Counsel did not "disclose[ ] the full amount being requested," and that it was "impossible to assess whether the proposed fees are fair or excessive." *See* ECF No. 350 at 2. Brown ignores the fact that the Court-authorized Full Class Notice specifically stated that "Plaintiffs' Counsel will ask the Court for an award of attorneys' fees of up to 30% of the Settlement Fund." *See* ECF No. 336-2 at 37. The Full Class Notice was filed as an attachment to Plaintiffs' Settlement on December 31, 2024 and further posted on the Settlement Website on January 17, 2025. Brown's objection was filed on May 16, 2025, prior to the deadline for Plaintiffs to file the Fee and Expense Application and before the July 2, 2025 objection deadline.  The Fee and Expense Application was filed five weeks before the objection deadline. Despite having plenty of additional notice and necessary information to

1   fully evaluate the fee request, Brown made no further filings in support of his objection. Brown's

2   objection should be overruled on the merits.

3       Stephens's objection should be viewed with deep skepticism and should likewise be

4   overruled. Stephens and his counsel from the Hamilton Lincoln Law Institute Center for Class

5   Action Fairness (including Theodore H. Frank, who submitted a declaration in support of Stephens

6   objection while not personally entering an appearance to represent Stephens) blatantly ignore the

7   substantial accomplishments that this Settlement achieves. Stephens claims that the proposed 30%

8   fee award represents a windfall but never addresses the scope and complexity of the work

9   Plaintiffs' Counsel undertook to prosecute this Action and obtain this excellent Settlement for the

10  Settlement Class. *See* ECF No. 372. In lodging this meritless objection, Stephens fails to

11  acknowledge the Declarations submitted by Class Counsel detailing the work performed by the

12  attorneys who worked on the case and their specific roles and involvement, the hours worked by

13  each individual and their hourly rates, and the citations confirming that the rates charged here have

14  previously been approved by Courts in this District and elsewhere.  *See* ECF Nos. 354-1, 354-2,

15  354-3, and 354-4. Stephens limits his arguments to a review of the hours spent performing

16  document review by associates and staff attorneys (at discounted billing rates) in an attempt to

17  theoretically lower the overall lodestar. But he fails to account for the expertise Class Counsel's

18  associates and staff attorneys brought to the work, the novel and sophisticated issues that arise in

19  data privacy cases, for which familiarity and expertise is valued, and that courts have approved of

20  the use of associates and staff attorneys on document review projects at rates similar to the one

21  applied by Class Counsel. Overlooking the quality of the work performed, Stephens and his

22  counsel wrongly argue that the fee request is out-of-step with precedent (it is not). Further, he

23  suggests, without any legal basis whatsoever, that as punishment for an "excessive request," the

24  fee awarded should be *less* than the Circuit's benchmark.[1] That is not the law.

25

---

26  [1] The above only touches on the major problems with Stephens's objection. In addition, Stephens
    attempts to frame his objection by combining the percentage of the *attorneys' fees and costs* sought
27  by Plaintiffs' Counsel and comparing it to the benchmark in this Circuit for *attorneys' fees*. ECF
    No. 372 at 1. Then, Stephens misquotes this Court in suggesting that the typical fee award in a
28  (footnote continued)

1    What is clear upon a close evaluation of Stephens's objection is that it is anything but

2    credible. In addition to failing to address the substantive work and the factors Class Counsel

3    provided in support of a 30% fee award, Stephens and his counsel misconstrue and misrepresent

4    precedent in the Northern District of California and its judges' assessment of how fee awards

5    should be determined.  Moreover, the metrics on which Stephens relies to make his argument are

6    outdated, making them partially if not wholly irrelevant to a settlement in 2025 involving claims

7    related to still-evolving data privacy laws. Finally, Stephens's outlandish suggestion that Class

8    Counsel be punished with a below benchmark award is unsupported by the law he cites.

9    **II.    ARGUMENT**

10        **A.  Legal Standard**

11    Rule 23(e)(5) provides class members with the opportunity to object to the proposed class

12    settlement. Fed. R. Civ. P. 23(e)(5). Objectors to any aspect of the class action settlement "bear

13    the burden of proving any assertions they raise challenging the reasonableness of a class action

14    settlement." *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *14 (N.D.

15    Cal. Sept. 29, 2016) (internal citation omitted); *accord Gates v. Deukmejian*, 987 F.2d 1392, 1397–

16    98 (9th Cir. 1992) ("The party opposing the fee application has a burden of rebuttal that requires

17    submission of evidence to the district court challenging the accuracy and reasonableness of the

18    hours charged or the facts asserted by the prevailing party in its submitted affidavits.); *Sobel v.*

19    *Hertz Corp.*, 53 F. Supp. 3d 1319, 1328 (D. Nev. 2014) (same); *In re LinkedIn User Privacy Litig.*,

20    309 F.R.D. 573, 583 (N.D. Cal. 2015). "In determining whether to finally approve a class action

21    settlement, the Court considers whether there are any objections to the proposed settlement and, if

22    so, the nature of those objections." *Ko v. Natura Pet Prod., Inc.*, No. C 09-02619 SBA, 2012 WL

23    3945541, at *6 (N.D. Cal. Sept. 10, 2012). "The fact that there is some opposition does not

24    necessitate disapproval of the settlement; rather, the Court must evaluate the substance of the

25

26

27    case of this size is 20-25%. *Compare* ECF No. 372 at 1 *with Edwards*, 2017 WL 3616638, at

28    *8("'The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3 % of the
     total settlement value, with 25% considered the benchmark.'") (citing cases).

objections to determine whether they suggest serious reasons why the proposal might be unfair." *Id.* "As with the Settlement itself, the lack of objections [concerning the fee award] weighs in favor of approval of the fee request." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 532–33 (N.D. Cal. 2020); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) (The "existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award); *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (citation omitted).

### B.  The Brown Objection Should Be Overruled

The Court may easily dispose of the Brown objection filed on May 16, 2025 (ECF No. 350), well before the objection deadline of July 2, 2025.  As to his objection concerning attorney fees, Brown wrongly asserts that "Disproportionate Attorney Fees: Plaintiffs' Counsel has not yet disclosed the full amount being requested for attorneys' fees and service awards, yet the net settlement amount available to class members is already limited. Without more transparency, it is impossible to assess whether the proposed fees are fair or excessive."  ECF No. 350 at 2.  The Court-approved Full Class Notice, which was posted on the Settlement Website that went live on January 17, 2025, included the amount Plaintiffs' Counsel would seek in attorneys' fee award (and the amount of the service award).  *See* ECF No. 336-2 at 37 ("Plaintiffs' Counsel will ask the Court for an award of attorneys' fees of up to 30% of the Settlement Fund, litigation expenses of up to $1,100,000, and Service Awards to the Class Representatives of up to $10,000 each."); ECF No. 365-2 at ¶¶ 17-18 (Angeion declaration stating Settlement Website provides "answers to frequently asked questions," which are contained in the Full Class Notice). The Court-approved Email Notice also advised potential Settlement Class Members that the Fee and Expense Application would be posted on the Settlement Website on May 28, 2025.  ECF No. 365-2 at 13. The Fee and Expense Application was subsequently filed on May 28, 2025, and posted on the Settlement Website on

1    May 29, 2025.  ECF No. 365-2 ¶ 18. Brown has not further elaborated on the basis for his objection

2    since filing his objection.

3         Where an objector "simply assert[s] that the requested fees are excessive [ ] without

4    offering any reasons," such an objector "[has] not satisfied [his] burden" to prove that the proposed

5    fee award is unreasonable. *In re Linkedin User Priv. Litig.*, 309 F.R.D. at 592; *see also, In re Wells

6    Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d at 533 (rejecting objection to attorneys'

7    fee where the objector described that request as "bloated," but made no specific complaint about

8    it.).  Brown has provided absolutely no basis or information to support his objection.  It is not the

9    Court's obligation to divine the basis for an objector's objection.  Accordingly, Brown's objection

10   should be overruled.

11        **C.  The Stephens Objection Also Should Be Overruled**

12        Stephens makes three arguments. He asserts that (i) the lodestar attributed to document

13   review is inflated; (ii) the size of the settlement requires a smaller fee award; and (iii) empirical

14   data compels a lower fee award. As further explained below, these arguments are without merit

15   and Stephens's objection should be overruled.

16            **1.  The lodestar attributed to document review is amply supported by the hourly
                  rate charged and the volume of work accomplished.**

17

18        Stephens puts forth a very narrow objection to Plaintiffs' Counsel's total lodestar.

19   According to Stephens, the lodestar is overstated by $1.9 million due to billing 5,248.4 hours of

20   document review at $425 per hour, which he claims is an excessive rate. ECF No 372 at 10-11.

21   Stephens does not criticize the hours spent reviewing documents, nor could he.  Plaintiffs' Counsel

22   reviewed over 3,000,000 pages of documents.  That translates to 571 pages of documents reviewed

23   per hour.  The speed and efficiency with which reviewers were able to get through the documents

24   is directly attributable to the expertise and experience brought by the associates and staff attorneys

25   Plaintiffs' Counsel selected to review the documents. These reviewers are familiar with data

26   privacy claims and cases and know how to identify documents relevant to advance Plaintiffs'

27   claims. *See Uriarte-Limon v. Smith,* No. CV160713FMO(PLAx), 2018 WL 6265098, at *2 (C.D.

28   Cal. Jan. 3, 2018) ("expertise and independent work on the matter may very well have been more

6

PLAINTIFFS' COUNSEL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS AND RESPONSE TO OBJECTIONS
Case No. 4:19-CV-04577

efficient than billing an associate to familiarize themselves with the facts, do the same work over a lengthier amount of time, and then have [a senior attorney] review their work") (internal citation omitted).

An hourly rate of $425 is appropriate here and similar rate have been approved by courts in this District and elsewhere in California for document review, including in at least one case in which Stephens unsuccessfully objected. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 19-md-02913-WHO, 2023 WL 11820531, at *4 (N.D. Cal. Dec. 18, 2023) ("*JUUL Litigation*") (rejecting Stephens's objection to an average rate of about $422.60/hour applied for document review (*see JUUL Litigation*, ECF No. 4063 at 11-12), noting that "[s]taff attorney rates approved in this District routinely exceed $400/hour, materially similar to the averaged amount charged here"); *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving $425 for contract attorneys); *In re Glumetza Antitrust Litig.*, 2022 WL 327707, at *8 (N.D. Cal. Feb. 3, 2022) (finding $400 for staff attorney reasonable); *Uziel v. Super. Ct.*, No. CV 19-1458-DSF (JEM), 2021 WL 5830040, at *8 (C.D. Cal. Oct. 19, 2021) (document review attorney rates of $375 to $450 an hour reasonable); *see also* Fee and Expense Application at 12-13.

Stephens's argument that document review in this case should have been performed by contract attorneys ignores the highly technical and complex nature of this litigation. Using experienced attorneys on document review sped the review process to the benefit of the Settlement Class. Further, it is not the Court's role to:

> impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests. The difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys—must drive the district court's decision.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). The "[u]se of more experienced attorneys for certain tasks can be more efficient than deploying less senior attorneys." *Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221 EMC, 2011 WL 1334444, at *13 (N.D. Cal. Apr. 7, 2011). Here that was certainly the case, given that document review required the development of

a multi-tiered review structure designed to identify key documents and potential deponents, weekly calls, and close coordination among the entire litigation team. *See Pike v. Cnty. of San Bernardino*, No. EDCV 17-1680 JGB (KKx), 2020 WL 1049912, at *5 (C.D. Cal. Jan. 27, 2020) ("[T]he [C]ourt does not agree that document review is menial or mindless work; in complex civil litigation such as the instant case, it is a critically important and challenging task.") (citation omitted).

Stephens claims that "[t]he best practice is to bill document review hours at cost" (ECF No. 372 at 11) and further cites an American Bar Association ethics opinion to argue that it is unethical to charge more than cost. ECF No. 372 at 12 (quoting ABA Formal Opinion 08-451). However, Stephens fails to mention that ABA Formal Opinion 08-451 applies only to the *outsourcing of work* and the ethics thereof. The opinion has no application in this case, where the document review work was performed by experienced associates and staff attorneys employed by the respective firms.

### 2. The size of the fund fully supports the requested fee award, and precedent demonstrates Stephens is wrong to suggest the fund's size is the sole determinant factor in setting the award.

In *JUUL Litigation*, the court awarded 30% of the settlement fund as attorneys' fees, explaining that "while the size of the award [is] a function in part of the size of the Settlement, it is not simply a result of the number of class members. It is also supported by the *Vizcaino* factors. . . . [Therefor t]he award does not represent a 'windfall' to counsel." *JUUL Litigation*, 2023 WL 11820531, at *3 n.4. Nonetheless, Stephens's argument focuses almost exclusively on the size of the Settlement here (framing the recovery as a megafund settlement) and fails to address any of the factors that the Court must consider under *Vizcaino*. ECF No. 372 at 3-4. The Settlement is below the $100 million threshold typically associated with a megafund. *See In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 932 (9th Cir. 2020) ("[m]ost courts define mega-funds as those in excess of $100 million") (quoting 5 William B. Rubenstein, Newberg on Class Actions § 15:81 (5th ed. 2012)). For argument's sake, even if the Settlement were a megafund, Stephens still fails to justify his proposed fee award and substantively rebut Class Counsel's bases in support of the requested 30% award. *See Edwards*, 2017 WL 3616638, at *9 ("[T]he fund is

1   very large—somewhere between a typical fund and a megafund. Ultimately, the same reasoning

2   applies: 'Rather than abandon the percentage-of-recovery method, the best way to guard against a

3   windfall is first to examine whether a given percentage represents too high a multiplier of counsel's

4   lodestar.'").

5       The Ninth Circuit has clearly (and repeatedly) declined to "adopt a bright-line rule

6   requiring the use of sliding-scale fee awards for class counsel in megafund cases" that dictates a

7   downward adjustment as the settlement size increases. *In re Optical Disk Drive Prods. Antitrust*

8   *Litig.*, 959 F.3d at 922; *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*

9   *Pracs., & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 WL 12327929, at *34 (C.D.

10  Cal. July 24, 2013) ("no rule in the Ninth Circuit [] requires a court to decrease the percentage of

11  the fee award as the size of the settlement increases") (citing *Vizcaino*, 290 F.3d at 1047).

12  Stephens's argument in favor of "downward departure" from the benchmark (ECF No. 372 at 7)

13  ignores controlling Ninth Circuit authority that fund size is just "one relevant circumstance to

14  which courts must refer" (*see Vizcaino*, 290 F.3d at 1047) and "flies in the face" of a court's

15  obligation to "consider[] all the circumstances of the case and reach[] a reasonable percentage."

16  *Id.* at 1048. Stephens barely, if at all, addresses any of Class Counsel's arguments about the results

17  achieved, the risks of litigation, the skill and quality of the representation required to obtain this

18  outcome, or the contingent nature of the representation.[2] And in terms of looking at fee awards in

19  comparable cases, Stephens rests his argument primarily on the empirical surveys (discussed

20

21

---

22  [2] The risks of the case and the contingent nature of the representation are particularly relevant in assessing a fee award. "It is an established practice in the private legal market to reward attorneys

23  for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291,

24  1299 (9th Cir. 1994). "A district court generally has discretion to apply a multiplier to the attorney's fees calculation to compensate for the risk of nonpayment. It is an abuse of discretion

25  to fail to apply a risk multiplier, however, when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk,

26  and (3) there is evidence that the case was risky." *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002) (internal citation omitted). Such would be the case here. Stephens

27  completely fails to address the appropriate risk premium in light of the complex and technically challenging issues arising under the evolving data privacy laws.

28

*infra*).  To the extent Stephens points to other cases, such cases are not comparable or involve unique circumstances that explain the fee award granted.[3]  In contrast, in the Fee and Expense Application and chart of comparable cases attached to the Preliminary Approval Motion (*see* ECF No. 336-3), Class Counsel provided a number of comparable and analogous cases to support their fee request.[4]  Certainly, this long line of precedents cannot be termed as "outlier" cases, as Stephens argues, but rather is the established law in this Circuit.

Cross-checking the requested percentage fee against Plaintiffs' Counsel's lodestar demonstrates there is no windfall, as the resulting 1.62 multiplier falls well within the "presumptively acceptable range of 1.0-4.0" in this Circuit.  *See Vizcaino*, 290 F.3d at 1046, 1051 n.6 (approving 28% fee from $96.885 million fund, corresponding to 3.65 lodestar multiplier); *In re Google Referrer Header Priv. Litig.*, No. 5:10-CV-04809-EJD, 2023 WL 6812545, at *10 (N.D. Cal. Oct. 16, 2023) (approved "lodestar multiplier of 1.85 is comparable to that previously

---

[3] *See, e.g.*, *Glumetza*, 2022 WL 327707, at *8-12 (calculated fee award based on lodestar and awarded a 2.2 lodestar multiplier, resulting in a percentage cross-check of 11%); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK 2020 WL 4212811, at *23-40 (N.D. Cal. July 22, 2020) (applying lodestar method to award 1.15 multiplier (corresponding to at 19.4% fee percentage after specifically identifying problems with counsel hours and certain work)); *In re LendingClub Sec. Litig.*, Nos. C 16-02627 WHA, C 16-02670 WHA, C 16-03072 WHA, 2018 WL 4586669, at *2 (N.D. Cal. Sept. 24, 2018) (granting counsel's 13.1% fee request from a $125 million settlement fund, reflecting a multiplier of 1.32, after only 1.5 years of litigation); *New York State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226, 242-44 (E.D. Mich. 2016) (out of circuit case granting counsel's requested fee of 7% on a $300 million settlement fund, corresponding to a 1.9 multiplier); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 437 (S.D.N.Y. 2016) ($244 million settlement where counsel was awarded a 20% fee award, reflecting a 1.75 multiplier); *Seb Inv. Mgmt. AB v. Symantec Corp.*, No. C 18-02902 WHA, 2022 WL 409702, at *8-9 (N.D. Cal. Feb. 10, 2022) (plaintiffs requested (and the court awarded) 19% of the settlement as the fee award); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2022 WL 816473, at *5-11 (N.D. Cal. Mar. 17, 2022) (awarding 16.33% in fees as requested by counsel, yielding a multiplier of 2.81); *In re HP Secs. Litig.*, No. 3:12-cv-05980, ECF No. 279 (N.D. Cal. Nov. 16, 2015) (awarding counsel's requested fee of 11% from $100 million settlement, corresponding to a 1.15 multiplier).

[4] *See In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2-4 (fee award of 33.3% of $104.75 million settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-md-1827 SI., 2011 WL 7575003, at *1 (N.D. Cal. Dec. 27, 2011) (approving 30% fee award of $405 million settlement); *In re TikTok*, 617 F. Supp. 3d at 942 (awarding 33% of $92 million settlement); *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, No. CV 16-03157 PSG (JEMx), 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) (awarding 33% of the $70 million settlement as attorney fees).

1  permitted by other courts in similar internet privacy cases"); *In re Google Location History Litig.*,

2  No. 5:18-cv-05062-EJD, 2024 WL 1975462 at *14-15 (approving multiplier of 1.4, resulting in a

3  30% fee award); *see also* Fee and Expense Application at 13.

4  As set forth in the Fee and Expense Application, the $95 million settlement and non-

5  monetary relief was not easily achieved. Plaintiffs' Counsel litigated this case for approximately

6  six years on a contingency basis, expending significant resources—including a team of 24

7  attorneys and substantial time—and bore the risk of non-recovery. Many of the legal issues in this

8  case were also novel, and at the time of motion to dismiss, there was just one other case addressing

9  the privacy claims arising out of voice assistants, which significantly added to the risks. The

10  litigation was hard fought and produced a lengthy docket of substantial briefing, including at least

11  10 discovery disputes and a motion for sanctions for discovery misconduct.

12  Stephens completely overlooks the six years of hard-fought litigation as well as the

13  extensive and contentious discovery after which Plaintiffs' Counsel achieved this tremendous

14  Settlement. *See* Fee and Expense Application, ECF No. 354 at 3-11; *see also* ECF Nos. 354-1,

15  354-2, 354-3, 354-4 (firm declarations detailing work perform during the case). He ignores or

16  simply does not comprehend any of the particular attributes of this case, which support a fee award

17  above the Ninth Circuit's benchmark. Accordingly, his objection should be overruled.

18
19  **3.  The courts in this District do not solely or even heavily rely on empirical surveys to set fee awards and have no such practice of punitively reducing a fee award for submitting a well-supported fee application.**

20  To avoid taking a multifactored approach as required under Circuit precedent to challenge

21  the fee request, Stephens heavily relies on and overstates the significance of empirical studies to

22  make his objection. ECF No. 372 at 4-6. But courts in this District have found that the empirical

23  studies "[are] simply an important additional data point in the determination of an appropriate

24  award." *Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 WL 4030558, at *5-6 (N.D. Cal.

25  Aug. 22, 2018). In fact, the cases Stephens claims demonstrate that "judges of this district rely on

26  [] empirical surveys . . . as a matter of course" (ECF No. 372 at 6) say anything but.  *See In re*

27  *Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d at 526 ("[the empirical studies']

28

data does not replace the 25 percent benchmark . . . . It is simply an important additional data point in the determination of an appropriate award); *Alexander v. FedEx Ground Package Sys., Inc.*, No. 05-CV-00038-EMC, 2016 WL 3351017, at *2 (N.D. Cal. June 15, 2016) ("Indeed, Judge Koh has found there is 'persuasive evidence that 'the median attorney's fee award in a sample of 68 'megafund' class action settlements over a 16-year period was 10.2%. . . . [But notably], Judge Koh rejected evidence from a different study indicating that the mean and median fee percentages awarded were 17.8% and 19.5%."). In none of the cases Stephens cites did the court mechanically apply survey results without analysis of whether the award was appropriate given the circumstances of the case. *See In re Yahoo!*, 2020 WL 4212811, at *37-38  (court applied the lodestar method, and discussed the "circumstances" of the case when performing a percentage-of-recovery crosscheck); *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *9-11 (N.D. Cal. Sept. 2, 2015) (same).

While Stephens cites a handful of cases that have found surveys informative, other courts have rejected the surveys' findings in favor of a case specific approach. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944 JST, 2016 WL 721680, at *43 (N.D. Cal. Jan. 28, 2016) (noting existence of surveys but recommending upward adjustment from the benchmark to 30% of $173 million settlement), *report and recommendation adopted in part*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 4126533, at *6 (N.D. Cal. Aug. 3, 2016) (awarding 27.5% fee); *Rodman*, 2018 WL 4030558, at *5-6 (citing the same surveys Stephens offers here and awarding fees totaling 28% of the recovery).  Nor can the survey results supplant an analysis of the relevant facts and circumstances necessary to determine whether this Settlement presents an exceptional result and warrants an upward departure from the benchmark consistent with Ninth Circuit authority. This makes sense given that the surveys on which Stephens relies provide no information about the facts and circumstances of the cases that comprise their analyses. Looking at the studies in isolation, it would be impossible to understand the resulting impact on the fee award, where, for example, the case involved a certified class, concerned novel legal and factual issues, dealt with potentially dispositive preemption issues, involved defendants

in precarious financial straits, required unique legal theories, or raised other key considerations that may inform the reasonableness of a fee award in a particular case.

Moreover, given that the surveys are outdated, the value of such surveys is doubtful, particularly in a data privacy case—a practice area with evolving legal standards. *See In re TikTok*, 617 F. Supp. 3d at 941 ("Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel."). The empirical surveys that Stephens cites date back to 2010. *See* ECF No. 372 at 4-6 (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 263 (2010) and Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 838 (2010)). However, since 2010, there has been a significant increase in the number of data privacy class actions, and accordingly relevant settlements. Ian C. Ballon, E-COMMERCE AND INTERNET LAW: LEGAL TREATISE WITH FORMS § 26.15 (2d ed. 2019) ("Since 2010, there has been an explosion of data privacy-related putative class action suits filed against Internet companies, social networks, social gaming sites, . . . .") (cited in Christopher Muhawe & Masooda Bashir, *Privacy as Pretense: Empirically Mapping the Gap between Legislative & Judicial Protections of Privacy*, 2023 U. ILL. J.L. TECH. & POL'Y 257 (Fall 2023)). The surveys, while useful for detailing the trends prior to 2010, and to some extent useful in assessing the fees for more established areas of litigation, have insufficient data to reliably demonstrate trends in current fee awards for data privacy cases. Following Stephens's approach would be akin to using 2010 attorneys' hourly rate surveys to understand whether 2025 rates are reasonable; the legal landscape has changed so much that the outdated surveys have little, if any, utility.

Incredibly, Stephens goes so far as to suggest that the Court should "award less than the Court might have" in attorneys' fees, effectively encouraging the Court to punish Class Counsel for its well-supported fee request, anchoring its position based on two out-of-Circuit cases. *See* ECF No. 372 at 9 (citing *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980) and *Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985)). But neither case

1    stands for the proposition Stephens asserts. In *Brown*, the court found that "it was utterly

2    unreasonable to expend that amount of time on a plain and simple case," justifying the district

3    court's decision to deny fees entirely.  *Brown*, 612 F.2d at 1059. No such contention has been

4    asserted here about Plaintiffs' Counsel's work in this litigation. *Commonwealth Electric* involved

5    a frivolous appeal for which the First Circuit assessed fees against the appellant and appellant's

6    counsel—plainly an inapposite case.

7        For these reasons and the arguments presented in Plaintiffs' Fee and Expense Application,

8    which are incorporated herein by reference, Stephens' objection should be overruled.

9    **D.  Stephens's Suggestion That the Court Should Compel the Settlement
        Administrator to Disclose Any Agreements with the Bank Holding the Settlement
10       Amount Has No Basis under Rule 23(e)(3), and Moreover, Would Not Indicate
        Any Deficiency with the Settlement**

11

12       As a last attempt to derail and delay what is an excellent result for the Settlement Class,

13   Stephens asserts that Rule 23(e)(3) "demands the disclosure of any [side] agreements [Settlement

14   Administrator] Angeion may have with any bank related to the funds in this case." ECF No. 372

15   at 13. This request is meritless and must be rejected for three reasons.

16       First, Rule 23(e)(3) does not require such disclosure. "[T]he court must consider 'any

17   agreement required to be identified under Rule 23(e)(3),' Fed. R. Civ. P. 23(e)(2)(C)(iv), *that is*,

18   'any agreement made in connection with the [settlement] proposal.'" *Morgan v. Rohr, Inc.*, No.

19   3:20-CV-00574-GPC-AHG, 2025 WL 1285830, at *13 (S.D. Cal. May 1, 2025).  Any agreement

20   Angeion has in the ordinary course of its business with the bank to hold the Settlement Amount is

21   by definition not an agreement made in connection with the Settlement Agreement between

22   Plaintiffs and Apple.

23       Second, the lawsuit that underlies Stephens's concern is at a preliminary stage, and no

24   decision on the merits of the allegation has been rendered concerning Angeion's conduct. *See*

25   *Whalen v. Epiq System, Inc. et al.*, No. 3:25-CV-04522 (N.D. Cal. 2025). Be that as it may, as

26   stated in the Declaration of Derek Burrows dated July 24, 2025 filed herewith ("Burrows Decl."),

27

28

1   to ensure absolute clarity, Angeion "denies that it has entered into any improper agreements in

2   connection with this settlement." Burrow Decl. ¶ 10.

3         Third, as a practical matter, this request is nonsensical in the context of this Settlement.

4   Per the terms of the Settlement Agreement, Apple has only funded the Settlement to cover the cost

5   of issuing notice and conducting settlement administration. *See* Settlement Agreement, ECF No.

6   336-2 § B.2; Burrows Decl. ¶ 6. Apple will fully fund the Settlement within five days after the

7   Effective Date of the Settlement. Settlement Agreement § B.2. Angeion is then required to transfer

8   payments to eligible Settlement Class Members within 60 days after the Effective Date or as soon

9   as practicable thereafter. *Id.* § B.10. Given this timeline, Angeion will receive the balance of the

10  Settlement Amount in time to start issuing payments, meaning there is no meaningful opportunity

11  for any interest to accrue if the funds were deposited in an interest-bearing account rather than a

12  distribution account. Burrows Decl. ¶¶ 7-9.

13  **III.    CONCLUSION**

14        For the reasons stated above and in the Fee and Expense Application, Plaintiffs and Class

15  Counsel respectfully request that the Court overrule all objections and approve the award of

16  attorneys' fees in the requested amount of $28.5 million (30% of the Gross Settlement Amount)

17  to Plaintiffs' Counsel; the proposed award of litigation costs in the amount of $916,125.83 to

18  Plaintiffs' Counsel; and the proposed Service Award of $10,000 each to Plaintiffs Rodriguez,

19  Pappas, and Yacubian.

20

21

22

23

24

25

26

27

28

Dated: July 25, 2025

Respectfully submitted:

*/s/ Christian Levis*
Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

Mark N. Todzo (Bar No. 168389)
Patrick Carey (Bar No. 308623)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com

E. Kirk Wood (*pro hac vice*   forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: 205-612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*

16

1

## **CERTIFICATE OF SERVICE**

2        I, Christian Levis, certify that on July 25, 2025 the foregoing document entitled

3  PLAINTIFFS' COUNSEL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

4  AND EXPENSES AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS AND

5  RESPONSE TO OBJECTIONS was filed electronically in the Court's ECF; thereby upon

6  completion the ECF system automatically generated a "Notice of Electronic Filing" as service

7  through CM/ECF to registered e-mail addresses of parties of record in this case.

8                                         /s/ *Christian Levis*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' COUNSEL'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS AND RESPONSE TO OBJECTIONS
Case No. 4:19-CV-04577