Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Mark N. Todzo (Bar No. 168389)
Patrick Carey (Bar No. 308623)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
pcarey@lexlawgroup.com

*Counsel for Plaintiffs*

Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

E. Kirk Wood (*pro hac vice*)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238f
Telephone: 205-612-0243
kirk@woodlawfirmllc.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| FUMIKO LOPEZ, FUMIKO LOPEZ, as Guardian of A.L., a Minor, JOHN TROY PAPPAS, and DAVID YACUBIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Docket No.: 4:19-cv-04577- JSW (SK)<br><br>**PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5, 2nd Floor<br>Date: August 22, 2025<br>Time: 9:00 a.m. |

Plaintiffs Fumiko Rodriguez (formerly known as Fumiko Lopez), John Troy Pappas, and David Yacubian (collectively, "Plaintiffs") file this second supplemental brief in support of their Motion for Final Approval of Class Action Settlement ("Final Approval Motion") (ECF No. 365) with respect to the 11,984 opt-outs submitted by Potter Handy, LLP ("Potter Handy") and 1,039 opt-outs submitted by Kazerouni Law Group, APC ("Kazerouni") (collectively, "Third-Party Opt-Outs"). *See* Third Supplemental Declaration of Lacey Rose ("Third Supp. Angeion Decl.") at Exs. B-C (lists of unique individuals for whom Potter Handy and Kazerouni, respectively, submitted Third-Party Opt-Outs).

As Defendant Apple Inc. ("Apple") and Plaintiffs informed the Court last week, there are substantial questions about the validity of the Third-Party Opt-Outs. *See* ECF Nos. 390, 391. Such concerns have only been amplified since then, as Class Counsel and the Settlement Administrator,[1] Angeion Group LLC ("Angeion"), continue to receive correspondence from the Third-Party Opt-Out individuals that suggest, at best, these individuals received incomplete and/or misleading information concerning the proposed Settlement and thus did not knowingly exercise their due process rights to individually request exclusion from the Settlement Class. At worst, it appears many of these potential members of the Settlement Class have been named as plaintiffs in separate litigation initiated by Potter Handy without their consent or being fully informed.[2] Depriving these Settlement Class members of the benefits of the proposed Settlement, and more fundamentally, the individual choice of whether to participate in the Settlement or opt out, is a violation of their due process rights that requires that the Court invalidate the Third-Party Opt-Outs. Curative notice therefore is warranted to inform the Third-Party Opt-Out individuals of the facts regarding the Settlement and provide them with an opportunity to voluntarily opt out, file a claim for benefits from the Settlement, or to do nothing while remaining a member of the Settlement Class.

---

[1] Unless otherwise defined, capitalized terms have the meanings ascribed to them in the Settlement Agreement and Release, ECF No. 336-2, Ex. 2 ("Settlement Agreement").

[2] Potter Handy has filed 17 lawsuits in California Superior Court, Santa Clara County, on behalf of thousands of the Third-Party Opt-Out individuals, some of whom are among those who have contacted Angeion. *See* ECF No. 390-1 ¶2.

1    Accordingly, Plaintiffs respectfully request that the Court implement the curative notice proposal

2    described below and invalidate the Third-Party Opt-Outs.

3    I.    **ARGUMENT**

      A.    **The Court Should Order Curative Notice to Correct Prior Misleading**

4               **Statements by Potter Handy and Kazarouni**

5         "Because of the potential for abuse, a district court has both the duty and the broad authority

6    to exercise control over a class action and to enter appropriate orders governing the conduct of

7    counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).  Integral to the class action

8    process, "due process requires at a minimum that an absent plaintiff be provided with an

9    opportunity to remove himself from the class by executing and returning an 'opt out' or 'request

10   for exclusion' form to the court." *Phillips Petroleum Co. v. Shutts*, 105 S. Ct. 2965, 2974 (1985).

11   Indeed, members of a settlement class "have a due process right to not be misled while they are

12   deciding whether to participate in a class settlement affecting their rights." *Retiree Support Grp.*

13   *of Contra Costa Cnty. v. Contra Costa Cnty.*, 2016 WL 4080294, at *8 (N.D. Cal. July 29, 2016).

14   Accordingly, "the class notice is 'crucial' to the entire scheme of Rule 23" and should provide

15   information in a way that "enables class members to conduct an 'independent analysis of their own

16   self-interest' in determining whether to object to or opt out of a settlement" (*Stark v. Patreon, Inc*.,

17   2025 WL 1592736, at *14 (N.D. Cal. June 5, 2025) (*citing Georgine v. Amchem Prods., Inc*., 160

18   F.R.D. 478, 490 (E.D. Pa. 1995)) and "gives district courts the power to regulate the notice and

19   opt-out processes and to impose limitations when a party engages in behavior that threatens the

20   fairness of the litigation." *Wang v. Chinese Daily News, Inc*., 623 F.3d 743, 749 (9th Cir. 2010),

21   *cert. granted, judgment vacated on other grounds*, 565 U.S. 801 (2011).

22        These same principles empower "courts overseeing settlement proceedings . . . to address

23   improper communications sent by non-parties . . . ." *Chalian v. CVS Pharmacy, Inc*., 2020 WL

24   7347866, at *4 (C.D. Cal. Oct. 30, 2020) (*citing In re Cmty. Bank of N. Virginia*, 418 F.3d 277,

25   311 (3d Cir. 2005)).  This includes correcting misleading or incomplete communications by non-

26   parties that attempt to end-run court-approved notice to solicit opt-outs.  *See Stark*, 2025 WL

27   1592736, at *14-15 (ordering dissemination of curative notice to 927 opt-outs when they were

28

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
Case No. 4:19-CV-04577

exposed to misleading information and providing an opportunity to submit a new opt-out form or file a claim); *Chalian v. CVS Pharmacy, Inc.*, 2020 WL 7414739, at *1-2 (C.D. Cal. Nov. 20, 2020) (invalidating opt-outs and requiring curative notice, stating "the Court's paramount concern and duty is to ensure that class members have accurate information upon which to decide whether to opt out"); *Alfred v. Pepperidge Farm, Inc.*, 2020 WL 13587900, at *8 (C.D. Cal. Apr. 14, 2020) (invalidating objections and opt outs and requiring curative notice because "misstatements, omissions, and inflammatory comments by [the non-party] may have affected the ability of some Class Members to make an informed, intelligent decision whether to participate in, opt out of, or object to the Settlement") (citation modified).  Importantly, in such circumstances, ordering curative notice "does not require a finding of actual misconduct—rather, the key is whether there is potential interference with the rights of the parties in a class action."  *Chalian*, 2020 WL 7347866, at *3 (citation modified).

Here, communications from Third-Party Opt-Out individuals confirm curative notice is warranted to correct misleading communications that Potter Handy and Kazerouni used to obtain the Third-Party Opt-Outs.[3]  As part of its normal practice of processing exclusion requests, Angeion emailed confirmation notices to the Third-Party Opt-Out individuals that their exclusion request had been received.  Third Supp. Angeion Decl. ¶12.  Angeion also sent the approved email notice to the Opted-Out Claimants after the Court granted the Parties' Joint Administrative Motion on August 14, 2025 (ECF No. 394).  Third Supp. Angeion Decl. ¶12.  The response to those communications has been extremely concerning.  Angeion has received emails from multiple individuals that claim they did not request exclusion from the Settlement, and even worse, that they thought they had submitted a claim to participate in the Settlement and were unaware that a request for exclusion had been submitted on their behalf.  Declaration of Erin Green Comite in

---

[3]    For the factual background concerning the Third-Party Opt-Outs, Plaintiffs refer the Court to Joint Administrative Motion to Permit Settlement Administrator to Contact Opted-Out Claimants and Certain Third-Party Opt-Outs, ECF No. 382; First Supplemental Declaration of Lacey Rose Re: Exclusions, ECF No. 384; Apple Inc.'s Supplemental Brief re Plaintiffs' Motion for Final Approval of Class Action Settlement and Request to Invalidate Third-Party Opt-Outs, ECF No. 390 ("Apple Supplemental Brief"), and the Second Supplemental Declaration of Lacey Rose Re: Exclusions and Claim Validations, ECF No. 389 ("Angeion Second Supplemental Declaration").

Support of Plaintiffs' Second Supplemental Briefing in Support of Motion for Final Approval of Class Action Settlement ("Comite Decl.") Exs. A-N.  Many of these individuals: (1) separately submitted claims to participate in the Settlement, and/or (2) upon receiving the notification, have requested Angeion withdraw Potter Handy and Kazerouni's exclusion requests.  Third Supp. Angeion Decl. ¶¶13, 15.  Others have stated that they wish to maintain their Potter Handy or Kazerouni exclusion request and withdraw their Settlement claim, to the extent they submitted one.  *Id*.

Below is an example of one potential Class Member's experience with Potter Handy that illustrates the severity of the conduct at issue here.  On August 14, 2025, after receiving a confirmation notice from Angeion that an exclusion request had been filed on her behalf, a potential member of the Settlement Class contacted Class Counsel directly with the following:

> My name is [C.R.] and I'm a claimant in this case[.] I received and [sic] email yesterday saying that I excluded myself from the settlement and I did not ... I made mistake [sic] when submitting my claim back in February and signing my documents and signed the opt out retainer which I immediately noticed and emailed the administrators... They emailed me back saying that everything was ok I was fine and I've been getting update emails and everything even recently so why did I receive that email saying I excluded myself.... I have the screenshot emails for proof and the dates on on [sic] the emails, please get back to me at your earliest convenience[ . . . . .] I just need to be reassured that I'm still a part of this settlement and will be receiving my payment as I was told[ . . . ].

Comite Decl., Ex. A-13.  Based on the communications C.R. provided to Class Counsel, Potter Handy communicated with C.R. about this Settlement and "fil[ing] a claim . . .  and seek the compensation you truly deserve[.]"  *See* ECF. No. 390-2 at 2 (exhibit of Potter Handy "Survey"); *see also* Comite Decl. A-1 to A-5; ECF No. 390 at 10-12.  C.R. electronically signed a retainer with Potter Handy and an opt out form on February 5, 2025, which is nearly three months before notice regarding the Settlement was disseminated.  Comite Decl. Ex. A-2; *see also* ECF No. 365-2 (Declaration of Steven Weisbrot Re: Notice and Administration (direct email and media notice campaigns began on May 2, 2025)).  Neither the introductory email nor the retainer received by

1   C.R. from Potter Handy included or directed her to any of the Court-approved notice information.

2   *See* Comite Decl. Ex. A-1 to A-3.[4]

3      When C.R. re-read the executed copies of the documents that Potter Handy emailed her,

4   C.R. immediately realized that she did not submit a claim for settlement proceeds and emailed

5   Potter Handy two times on February 5, 2025, to withdraw her opt-out so that she could submit a

6   claim. Comite Decl. Exs. A-1, A-4. Potter Handy ignored C.R.'s directions and submitted C.R.'s

7   invalid exclusion request with thousands of others it mailed to Angeion on July 2, 2025, almost

8   five months after receiving correspondence from C.R. to withdraw her opt-out. *See* Comite Decl.

9   ¶5. In the meantime, C.R. separately submitted a claim to participate in the Settlement on May

10  17, 2025, and emailed Angeion to update her contact information. Comite Decl. Exs. A-6, A-8 to

11  A-10. When C.R. received Angeion's confirmation that Potter Handy had submitted an opt-out

12  request on her behalf, she was confused and frustrated and contacted both Angeion and Class

13  Counsel to advise that she did not want to opt out of the Settlement and wanted her claim honored.

14  Comite Decl. Exs. A-11 to A-16. Subsequently, however, C.R. advised Angeion that she does not

15  want to withdraw the opt-out submitted by Potter Handy. Comite Decl. Ex. A-17.

16     While C.R.'s experience is just one example, it demonstrates why curative notice to the

17  Third-Party Opt-Out individuals is necessary to correct the misleading impressions and

18  information about the Settlement that Potter Handy and/or Kazerouni disseminated. *Marino v.*

19  *CACafe, Inc.*, 2017 WL 1540717, at *2 (N.D. Cal. Apr. 28, 2017) (communications were

20  misleading when class members were not informed about the pending lawsuit "their legal rights,

21  the nature of the claims, plaintiff's counsel's contact information, the status of the case, or any

22

23  ---

24  [4]    To date, Class Counsel have no indication that Potter Handy or Kazerouni provided or directed individuals to the Court-approved Notice prior to asking them to enter into retainer agreements and opt out of this Settlement. If Potter Handy and Kazerouni had fully and properly

25  educated the individuals they claim to represent, it is unlikely that any confusion would have occurred in the first place, as the Court-approved Notice makes clear what it means to opt out or

26  request exclusion from the Settlement: "If you do not want a payment from the Settlement and you want to keep your right, if any, to sue Apple on your own about the legal issues in this case, then

27  you must take steps to get out of the Settlement. *This is called excluding yourself from – or 'opting out' of – the Settlement Class.*" (emphasis added). ECF No. 336-2 at 337 (draft of the Court-

28  approved Full Class Notice).

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
Case No. 4:19-CV-04577

1  other information that might have permitted them to allow them to make an informed decision

2  about the waiver of their rights.").

3      Attached as Exhibit O to the Comite Declaration is a proposed curative notice to be sent

4  by Angeion to those individuals on whose behalf Potter Handy and Kazerouni submitted the Third-

5  Party Opt-Outs.  The notice explains in simple, neutral language that the recipient may not have

6  been fully informed of their rights under the Settlement and has been given an opportunity to

7  individually choose whether to opt out or participate in the Settlement.  The notice will advise the

8  individual of the deadline to make his or her selection, which Plaintiffs propose to be 21 days

9  following distribution of the notice.[5]  The curative notice will include a modified version of the

10  Court-approved Email Notice and direct readers to the Settlement Website for additional

11  information.

12      Following the expiration of the 21-day period, Angeion will prepare a declaration for the

13  Court advising of the outcome of the curative notice campaign and, to the extent applicable, an

14  updated list of those members of the Settlement Class that have requested exclusion from the

15  Settlement.  To the extent necessary, Class Counsel will submit a proposed order to the Court

16  concerning the identity of the individuals who requested exclusion to relate back to the entry of

17  the Final Approval Order and Final Judgment concerning the Settlement.

18      **B.    The Court Should Invalidate the Third-Party Opt-Outs and Grant Final
19          Approval of the Settlement**

20      The Court should also invalidate the Third Party Opt-Outs, which were procured through

21  misleading or deceptive means, and allow Settlement Class Members to choose how to proceed

22  on their own in accordance with the curative notice described above.  *See Stark*, 2025 WL

23  1592736, at *16 (finding evidence that class members who submitted opt-outs were given

24  incomplete and misleading information, declaring 927 opt-outs as invalid, further noting that "opt-

25  outs were submitted as a 'group' and therefore violate the procedural requirements of the

26  Settlement Agreement" and ordering curative notice); *Altamirano-Santiago v. Better Produce,*

27  ───────────────

28  [5]    Plaintiffs have conferred with Apple and shared a draft of the curative notice and the
proposed timing to respond.  Apple is considering Plaintiffs' proposal.

*Inc.*, 2020 WL 5412123, at *3 (C.D. Cal. Sept. 8, 2020) ("Curative measures have included curative notice, invalidating opt-outs, and prohibiting *ex-parte* communications regarding the subject of litigation."); *Retiree*, 2016 WL 4080294, at *11 (invalidating opt-outs and ordering issuance of curative notice informing that "any opt-out elections obtained through [the nonparty's] form and communications have been invalidated by the Court, as well as the reasons for the invalidation."); *see also* ECF No. 390.

These requested curative actions do not impede the Court's ability to decide Plaintiffs' Final Approval Motion or the application for attorneys' fees, expenses, and service awards at or immediately following the Final Approval Hearing. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 931 (N.D. Ill. 2022) (separating analysis of dispute over "mass opt-outs" from analysis of whether settlement was fair, reasonable, and adequate under Rule 23 (e)). For instance, in *Stark*, the court granted the final approval motion and fee application and ordered curative notice to be issued to the improperly opted-out settlement class members within 21 days of the court's order. *Stark*, 2025 WL 1592736, at *26. This Court should proceed with its evaluation of the Final Approval Motion, which, if granted, triggers payment of the balance of the Gross Settlement Amount and allows Angeion to begin making preparations for distribution of the Net Settlement Amount to eligible Claimants. Since it will take weeks to issue payments to eligible Claimants, any new eligible Claimants responding to the curative notice will be included in the Settlement as part of the normal claims process, well before payment occurs. Those who opt out will not be affected and can pursue their claims separately, as if they had opted out individually in the first instance.

## II.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court order curative notice to be issued to the Third-Party Opt-Out individuals and invalidate the Third-Party Opt-Outs.


Dated: August 20, 2025                                    Respectfully submitted,

1

2          */s/ Erin Green Comite*          
          Erin Green Comite (*pro hac vice*)
3          Joseph P. Guglielmo (*pro hac vice*)
          **SCOTT+SCOTT**
4          **ATTORNEYS AT LAW LLP**
          The Helmsley Building
5          230 Park Avenue, 24th Floor
          New York, NY 10169-1820
6          Telephone: 212-223-6444
          Facsimile:  212-223-6334
7          ecomite@scott-scott.com
          jguglielmo@scott-scott.com
8
9
          Vincent Briganti (*pro hac vice*)
10         Christian Levis (*pro hac vice*)
          Margaret MacLean (*pro hac vice*)
11         Andrea Farah (*pro hac vice*)
          **LOWEY DANNENBERG, P.C.**
12         44 South Broadway, Suite 1100
          White Plains, NY 10601
13         Telephone: 914-997-0500
          Facsimile:  914-997-0035
14         vbriganti@lowey.com
          clevis@lowey.com
15         mmaclean@lowey.com
          afarah@lowey.com
16
17
          Mark N. Todzo (Bar No. 168389)
18         Patrick Carey (Bar No. 308623)
          **LEXINGTON LAW GROUP**
19         503 Divisadero Street
          San Francisco, CA 94117
20         Telephone: 415-913-7800
          Facsimile:  415-759-4112
21         mtodzo@lexlawgroup.com
22
          E. Kirk Wood (*pro hac vice*)
23         **WOOD LAW FIRM**
          P. O. Box 382434
24         Birmingham, AL 35238
          Telephone: 205-612-0243
25         kirk@woodlawfirmllc.com
26
27         *Attorneys for Plaintiffs*
28

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
Case No. 4:19-CV-04577

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I, Erin Green Comite, certify that on August 20, 2025 the foregoing document

3

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL

4

APPROVAL FO CLASS ACTION SETTLEMENT was filed electronically in the Court's ECF;

5

thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing"

6

as service through CM/ECF to registered e-mail addresses of parties of record in this case.

7

_/s/ Erin Green Comite_

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
Case No. 4:19-CV-04577